September 30, 2015

To:
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE, BSALTA 2005-04
383 MADISON AVENUE
NEW YORK, NY 10179

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
4 New York Plaza, 6th Floor
New York, New York 10004
Attention: Institutional Trust Services/Global Debt, Bear Stearns ALT-A Trust 2005-4.

re:  Jeffrey S. Beier, 10 Tucson, Coto De Caza, CA 92679

To the Trustees, Agents, Affiliates, or the Administrators of Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2005-4 (CIK#: 0001325764),

I am Jeffrey S. Beier and I own the real property located at 10 Tucson, Coto De Caza, CA 92679, APN 755-241-13 (the "Subject Property").  A certain document in the way of a **Notice of Default and Election to Sell Under Deed of Trust** has been recorded with the County of Orange, California as Instrument No. 2015000109060.  This document was recorded on March 3, 2015 and references a scheduled non-judicial foreclosure of the Subject Property under a Trustee Sale No. 15-0233-11. (See the attached Exhibit 1).  This item is improperly recorded.  I respectfully ask you to immediately rescind this **Notice of Default and Election to Sell Under Deed of Trust** and record the rescission with the county.

In March of 2005 I, Jeffrey S. Beier entered into a loan contract with Countrywide Home Loans, Inc., known as Loan No. 090568364 (the "Loan").  THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE, BSALTA 2005-04 now claims to be the beneficial interest holder to this loan.  BANK OF AMERICA, N.A. now claims to service this loan.  The Loan purported to bind the Subject Property with a security interest, and this security interest was purported to be reflected on an instrument called a Deed of Trust.

First, by this letter, I demand that the above **Notice of Default and Election to Sell Under Deed of Trust** be immediately rescinded, and also seeks certain information concerning this loan and the purported debt, and if you have any validity whatsoever and/or financial interest in my home I demand to meet with you to determine what that interest is and to be able to work out any differences we have.  To this point I understand you are located in New York City.   All matters relating to this home were

conducted in Orange County CA however I am so determined to find someone to speak to me and/or meet with me that I am going to be coming to your offices in New York City Friday November 6th and again on Monday November 9th, 2015.  Please contact me via e-mail at JeffBeier@Outlook.com or via telephone at 720-757-3003 to confirm that you can meet with me.  If I do not hear from you I will just show up as I am determined to get to the bottom of what is going on with my home.

The attached **Notice of Default and Election to Sell Under Deed of Trust** is not accurate and not supported by any evidence, and therefore must be rescinded.  The notice is not accurate because it claims that THE WOLF FIRM is the trustee for the beneficiary under the Loan but this is not true because the Trustee named in the Deed of Trust is "CTC Real Estate Services" and the "Lender" listed on the Deed of Trust is "RECONTRUST COMPANY, N.A." and the beneficiary to the Loan as shown on the loan note is "Countrywide Home Loans, Inc."  The notice is not accurate because it claims that by January 6, 2015 BANK OF AMERICA, N.A. claims that it had "*[c]ontacted the borrower to assess the borrower's financial situation and to explore options for the borrower o avoid foreclosure…*" but this is not true because I never heard from BANK OF AMERICA, N.A. in the relevant time period.  I demand that the above **Notice of Default and Election to Sell Under Deed of Trust** be immediately rescinded.

Secondly, although this letter should not be construed as an affirmation or ratification of any obligation, I am interested in exploring any alternatives to foreclosure such as loan modification.  I would like to request that I be afforded the opportunity to explore options to avoid the pending foreclosure.  I have made dozens of request to find the individual or institution involved.  All of which have fell on deaf ears.

Thirdly, pursuant to my rights to know and understand issues relating to the title on my home, including but not limited to the provisions of California Civil Code §2923.55(b)(1)(B), I respectfully ask you to immediately provide the following information:

I. A full and complete copy, including all endorsements or filings if applicable, of my promissory note or other evidence of indebtedness.  Again – No one has responded to my request many times.
II. A mutually agreeable means of physical access to the "ink signature" original of the above loan note for testing and inspecting purposes as to authenticity.  The original please.
III. A copy of my deed of trust or mortgage.
IV. A copy of any and all assignment(s) of my note, mortgage or deed of trust required to demonstrate your purported right to foreclose on the Subject Property.
V. A statement as to whether or not the purported June 7, 2010 conveyance (see the attached Exhibit 2, Substitution of Trustee and Assignment of Deed of Trust) of the loan into the REMIC investment trust by the name of Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2005-4 (CIK#: 0001325764) was ratified by the REMIC trust:

    a.  as an unqualified late-transfer pursuant to 26 USCS § 860G(a)(4) after having occurred beyond the "Closing Day" of the REMIC trust and also having occurred two-years beyond "Startup Day." The attached Substitution of Trustee and Assignment of Deed of Trust shows that the deed "*[t]ogether with the note or notes*" was purportedly "hereby" (on June 7, 2010) granted, assigned and conveyed to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE, BSALTA 2005-04. However, this June 7, 2010 attempt to convey the Loan to the REMIC trust came five years after the trust had closed. The "Startup Day" and the "Closing Date" of the REMIC trust was April 29, 2005. (*See e.g*. Pooling and Servicing Agreement dated as of April 1, 2005 at http://www.sec.gov/Archives/edgar/data/1325764/000106823805000313/bsalta040105psa.htm).

    b.  as an unqualified transfer from a non-qualified entity pursuant to 26 CFR §1.860F-2 after having been originated by an entity (Mortgage Electronic Registration Systems, Inc.) that did not receive regular and residual interests in the REMIC. A "REMIC" is a Real Estate Mortgage Investment Conduit, and its formation is characterized as the contribution of assets by a sponsor to a REMIC in exchange for REMIC regular and residual interests. 26 CFR §1.860F-2(a)(1). "A sponsor is a person who directly or indirectly exchanges qualified mortgages and related assets for regular and residual interests in a REMIC." 26 CFR 1.860F-2(b). All of the interests in the REMIC must be "regular interests" or "residual interests." 3B-50G Federal Income, Gift and Estate Taxation § 50G.03[1][b] IRC § 860D(a)(2). In this case Mortgage Electronic Registration Systems, Inc. was not a sponsor and did not receive any interests in the REMIC. The conveyance by Mortgage Electronic Registration Systems, Inc. is therefore in violation of the federal tax code.

    c.  as an unqualified asset pursuant to 26 CFR §1.860F-2(a)(2) as not being specifically identified in the REMIC scheduled list of mortgage notes that formed the corpus of the REMIC. The organizational documents of a REMIC must "clearly and expressly identify the assets of, and the interests in, each REMIC, and each REMIC must satisfy all of the requirements of section 860D [26 USCS § 860D] and the related regulations." 26 CFR 1.860F-2(a)(2). In this case the organizational documents of BSALTA 2005-04 did not show my client's loan as an asset of BSALTA 2005-04 in the Exhibit B, Mortgage Loan Schedule that was attached to the SEC filing.

Copies of the above can be sent to me at the address shown below. **Please note that lack of any specific response as to the ratification issue in Paragraph V above will be deemed as confirmation that the REMIC <u>did not</u> ratify the June 7, 2010 unlawful assignment, taking into consideration the drastic tax implications under 26 USCS § 860G(d)(1)["Tax on contributions after startup date"].** In other words, lack of any specific response to the inquiry above asking whether or not THE TRUST ratified the questionable late conveyance will be interpreted whereby THE TRUST <u>did not</u> ratify the

conveyance, else THE TRUST would have incurred enormous tax liability.  "There is hereby imposed for each taxable year of a REMIC a tax equal to 100 percent of the net income derived from prohibited transactions." 26 USCS § 860F(a)(1). (i.e. Tax penalties for unqualified (or late) mortgages that are transferred into a tax-exempt investment trust are penalized at 100% tax rates.  These facts which I have discovered lead me to believe there is an organization who is "Better Off" not allowing me to meet with or work out any solutions that would benefit me personally and allow me to avoid thousands of dollars in penalties, interest, etc… that you affirm are real when I affirm you are not even the party I should be dealing with.  The most frustrating part is that no one will speak with me or meet with me other than a lawyer who won't speak to me and forces me to incur additional expense by having a lawyer of my own for my own protection.  It's as if you people designed a system to prevent me from working with you?

In addition to the above, there exists a concern over BSALTA 2005-04's ability or willingness to explore options to avoid foreclosure pursuant to California law.  It appears that there may be a conflict of interest with BSALTA 2005-04 and any of its loan servicer agents with any genuine attempts to avoid foreclosure by way of, for example, a loan modification.

I desire to save the home from foreclosure, but inherent conflicts appear in the system.  This letter hereby asks for clarifications on any such issues that could be offered.  Research into the process of securitization of loans reveals that securitizing loans makes the original lender or their loan servicer immune to borrower's liability because the securitizations are often structured without recourse and without restrictions on the other interests held. (*See e.g.* Wells Fargo 2006 Annual Report at p.103).  Lenders who sell the loans into securitized trusts are later able to "charge off" a troubled borrower's loan if a borrower goes into a default state due to difficult economic circumstances.  In such a case the loan becomes an "impaired asset," and when analyzing impaired loans a bank typically considers the fair value of the collateral (i.e. the FMV of the borrower's home) when foreclosure is probable instead of considering discounted cash flows (i.e. a loan modification). (*See e.g.* Wells Fargo 2006 Annual Report at p.73).  So in other words, your entity, if even a valid one, would be better off to foreclose on someone like me than to accept a reasonable solution.  Even if it benefited every other bank for example, it wouldn't benefit you due to your secured interest no longer being in alignment with the original agreement between the original two parties of the contract.  Am I correct here?  You benefit more by foreclosure of your assets than you do by modification or finding a mutually beneficial solution.  There IS NO mutually beneficial solution due a loan you purport to have purchased which I have yet to see you prove.  These facts do not take into account the tax ramifications you would experience to unwind write offs you have already taken per your annual reports.  Am I missing something here?

For profitability and accounting reasons, accounting under discounted cash flows is less appealing and thus rarely done.  Accordingly, it would appear that any modification to any loan (such as my loan) when the borrower faces financial difficulty would be **IMPOSSIBLE** to the REMIC trust (or the loan servicer) to accommodate because any modification to a loan would require the bank to go back and restate earnings according to SEC law or other General Accounting Principals (GAP).  In summary,  by the time a troubled borrower (if you even have a valid right to be involved) is able to even contact the real lender, that lender has already charged off the loan as an impaired asset, accounted for the asset pursuant to

asserted Fair Market Value according to you, and stated earnings for the relevant time period. Modification to a loan becomes highly unattractive and even unaffordable on account of a subsequent need to restate earnings to account for a past charge-off that would then become inaccurate.

Another flaw in securitization appears prevalent. What the process of securitization highlights is that loan servicers are in fact 'principal-less agents,' and their incentives in managing individual loans do not mirror the interests of investors or trustees acting on behalf of investors, much less homeowners. See *Culhane v. Aurora Loan Servs.*, 826 F. Supp. 2d 352, 375 (D. Mass. 2011)(fn15), citing Adam J. Levitin & Tara Twomey, Mortgage Servicing, 28 Yale J. on Reg. 1, 81. It's as if I'm trying to communicate with the invisible man.

Legal scholars have suggested that loan servicers, without direction as to which option to pursue from the investors or trustee acting on the investors' behalf, tend to elect the one that serves their own economic interest: foreclosure. *Id*. at 375, citing Diane E. Thompson, Nat'l Consumer Law Ctr., Why Servicers Foreclose When They Should Modify and Other Puzzles of Servicer Behavior: Servicer Compensation and Its Consequences (2009)[1] ("A servicer deciding between a foreclosure and a loan modification faces the prospect of near certain loss if the loan is modified and no penalty, but potential profit, if the home is foreclosed"). Such publications would also suggest that there is a conflict of interest negating any desire to modify my loan.

In addition to the above, REMIC trusts appear to accommodate "credit enhancements" that pay the loan servicer bank if a loan goes into a default and a foreclosure. In short, while the major loan servicing organizations (Wells Fargo, Nationstar, Bank of America, Chase, etc) claim to offer and work toward loan modifications for troubled borrowers, such efforts appear only illusory because of the existing conflicts of interest and because of the requirement where the bank servicer and trust entities would be required to go back and restate earnings for loan portfolios that contained any modified loan.

Clarification on these issues is appreciated, but in any event I will look forward to the document requested above wherein your entity supports its standing claim as to my property. I will also look forward to hearing from you regarding my request to meet with you on November 6th and/or November 9th at your offices in New York City, New York.

Thank you,

*Jeffrey S. Beier*
Homeowner
10 Tucson
Coto De Caza, CA 92679

---

[1] www.nclc.org/images/pdf/pr-reports/report-servicers-modify.pdf