Daniel G. Brown, Esq.  (Bar No. 251134)
LAW OFFICES OF DANIEL G. BROWN
P.O. Box 5919
San Clemente, CA  92674-5919
Telephone:    (949) 892-1100
Facsimile:    (949) 892-1150
Email: daniel.brown@baslawfirm.com
Attorney for Plaintiff Jeffrey S. Beier

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**05/20/2015** at 07:00:34 PM

Clerk of the Superior Court
By Elizabeth Cramer, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ORANGE

| | |
|---|---|
| JEFFREY S. BEIER, an individual,<br><br>                              Plaintiff,<br><br>        vs.<br><br>THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-4;<br>BANK OF AMERICA, N.A.;<br>and DOES 1-100,<br><br>                              Defendants. | **CASE No.** 30-2015-00788856-CU-OR-CJC<br><br>Judge Frederick P. Horn<br><br>**COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL**<br><br>1.  Request for Declaratory Relief<br>2.  Request for Relief Pursuant to Cal Civ Code § 2924.12<br>3.  Violations of Cal Civ Code § 2923.55<br>4.  Violations of Cal Civ Code § 2924.17 |

### JURISDICTION AND VENUE

1.  This court has subject matter jurisdiction because the dispute arises over real property that is located in the County of Orange at 10 Tucson, Coto De Caza, CA 92679, and that has an Assessor's Parcel Identification Number of APN 755-241-13.  This court has subject matter over the real property, and venue is proper pursuant to the California Code of Civil Procedure ("CCP") §§392, 395 because the real property is situated in Orange County.  This court also has jurisdiction over this matter pursuant to CCP §760.040-050.

2.  This court has personal jurisdiction over the parties.  Plaintiff Jeffrey S. Beier is at all

Exhibit K

times relevant herein a resident of the County of Orange, California. Defendants are either themselves residents of the County of Orange or have subjected themselves to this court's jurisdiction because of their contact with this County by virtue of encumbering and claiming an interest to the real property located in Orange County, and by participating in conduct that occurred in Orange County.

## THE PARTIES

3. Plaintiff Jeffrey S. Beier is an individual, and at all times relevant herein a resident of the State of California in the County of Orange. Jeffrey S. Beier has a principal residence at the address of 10 Tucson, Coto De Caza, CA 92679 (the "Subject Property").

4. Defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-4 (hereafter "BNY") is an entity of unknown origin. BNY is and was doing business in the County of Orange in the State of California. BNY is a trustee of a REMIC[1] trust ("THE TRUST") by the name of "THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-4." Upon information and belief THE TRUST is a common law trust formed under the laws of the State of New York. BNY (as Trustee of THE TRUST) claims to be the beneficial interest holder of the Plaintiff's loan. BNY possess superior knowledge than the Plaintiff concerning the events described in this complaint because this entity acted as a participant to the flawed securitization of the Plaintiff's loan and because this entity has remained cloaked from the Plaintiff, and has precluded the Plaintiff from obtaining information about his loan. Based upon the role that Defendant BNY has played, BNY has a superior knowledge as to

---

[1] A "REMIC" is a Real Estate Mortgage Investment Conduit, and its formation is characterized as the contribution of assets by a sponsor to a REMIC in exchange for REMIC regular and residual interests. 26 CFR §1.860F-2(a)(1).

Exhibit K

1  the disposition of the Plaintiff's loan than that of the Plaintiff in regards to the circumstances and

2  allegations contained in this complaint.

3      5.  Defendant BANK OF AMERICA, N.A. (hereafter "BOFA") is a national association.

4  BOFA claims to be acting as a Loan Servicer to a first lien loan that the Plaintiff once had with

5

6  Countrywide Home Loans, Inc..

7      6.  Plaintiff does not know the true names, capacities, relationship, or basis for liability of the

8  defendants sued in this action as DOES 1 through 100, inclusive, and will amend this complaint

9

10  when that information is discovered.   Plaintiff is informed and believes and thereon alleges that

11  each named defendant, as well as the DOE defendants, are responsible in some manner for certain

12  occurrences herein alleged in the causes of action and that Plaintiff's damages as alleged were

13  proximately caused by their conduct.  Collectively, all defendants to this action, whether

14  specifically named, or named as DOE defendants, will be hereinafter referred to as "Defendants."

15

16  **FACTUAL BACKGROUND**

17      7.  At all relevant times to this complaint, Plaintiff maintains an ownership interest in the

18  Subject Property at 10 Tucson, Coto De Caza, CA 92679.  The Subject Property is considered to

19  be the Plaintiff's primary residence.

20

21      8.  On March 2, 2005 the Plaintiff entered into a loan contract with **Countrywide Home**

22  **Loans, Inc.** known as Loan No. 090568364 (the "Loan").  A representative copy of the LOAN

23  NOTE is attached and incorporated by reference to this complaint as Exhibit 1.   The LOAN NOTE

24  expressly states that "**Countrywide Home Loans, Inc.**" is the Lender.   Plaintiff alleges that the

25  LOAN NOTE is a promissory note and a negotiable instrument where its enforceability is governed

26  by the California Commercial Code.  Plaintiff alleges that the LOAN NOTE is not enforceable on

27

28  account of the relevant statute of limitations under the Uniform Commercial Code.



9.   The Loan purported to bind the Plaintiff's primary residence Subject Property with a first lien security interest, and this security interest is reflected in an instrument called a Deed of Trust. A representative copy of the **DEED OF TRUST** is attached and incorporated by reference to this complaint as Exhibit 2.   The **DEED OF TRUST** expressly states that "**Countrywide Home Loans, Inc.**" is the Lender. (Exhibit 2 at p.2).  The **DEED OF TRUST** expressly states that "**RECONTRUST COMPANY, N.A.**" is the Trustee to the **DEED OF TRUST**. (Exhibit 2 at p.2). The **DEED OF TRUST** expressly states that only the "Lender, at its option" can substitute a new Trustee to replace the original Trustee **RECONTRUST COMPANY, N.A..** (Exhibit 2 at p.14 at ¶24, Substitution of Trustee).  The **DEED OF TRUST** does not allow a loan servicer or any other party to perform substitutions, other then the Lender.

10.  On June 7, 2010 **Mortgage Electronic Registration Systems, Inc**. claimed to have assigned the Plaintiff's Deed of Trust "together with" the Plaintiff's Loan Note to Defendant BNY.  This purported assignment is reflected in a **SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST**, a copy of which is attached as Exhibit 3.   This assignment was recorded on June 9, 2010.

11. The Plaintiff's property has now been sent to foreclosure.  Over the time frame spanning 2014 and 2015 the Plaintiff alleges that no defendant in this action contacted the Plaintiff or the Plaintiff's designated point of contact in order to avoid foreclosure prior to initiating the foreclosure.   The Plaintiff was given a document titled "*Notice of Default and Election To Sell Under Deed of Trust*" (**NOTICE OF DEFAULT**).  The **NOTICE OF DEFAULT** was recorded on March 3, 2015. A representative copy of the **NOTICE OF DEFAULT** is attached and incorporated by reference to this complaint as Exhibit 4.   Through the **DEED OF TRUST** (Exhibit 2) and the **SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST** (Exhibit 3) and the **NOTICE**

Exhibit K

OF DEFAULT (Exhibit 4) documents, the defendants are attempting to conduct a non-judicial foreclosure on the Subject Property. The Plaintiff disputes statements that are made in these documents, however the Plaintiff includes these documents in this complaint as evidence of a wrongful foreclosure.

## FIRST CAUSE OF ACTION
### Request for Declaratory Relief
### (Against All Defendants)

12. Plaintiff repeats and re-alleges the allegations and facts set forth in Paragraphs 1 through 11 above as if fully set forth herein, and incorporates them by reference in this cause of action.

13. On March 2, 2005 the Plaintiff entered into the Loan contract with **Countrywide Home Loans, Inc.** The Plaintiff alleges that the Loan has been in a state of default for eight (8) years, and all defendants have been aware of this default for that period of time. Plaintiff alleges that the LOAN NOTE is a promissory note and a negotiable instrument and its enforceability is governed by the California Commercial Code. Plaintiff alleges that the LOAN NOTE is not enforceable on account of the relevant statute of limitations under the Uniform Commercial Code wherein the statute of limitations on the enforceability of a negotiable instrument is limited to six (6) years. The Plaintiff alleges that the Plaintiff's Loan Note is not enforceable by any of the defendants in this action because the applicable statute of limitations has passed. In turn, the Plaintiff alleges that the security instrument DEED OF TRUST that is tied to the LOAN NOTE is also not enforceable by any of the defendants in this action.

14. Plaintiff also alleges that the Plaintiff's Loan Note is not enforceable by any of the defendants because there is a broken chain of transfer of the Plaintiff's loan note and because the loan note itself was never properly endorsed and delivered to its intended recipients according to the requirements of endorsement and delivery of a negotiable instrument. Specifically, the Plaintiff


Exhibit K

alleges that after his designated agent conducted an investigation as to the chain of transfer, the Plaintiff has learned and herein alleges that his loan note was never endorsed by **Countrywide Home Loans, Inc.** and was never endorsed by **Bank of America, N.A.** and was not delivered to Defendant BNY rendering BNY without any power to enforce the negotiable instrument. Moreover, the Plaintiff's investigation as to the chain of transfer of the Plaintiff's loan note has revealed other substantial evidence to support the fact that no defendant can enforce the negotiable instrument loan and that Defendant BNY does not hold the Plaintiff's loan note because:

i. Defendant BNY is a stranger to the Plaintiff's loan and is not a party to that promissory note;

ii. THE TRUST that purports to hold the Plaintiff's loan was required by law pursuant to 26 CFR §1.860F-2(a)(2) to list the loan on THE TRUST list of assets but <u>did not</u> list the Plaintiffs' loan on the schedule of assets that formed the corpus of THE TRUST.  This list is file with the United States Security and Exchange Commission and a review of the public records reveals that the Plaintiff's loan is <u>not listed</u> on THE TRUST's asset list.

iii. The defendants base their entire purported authority over the Plaintiffs' property solely and exclusively on an assignment of a "deed only" where such an assignment is void.

iv. The defendants base their entire purported authority over the Plaintiffs' property solely and exclusively on an assignment from MERS to BNY on June 7, 2010 as shown in Exhibit 3, but this assignment breaks the 2-year requirement for a tax exempt REMIC trust pursuant to 26 USCS § 860G(a)(4), where the Plaintiff herein alleges that the defendants did not ratify the assignment as a late conveyance into THE TRUST on account of a 100% federal income tax consequence. The Plaintiff alleges herein that THE TRUST was bound by 26 USCS § 860G(a)(4) and as a result any conveyance of any loan into THE TRUST was void if it occurred beyond 2-years of the trust's "Startup Day" of April 29, 2005.  The Plaintiff alleges that THE TRUST had a Cut-off Date of April 1, 2005, a Closing Date of April 29,

Exhibit K

2005, and a Startup Day of April 29, 2005. The Plaintiff alleges that the purported June 7, 2010 conveyance of the Plaintiff's loan to THE TRUST came five years after THE TRUST had closed and five years after THE TRUST's "Startup Day," thus rendering the June 7, 2010 conveyance void and un-ratified. Plaintiff further alleges that no defendant ever ratified the late attempt to convey the loan into THE TRUST because such a ratification would have subjected THE TRUST to a 100% "unqualified asset" taxation for the amount of the loan, and further would have possibly subjected THE TRUST to a tax liability as high as over $2 Billion[2] for other late conveyances into THE TRUST.

v.   The defendants base their entire purported authority over the Plaintiffs' property solely and exclusively on an assignment from MERS to BNY on June 7, 2010 as shown in Exhibit 3, but this assignment document breaks the "Qualified Entity" requirement for a tax exempt REMIC trust pursuant to 26 CFR §1.860F-2 as an unqualified conveyance into THE TRUST. The Plaintiff alleges that the purported June 7, 2010 conveyance of the Plaintiff's loan to THE TRUST was void and un-ratified because MERS was not a "Qualified Entity" pursuant to the federal income tax code.

15. The Plaintiff seeks declaratory relief, and asks this court to declare the Plaintiff's Loan Note as not enforceable on account of (i) the applicable statute of limitations as to the enforceability of a negotiable instrument having passed, and (ii) the purported conveyance of the Plaintiff's loan to the REMIC trust being void as supported by the provisions found in the federal income tax code.

---

[2] Public records show that THE TRUST claimed to have received a portfolio of thousands of mortgages totaling $2,042,397,353, most of which would be deemed "unqualified assets" if conveyed late, and therefore subject to a federal income tax rate of 100%. Tax penalties for unqualified (or late) mortgages that are transferred into a tax-exempt investment trust are penalized at 100% tax rates. (See IRC § 860F(a), a REMIC  is subject to a 100-percent tax on income derived from certain prohibited transactions).

Exhibit K

## SECOND CAUSE OF ACTION

### Request for Injunctive Relief Pursuant to § 2924.12
### (Against All Defendants)

16. Plaintiff repeats and re-alleges the allegations and facts set forth in Paragraphs 1 through 11 above as if fully set forth herein, and incorporates them by reference in this cause of action.

17. If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17. Cal Civ Code § 2924.12(a)(1). Plaintiff alleges that the Defendants have committed material violations of Cal Civ Code Section 2923.55 by recording a NOTICE OF DEFAULT on March 3, 2015 without contacting the Plaintiff in order to avoid foreclosure, and have further committed material violations of Cal Civ Code Section 2923.55 as set forth in the separate cause of action set forth below. Also, Plaintiff alleges that the Defendants have committed material violations of Cal Civ Code Section 2924.17 by recording a NOTICE OF DEFAULT on March 3, 2015 where this instrument contains inaccurate and unreliable information, and have also committed material violations of Cal Civ Code Section 2924.17 as set forth in the separate cause of action set forth below.

18. Plaintiff seeks immediate injunctive relief before any defendant takes any action against the Plaintiff's property, including any attempts to record any claims or transfers of title to the property or any attempts to sell the property at a foreclosure sale or any attempts to take possession of the property.

## THIRD CAUSE OF ACTION

### Violations of Cal. Civ. Code §2923.55
### (Against All Defendants)

19. Plaintiff repeats and re-alleges the allegations and facts set forth in Paragraphs 1 through 11 above as if fully set forth herein, and incorporates them by reference in this cause of action.

20. California Civil Code § 2923.55 requires a mortgage servicer, mortgagee, trustee,

Exhibit K

beneficiary, or authorized agent of a loan to avoid foreclosure, and states that a "*mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure*." Cal Civ Code § 2923.55(b)(2).  The statute also provides that during the initial contact, "*the mortgage servicer shall advise the borrower that he or he has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days.*" Cal Civ Code § 2923.55(b)(2).

21. California Civil Code §2923.55 also provides that a "*mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924*" until either 30 days after initial contact is made or 30 days after satisfying certain due diligence requirements.  Cal Civ Code § 2923.55(a). California Civil Code §2923.55 also provides that a "*notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5."*  Cal Civ Code § 2923.55(c).

22. On March 2, 2005 the Plaintiff entered into a loan contract with **Countrywide Home Loans, Inc.**.  Defendant BNY claims to have assumed an interest in this loan as "Lender." Defendant BOFA claims to have assumed an interest in this loan as a "Loan Servicer." The Loan purported to bind the Plaintiff's primary residence Subject Property with a first lien security interest, and this security interest **DEED OF TRUST** attached as Exhibit 2.

23. The Plaintiff's property has now been sent to foreclosure.  The **NOTICE OF DEFAULT** was recorded on December 9, 2014 (Exhibit 7).   A "*Notice of Trustee Sale"* (**NOTICE OF TRUSTEE**



SALE) was recorded on April 24, 2015 (Exhibit 8).    Through these documents, the defendants are attempting to conduct a non-judicial foreclosure on the Subject Property.  The Plaintiff disputes many of the statements that are made in these documents, but the Plaintiff includes references to these documents in this complaint as evidence of a wrongful foreclosure.

24.  Defendants held certain obligations to Plaintiff including the obligation to avoid a foreclosure on the Plaintiff's primary residence under California Civil Code § 2923.55.   Plaintiff owns the Subject Property.  During the 2012-2015 time periods, this property has been considered to be Plaintiff's principal residence. The Plaintiff is considered to be a "borrower" pursuant to California Civil Code § 2923.55 and § 2920.5, and is therefore protected by these statutes.

25. Defendant BNY has violated California Civil Code § 2923.55 because BNY failed to contact the Plaintiff to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, nor did BNY attempt to contact the Plaintiff with the due diligence requirements as set forth in California Civil Code § 2923.55(f). Plaintiff alleges that BNY did not contact the Plaintiff (or attempt to contact with due diligence pursuant to California Civil Code § 2923.55(f)) in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure prior to recording the Notice of Default.  Plaintiff alleges that BNY did not contact the Plaintiff to inform him that he had the right to request a subsequent meeting in order to avoid foreclosure.  Defendant BNY has violated California Civil Code § 2923.55 because BNY recorded a Notice of Default pursuant to California Civil Code Section 2924 on March 3, 2015 without the requirements of California Civil Code § 2923.55 being met 30 days prior, without making contact with the Plaintiff as required by § 2923.55, without advising the Plaintiff of the Plaintiff's right to request meetings concerning avoiding the foreclosure of the Plaintiff's home, and without satisfying the due diligence requirements as described in § 2923.55(f).

Exhibit K

26. Defendant BOFA has violated California Civil Code § 2923.55 because BOFA failed to contact the Plaintiff to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, nor did BOFA attempt to contact the Plaintiff with the due diligence requirements as set forth in California Civil Code § 2923.55(f). Plaintiff alleges that BOFA did not contact the Plaintiff (or attempt to contact with due diligence pursuant to California Civil Code § 2923.55(f)) in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure prior to recording the Notice of Default. Plaintiff alleges that BOFA did not contact the Plaintiff to inform his that he had the right to request a subsequent meeting in order to avoid foreclosure. Defendant BOFA has violated California Civil Code § 2923.55 because BOFA recorded a Notice of Default pursuant to California Civil Code Section 2924 on March 3, 2015 without the requirements of California Civil Code § 2923.55 being met 30 days prior, without making contact with the Plaintiff as required by § 2923.55, without advising the Plaintiff of the Plaintiff's right to request meetings concerning avoiding the foreclosure of the Plaintiff's home, and without satisfying the due diligence requirements as described in § 2923.55(f).

27. Although Defendants had included a "Declaration" that was attached to the NOTICE OF DEFAULT, the Plaintiff disputes the statements that are made in this Declaration. The Declaration claims that by January 6, 2015 the mortgage servicer (Defendant BOFA) "*[c]ontacted the borrower to assess the borrower's financial situation and to explore options to avoid foreclosure*" prior to recording the NOTICE OF DEFAULT on March 3, 2015, but this statement is simply not true. The Plaintiff alleges that Defendant BOFA failed to contact the Plaintiff to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure and did not attempt to contact the Plaintiff with the due diligence prior to recording the Notice of Default.

Exhibit K

28. As a direct and proximate cause of defendants' violations of California Civil Code §
2923.55, Plaintiff has been harmed in that he has an impaired title to the Subject Property and has
spent money to save his home.  Plaintiff has suffered harm because he has not been afforded a
cancellation or postponement of the sale of the property until such a time as the defendants have
come into compliance with California Civil Code § 2923.55.  Plaintiff has been financially harmed
(as recoverable under California Civil Code § 2924.12) in that he has suffered the results of a
derogatory credit rating that has made it difficult for him to obtain favorable credit and that has
caused him to pay excess amounts in high interest charges in an amount exceeding $1000, and has
caused him to spend in excess of $1000 in legal fees in order to protect his property rights that he
would not have had to spend but for the defendants' violations of California Civil Code § 2923.55.
Plaintiff has been financially harmed because he has spent in excess of $1000 in legal fees in order
to protect his property.

## FOURTH CAUSE OF ACTION
### Material Violations of Cal Civ Code § 2924.17
### (Against All Defendants)

29. Plaintiff repeats and re-alleges the allegations and facts set forth in Paragraphs 1 through
11 above as if fully set forth herein, and incorporates them by reference in this cause of action.

30. §2924.17(a) – A declaration recorded pursuant to Section 2923.5 or 2923.55, a notice of
default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on
behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of
Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding
shall be accurate and complete and supported by competent and reliable evidence. Cal Civ Code §
2924.17(a). §2924.17(b) – Before recording or filing any of the documents described in
subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable
evidence to substantiate the borrower's default and the right to foreclose, including the borrower's



loan status and loan information.

31. Plaintiff alleges herein allege that the defendants have violated §2924.17 because they have recorded (or caused to have recorded) a **NOTICE OF DEFAULT** but this document is not accurate and complete and supported by competent and reliable evidence. All defendants are liable under this cause of action because Defendant BNY claims to be the principal to its agent BOFA.

    i. On March 3, 2015 **The Wolf Firm** (under the direction and acting as an agent for Defendants BNY and BOFA) filed in the office of the Orange County Recorder a **NOTICE OF DEFAULT** as shown in Exhibit 4, but this notice is not accurate and is not supported by reliable and competent evidence because it wrongfully shows that BOFA contacted the Plaintiff prior to recording the notice, but this is not true. The notice is also not accurate because it was prematurely recorded because the Defendants have failed to explore options to avoid foreclosure and have failed to conduct due diligence, rendering the Notice of Default and all other recorded foreclosure documents premature and not accurate. The **NOTICE OF DEFAULT** is also not accurate and is not supported by reliable and competent evidence because it wrongfully shows that **The Wolf Firm** is the "*duly appointed trustee pursuant to the Deed of Trust* " when it is not.  The notice is not accurate because **The Wolf Firm** is not the trustee to the Plaintiff's Deed of Trust because the entity "**RECONTRUST COMPANY, N.A.**" was the trustee that was designated on the Deed of Trust, and this fact is a matter of public record.

32. As a direct and proximate result of defendants' material violations of California Civil Code § 2924.17 as enforceable pursuant to § 2924.12, the Plaintiff has been harmed in an amount to be determined at trial.  On account of defendants acts and omissions the Plaintiff has been harmed in that he has been required to retain legal counsel in order to protect his property and has paid money to protect his property that otherwise he would not have had to expend.  In an effort to enforce his rights Plaintiff has spent an amount in excess of $1000 in legal fees.  Plaintiff is entitled to immediate declaratory relief, as well as restitution and damages according to proof at trial.  Plaintiff is also entitled to attorneys' fees Pursuant to Cal Civ Code § 2924.12.

Exhibit K

## JURY DEMAND

Plaintiff respectfully demands a trial by jury of all triable issues for all causes of action alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, in addition to the relief sought as described above in each cause of action, Plaintiff prays for judgment against Defendants for all causes of action as follows:

i.    For judgment in favor of the Plaintiff on the Complaint;
ii.   For injunctive and declaratory relief;
iii.  For an Order canceling the instruments listed;
iv.   For an Order for injunctive relief;
v.    For an award of compensatory damages according to proof;
vi.   For an order for the Defendants to pay restitution;
vii.  For an award of costs and expenses of suit, including attorneys' fees where supported by Cal. Civ. Code §2924.12;
viii. For an award of pre-judgment and post-judgment interest at the maximum legal rate; and,
ix.   Such other and further relief as the Court may deem just and proper.

Dated: May 20, 2015                          LAW OFFICES OF DANIEL G. BROWN

                                             Daniel G. Brown, Esq.
                                             Attorney for Plaintiff Jeffrey S. Beier

Exhibit K

**Table of Exhibits**

| Description |
| --- |
| Exhibit 1- Loan Note dated March 2, 2005 |
| Exhibit 2- Deed of Trust recorded March 8, 2005 |
| Exhibit 3- Substitution of Trustee and Assignment of Deed of Trust recorded June 9, 2010 |
| Exhibit 4- Notice of Default with Declaration recorded March 3, 2015 |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

Exhibit K

# Exhibit 1

**Exhibit 1**

Exhibit K

Prepared by: NICHOLAS P. ISAACS



# InterestOnly℠ ADJUSTABLE RATE NOTE
(One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MARCH 02, 2005                     MISSION VIEJO                     CALIFORNIA
  [Date]                              [City]                           [State]

10 TUCSON, COTO DE CAZA AREA, CA 92679
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,470,000.00   (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment on the first   day of every month, beginning on   MAY 01, 2005 .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on APRIL 01, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 7,196.88   before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D605-XX (04/03)(d)                          Page 1 of 4                      Initials:

CERTIFIED TO BE A TRUE COP
OF THE ORIGINAL DOCUMENT
TLC ESCROW, INC.
BY:

Exhibit K



## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the `first` day of `APRIL, 2010`, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding `TWO & ONE-QUARTER` percentage points ( `2.250` %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than `10.875` % or less than `2.250` %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than `10.875` %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of `FIFTEEN` calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be `5.000` % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Initials 

Exhibit K



**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials:

# Exhibit K

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JEFFREY S. BEIER                -Borrower

_____ (Seal)
TONY R. BEIER                   -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

[Sign Original Only]

Exhibit K

# Exhibit 2

**Exhibit 2**

Exhibit K



RECORDING REQUESTED
BY STEWART TITLE
IRVINE

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

Recording Requested By:
K. BUDDE

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
NICHOLAS P. ISAACS

[Space Above This Line For Recording Data]

2271-NB                                    [Doc ID #]
[Escrow/Closing #]

## DEED OF TRUST
MIN

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated MARCH 02, 2005        , together
with all Riders to this document.
(B) "Borrower" is
JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS



Page 1 of 16                                                        Initial:

-6A(CA) (0207)    CHL (09/02)(d)    VMP MORTGAGE FORMS - (800)521-7291         Form 3005  1/01
CONV/VA

## Exhibit K

DOC ID #:

Borrower's address is
10 TUCSON, COTO DE CAZA AREA, CA 92679
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated MARCH 02, 2005     . The Note states that Borrower owes Lender
ONE MILLION FOUR HUNDRED SEVENTY THOUSAND and 00/100

Dollars (U.S. $ 1,470,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  APRIL 01, 2035          .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider           [X] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider        [ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials
[logo] -6A(CA) (0207)     CHL (09/02)        Page 2 of 16                                    Form 3005 1/01

Exhibit K

Branch :A14 User :2004          Comment:          Station Id :GRX0

Case 8:23-bk-10898-TA    Doc 127-11    Filed 12/26/23    Entered 12/26/23 17:17:38
Desc Exhibit K - Complaint 30-2015-00788856-CU-OR-CJC    Page 24 of 47

DOC ID #: ▓▓▓▓▓▓▓

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
          COUNTY                    of                    ORANGE                    :
     [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 755-241-13                    which currently has the address of
                         10 TUCSON, COTO DE CAZA AREA                    ,
                                   [Street/City]
California     92679     ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

                                                                          Initial

〄 -6A(CA) (0207)     CHL (09/02)          Page 3 of 16                    Form 3005 1/01

# Exhibit K

DOC ID #: ███████

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

Initials: _____

██ -6A(CA) (0207)    CHL (09/02)    Page 4 of 16    Form 3005 1/01



DOC ID #: ▮▮▮▮▮▮▮

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

🚗 -6A(CA) (0207)          CHL (09/02)          Page 5 of 16          Initials: [signature]    Form 3005 1/01


Exhibit K

Branch :A14 User :2004 Comment: Station Id :GRX0

Case 8:23-bk-10898-TA    Doc 127-11    Filed 12/26/23    Entered 12/26/23 17:17:38
Desc Exhibit K - Complaint 30-2015-00788856-CU-OR-CJC    Page 27 of 47

DOC ID #: ▮▮▮▮▮▮▮

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

-6A(CA) (0207)        CHL (09/02)        Page 6 of 16        Initials: _____ Form 3005 1/01

Exhibit K

DOC ID #: ▮▮▮▮

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

▮▮▮ -6A(CA) (0207)    CHL (09/02)         Page 7 of 16                    Initials: ▮▮▮▮    Form 3005 1/01

Exhibit K

DOC ID #: ▮▮▮▮▮▮▮

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials:_____

-6A(CA) (0207)    CHL (09/02)    Page 8 of 16    Form 3005 1/01

Exhibit K

DOC ID #: ▮▮▮▮▮▮▮

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Initials: _____

Form 3005 1/01

⓿ -6A(CA) (0207)        CHL (09/02)        Page 9 of 16


Exhibit K

DOC ID #: ▮▮▮▮▮▮

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

-6A(CA) (0207)        CHL (09/02)        Page 10 of 16        Initials: _____ Form 3005 1/01

Exhibit K

DOC ID #: ▓▓▓▓▓▓▓▓▓▓

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials: _____

🌀 -6A(CA) (0207)        CHL (09/02)            Page 11 of 16                    Form 3005  1/01

Exhibit K

Branch :A14 User :2004                     Comment:                                              Station Id :GRX0

Case 8:23-bk-10898-TA    Doc 127-11    Filed 12/26/23    Entered 12/26/23 17:17:38
Desc Exhibit K - Complaint 30-2015-00788856-CU-OR-CJC    Page 33 of 47

DOC ID #: ███████████

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Initials: _____

Form 3005 1/01

*VMP®* -6A(CA) (0207)      CHL (09/02)          Page 12 of 16



Branch :A14 User :2004    Comment:    Station Id :GRX0

Case 8:23-bk-10898-TA    Doc 127-11    Filed 12/26/23    Entered 12/26/23 17:17:38
Desc Exhibit K - Complaint 30-2015-00788856-CU-OR-CJC    Page 34 of 47

DOC ID #: ▮▮▮▮▮▮

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

*VMP* -6A(CA) (0207)    CHL (09/02)    Page 13 of 16    Initials: _____    Form 3005 1/01



DOC ID #: ▮▮▮▮▮

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: ▮▮▮

-6A(CA) (0207)          CHL (09/02)          Page 14 of 16          Form 3005 1/01



Exhibit K

DOC ID #: ▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____    _____ (Seal)
    JEFFREY S. BEIER    -Borrower

_____    _____ (Seal)
    TONI R. BEIER    -Borrower

    _____ (Seal)
    -Borrower

    _____ (Seal)
    -Borrower

-6A(CA) (0207)    CHL (09/02)    Page 15 of 16    Form 3005 1/01

Exhibit K

DOC ID #: ▮▮▮▮▮▮▮

State of California
County of Orange                    } ss.

On March 2, 2005    before me, Erin Wilkinson
                                                    personally appeared

Jeffrey S. Beier & Toni R. Beier

~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

ERIN WILKINSON
Commission # 1429331
Notary Public - California
Orange County
My Comm. Expires Jul 8, 2007

Initials: _____

-6A(CA) (0207)    CHL (09/02)    Page 16 of 16    Form 3005  1/01

Exhibit K

Government Code Section 27361.7

I certify under penalty of perjury that the notary seal on the document to
which this statement is attached reads as follows:

| | |
|---|---|
| Name of Notary: | ERIN WILKINSON |
| Date commission expires: | JULY 8, 2007 |
| Commission No.: | 1429331 |
| Vendor No.: | NNA1 |
| Place of execution: | ORANGE |
| Date: | MARCH  2, 2005 |

Stewart Title of California

By:    DANNY SCRUGGS

Exhibit K

Prepared by: NICHOLAS P. ISAACS

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: █████
27101 PUERTA REAL, ST 100
MISSION VIEJO, CA 92691
Phone: █████
Br Fax No.: █████

DATE:      03/02/2005
CASE #:
DOC ID #: █████████
BORROWER: JEFFREY S. BEIER
PROPERTY ADDRESS: 10 TUCSON
             COTO DE CAZA AREA, CA 92679

**LEGAL DESCRIPTION EXHIBIT A**



FHA/VA/CONV
● Legal Description Exhibit A
1C404-XX (04/03)(d)

**Exhibit K**



## EXHIBIT "A"

### LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of ORANGE, described as follows:

Parcel 1:

Lot 1 (the "Lot") of Tract No. 15841, in the County of Orange, State of California, as shown on a subdivision map ("Map") recorded on December 23, 1999, in book 794, pages 25 to 29, inclusive of miscellaneous maps, in the office of the Orange County recorder.

Excepting therefrom; all oil, oil rights, natural gas rights, mineral rights, and other hydrocarbon substances by whatever name known, together with appurtenant rights thereto, without, however, any right to enter upon the surface of said land nor any portion of the subsurface lying above a depth of 500 feet, as excepted or reserved in instruments of record.

Except all water, claims or rights to water, in or under said land.

Parcel 2:

Non-exclusive easements for use, access, ingress, egress, maintenance, repair, drainage, encroachment, support, and for other purposes, all as described in the Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Coto de Caza ("Master Declaration"), recorded on March 5, 1984 as Instrument No. 84-092424, in the Supplemental Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Oak Knoll in Coto De Caza ("Supplemental Declaration") recorded on September 11, 2000 as Instrument No. 2000-0471430, in the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for The Summit ("Summit Declaration") recorded on September 20, 2000 as Instrument No. 2000-0492456, all in official records and all as amended or restated, and as described in the map and notice recorded December 20, 2000 as Instrument No. 2000-0691033.

End of Legal Description

# Exhibit K

# Exhibit 3

**Exhibit 3**

Exhibit K

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

ATTN: Nallely Ochoa
TS No. 08-0008967

Recording Requested By: DPS
On Behalf Of: "LS - SV"

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

## SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST

The undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter referred to as Beneficiary) is the Beneficiary of that certain Deed of Trust dated 03/02/2005, executed by JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, Trustor, to RECONTRUST COMPANY, N.A., as Trustee, and recorded as Instrument No. 2005000170527 on 03/08/2005, of Official Records in the County Recorder's Office of ORANGE County, California. NOW THEREFORE, Beneficiary hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS:1757 TAPO CANYON ROAD, SVW-88, SIMI VALLEY, CA 93063 , as Trustee under said Deed of Trust herein referred to, in the place and stead of and with all rights, title, powers, and interest of the former trustee described above.

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, conveys and transfers to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK,N.A. AS TRUSTEE, BSALTA 2005-04 all beneficial interest under that certain Deed of Trust described above. Said described land: "As more fully described in the above referenced Deed of Trust." Together with the note or notes therein described or referred to, the money due and to become due thereon with the interest, and all rights accrued or to accrue under said Deed of Trust.

DATED: June 07, 2010

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

State of: **CALIFORNIA** )BY:

County of: **VENTURA** )

On **JUN 0 7 2010** before me,
**KEVIN RUDOLPH**

Kevin Rudolph, Assistant Secretary

**MICHELLE I. MILLER** , notary public, personally appeared
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Notary Public's Signature **MICHELLE I. MILLER**

MICHELLE I. MILLER
COMM. #1836833
Notary Public - California
Los Angeles County
My Comm. Expires Feb. 15, 2013

*Form subasgnmnt (01/09)*



# Exhibit K

# Exhibit 4

**Exhibit 4**

Exhibit K

RECORDING REQUESTED BY:
**Stewart Title Guaranty F/K/A Landsafe Default Inc**

WHEN RECORDED MAIL TO:
**The Wolf Firm**
2955 Main Street, 2nd Floor
Irvine, California 92614
(949) 720-9200
(949) 608-0130 (Foreclosure Fax No.)

THIS IS TO CERTIFY THAT THIS IS A FULL
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY
RECORDER

ON: _03/03/2015_____

AS DOCUMENT NO.: ▉▉▉▉▉▉▉

BY: STEWART TITLE GUARANTY

---

Trustee Sale No. **15-0233-11**    Title Order No. ▉▉▉▉    APN: ▉▉▉▉

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**PLEASE NOTE THAT PURSUANT TO CIVIL CODE § 2923.3(c)(1) THE ABOVE STATEMENT IS
REQUIRED TO APPEAR ON THIS DOCUMENT BUT PURSUANT TO CIVIL CODE § 2923.3(a) THE
SUMMARY OF INFORMATION IS NOT REQUIRED TO BE RECORDED OR PUBLISHED AND THE
SUMMARY OF INFORMATION NEED ONLY BE MAILED TO THE MORTGAGOR OR TRUSTOR**

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days prior to
the date set for the sale of your property.  No sale date may be set until approximately 90 days
from the date this notice of default may be recorded (which date of recordation appears on this
notice).

**This amount is $840,000.88 as of 2/27/2015, and will increase until your account becomes
current.**

While your property is in foreclosure, you still must pay other obligations (such as insurance and
taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments
on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations
as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that
you do so in order to reinstate your account in good standing.  In addition, the beneficiary or

Exhibit K

T.S. No.15-0233-11  Title Order No.

mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE**
> **BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES,**
> **SERIES 2005-4**
> c/o The Wolf Firm, A Law Corporation
> 2955 Main Street, 2nd Floor
> Irvine, California 92614
> Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:  The Wolf Firm, A Law Corporation** is the duly appointed Trustee, Substituted Trustee, or acting as agent for the beneficiary under a Deed of Trust dated **3/2/2005**, executed by **JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor(s), to secure certain obligations in favor of

2

Exhibit K

T.S. No.15-0233-11   Title Order No. ▮▮▮▮▮▮▮

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS A NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., A CORPORATION,** as beneficiary, recorded **3/8/2005,** as Instrument No. **2005000170527** of Official Records in the Office of the Recorder of **Orange** County, California, **As more fully described on said Deed of Trust.**

Including the note(s) for the sum of **$1,470,000.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

  **The full installment due on 9/1/2007 and all subsequent payments, together with any late charges, delinquent taxes, insurance premiums, impounds and advances; senior liens, Loan Modifications, Forbearance Agreements and encumbrances which are delinquent or become delinquent and any attorney's fees and court costs arising from the beneficiary's protection of its security must be cured as a condition of reinstatement.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for sale, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**A copy of the declaration required by California Civil Code section 2923.55(c) is attached hereto and incorporated herein by reference as Exhibit 'A'**

Dated: 2/27/2015                              **THE WOLF FIRM, A LAW CORPORATION, AS AGENT FOR THE BENEFICIARY BY**

By: _____

                              **Renae C. Murray, Trustee Sale Officer**

**The Wolf Firm,** IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit K



**Bank of America**

**Home Loans**

Mail Stop: PTX A-65
7105 Corporate Drive
Plano, TX 75024

**Notice Date:** January 6, 2015

Jeffrey S & Toni R Beier
25226 Pike Rd
Laguna Hills, CA 92653

**Property Address:**
10 Tucson
Coto DE Caza Area, CA 92679

## CALIFORNIA DECLARATION

I, James A. Renfro, Mtg Servicing Specialist Lead of Bank of America ("BANA") at BANA Home Loans, declare under the laws of the State of California, that I have reviewed Bank of America, N.A.'s business records maintained in the ordinary course of business, and having personal knowledge of the contents of those records, hereby state, that those business records reflect that:

BANK OF AMERICA, has,

1. ☒ Contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure in accordance with California Civil Code §2923.55(b)(2).

2. ☐ Tried with due diligence to contact the borrower in order to assess their financial situation and to explore options for the borrower to avoid foreclosure in accordance with California Civil Code Section 2923.55(f), including by:

    a.    providing the borrower a toll-free telephone number providing access to a live representative during business hours;

    b.    posting a prominent link on its internet website homepage to the information required by California Civil Code §2923.55(f)(5)(A)-(D);

    c.    sending a letter via first class mail to the borrower(s);

    d.    attempting to contact the borrower on three separate days at a different time each day;

    e.    sending a letter via certified mail, return receipt requested.

3. ☐ Determined that the provisions of California Civil Code §2923.55 do not apply because the loan was not for owner-occupied residential real property (principal residence), as defined by California Civil Code § 2924.15.

Jan 6, 2015   Addison, TX
Date and Place

James A Renfro
Name of Signer

C3_7293 CA-DECLARATIONS 15996 02/18/2013

# Exhibit K