**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**10/02/2017** at 04:15:00 PM

Clerk of the Superior Court
By Marlene Orellana, Deputy Clerk

SANFORD PARKE SBN 214834
Law Offices of Sanford Parke
1913 E. 17th Street
Suite 212
Santa Ana, CA 92705
714.750.5900

Attorney for Jeffrey S. Beier

THE SUPERIOR COURT OF CALIFORNIA
FOR THE COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

| | |
|---|---|
| JEFFREY S. BEIER,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA N.A., CLEAR RECON CORP., THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE to JPMORGAN CHASE BANK, N.A. as trustee for THE BEAR STERNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-4; and DOES 1-50, INCLUSIVE,<br><br>    Defendants. | **Case No. 30-2017-00907172-CU-OR-CJC**<br>**Assigned to the Honorable Geoffrey Glass**<br><br>**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR:**<br><br>1. **VIOLATION OF § 2923.6**<br>2. **NEGLIGENCE**<br>3. **UNFAIR BUSINESS PRACTICES, B&P CODE § 17200 et seq.**<br>4. **REQUEST FOR DECLARATORY RELIEF**<br><br>**DEPT:**       **C-32** |

I, Jeffrey S. Beier, hereinafter referred to as "Plaintiff," assert the following:

## <u>IDENTITY OF THE PARTIES</u>

1.  At all relevant times herein, Plaintiff was an individual residing in the County of Orange, in the State of California.

2.  Bank of America, N.A. (hereinafter referred to as "BANA") is a Corporation existing and operating pursuant to California law.

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

# Exhibit M

3. Clear Recon Corp. (hereinafter referred to as "CRC") is a Corporation existing and operating pursuant California law, and at relevant times informed Plaintiff that CRC is the current Trustee of the Plaintiff's mortgage.

4. The Bank Of New York Mellon, FKA The Bank Of New York successor trustee to JP Morgan Chase Bank, N.A., as trustee for The Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates Series 2005-4 (hereafter referred to as "BNY") is an entity of unknown origin.  BNY is and was doing business in the County of Orange in the State of California.  BNY is a trustee of a REMIC trust ("THE TRUST") by the name of "THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-4."

5. The true names and capacities of all unnamed Defendants (Does 1 – 50, inclusive) are unknown to Plaintiff, who therefore sues said Doe Defendants by fictitious names to be amended to the true names and capacities when ascertained at a later date by Plaintiff.

6. At all times relevant, each Doe Defendant was an agent, servant, employee, or acted under, in concert with, or for the named Defendants in the scope of such agency and/or employment, or was in some way the cause of the Plaintiff's damage.

## INTRODUCTION

7. On April of 2003, Plaintiff and Toni R. Beier purchased real property, a single family residence located at 10 Tucson, Coto De Caza, CA 92679, Assessor's Parcel Number: 755-241-13, (hereinafter referred to as "Property" or "Subject Property").  The legal description is included with EXHIBIT A of this complaint.  As part of the purchase, Plaintiff tendered $350,000.00 as a down payment.

8. Since April 2003, Plaintiff has occupied the Subject Property as his primary residence.

9. In 2005, Plaintiff refinanced the Property and as a part of the refinance, signed a Deed of Trust ("DOT") in the amount of $1,470,000.00 that was recorded on 08 March 2005, attached hereto as

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

Exhibit M

EXHIBIT A.

10. The DOT identifies Countrywide Home Loans, Inc. as the lender and RECONTRUST COMPANY N.A. as the trustee.

11. On or about July 2008, BANA purchased Countrywide Home Loans, Inc. and identified itself to Plaintiff as the servicer of the Property's mortgage.

12. On 30 April 2012, as part of Plaintiff and Toni R. Beier's dissolution of marriage and order of the court, Plaintiff became the sole owner of the PROPERTY.

13. Between March 2015 and March 2017, Plaintiff was solicited by BANA to apply for a modification of his mortgage loan payment amount and Defendants failed to comply with the provisions of California's Homeowner's Bill of Rights ("HBOR").  Namely, through Defendants' continual resetting of Trustee's Sale for Plaintiff's Property despite a failure to properly review and allow an appeal of Plaintiff's full and complete application for loan modification under HBOR.

14. Further, despite providing notice that Plaintiff's application had been denied, Defendants' notice was deficient in that it failed to include the Net Present Value ("NPV") that was used by Defendant in calculating Plaintiff's eligibility under HBOR.

15. Defendants' conduct in reviewing Plaintiff's eligibility for a modification under HBOR breached the duty owed to borrowers by lenders and loan servicers.  But for Defendants' breach, Plaintiff would have avoided actual and foreseeable damages.

16. As the result of Defendants' unlawful, fraudulent, and/or unfair conduct, Defendants have engaged in unfair business practices under B&P § 17200.

17. Plaintiff also seeks declaratory relief stating that the transfer of the servicing of Plaintiff's loan to Defendant is voidable as to the current beneficiary BNY.

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

-3-

30-2017-00907172-CU-OR-CJC

Exhibit M

## AGENCY ALLEGATIONS

18. Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of each Defendant.  And each Defendant was acting in concert with each Defendant in all matters alleged, and at all times was acting within the course and scope of its agency, employment, partnership, and/or concert of action.  Plaintiff's injuries are the direct result of the conduct of multiple employees and show a calculated plan to injure Plaintiff, which could not have happened, absent advance knowledge, authorization, or ratification by an officer, director, or managing agent of the Defendant corporations.

19. Plaintiff is informed and believes, and based thereon, allege that at all times mentioned in this complaint Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and, by engaging in the actions mentioned below, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of co-Defendants.

20. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or ostensible scope of their authority.

21. Plaintiff is informed, believes, and based thereon, alleges that each of said Defendants is, in some manner, legally responsible for the unlawful actions, unlawful policies, and unlawful practices hereinafter alleged, and that Plaintiff's damages were proximately caused by Defendants.

22. This reckless wrongdoing has caused great harm to Plaintiff including, but not limited to fear of the loss of his home to foreclosure, divorce, loss of children, loss of business, loss of savings, actual severe damage to their credit rating, legal fees, costs, emotional distress, and public humiliation and ridicule.

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

30-2017-00907172-CU-OR-CJC

Exhibit M

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

## JURISDICTION AND VENUE

23. Venue and jurisdiction are proper in this Court because injury and damages to Plaintiff occurred in this jurisdictional area, and the Subject Property is located in this jurisdictional area.

24. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

25. This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California.

26. This Court is the appropriate venue for this action under Cal. Civ. Proc. §§ 395 & 395.5 because the acts that give rise to the causes of action alleged herein occurred in the County of Orange, State of California, and the Subject Property is located in the County of Orange. Plaintiff hereby designates the County of Orange as the place of proper venue.

## FACTUAL ALLEGATIONS

27. On or about 06 January 2015, the Defendant BANA signed a California Civil Code § 2923.55 Declaration that BANA had conducted the required assess and explore of the Plaintiff.  This information is obtained though Plaintiff's discovery and is BANA Bates number 002112.

28. On or about 03 March 2015, Defendant BANA filed its Notice of Default. The Orange County recorder's office recording number 2015000109060.

29. On or about 01 July 2016, BANA rescinded the Notice of Default. The Orange County recorder's office recording number 2016000302039. The basis of the Rescission was that the Plaintiff had made and BANA agreed to rescind the NOD because BANA rescinding of an improper NOD protected it them borrower's claim based on a California Civil Code § 2923.55 violation. The Notice of Recession was signed and dated by BANA on 30 June 2016. [A true and correct copy is

Exhibit M

attached as Exhibit 'H'].

30. The Notice of Recession rescinded the Notice of Default filed on or about 03 March 2015 which also rescinded the California Civil Code § 2923.55 declaration dated 06 January 2015.  This information is obtained though Plaintiff's discovery and is BANA Bates number 002108 and 002112.

31. On or about 11 July 2016, the Defendant BANA filed their Notice of Default. The Orange County recorder's office recording number 2016000302040. This information is obtained though Plaintiff's discovery and is BANA Bates number 002113-002114. [A true and correct copy is attached as Exhibit 'H'].

32. It is the Plaintiff's contention and belief that upon the recession of the NOD on 01 July 2016, based on a violation of California Civil Code § 2923.55, the Defendants are required to filed a *NEW* California Civil Code § 2923.55 Declaration and thus the present Notice of Default, recording number 2016000302040, is void.

33. On 01 November 2016, Plaintiff submitted a full and complete loan modification application after receiving a solicitation to apply for a modification from BANA.  BANA confirmed that the application was received and began reviewing Plaintiff's case.

34. On 02 December 2016, at BANA's request for additional documents, Plaintiff provided BANA with his dissolution judgment.

35. On or about 06 December 2016, BANA was called and the status of the application was requested. The employee stated that the system logs indicated that there was missing documents but the system did not advise the employee what was missing. The BANA employee indicated that they were contact the manager and would call back. The system notes on 07 December 2017 indicate that all documents were in the system and the application was in review. However, the 12 January 2017 trustee foreclosure remained. Bates. 001932.

36. On or about 13 December 2016, while Plaintiff's loan modification application was under active review, BANA reset a Trustee's Sale for the Subject Property scheduled for 03 March 2017.

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

Exhibit M

37. On or about 24 December 2016, BANA mailed the operative denial letter of Plaintiff's loan modification application; which was ultimately received by Plaintiff on 03 January 2017. In the denial, BANA provided a list of programs that Plaintiff's application did not qualify for; indicating that a single NPV calculation input, Plaintiff's gross income, was used in BANA's determination to deny Plaintiff's application. No other factors or information was provided.

38. In waiting eleven (11) days after resetting the Trustee's Sale to issue the denial letter, BANA failed to comply with the minimum requirements of California Civil Code § 2923.6; namely, that issuance of the denial letter and the subsequent denial of the appeal take must place prior to the initiation of a Trustee's Sale.

39. As BANA represents that they utilize the US Treasury NPV [HAMP] calculation in its review of Plaintiff's application, and is obligated under California Civil Code § 2923.6 to provide Plaintiff with both the gross income used and the property value used in the NPV calculation that caused Plaintiff's application to be denied.

40. Further, in its denial letter, BANA neglected to provide a statutorily compliant statement informing the borrower of his right to obtain all of the remaining inputs used in the NPV calculation, not limited to gross income and property value under California Civil Code § 2923.6.

41. Violations of these provisions are not irrelevant, as the only information BANA provided to Plaintiff in its denial letter was the gross income of $24,307.33 per month, which was an incorrect amount. The actual gross income provided by Plaintiff in his application and supplemental documentation was in fact only $16,011.00 per month.

42. The legislature, in its wisdom, enacted a process within California Civil Code § 2923.6 where by the NPV inputs used by a servicer, would be shared with the borrower, to ensure that there were no errors, and if errors were found, the borrower would be able to appeal each incorrect input so as to correct the error(s) and get true results of the review.

43. However, in the denial letter mailed to Plaintiff, BANA neglected to provide the required property value and its provision of the gross income figure revealed that it had in fact erred in its calculation of Plaintiff's eligibility for loan modification.

Exhibit M

44. Thus, Plaintiff is informed, believes, and alleges that BANA's denial dated 24 December 2016 was not compliant with California Civil Code § 2923.6 and as such BANA must now be enjoined from proceeding with the Trustee's Sale and foreclosure on Plaintiff's Property.

45. In furtherance of enjoining the Trustee's Sale and in pursuit of his rights under HBOR to correct the erroneous data used by BANA, Plaintiff retained counsel who began requesting BANA provide the complete data used in the NPV calculation.

46. Having received no data despite multiple attempts on 06 January 2017 and 23 January 2017, Plaintiff filed the initial complaint in this action on 07 March 2017.

47. On or about 24 January 2017, the BANA system notes indicate that the underwriter determined that the file is a death situation and the death/divorce flag to be set. Death has been identified.  The underwriter also resets the loan modification application as incomplete, need additional documents are required. BANA Bates 001936-001937. On this same date, the system log states that "Some or all modification relevant documents have been received. When all documents required are received the account should advance to Verification of Income status (Underwriting)." BANA BATES 001937.

48. However, on 25 January 2017, another department makes a system entry that reflects that the Plaintiff's appeal is valid. BANA BATES 001938.

49. The BANA system log for 25 January 2017, obtained through discovery, acknowledges that the operator received the telephone call regarding the Plaintiff, and the system notes clearly state that NPV results are only to be provided for HAMP loan modification applications which is in direct conflict with California HBOR. BANA Bates 001938.

50. On or about 09 February 2017, BANA system logs acknowledges the Plaintiff's appeal. However, the system BANA does not have any decline code for disputing property value, it is not taken into account. Moreover, the Defendant BANA disallowed expenses from the Plaintiff's profit and loss worksheet, and instead, the debts are taken from the borrower's credit report. Assets were not taken from the RMA application or credit report. BANA Bates 001940.

51. On 08 March 2017, the day after the initial complaint was filed, Plaintiff's counsel's office was sent

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

Exhibit M

by email addressed to the office, a copy of an internal email chain between BANA employees Peter Kim, Araceli Rainone, and Jeremy Kuhle concerning the request by Plaintiff for all of the NPV data inputs used in denying Plaintiff's application for loan modification. Attached to the email was an excel spreadsheet of the NPV test conducted by BANA in raw data.

52. The data provided by BANA revealed inconsistent inputs and values used in BANA's determination to deny Plaintiff's application; specifically, the values for Plaintiff's "GrossMonthlyIncomeAmt" and "TotalMonthlyIncomeAmt" are listed as "0" on page 4, while "AllGrossMonthlyIncomeAmt" is listed as "$24,307.33" on page 9.

53. Neither of these values are correct as Plaintiff's actual gross monthly income and total monthly income were in fact $16,011.00; as reported within Plaintiff's full and complete application for loan modification submitted to BANA in November 2016.

54. Further, in addition to using inconsistent and incorrect income values to calculate the NPV, BANA provided no process by which Plaintiff could appeal the accuracy of the remaining inputs used.

55. Defendants, and each of them, must now be enjoined from proceeding with a Trustee's Sale foreclosure, as the Defendants have refused to comply with California law.

56. Plaintiff will suffer irreparable harm and damage if relief is not granted, in that Plaintiff will suffer the loss of and eviction from his primary residence.

57. Plaintiff has incurred actual damages in the cost of this litigation to assert their rights against Defendants; including but not limited to, the cost of hiring third party professionals, i.e. of attorneys to stop the foreclosure and bring this instant matter, negative credit reporting, and other such economic harms thereby substantiating claims of special damages.

58. Additionally, as a result of the missteps taken by Defendants, Plaintiff requests this Court grant declaratory relief in determining that the assignment to BNY and the subsequent entry of NTS be voidable at the option of the injured party; Plaintiff.

**FIRST CAUSE OF ACTION**
**(STATUTORY VIOLATION OF CALIFORNIA CIVIL CODE SECTION § 2923.6)**
**(As Against All Defendants)**

59. Plaintiff incorporates paragraphs 1 through 49 by reference as though fully set forth herein.

Exhibit M

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

60. The recently-enacted California law called the Homeowners Bill of Rights states: "[i]t is the intent of the Legislature that the mortgage servicer offers the borrower a loan modification or workout plan if such a plan is consistent with its authority." California Civil Code § 2923.6(b).

61. "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Civil Code §2923.6(c).

62. Here, Plaintiff's loan modification application was submitted to BANA on 01 November 2016.

63. Despite BANA employees informing Plaintiff that his application was full and complete, on 02 December 2016, BANA requested Plaintiff provide a copy of his dissolution judgment.

64. Shortly thereafter, on 13 December 2016, despite Plaintiff having submitted a full and complete application for loan modification and provided subsequently requested documentation to BANA, Defendants reset a trustee sale scheduled for 16 March 2016.

65. On 24 December 2016 BANA sends a denial but on 23 January 2017, BANA system notes indicates that they are still reviewing the application, yet the next day, indicate that the application is being appealed. Here, BANA seems to be confused as to what step and or process in the review of the loan modification application.

66. As a result, BANA engaged in dual tracking through the active review of Plaintiff's application for loan modification while simultaneously scheduling a Trustee's Sale.

67. Thusly, as BANA ultimately denied Plaintiff's application and neglected to provide Plaintiff with a written determination of the denial until 24 December 2016, Defendants violated their statutory obligation under California Civil Code § 2923.6 (c).

68. Further, California Civil Code § 2923.6 (f) dictates how a lender must proceed upon issuing a borrower with a denial. "Following the denial of a first lien loan modification application, the

Exhibit M

mortgage servicer shall send a written notice to the borrower identifying the reasons for denial . . ."

69. California Civil Code § 2923.6 (f)(1) states that the written notice must include "[t]he amounts of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification ***and*** instruction regarding how to appeal the denial" (emphasis added).

70. Here and alleged and belief, the Defendant BANA did not have a valid Notice of Default filed. Thus the NOD and the NTS should be rescinded. If BANA decides to pursue foreclosure, then BANA needs to proceed by following the California Foreclosure processes. This cause of action, in conjunction with Plaintiff 's Cause of Action for Declaratory Relief, whereas the Defendants are strangers to the loan, and the actual holder of the note is unknown, thus the Defendants cannot service the loan.

71. Here, despite BANA's inclusion of a 30-day time period in which Plaintiff could appeal his denial, no process by which Plaintiff could initiate the appeal was outlined.  Thus, BANA's letter was deficient and in violation of notice required by California Civil Code § 2923.6 (f)(1).

72. California Civil Code § 2923.6 (f)(3) goes on to state: "[i]f the denial is the result of a net present value calculation, [the written notice shall include] the monthly gross income and property value used to calculation the net present value and a statement that the borrow may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer."

73. Here, while BANA provided Plaintiff with its written notice denying his application for loan modification, the 24 December 2016 letter indicated that Plaintiff's denial under the listed programs was the result of Plaintiff's gross income used in BANA's NPV calculation.

74. Despite BANA's use of the NPV calculation in reaching its determination to deny Plaintiff's application, BANA refused Plaintiff's requests under California Civil Code § 2923.6 (f)(3) on 06 January 2017 and 23 January 2017 for the monthly gross income, property values, and all other inputs used to calculate the NPV.

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

-11-

# Exhibit M

75. Ultimately, on 08 March 2017, the day after Plaintiff filed his complaint in the above-entitled matter, BANA provided Plaintiff's counsel with an internal email chain listing all of the inputs used in calculating the NPV.

76. BANA cannot argue that it did not make a NPV calculation in denying Plaintiff's application as a BANA representative identified as "Liam" admitted in a 06 January 2017 conversation with Plaintiff's counsel that there were more inputs not provided in the denial letter and that the denial was based on BANA's NPV calculation.

77. Further, the internal email chain provided to Plaintiff's counsel by BANA representatives "Peter Kim," "Araceli Rainone," and "Jeremy Kuhle" included a spreadsheet attachment evidencing the NPV calculation and inputs used by BANA in its denial of Plaintiff's application.

78. However, the inputs used by BANA in determining the NPV were incorrect.  Plaintiff's actual monthly income of $16,011.00 was not reflected within the calculation and instead Plaintiff's "AllGrossMonthlyIncomeAmt" was listed as "$24,307.33" and elsewhere Plaintiff's "TotalMonthlyIncomeAmt" and "GrossMonthlyIncomeAmt" were listed as "$0.00."

79. Here, BANA based its denial of Plaintiff's application for loan modification on an NPV calculation and failed to provide Plaintiff with the NPV inputs used upon his written request, therefore in violation of California Civil Code § 2923.6 (f)(3).

80. Despite BANA's provision of the NPV data, the inputs used were incorrect and Plaintiff was not afforded any opportunity nor given any instructions regarding how to appeal and correct the data figures, therefore in violation of California Civil Code § 2923.6 (f)(1).

81. Thusly, Defendants should not be excused from their failure to act in the best interests of all parties and their subsequent violations of HBOR.

///

///

Second Amended Complaint

30-2017-00907172-CU-OR-CJC

Exhibit M

//

### SECOND CAUSE OF ACTION
### NEGLIGENCE
### (As Against All Defendants)

82. Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

83. In the midst of the 2008 housing crisis, Countrywide and its portfolio of billions of dollars in high-risk mortgage debt was purchased by BANA for $2.5 billion as an opportunity for BANA to then become the country's largest servicer of home loans.

84. In knowingly purchasing Countrywide's portfolio, which included Plaintiff's mortgage, BANA assumed a duty to act reasonably in the review of its newly obtained clients' subsequent applications for loan modification.

85. Further, in 2015, when Plaintiff's financial circumstances made him eligible for a modification of his mortgage loan payments, BANA solicited and then agreed to consider Plaintiff for a loan modification.

86. Thus, BANA assumed a duty of care to act reasonably in the review of application for loan modifications owed to all borrowers who applied for mortgages through Countrywide and established its duty of care owed to Plaintiff upon agreeing to consider Plaintiff's application for loan modification. In the present matter, BANA informed the Plaintiff they were in possession of a full and complete loan modification application prior to setting the Trustee sale date.

87. Additionally, regardless of whether BANA assumed a duty, HBOR imposes a statutory duty requiring BANA to act in the best interest of all parties when they agree to review a loan modification application, to implement a loan modification, or s workout plan.

88. Further, the excel file attached to the email sent to Plaintiff's counsel included an "LMA OUTPUT" result. The LMA is a loss mitigation software program. Plaintiff is informed, believes, and here alleges that the BANA staff using the program are not trained to use the program properly and

-13-
Second Amended Complaint

30-2017-00907172-CU-OR-CJC

# Exhibit M

evidences further breaches of BANA's duty owed to borrowers.

89. BANA breached its duty through the missteps taken in the review of Plaintiff's application for loan modification, discuss at length above and throughout this Second Amended Complaint.

90. But for BANA's failure to properly calculate the NPV through the use of accurate data inputs for Plaintiff's gross monthly income and failure to provide Plaintiff to a means to correct the values which lead to the denial of Plaintiff's application, Plaintiff would not have sustained damages through the NOD and NTS of the Subject Property.

91. Additionally, it was reasonably foreseeable that BANA's failure to accurately calculate the NPV, failure to provide Plaintiff with a means to correct the mistaken values, and initiation of NTS of the Subject Property would result in Plaintiff suffering damages.

92. Moreover, BANA's failure to identify Plaintiff's correct gross income, failure to provide a proper denial with all of the NPV inputs, and a process by which to appeal the incorrect NPV data, failure to provide a careful appeal process that would have fixed the income calculation, and failure to provide a careful process to remedy the appeal error caused Plaintiff to incur actual economic harms.

93. Plaintiff has now been damaged in that their application was not processed with care and ultimately was denied based upon BANA's failure to exercise due care resulting in Plaintiff's lost opportunity to have his application reviewed under HBOR.

94. Additionally, Plaintiff has incurred significant costs in advancing this litigation through the payment of attorney's fees and other associated costs to prevent the Trustee's Sale and rectify the error committed by BANA in their NPV calculation.

95. Therefore, Plaintiff is entitled to recovery based upon the damages suffered.

### THIRD CAUSE OF ACTION
**(UNFAIR BUSINESS PRACTICES, B&P CODE §§ 17200 et seq.)**
**(As Against All Defendants)**

96. Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

30-2017-00907172-CU-OR-CJC

# Exhibit M

97. California state courts have repeatedly held that all that is necessary to establish a violation of B&P § 17200 is a showing that the defendant is a business that is engaged in acts or practices that are unlawful, fraudulent, or unfair.

98. Here, the Defendants failed to follow established foreclosure processes when they file a new Notice of Default on or about 01 July 2016 and did not file a new Code Civ. Proc. § 2923.55 Declaration. Rather, BANA used a prior declaration that had rescinded. Here, under current law, each Notice of Default requires a Declaration of Compliance. Since the Defendants did not assess and explore foreclosure alternatives, did not file a new Code Civ. Proc. § 2923.55 declaration, the subsequent NOD and NTS are defective.  These actions are unlawful, unfair and fraudulent, B&P 17200 is directly applicable.

99. Additionally, as discussed above, Plaintiff has standing to bring a cause of action under B&P § 17200 as the result of BANA's failure to calculate its NPV using accurate data inputs for Plaintiff's gross income despite Plaintiff's provision of a full and complete application for loan modification including an accurate gross monthly income value.

100.    Moreover, the failure by BANA to provide the full and complete NPV values upon written demand is a violation of Code Civ. Proc. § 2923.6(f)(3). The BANA system notes are explicit in that they clearly state that NPV results are only available for HAMP denials in a violation of California Civil Code § 2923.6. Additionally, setting a trustee sale date while in active loan modification is a violation of the Dual Tracking provisions of Code Civ. Proc. § 2923.6.

101.    Moreover, in the present matter, BANA's acts in violation of Code Civ. Proc. § 2923.6 are de facto unlawful, and thus B&P § 17200 et seq. has been presumptively violated.

102.    Further, the public is likely to be deceived by BANA's through their practices in soliciting borrowers for loan modification applications and subsequently reviewing the borrowers' application for loan modification with incorrect data inputs and failure to outline the procedure by which a denied

Law Offices of Sanford Parke
1913 E. 17th Street. Suite 212, Santa Ana CA 92705

30-2017-00907172-CU-OR-CJC

Exhibit M

borrower may appeal incorrectly reviewed data while simultaneously scheduling NTS over borrowers' properties.

103.    Thus, BANA's conduct and business practices in the solicitation and review of borrowers' applications for loan modification are considered fraudulent within the meaning of § 17200.

104.    Additionally, BANA's conduct and business practices in the solicitation and review of borrowers' applications for loan modification threatens or otherwise harms competition among lenders because those borrowers whose loans were originally serviced by Countrywide had no choice or decision making ability in the subsequent transfer or assignment of their loan servicer.  Any solicitation received from their current servicer will be regarded as primary to their existing loan obligation and will prevent borrowers from exploring all of their options in seeking loan modification.

105.    Thus, BANA's conduct and business practices are considered unfair within the meaning of § 17200.

106.    Plaintiff seeks injunctive relief enjoining the Defendants from engaging in the unfair business practices described above.  Injunctive relief is proper, as Plaintiff has no adequate remedy at law because monetary damages will not compel the Defendants to cease to engage in the unfair business practices described here.

107.    Therefore, Plaintiff is entitled to preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, employees, representatives, and anyone else acting on their behalf or at their direction from engaging in, committing, permitting, or performing, directly or indirectly, any of the unfair, unlawful, or deceptive business practices described here pursuant to Business & Professions Code § 17200 and such other further relief as the Court may deem just and proper.

///

Exhibit M

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

///

**FOURTH CAUSE OF ACTION**
**(REQUEST FOR DECLARATORY RELIEF)**
**(As Against All Defendants)**

108.    Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

109.    Plaintiff alleges that the Plaintiff's Loan Note is void, and thus unenforceable by any of the Defendants.

110.    Plaintiff alleges there is a broken chain of transfer of the Plaintiff's loan note because the loan note itself was never properly endorsed and delivered to its intended recipients according to the requirements of endorsement and delivery of a negotiable instrument.

111.    Specifically, Plaintiff alleges that after his designated agent conducted an investigation as to the chain of transfer, Plaintiff learned and herein alleges that his loan note was never endorsed by either Countrywide Home Loans, Inc. or BANA, and was never delivered to Defendant BNY.

112.    Thereby rendering BNY without any power to enforce the negotiable instrument. Moreover, the Plaintiff's investigation as to the chain of transfer of the Plaintiff's loan note has revealed other substantial evidence to support the fact that no Defendant can enforce the negotiable instrument loan and that Defendant BNY in actuality does not hold the Plaintiff's loan note.

113.    Here, Plaintiff is informed and believes that Defendant BNY is a stranger to Plaintiff's loan and therefore cannot be a party to that promissory note.

114.    Further, THE TRUST that purports to hold the Plaintiff's loan was required by law, pursuant to 26 CFR § 1.860F-2(a)(2), to list the loan on THE TRUST list of assets.

115.    However, the list of assets filed with the United States Security and Exchange Commission and a review of the public records reveals that Plaintiff's loan was never listed on the schedule of assets that formed the corpus of THE TRUST. Simply stated, the Plaintiff's loan is not in the TRUST and the Defendants do not have any authority to act on behalf of the loan as they are strangers to the loan.

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

Exhibit M

116.    As Defendants have therefore incorrectly based their entire purported authority over the Plaintiff's property solely and exclusively on an assignment of a "deed only," where such an assignment is void.

117.    Further, Defendants base their purported authority over Plaintiff's property solely and exclusively on an assignment from MERS to BNY on 07 June 2010; but this assignment breaks the two (2) year requirement for a tax exempt REMIC trust pursuant to 26 USCS § 860G(a)(4).

118.    Here, Plaintiff alleges that Defendants did not ratify the assignment as a late conveyance into THE TRUST on account of federal income tax consequences.

119.    THE TRUST was bound to comply with 26 USCS § 860G(a)(4) and as a result any conveyance of any loan into THE TRUST was void if it occurred beyond two (2) years of the trust's "Startup Day," 29 April 2005.

120.    Since the Cut-off Date was 01 April 2005, Closing Date was 29 April 2007, and Startup Day was 29 April 2005, Plaintiff alleges that the purported 07 June 2010 conveyance of the Plaintiff's loan to THE TRUST came five years after THE TRUST had closed thereby rendering the conveyance void un-ratified.

121.    Plaintiff further alleges that no Defendant ever ratified the late attempt to convey the loan into THE TRUST as such a ratification would have subjected THE TRUST to "unqualified asset" taxation for the amount of the loan in the entirety, and further would have possibly subjected THE TRUST to a tax liability greater than $2 Billion.

122.    Thusly, Plaintiff seeks declaratory relief, and asks this court to declare the Plaintiff's Loan Note as void on account of (i) the applicable statute of limitations as to the enforceability of a negotiable instrument having passed, and (ii) the purported conveyance of the Plaintiff's loan to the REMIC trust being void as supported by the provisions found in the federal income tax code.

30-2017-00907172-CU-OR-CJC

Exhibit M

## **PRAYER FOR RELIEF**

123.    WHEREFORE, Plaintiff respectfully requests the following relief for each cause of action and prays this Court enter a Judgment against Defendants as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For an equitable accounting of the alleged indebtedness;

4.    For pre-judgment interest as allowed by law;

5.    For attorney's fees;

6.    For costs of suit;

7.    For such other and further relief as the court may deem proper.


02 October 2017                                    /s/Sanford Parke
Date                                    Sanford Parke, Attorney for Plaintiff

Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212, Santa Ana CA 92705

-19-
Second Amended Complaint
30-2017-00907172-CU-OR-CJC

Exhibit M

## VERIFICATION

I, Jeffrey S. Beier, state under penalty of perjury under the state laws of California, that the
foregoing AMENDED COMPLAINT is true and correct.


_10/2/17_
Date

By: _____
Jeffrey S. Beier, Plaintiff

20
20

Exhibit M

*STATE OF CALIFORNIA, COUNTY OF ORANGE*
*Beier v. Bank of America, N.A., Clear Recon Corp., The Bank of New York Mellon, et al.*
*Orange County Superior Court Case Number:* **30-2017-00907172-CU-OR-CJC**

I am employed in the city of Orange in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 1913 E. 17th Street, Suite 212, Santa Ana CA 92705.

**I HEREBY CERTIFY** that 02 October 2017, I served the following document(s) described as:

    1.  Plaintiff's Second Amended Complaint, was mailed, first class postage prepaid, to:

        Dane Taylor, Esq.
        Severson & Werson
        19100 Von Karman Avenue, Suite 700
        Irvine CA 92612
        T: 949.442.7110 / F: 949.442.7118

[ ]  **(BY MAIL, 1013a, 2015.5 C.C.P.)** I deposited such envelope in the mail in Anaheim, CA. The envelope was mailed with postage fully prepaid. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this(these) document(s) will be deposited with the U.S. Postal Service on this date with postage fully prepaid at Orange, CA in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  **(BY FACSIMILE)** the fax machine I used complied with CRC Rule 2.301(3). Pursuant to CRC Rules 2.306, I transmitted the foregoing document(s) by facsimile to the party(ies) identified on the attached service list by using the fax number(s) indicated. Said transmission(s) was(were) verified as complete and without error. I printed a copy of the transmission report that was properly issued by the sending fax machine and attached it to the proof of service.

[ ]  **(BY OVERNIGHT DELIVER/COURIER)** I delivered an envelope or package to a courier or driver authorized by the express service carrier; or deposited such envelope or package to a regularly maintained drop box or facility to receive documents by the express service carrier with delivery fees provided for.

[ ]  **(BY NOTICE OF ELECTRONIC FILING)** Counsel who have consented to electronic service have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document(s) was (were) filed, and which constitutes service pursuant to FRCP 5(b)(2)(D).

[ ]  **(BY MESSENGER)** I served the document(s) to the person(s) at the address(es) listed below by providing the document(s) to a messenger for personal service. (A proof of service executed by the messenger will be filed in compliance with the *Code of Civil Procedure*).

[ ]  **(BY PERSONAL SERVICE)** I delivered the foregoing document(s) by hand to the office(s) of the addressee(s).

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 02 October 2017          By:            /s/ Sanford Parke
                                          Sanford Parke, Counsel for Plaintiff

*Law Offices of Sanford Parke*
*1913 E. 17th Street, Suite 212, Santa Ana CA 92705*

Proof of Service



Exhibit M