Electronically Filed by Superior Court of California, County of Orange, 03/08/2023 02:39:51 PM.
30-2023-01312331-CU-OR-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By K. Ulmer, Deputy Clerk.
Case 8:23-bk-10898-TA    Doc 127    Filed 12/26/23    Entered 12/26/23 15:11:38
Desc Exhibit R - Complaint 30-2023-01312331-CU-OR-CJC    Page 1 of 139

Sanford Parke, Esq. SBN 214834
Law Offices of Sanford Parke
1913 E. 17th Street, Suite 212
Santa Ana, CA 92705
Phone: (714) 750-5900
Facsimile: (714)948-4468

Attorney for Plaintiff,
Jeffrey S, Beier

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE
### CENTRAL JUSTICE CENTER

| Jeffrey S, Beier, | Case No.: 30-2023-01312331-CU-OR-CJC |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1. **VIOLATION OF 15 USC §1641(f)(2);** |
| Bank of America, N.A.; Mortgage Electronic Registration Systems, Inc.; Wells Fargo Bank, N.A.,; The Bank of New York Mellon FKA The Bank of New York Successor in Interest to JPMorgan Chase Bank, N.A. as Trustee, BSALTA Trust, 2005-04; The Bank of New York Mellon FKA The Bank of New York Successor Trustee to JPMorgan Chase Bank, N.A. as Trustee for the Bear Sterns ALT-A Trust, Mortgage Pass-Through Certificates Series 2005-4; The Bank of New York Mellon as Trustee on behalf of Bear Stearns ALT-A Trust 2005-4; Wells Fargo Bank, N.A. as Trustee on Behalf of BSALTA 2005-04; JP Morgan Chase Bank, N.A.; Clear Recon Corp. and DOES 1 through 50. | 2. **VIOLATION OF 15 USC §1641(g);** 3. **VIOLATION OF §2924(a)(6);** 4. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;** 5. **UNFAIR BUSINESS PRACTICES, B&P CODE §§ 17200 ET SEQ;** 6. **DECLARATORY RELIEF** |
| | **Assigned for All Purposes** |
| | **Judge:** Judge Melissa R. McCormick |
| | **Dept:** |
| Defendants | |

Jeffrey S, Beier, Plaintiff, is and at all relevant times herein an individual who at relevant times resided in the County of Orange and State of California, and asserts the following:

Exhibit R

## THE DEFENDANT PARTIES

1. **Bank of America, N.A.** (hereafter "**BANA**") is a corporation existing and operating pursuant to California law, doing business in Orange County, California, and alleges it is the mortgage servicer of Plaintiff's 2005 Mortgage.

2. **Mortgage Electronic Registration Systems, Inc.** (hereafter "**MERS**") is a corporation existing and operating pursuant to California law, doing business in Orange County, California, and at times has alleged to be the nominee and beneficiary of Plaintiff's 2005 Mortgage.

3. **Wells Fargo Bank, N.A.,** (hereafter "**OWNER 1**") is a corporation existing and operating pursuant to California law, doing business in Orange County, California, and at times has alleged to be the holder of Plaintiff's 2005 Mortgage.

4. **The Bank of New York Mellon FKA The Bank of New York Successor in Interest to JPMorgan Chase Bank, N.A. as Trustee, BSALTA Trust, 2005-04** (hereafter "**OWNER 2**"), is a corporation existing and operating pursuant to California law, doing business in Orange County, California, and at times has alleged to be the holder of Plaintiff's 2005 Mortgage.

5. **The Bank of New York Mellon FKA The Bank of New York Successor Trustee to JPMorgan Chase Bank, N.A. as Trustee for the Bear Sterns ALT-A Trust, Mortgage Pass-Through Certificates Series 2005-4** (hereafter "**OWNER 3**"), is a Corporation existing and operating pursuant to California law, doing business in Orange County, California, and at times has alleged to be the holder of Plaintiff's 2005 Mortgage.

6. **The Bank of New York Mellon as Trustee on behalf of Bear Stearns ALT-A Trust 2005-4** (hereafter "**OWNER 4**"), is a corporation existing and operating pursuant to California law, doing business in Orange County, California, and at times has alleged to be the holder of Plaintiff's 2005 Mortgage.

7. **Wells Fargo Bank, N.A. as Trustee on Behalf of BSALTA 2005-04** (hereafter "**OWNER 5**") is a corporation existing and operating pursuant to California law, doing business in Orange County, California, and at times has alleged to be the trustee of Plaintiff's 2005 Mortgage.

8. **JP Morgan Chase Bank, N.A.** (hereafter "**OWNER 6**"), is a corporation existing and operating pursuant to California law, doing business in Orange County, California, and at times has alleged to be the holder of Plaintiff's 2005 Mortgage.

9. **Clear Recon Corp.** (hereafter "**CRC**") is a corporation existing and operating pursuant to California law, doing business in Orange County, California, and at times has alleged to be the substituted trustee of Plaintiff's 2005 Mortgage.

2

Exhibit R

10. At all times relevant, each DOE Defendant 1-50 was an agent, servant, employee, or acted under, in concert with, or for the named Defendants in the scope of such agency and/or employment, or was in some way the cause of the Plaintiff's damage.

## **FACTUAL ALLEGATIONS**

11. Plaintiff brings this complaint for violations of both state and federal law relating to a 2005 mortgage on his home.

12. Plaintiff has simply sought to identify the holder of his 2005 mortgage for over fourteen years (14).

13. MERS as the nominee of the 2005 mortgage Deed of Trust (DOT), or BANA, as the self-identified servicer of the 2005 mortgage, and their agents of the holder of the 2005 mortgage have at various times identified the holder/beneficiary of the 2005 mortgage loan to be as at least Six (6) different entities.

14. If Plaintiff is to believe who BANA, MERS or their agents have identified as the beneficiary/owner of the 2005 mortgage loan, it would be impossible for Plaintiff to actually know who the beneficiary/owner of the 2005 mortgage loan is, because each has claimed so many different holders.

15. Both California and federal law have requirements dating back to the Great Depression that require holders of loans on title of real property to disclose themselves directly, or by their agents to the borrower-land owner. Due to the Great Recession of 2008, new requirements were created to give further rights to borrowers to know the identity of the holder of their loans. Whether it be a simple disclosure or the authority to foreclose, the purpose of these requirements was to enable a borrower the ability to communicate with the beneficiary, and make arrangements to save a property from foreclosure.

16. Mortgage servicers such as BANA are required under the Truth in Lending Act (TILA) to disclose, upon request by the borrower, the identity, address, and other relevant contact information about the owner or assignee of a loan. Here, Plaintiff has requested such information and has been given incorrect and conflicting information and various identities of the owner or assignee of the 2005 mortgage loan. This rises to a **VIOLATION OF 15 USC §1641(f)(2).**

17. Further, under the Helping Families Save Their Homes Act, an amendment to TILA , 15 USC §1641(g), a new owner or assignee, no later than thirty (30) days after the date on which

3

Exhibit R

the mortgage loan is sold, transferred, or assigned, must notify the borrower in writing of the transfer of ownership of the loan and mortgage. Plaintiff never received any notice of any change to the ownership of his mortgage, either from a new owner or new assignee of the loan(as is required) if there is ever a change. This is a **VIOLATION OF 15 USC §1641(g).**

18. CC §2924(a)(6) forbids an entity from initiating a trustee sale unless it is the holder of the beneficial interest under the deed of trust, the original or substituted trustee under the deed of trust, or the designated agent of the holder. Here, CRC recently recorded a Notice of Default on Plaintiff's property as the alleged trustee or an agent of beneficiary and asserts that "**OWNER 3**" is the "present beneficiary". However, BANA as recently as 09 December 2022 stated in its disclosure under TILA to Plaintiff, that the "owner" of Plaintiff's 2005 loan was "**OWNER 5**". In fact, the only assignment of the 2005 DOT recorded on the property was recorded on 09 June 2010 and it states the beneficiary Mortgage Electronic Recording Systems (MERS) transferred its interest to "**OWNER 2**", but here CRC asserts in its Notice of Default that it is foreclosing on behalf "**OWNER 3**". Only the holder can commence and effectuate a non-judicial foreclosure in California, thus CRC is moving forward without the holder and this is a **VIOLATION OF CIVIL CODE §2924(A)(6).**

19. The 2005 mortgage loan was a contract between Plaintiff as borrower and Countrywide Home Loans, Inc. as lender (hereinafter "COUNTRYWIDE"). The terms are laid out in the Note and DOT. In general, over time, ownership and servicing of a mortgage loan can change, but various laws governing title and disclosure require an assignee, mortgage servicer, nominee, foreclosure trustee to know who the actual owner/beneficiary/holders are, and to communicate this important information correctly to the borrower. Here, BANA and WELLS have Breached The Covenant Of Good Faith And Fair Dealing by wrongly identifying the owner/beneficiary of the 2005 mortgage loan to Plaintiff. It is impossible for Six (6) or more entities to be the owner/beneficiary, and if it was true they would need to identify themselves as such. This breach has harmed Plaintiff, as he has not been afforded the ability to contact the owner/beneficiary as discussed *supra*, and is facing foreclosure. This is a **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.**

20. Defendants' violations of CIVIL CODE §2924(a)(6), 15 USC §1641(g) and 15 USC §1641(f)(2) are prima facie violation of **UNFAIR BUSINESS PRACTICES, B&P CODE §§ 17200 et. seq.** which allows for injunctive relief for such violations.

21. Defendants' have shown they are unwilling or unable to accurately identify the owner/beneficiary of the 2005 mortgage loan for over fourteen (14) years. Plaintiff seeks

4

Exhibit R

**DECLARATORY RELIEF** for a Declaratory Judgement that identifies each party, defines and outlines the rights and obligations of each party to the 2005 Mortgage, and/or a determination that none of the Defendants alleged in this action are the actual holder of the 2005 mortgage.

## AGENCY ALLEGATIONS

22. Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of each Defendant, and each Defendant was acting in concert with each Defendant in all matters alleged, and at all times was acting within the course and scope of its agency, employment, partnership, and/or concert of action. Plaintiff's injuries are the direct result of the conduct of multiple employees and show a calculated plan to injure Plaintiff, which could not have happened absent advance knowledge, authorization, or ratification by an officer, director, or managing agent of the Defendant corporations.

23. Plaintiff is informed and believes, and based thereon, alleges that at all times mentioned in this complaint Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and by engaging in the actions mentioned below, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of Co-Defendants.

24. When referring to any allegations of any acts of any corporation or any other business, the Plaintiff means the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or ostensible scope of their authority.

25. Plaintiff is informed, believes, and based thereon, alleges that each of said Defendants is, in some manner, legally responsible for the unlawful actions, unlawful policies, and unlawful practices hereinafter alleged, and that Plaintiff 's damages were proximately caused by Defendants.

26. This reckless wrongdoing has caused great harm to Plaintiff including, but not limited to fear of the loss of his home to foreclosure, loss of business, loss of savings, actual damage to his credit rating, legal fees, costs, emotional distress, humiliation and ridicule.

///

///

///

Complaint

Exhibit R

## JURISDICTION AND VENUE

27.    Pursuant to Code of Civil Procedure § 410.10, this Court has jurisdiction over Defendants, because each Defendant is a natural person or business entity that is a resident and/or business entity established with sufficient minimum contacts with the State of California so far as to render the exercise of jurisdiction over Defendants by California courts consistent with traditional notations of fair play and substantial justice.

28.    Venue is proper in this Court, pursuant to Code of Civil Procedure § 392 because the acts or omissions that are the subject of this complaint occurred in the County of Orange, California and the Defendants reside in the County of Orange, California.

## STATEMENT OF FACTS

29.    On or about 23 April of 2003, Plaintiff and his wife Toni R. Beier purchased real property located at 10 Tucson, Coto De Caza, CA 92679, Assessor's Parcel Number: 755-241-13. The legal description is included in EXHIBIT A of this complaint (hereinafter referred to as "Home", "Property" or "Subject Property") for $1,470,000.00.

30.    The purchase included a down payment of $350,000.00 made by Plaintiff.

31.    The Property was purchased as Plaintiff's primary residence.

32.    On 02 March 2005, Plaintiff refinanced the Property and signed a Note (EXHIBIT A) and a Deed of Trust ("DOT") (EXHIBIT B), in the amount of $1,470,000.00 that was recorded on 08 March 2005, attached hereto as EXHIBIT A and B respectively, and hereafter collectively referred to as the "2005 MORTGAGE LOAN".

33.    The DOT was recorded by COUNTRYWIDE at the Orange County Clerk-Recorder's office on 08 March 2005 under Document Number 200500017050527.

34.    The DOT identifies COUNTRYWIDE as the lender and RECONTRUST COMPANY N.A. (hereinafter "RECONTRUST")as the trustee.

35.    The DOT identifies MERS as the nominee and beneficiary for the lender and the lender's successors and assignees.

36.    The DOT identifies COUNTRYWIDE as the lender and RECONTRUST as the trustee.

37.    COUNTRYWIDE initially accepted payments from Plaintiff on the loan as the loan's mortgage servicer.

38.    In the time between the purchase of the Home in 2003 through 2006, Plaintiff made over $1.1 million dollars in improvements to the Property, including but not limited to:

6

Exhibit R

1) Expanded retaining walls;

2) Swimming pool;

3) Two spas;

4) Fountains on the Property;

5) Hardscaping of front, back and side yards;

6) Softscaping of the whole Property:

7) Outdoor kitchen;

8) Custom travertine;

9) Custom closets; and

10) Custom cabinets.

39. In 2007, Plaintiff began having financial problems due to the Great Recession, but managed to maintain his payments for most of the year.

40. Plaintiff later called COUNTRYWIDE to inquire as to what programs it had for struggling homeowners. It was Plaintiff's understanding was that COUNTRYWIDE, his lender as indicated by his 2005 DOT page 1, was still his lender. During his conversation with COUNTRYWIDE's representative, Plaintiff was informed they did not know who the holder of the note was at that time, and that COUNTRYWIDE was simply contracted to service the loan. Plaintiff reminded the COUNTRYWIDE representative that he took out the loan from directly from COUNTRYWIDE. The representative further stated to Plaintiff that COUNTRYWIDE had the right to assign the loan to any bank it choose to by virtue of the agreement between COUNTRYWIDE and Plaintiff. Plaintiff then asked who COUNTRYWIDE assigned the loan to, and the COUNTRYWIDE representative stated they would have to call Plaintiff back. COUNTRYWIDE eventually informed Plaintiff the loan was assigned to MERS. Plaintiff then asked for contact information for MERS to discuss working out a solution for his mortgage problems. The COUNTRYWIDE representative told Plaintiff there was no person at MERS who he could speak to, and that COUNTRYWIDE was the only entity Plaintiff could speak to. The Representative further stated COUNTRYWIDE had full authority from MERS to do what was necessary with the loan. From this point Plaintiff began trying to identify and contact the owner of his 2005 mortgage loan.

41. On 13 February 2008, RECONTRUST recorded a Notice of Default and Election to Sell Under Deed of Trust (NOD) with the Orange County Clerk-Recorder under Document Number 2008000064083. The NOD stated that RECONTRUST was the "agent for the Beneficiary" [a true and correct copy of the NOD is attached as EXHIBIT C].

42. In 2008, Plaintiff and his now former spouse Toni R. Baier filed Chapter 7 bankruptcy to protect

Complaint

Exhibit R

their interest in their real and personal property under Bankruptcy Number is 8:08 – BK – 12163 – RK.

43. Since the filing of Plaintiff's the 2008 Bankruptcy, MERS as nominee of the 2005 mortgage or BANA, as self-identified servicer of the 2005 mortgage, or agents for the named holder, have at various times identified the true holder/beneficiary of the 2005 mortgage loan as each of the following entities:

   1) Wells Fargo Bank, N.A. (hereafter **OWNER 1**), identified by MERS in June 2008 in a Bankruptcy proceeding filing (EXHIBIT D);

   2) The Bank of New York Mellon FKA The Bank of New York Successor in Interest to JPMorgan Chase Bank, N.A. as Trustee, BSALTA Trust, 2005-04 (**OWNER 2**), identified by MERS on 06 October 2010, in a recorded "Substitution of Trustee and Assignment of Deed of Trust" (EXHIBIT E);

   3) The Bank of New York Mellon FKA The Bank of New York Successor Trustee to JPMorgan Chase Bank, N.A. as Trustee for the Bear Sterns ALT-A Trust, Mortgage Pass-Through Certificates Series 2005-4 (**OWNER 3**), identified by BANA as Attorney in Fact for the above entity on 03 March 2015, in a recorded "Substitution of Trustee" (EXHIBIT F);

   4) The Bank of New York Mellon as Trustee on behalf of Bear Stearns ALT-A Trust 2005-4 (**OWNER 4**), identified by BANA on 13 September 2019, under Plaintiff's 2019 Truth in Lending Act (TILA) disclosure request (EXHIBIT G);

   5) Wells Fargo Bank, N.A. as Trustee on Behalf of BSALTA 2005-04; (hereafter **OWNER 5**), identified by BANA on 22 December 2022, under Plaintiff's 2022 Truth in Lending Act (TILA) disclosure request (EXHIBIT H);

   6) JPMorgan Chase Bank (hereafter **OWNER 6**), The endorsee of the 2005 Note (EXHIBIT A at page 4);

Exhibit R

44.    All told, when including both of the Countrywide entities who claimed to hold the loan before the 2008 bankruptcy, COUNRTYWIDE and "Countrywide Home Loans Servicing L.P.", to the six above, there are at least eight (8) professed holders of the 2005 Mortgage.

45.    On 12 May 2008, MERS filed a motion for relief from the automatic stay. This motion is Document 10 of the bankruptcy docket. [a true and correct copy of the creditor's motion is attached as EXHIBIT I].

46.    Plaintiff as debtor, opposed the MERS motion for relief from the automatic stay in part on the grounds that MERS was not the holder of the mortgage, nor did MERS know who the holder of the 2005 mortgage was.

47.    On 23 June 2008, MERS filed a supplemental memorandum in support of its motion for relief from the automatic stay and MERS unequivocally stated that WELLS FARGO was the holder of the note (on page 4 lines 10 through page 5 line 5) and that COUNTRYWIDE assigned its note to WELLS FARGO (page 3, section B at line 6).  It is worth noting  the identification of WELLS FARGO as the note holder is absent any trustee,  trust name, or some other investor or owner [ a true and correct copy of the MERS supplement to its motion is attached as EXHIBIT D].

48.    On or about July 2008, BANA purchased COUNTRYWIDE and identified itself to Plaintiff as the servicer of the 2005 mortgage loan.

49.    On 17 November 2008 an order granting MERS' motion for relief from the automatic stay was filed and entered.  Although the order granted MERS' motion, the Bankruptcy Court based the order on the grounds that MERS was ordered to "…allow Debtor to attempt to negotiate a workout or sale…" with MERS and was conditioned that MERS "…disclose the identity of the note holder…" to Plaintiff "…and provide documentation that it holds the note within thirty days of the entry of the Order." [A true and correct copy of the Order on the MERS motion is attached as EXHIBIT J].

50.    The Bankruptcy Court repeated itself in its 3rd paragraph of the order, making clear to MERS that in order to foreclose on Plaintiff's home, movant MERS was ordered:

> "…Movant may proceed with a foreclosure of and hold a Trustee's Sale on the pursuant to applicable state law, provided it has disclosed the identity of the note holder within thirty days of entry of this order as provided in the preceding paragraph; and commence any action necessary to obtain complete possession of the subject Property generally described at 10 Tucson, Coto De Caza Area, CA 92679 ("Property" herein) and legally described as:
>
> DEED OF TRUST/MORTGAGE INSTRUMENT NO. 2005000170527, RECORDED AT ORANGE COUNTY, CALIFORNIA."

9

Exhibit R

51. MERS did not provide Plaintiff with the name of the note holder of the 2005 Mortgage, nor did it share any documentation showing MERS held the note for the 2005 mortgage within thirty (30) days of entry of the order, nor has it ever provided this vital information to Plaintiff after the Bankruptcy court made its order.

52. On 27 January 2009, RECONTRUST recorded a Notice of Trustee's Sale (NTS) with the Orange County Clerk-Recorder under Document Number 2009000034169 [a true and correct copy of the NTS is attached as EXHIBIT K].

53. On 27 January 2009, RECONTRUST recorded a Substitution of Trustee (SOT) with the Orange County Clerk-Recorder under Document Number 2009000034170. The SOT [ a true and correct copy of the SOT is attached as EXHIBIT L].

54. On 09 June 2010, RECONTRUST Company recorded a Substitution of Trustee and Assignment of Deed of Trust (Assignment of DOT) with the Orange County Clerk-Recorder under Document Number 2010000269465. The Assignment of DOT states that MERS "hereby grants, assigns, conveys and transfers to **"OWNER 2"** all beneficial interest in the 2005 DOT [ a true and correct copy of the  Assignment of DOT)  is attached as EXHIBIT E].

55. On 09 June 2010, RECONTRUST Company recorded a new NTS with the Orange County Clerk-Recorder under Document Number 2010000269466 [ a true and correct copy of the NTS is attached as EXHIBIT M].

56. Plaintiff eventually flew to New York to visit OWNER 2 (The Bank of New York Mellon corporate offices). Plaintiff went to the address provided by BANA and found out that there was no office at the address and suite claimed as the Bank of New York Mellon by BANA. The security for the building said that the address was instead leased by JP Morgan Chase and that the office in question had been vacant for a long period of time.

57. On 03 March 2015, The Wolf Firm recorded a "Substitution of Trustee" with the Orange County Clerk-Recorder under Document Number 2015000109059, where **"OWNER 3"**'s Attorney in Fact, BANA, substitutes The Wolf Firm as Trustee of the 2005 Mortgage [ a true and correct copy of the "Substitution of Trustee"  is attached as EXHIBIT F].

58. On 03 March 2015, The Wolf Firm records an NOD with the Orange County Clerk-Recorder under Document Number 2015000109060, and the NOD identifies **"OWNER 3"** as the holder of the 2005 mortgage [ a true and correct copy of the NOD is attached as EXHIBIT N].

59. On 10 June 2015, The Wolf Firm records an NTS with the Orange County Clerk-Recorder under Document Number 2015000300344 [ a true and correct copy of the NTS is attached as EXHIBIT O].

Exhibit R

60. On 22 June 2016, CRC records a "Substitution of Trustee" with the Orange County Clerk-Recorder under Document Number 2016000284209, where "**OWNER 3**"'s Attorney in Fact, BANA substitutes CRC as Trustee of the 2005 Mortgage [a true and correct copy of the "Substitution of Trustee" is attached as EXHIBIT P].

61. On 01 July 2016, CRC records a "Rescission of Notice of Default" with the Orange County Clerk-Recorder under Document Number 2016000302039, where the CRC rescinded the NOD (EXHIBIT N) recorded on 03 March 2005 [a true and correct copy of the "Rescission of Notice of Default" is attached as EXHIBIT Q].

62. On 01 July 2016, CRC records an NOD with the Orange County Clerk-Recorder under Document Number 2016000302040. The NOD identifies **"OWNER 3"** as the holder of the 2005 mortgage [ a true and correct copy of the NOD is attached as EXHIBIT R].

63. On 16 October 2016, CRC records an NTS with the Orange County Clerk-Recorder under Document Number 2016000510391 [a  true and correct copy of the NTS is attached as EXHIBIT S].

64. On 13 September 2019, BANA sends a response to Plaintiff's written request for the identity of the holder of the 2005 Mortgage under TILA.  Contained in its response is the name of **"OWNER 4"** identified by BANA as the owner [a true and correct copy of the BANA response is attached as EXHIBIT G].

65. On 14 October 2022, CRC records an NOD with the Orange County Clerk-Recorder under Document Number 2022000335105. The NOD identifies **"OWNER 3"** as the holder of the 2005 mortgage [a    true    and    correct    copy    of    the    NOD    is    attached    as    EXHIBIT T].

66. On 20 October 2022, CRC records a "Rescission of Notice of Default" with the Orange County Clerk-Recorder under Document Number 2022000340091, where CRC rescinded the NOD (EXHIBIT R) recorded on 01 July 2016 [a true and correct copy of the "Rescission of Notice of Default" is attached as EXHIBIT U].

67. On 09 December 2022, BANA sends a response to Plaintiff's written request for the identity of the holder of the 2005 Mortgage under TILA.  Contained in the response is the name of **"OWNER 5"** identified by BANA as the owner [a true and correct copy of the BANA response is attached as EXHIBIT H].

68. On 23 January 2023, CRC records an NTS with the Orange County Clerk-Recorder under Document Number 2023000016963[a true and correct copy of the NTS is attached as EXHIBIT V].

Complaint

Exhibit R

**FIRST CAUSE OF ACTION**

Violation of 15 USC §1641(f)(2)

(By PLAINTIFF against Defendants)

69. Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

70. BANA claims to Plaintiff it is the servicer for the holder of Plaintiffs 2005 Mortgage.  As such, BANA would have actual knowledge of who the holder of the 2005 Mortgage is at anytime while it is the servicer.

71. Plaintiff had the right under TILA to request from his mortgage servicer, BANA, the identity of the owner of his 2005 mortgage loan.

72. Plaintiff made a request on 16 November 2022.

73. Plaintiff alleges BANA did not respond with the accurate owner of Plaintiff's 2005 mortgage loan.

74. Plaintiff brings this complaint seeking an order of the court that BANA comply with TILA and identify the true owner of his 2005 mortgage.

75. Under TILA, Plaintiff is entitled to a private remedy for BANA's failure to give the required response under 15 USC §1641(f)(2) which is actionable under 15 USC §1640, and Plaintiff seeks to obtain actual and statutory damages, costs, and attorney fees.

**SECOND CAUSE OF ACTION**

Violation of 15 USC §1641(g)

(By PLAINTIFF against Defendants)

76. Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

77. Under Helping Families Save Their Homes Act of 2009, an amendment to TILA, 15 USC §1641(g) requires the new owner or assignee of a mortgage, to no later than thirty (30) days after the date on which the mortgage loan is sold, transferred, or assigned,  to notify the borrower in writing of the transfer of ownership of the loan and mortgage.

78. Plaintiff  alleges the 2005 Mortgage has been assigned between numerous and various entities from 2009 through present.

79. BANA as Plaintiff's mortgage servicer for the 2005 mortgage loan, and MERS as the nominee under the 2005 DOT, have identified more than six (6) different owners of the 2005 mortgage

12

Exhibit R

loan and none of six (6) identified owners have sent Plaintiff the required notice that the loan was sold, transferred, or assigned as required under the code.

80. Plaintiff brings this complaint seeking an order of the court for the holder and it's agents of the 2005 mortgage to comply with TILA and notify the borrower in writing of each sale, transfer, or assignment of the ownership of the 2005 loan and mortgage.

81. Under TILA, Plaintiff is entitled to a private remedy for BANA's failure to give the required response under 15 USC §1641(f)(2) which is actionable under 15 USC §1640, and Plaintiff can obtain actual and statutory damages, costs, and attorney fees.

### THIRD CAUSE OF ACTION

Violation of 2924(a)6

(By PLAINTIFF against Defendants)

82. Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

83. CC §2924(a)(6) forbids an entity from recording or causing an NOD to be recorded unless it is the "holder of the beneficial interest" under the deed of trust, the original or substituted trustee under the deed of trust, or "the designated agent of the holder of the beneficial interest." A trustee identified above should not be confused with a foreclosure trustee such as Defendant CRC.

84. In the present matter, an assignment of Plaintiff's 2005 DOT was recorded in 2010, assigning the beneficial interest in the DOT from MERS to "**OWNER 2**", but the 2022 NOD states that "**OWNER 3**" is the beneficiary of Plaintiff's 2005 DOT, and as such, "**OWNER 2**" does not have the authority to foreclose.  Still yet, under two TILA requests,  BANA has identified both **OWNER 4 and OWNER 5** as the owner of the 2005 mortgage loan, not "**OWNER 1", "OWNER 2",** or **"OWNER 3".**

85. Finally, CRC claims to be the present foreclosure trustee by way of a "Substitution of Trustee" recorded on 03 March 2015 and signed by BANA as the attorney-in-fact for "**OWNER 3**", who was never assigned the 2005 DOT (according to title).  As such, CRC is not authorized to issue anything on behalf of "**OWNER 2**".

86. Violation of 2924(a)6 constitutes a violation of Bus & P C §17200, which allows Plaintiff  to seek injunctive relief and restitution for each violation of a underlying statute.

///
///
///

13

Exhibit R

**FOURTH CAUSE OF ACTION**

Breach of the Covenant of Good Faith and Fair Dealing

(By PLAINTIFF against Defendants)

87. Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

88. In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

89. Plaintiff entered into a contract with COUNTRYWIDE in 2005 and signed a note and deed of trust as security on the 2005 mortgage loan.

90. Plaintiff claims each Defendant has violated its duty to act fairly and in good faith.

91. BANA claims it is the servicer of Plaintiff's 2005 Mortgage and acts on behalf of the beneficiary.

92. MERS is the nominee of Plaintiff's 2005 mortgage loan for the lender and lender's successors and assignees.

93. CRC claims to be the "substituted trustee" for the holder of the 2005 mortgage.

94. Plaintiff made requests of BANA to identify the holder of his 2005 Mortgage and BANA has failed to provide any accurate response.

95. MERS identified **OWNER 1** as the holder of the 2005 Mortgage, but Plaintiff alleges **OWNER 1** is not the holder of the loan.

96. CRC commenced a non-judicial foreclosure on Plaintiff's Property under the authority of **OWNER 3**, but Plaintiff alleges **OWNER 3** is not the holder of the 2005 mortgage, and BANA as recently as December 2022 claims **OWNER 5** is the present holder of the 2005 Mortgage.

97. Each Defendant at times has identified one or more of the following as the holder of the 2005 Mortgage: "**OWNER 1**", "**OWNER 2**", "**OWNER 3**", "**OWNER 4**", and "**OWNER 5**". Plaintiff alleges none of the preceding entities are the actual holder of the 2005 Mortgage.

98. Plaintiff performed all, or substantially all of the significant things the contract required him to do, or that he was excused from doing;

99. All conditions required for BANA and MERS' performance had occurred or were excused;

Exhibit R

100. Defendants each have failed to identify the holder of the 2005 Mortgage, thus harming Plaintiff including, but not limited to, the current non-judicial foreclosure proceedings seeking a sale of Plaintiff's home in March of 2023.

101. Defendants each have unfairly interfered with Plaintiff's right to receive the benefits of the contract; and Plaintiff was harmed by each Defendant's conduct.

### FIFTH CAUSE OF ACTION

Violation of Business and Professions Code §§ 17200 et seq

(By PLAINTIFF against Defendants)

102. Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

103. The Business and Professions Code Section 17200 et. seq. prohibits any unlawful, unfair or fraudulent business act or practice, deceptive, untrue or misleading advertising and any violation of Business and Professions Code section 17500 et seq.

104. The California Supreme Court has explained that "[a] business practice is unlawful 'if it is forbidden by any law.'" *Olszewski v Scripps Health* (2003) 30 C4th 798, 827, 135 CR 2d 1. California case law has interpreted the "unlawful" prong of 17200 et. seq. to mean holding an illegal business practice that violates any other law, to be treated as "unlawful", making it independently actionable under 17200 et. seq. *Cel-Tech Communications, Inc. v Los Angeles Cellular Tel. Co*. (1999) 20 C4th 163, 180, 83 CR2d 548.

105. Here Defendants have violated the law as pled in each of the respective causes of action for VIOLATION OF 15 USC §1641(f)(2), VIOLATION OF 15 USC §1641(g) and VIOLATION OF §2924(a)(6).

106. The private civil remedy provision applicable to 17200 et. seq. is found at Bus & P C §17203, which authorizes courts to award injunctive relief or restitution by issuing:

> [S]uch orders or judgments … as may be necessary … to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person … any money or property … which may have been acquired by means of such unfair competition.

107. As such, Plaintiff seeks injunctive relief and restitution as remedies for violations stated above.

///

///

///

Exhibit R

**SIXTH CAUSE OF ACTION**

Declaratory Relief

(By PLAINTIFF against Defendants)

108.  Plaintiff incorporates all of the foregoing paragraphs by reference as though fully set forth herein.

109.  There is a contract between the holder of the 2005 mortgage (EXHIBIT A and B) and Plaintiff.

110.  Upon request under TILA , BANA (who claims to be servicer of the 2005 Mortgage), is required to identify to Plaintiff who the holder of the 2005 Mortgage is, but has failed to do so.

111.  Plaintiff alleges that COUNTRYWIDE endorsed Plaintiff's 2005 Note, and his 2005 mortgage to "JPMorgan Chase Bank as Trustee" in March of 2005. This is based on a copy of the note provided to Plaintiff by BANA [EXHIBIT A at page 4].

112.  Plaintiff alleges there has been one note holder since the COUNTRYWIDE endorsement in 2005 to the present.

113.  After the COUNTRYWIDE 2005 endorsement, Plaintiff asserts based on the myriad of holders provided to Plaintiff by MERS, BANA and agents for this unknown holder, that none of the Defendants know, want, or can disclose to Plaintiff accurately, who the holder is now. These Defendants have claimed through declarations, court actions, TILA responses and public title recordation that the holder is "**OWNER 1**", "**OWNER 2**", "**OWNER 3**", "**OWNER 4**", and "**OWNER 5**". This is impossible.

114.  Even if Defendants' were to claim typos, accidental oversight, or errors as the source of this confusion, it does not vitiate Defendants' duty, and Plaintiff's right to know who holds his 2005 Mortgage. In general, and in light of these entities trying to non-judicially foreclose on the Property at this time it is clear, Defendant's actions are immediately prejudicial to Plaintiff's quiet enjoyment of his unique real Property.

115.  There is a need for a declaratory relief, for there is no other remedy but to seek a determination by the court.

116.  A controversy now exists between Plaintiff and Defendants, in that Plaintiff contends that Defendants do not know who is the actual holder of the 2005 Mortgage.

117.  A judicial declaration identifying the holder is necessary and appropriate at this time under these circumstances so that Plaintiff may assert his rights under the 2005 Mortgage and under state and federal law.

Complaint

Exhibit R

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS respectfully request the following relief for each cause of action:

Enter a Judgment against Defendants on each of Plaintiffs' causes of action herein;

1. For an order of restitution and disgorgement of profits of the ill-gotten gains derived from Defendants' conduct as alleged herein;

2. For an award of Plaintiff's costs and reasonable attorney's fees incurred herein;

3. For actual, compensatory, and special damages;

4. For punitive damages; and

5. For all such other and further relief as this Court finds necessary and proper.


## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of all issues so triable.


Date: 08 March 2023                                    Law Offices of Sanford Parke



By: _____

Sanford Parke, Attorney for the Plaintiffs

Complaint

Exhibit R

## VERIFICATION

I, Jeffrey S. Beier declare:

I am a Plaintiff in the above-entitled action. I have read the foregoing COMPLAINT and state under penalty of perjury under the state laws of California, that the foregoing COMPLAINT is true and correct.

Executed on 08 March 2023.

By: _____

Jeffrey S. Beier

18

Complaint

Exhibit R

# EXHIBIT A

Exhibit R

Prepared by: NICHOLAS P. ISAACS

LOAN #: ▮▮▮▮▮▮▮

## InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MARCH 02, 2005                    MISSION VIEJO                    CALIFORNIA
[Date]                              [City]                         [State]

10 TUCSON, COTO DE CAZA AREA, CA 92679
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,470,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment on the  first        day of every month, beginning on   MAY 01, 2005      .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
 APRIL 01, 2035       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ 7,196.88        before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
♦ MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)                        Page 1 of 4                        Initials: ____

**Exhibit R**

BANA/BONY/Beier 000271

LOAN #: [redacted]

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the `first` day of `APRIL, 2010`, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding `TWO & ONE-QUARTER` percentage points ( `2.250` %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than `10.875` % or less than `2.250` %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than `10.875` %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of `FIFTEEN` calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be `5.000` % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Exhibit R

BANA/BONY/Beier 000272

LOAN #: [REDACTED]

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials: _____

# Exhibit R

BANA/BONY/Baier 000273

LOAN #: ▮▮▮▮▮▮▮▮

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JEFFERY S. BEIER                                -Borrower

_____ (Seal)
TONI R. BEIER                                   -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

PAY TO THE ORDER OF
JPMorgan Chase Bank, as Trustee [Original Only]

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

Exhibit R

BANA/BONY/Beier 000274

# <u>Allonge to Deed of Trust/Mortgage Note</u>

Loan Number: ███████

Allonge to one certain Deed of Trust/Mortgage Note Date:
March 2, 2005

Executed By:

JEFFREY S BEIER  & TONI R BEIER

Original Amount: $1,470,000.00

Property Address:
10 TUCSON, COTO DE CAZA AREA, CA  92679

Pay to the Order of:

Without Recourse:
**Countrywide Home Loans, Inc.**

By: _~~signature~~_

Name: FRANK FOUDA

Title: Vice President

Exhibit R

BANA/BONY/Beier 000275

# EXHIBIT B

Exhibit R

RECORDING REQUESTED
BY STEWART TITLE
IRVINE

Recording Requested By:
K. BUDDE

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
NICHOLAS P. ISAACS

[Space Above This Line For Recording Data]

2271-NB
[Escrow/Closing #]

[Doc ID #]

# DEED OF TRUST

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated MARCH 02, 2005 , together
with all Riders to this document.
(B) "Borrower" is
JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16

Initials:

-6A(CA) (0207)    CHL (09/02)(d)    VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Form 3005 1/01





Exhibit R

DOC ID #: █████████

Borrower's address is
10 TUCSON, COTO DE CAZA AREA, CA 92679
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MARCH 02, 2005      . The
Note states that Borrower owes Lender
ONE MILLION FOUR HUNDRED SEVENTY THOUSAND and 00/100

Dollars (U.S. $ 1,470,000.00     ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  APRIL 01, 2035        .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials [signature]

Exhibit R

DOC ID #: ▮▮▮▮▮▮▮▮

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of ORANGE :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 755-241-13                        which currently has the address of

10 TUCSON, COTO DE CAZA AREA                    ,
[Street/City]

California    92679    ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initial:

VMP®-6A(CA) (0207)    CHL (09/02)    Page 3 of 16    Form 3005 1/01

Exhibit R

DOC ID #: ▮▮▮▮▮▮▮▮

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

*VMP* -6A(CA) (0207)     CHL (09/02)          Page 4 of 16          Initials: ▮▮▮▮     Form 3005 1/01

Exhibit R

DOC ID #: ▮▮▮▮▮▮▮▮

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Initials: _____

Form 3005 1/01

**-6A(CA)** (0207)          CHL (09/02)          Page 5 of 16



DOC ID #: ▇▇▇▇▇▇▇▇▇▇

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

-6A(CA) (0207)    CHL (09/02)    Page 6 of 16    Initials: _____    Form 3005 1/01



DOC ID #: ▇▇▇▇▇▇▇

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials: ▇▇▇▇

⚫ -6A(CA) (0207)        CHL (09/02)        Page 7 of 16        Form 3005 1/01



DOC ID #: ███████████

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials: ~~[signature]~~

Form 3005 1/01

VMP®-6A(CA) (0207)    CHL (09/02)    Page 8 of 16

Exhibit R

DOC ID #: ██████████████

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Initials: _____

®VMP -6A(CA) (0207)        CHL (09/02)          Page 9 of 16          Form 3005 1/01


Exhibit R

DOC ID #: ███████████

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: _____  Form 3005 1/01

🔴 -6A(CA) (0207)    CHL (09/02)    Page 10 of 16



DOC ID #: ▓▓▓▓▓▓▓▓▓

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

VMP® -6A(CA) (0207)          CHL (09/02)          Page 12 of 16          Initials: ⟨signature⟩  Form 3005 1/01



DOC ID #: ████████

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Initials:

-6A(CA) (0207)     CHL (09/02)     Page 13 of 16     Form 3005 1/01


Exhibit R

DOC ID #: ▓▓▓▓▓▓▓▓▓

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

Form 3005 1/01

VMP-6A(CA) (0207)        CHL (09/02)        Page 14 of 16

Exhibit R

DOC ID #: █████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                               JEFFREY S. BEIER            -Borrower

_____    _____ (Seal)
                               TONI R. BEIER               -Borrower

                               _____ (Seal)
                                                           -Borrower

                               _____ (Seal)
                                                           -Borrower

-6A(CA) (0207)    CHL (09/02)        Page 15 of 16              Form 3005 1/01

Exhibit R

DOC ID #: ▮▮▮▮▮▮▮

State of California
County of Orange } ss.

On March 2, 2005 before me, Erin Wilkinson personally appeared

Jeffrey S. Beier & Toni R. Beier

, personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ERIN WILKINSON
Commission # 1429331
Notary Public - California
Orange County
My Comm. Expires Jul 8, 2007

Initials: _____

Form 3005 1/01

-6A(CA) (0207)    CHL (09/02)    Page 16 of 16

Exhibit R

Government Code Section 27361.7

*I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:*

| | |
|---|---|
| Name of Notary: | ERIN WILKINSON |
| Date commission expires: | JULY 8, 2007 |
| Commission No.: | 1429331 |
| Vendor No.: | NNA1 |
| Place of execution: | ORANGE |
| Date: | MARCH 2, 2005 |

Stewart Title of California

By:    DANNY SCRUGGS

Exhibit R

Prepared by: NICHOLAS P. ISAACS

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: ▮▮▮▮
27101 PUERTA REAL, ST 100
MISSION VIEJO, CA 92691

DATE:       03/02/2005

Phone: ▮▮▮▮

CASE #:

Br Fax No.: ▮▮▮▮

DOC ID #: ▮▮▮▮

BORROWER: JEFFREY S. BEIER
PROPERTY ADDRESS: 10 TUCSON
                  COTO DE CAZA AREA, CA 92679

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)







Exhibit R



EXHIBIT "A"

LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of ORANGE, described as follows:

Parcel 1:

Lot 1 (the "Lot") of Tract No. 15841, in the County of Orange, State of California, as shown on a subdivision map ("Map") recorded on December 23, 1999, in book 794, pages 25 to 29, inclusive of miscellaneous maps, in the office of the Orange County recorder.

Excepting therefrom; all oil, oil rights, natural gas rights, mineral rights, and other hydrocarbon substances by whatever name known, together with appurtenant rights thereto, without, however, any right to enter upon the surface of said land nor any portion of the subsurface lying above a depth of 500 feet, as excepted or reserved in instruments of record.

Except all water, claims or rights to water, in or under said land.

Parcel 2:

Non-exclusive easements for use, access, ingress, egress, maintenance, repair, drainage, encroachment, support, and for other purposes, all as described in the Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Coto de Caza ("Master Declaration"), recorded on March 5, 1984 as Instrument No. 84-092424, in the Supplemental Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Oak Knoll in Coto De Caza ("Supplemental Declaration") recorded on September 11, 2000 as Instrument No. 2000-0471430, in the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for The Summit ("Summit Declaration") recorded on September 20, 2000 as Instrument No. 2000-0492456, all in official records and all as amended or restated, and as described in the map and notice recorded December 20, 2000 as Instrument No. 2000-0691033.

End of Legal Description

Exhibit R



# EXHIBIT C

Exhibit R

LANDSAFE TITLE

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Recorded In Official Records, Orange County

Tom Daly, Clerk-Recorder

RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

Attn: Miriam J. Paez
TS No. 08-08967
Title Order No. ████████
Investor/Insurer No. ████

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $44,385.96, as of 02/11/2008 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

[Page 1 of 2 ]

*Form nod (09/01)*

# Exhibit R

TS No. 08-08967

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
C/O Countrywide Home Loans, Inc
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, is acting as an agent for the Beneficiary under a Deed of Trust dated 03/02/2005, executed by JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 03/08/2005, as Instrument No. 2005000170527 (or Book , Page ) of Official Records in the Office of the County Recorder of Orange County, California.

Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 1,470,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON 09/01/2007 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS' FEES. IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON 04/01/2035 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: February 11, 2008
RECONTRUST COMPANY, as agent for the Beneficiary
By LandSafe Title Corporation, as its Attorney in Fact

By

JULIE BULLOCK

[Page 2 of 2 ]

Form nod (09/01)

Exhibit R

# EXHIBIT D

Exhibit R

| | |
|---|---|
| 1 | Mark T. Domeyer, Esq. |
| | California Bar No. 135008 |
| 2 | MILES, BAUER, BERGSTROM & WINTERS, LLP |
| | 1665 Scenic Ave., Suite 200 |
| 3 | Costa Mesa, CA 92626 |
| | (714) 481-9100 / FAX (714) 481-9144. |
| 4 | File No. 08-65737 |
| 5 | Attorneys for Movant, |
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) |
| 6 | |
| 7 | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | | |
|---|---|---|
| In re: | | Case No.: 8-08-12163-RK |
| JEFFREY SCOTT BEIER AND TONI RENITA BEIER AKA TONI COOK AKA TONI GALLUCCI, | | Chapter 7 |
| | | **SUPPLEMENTAL MEMORANDUM OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. IN SUPPORT OF MOTION FOR RELIEF FROM STAY** |
| Debtors. | | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), | | **Hearing –** |
| Movant, | | Date: June 24, 2008 |
| | | Time: 03:30 P.M. |
| vs. | | Place: U.S. BANKRUPTCY COURT |
| JEFFREY SCOTT BEIER AND TONI RENITA BEIER AKA TONI COOK AKA TONI GALLUCCI, Debtors; JOHN M. WOLFE, Trustee, | | 411 West Fourth Street Santa Ana, CA 92701 Courtroom 5D |
| Respondents. | | |

**MERS' SUPPLEMENTAL BRIEF IN SUPPORT OF**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), in its capacity as record holder and nominee for Wells Fargo Bank, N.A. ("Wells Fargo") and its assignees and/or successors in interest, by and through its undersigned counsel, hereby submits this supplemental brief (this "Brief") in response to the Court's concerns regarding the ability of MERS to maintain a motion for relief from the automatic stay in its capacity as the

1

Exhibit R

beneficiary of the deed of trust on behalf of its principal, Wells Fargo.

**BACKGROUND**

A.    **Background of MERS® System**

1.    The MERS® System is an electronic registry that tracks transfers of mortgage interests for mortgage sellers, warehouse lenders, mortgage loan investors, document custodians, and mortgage servicers, improving the efficiency of mortgage lending by reducing errors, costs, and delays.  Its founders include a number of congressionally-chartered corporations (including the Government National Mortgage Association [Ginnie Mae], the Federal National Mortgage Association [Fannie Mae], and the Federal Home Loan Mortgage Corporation [Freddie Mac]) (the "Government-Sponsored Entities")) created to lower credit costs for borrowers and encourage a strong flow of capital in the housing market in order to promote home ownership in the United States.  By design, the MERS® System is similar to the system used with great success by the Depository Trust Company for the securities industry.  To date, more than 50 million mortgage loans have been registered on the MERS® System.

2.    MERSCORP, Inc. ("MERSCORP"), the parent company of MERS, owns and operates the MERS® System.  MERSCORP contracts with "MERS members," who include many large and prominent national and international lenders, the Government-Sponsored Entities, mortgage originators, loan servicers, warehouse lenders, wholesale lenders, retail lenders, title insurance associations, and other participants in the mortgage banking industry.[1]  Members of MERS pay fees to MERSCORP in order to electronically register and track beneficial ownership interests and servicing rights in mortgage loans on the MERS® System.

3.    Under the membership agreements between MERS and each of its members, members of MERS contractually agree to appoint MERS to act as their comment agent, or nominee, and to name MERS as the lien holder of record in a nominee capacity on all recorded security instruments relating to loans registered on the MERS® System, and MERS is contractually obligated to comply with the instructions of the members of MERS.

4.    In addition, MERS also contracts with non-members to act as their common agent and nominee.

5.    When a note is assigned by the original lender to another party, this sale is documented on the MERS® System.  As long as the sale of the note involves a member of MERS (or a non-member that has contracted for MERS to act as its common agent), MERS remains the record lien holder and continues to act as nominee for the new beneficial owner.  This relationship is memorialized in the original security instrument, as well as in the various

---

[1]    A complete list of the members of MERS is available on MERS' website at www.mersinc.org.

Exhibit R

1   MERS agreements.  MERS remains the lien holder of record in a nominee capacity for the originating lender and its

2   successors and assigns until an assignment transferring these lien rights from MERS is recorded.

3       **B.**    **Note**

4       6. Jeffrey S. Beier and Toni R. Beier (the "Beiers") are the borrowers under an Interest Only Adjustable

5   Rate Note dated March 2, 2005 (the "Note") made payable to the order of Countrywide Home Loans, Inc.

6       7.  The note was assigned from Countrywide to Wells Fargo but Countrywide continues to act as the.

7       8.  As a member of MERS, Wells Fargo has appointed MERS to act as its agent and nominee under the

8   Deed of Trust (defined below

9       9. As the agent and nominee of MERS is contractually obligated to comply with the instructions of Wells

10  Fargo.  By filing the Motion, MERS was acting in accordance with the instructions of Wells Fargo.

11      **C.**    **Deed of Trust**

12      10.  The Debtor executed a Deed of Trust dated March 2, 2005 (the "Deed of Trust"), by which the Debtor

13  granted and conveyed to Recontrust Company, N.A., as trustee, for the benefit of MERS (solely as the nominee for

14  Countrywide and its successors and assigns) the real property at issue in this dispute, commonly known as 10

    Tucson, Coto De Caza Area, California 92679 (the "Property").  A true and correct copy of the Deed of Trust is

15  attached as Exhibit D to the <u>Declaration of Sandy Saden in Support of Motion for Relief from Automatic Stay</u>.

16      11. The Deed of Trust names MERS as the beneficiary under the Deed of Trust solely as the nominee for

17  the Countrywide and its successors and assigns.  Deed of Trust at 1 ("MERS is a separate corporation that is acting

    solely as a nominee for Countrywide and Countrywide's successors and assigns.  MERS is the beneficiary under this

18  Security Instrument."); <u>id.</u> at 2 ("The beneficiary of this Security Instrument is MERS (solely as nominee for Lender

19  and Lender's successors and assigns) and the successors and assigns of MERS.").

20      12.  In the Deed of Trust, the Debtor acknowledges and agrees that MERS holds the lien rights granted by

21  the Debtor under the Deed of Trust (the "Lien Rights") solely as the agent and nominee for the Original Lender and

22  its successors and assigns.  <u>Id.</u> at 3.

23      13. In the Deed of Trust, the Debtor acknowledges and agrees that MERS (as nominee for the Original

    Lender and its successors and assigns) has the right to exercise the Lien Rights, including the right to foreclose and

24  sell the Property.  <u>Id.</u>

Exhibit R

14.  The Deed of Trust expressly provides that it secures, among other things, the repayment of the debt evidenced by the Note and the performance of the Debtor's covenants and agreements under the Note and the Deed of Trust. Id. at 2.

15.  The Deed of Trust was recorded on September 12, 2005, as Document # 2005-0785786, in the San Diego County Recorder's Office. Id. at 1.

**D.    Motion for Relief from Automatic Stay**

16.  On May 12, 2008, MERS filed a <u>Motion for Relief from Automatic Stay</u> with this Court, seeking relief from the automatic stay to complete foreclosure proceedings for the Property (the "Motion").

17.  At a hearing held on June 10, 2008, the Court continued the hearing on the Motion to June 24, 2008 and MERS agreed to file this memorandum regarding its standing to maintain a motion for relief from the automatic stay on behalf of its principal.

**II.    ARGUMENT**

**A.    Wells Faro Bank is the Current Holder of the Note and Has Appointed <u>MERS as its Agent and Nominee</u>**

MERS has established that Wells Fargo is the current holder of the Note. <u>See</u> May Declaration, ¶ 5; Note at 5; Cal. Civ. Code § 3203.

MERS has established that Wells Fargo is in possession of the Note. <u>See</u> May Declaration, ¶ 6.

MERS has also established that, by operation of the Deed of Trust and California law, Wells Fargo is the beneficial owner of the Lien Rights (with MERS as the record holder of the Lien Rights in its capacity as the nominee of Wells Fargo) <u>See</u> Deed of Trust at 1-3; Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security."); <u>United States. v. Thornburg</u>, 82 F.3d 886, 892 (9th Cir. 1996) (under California law, bank's assignment of note carried with it the mortgage securing the note, even if bank failed to 'hand over' the mortgage document).[2]  The Deed of Trust secures repayment of the Note and was properly perfected by the Original Lender by recording in the Orange County Recorder's Office.

**B.    <u>MERS has Standing to Prosecute the Motion as Agent for Wells Fargo</u>**

In this case, the Debtor signed a deed of trust that assigned his right, title, and interest in the Property (<u>i.e.</u>, the Lien Rights) to MERS as nominee for the Original Lender and its successors and assigns.  As nominee, MERS

4

**Exhibit R**

1  acts as agent for the Original Lender and each of its successors and assigns (including, currently, Wells Fargo). See,

2  e.g., Lewis v. Hankins, 214 Cal. App. 3d 195, 201 (Cal. App. 1989) (treating "agent" and "nominee" as

3  synonymous); Hickey v. Roby, 273 Cal. App. 2d 752, 757 (Cal. App. 1969) (same); Aladdin Oil Corp. v. Perluss,

230 Cal. App. 2d 603, 613 (Cal. App. 1964) (same); Epstein v. Stahl, 176 Cal. App. 2d 53, 65 (Cal. App. 1959)

4  (same).  As agent for Wells Fargo, MERS "represents [Wells Fargo] for all purposes within the scope of [its] actual

5  or ostensible authority" (Cal. Civ. Code § 2330) and is "authorized to do any acts which [Wells Fargo] might do"

6  (Cal. Civ. Code § 2304).

7      It is in this nominee/agent capacity that MERS, the named beneficiary under the Deed of Trust, received

8  (and holds) record title to the Lien Rights.  In fact, the Debtor acknowledged and agreed that MERS "holds only

legal title to the interests granted" by the Debtor under the Deed of Trust but, by virtue of its nominee/agent status,

9  possesses "the right to exercise any or all those interests, including, but not limited to, the right to foreclose ..."

10  Deed of Trust at 3.  The plain language of the Deed of Trust provides that MERS, as the record lien holder in a

11  nominee capacity, is entitled to exercise all of the Lien Rights, including the right to foreclose and sell the Property.

12  Id.  There is nothing legally problematic about MERS' holding record title to the Lien Rights in a nominee capacity.

In fact, California law expressly contemplates that a lender can designate a nominee to be the beneficiary under a

13  deed of trust and permits the recording of such instruments. Cal. Bus. & Prof. Code § 10234(a).

14      Rule 17 of the Federal Rules of Civil Procedure (the "Federal Rules") (made applicable to bankruptcy

15  proceedings by Bankruptcy Rule 7017) requires that an action be prosecuted in the name of the "real party in

16  interest."  The purpose of the "real party in interest" rule is to "protect the defendant against a subsequent action by

17  the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res

judicata." Greer v. O'Dell, 305 F.3d 1297, 1303 (11th Cir. 2002) (quoting Comments to 1966 Amendments to Fed.

18  R. Civ. P. 17).  In keeping with this purpose, Federal Rule 17(a)(1)(F) permits "a party with whom or in whose

19  name a contract has been made for another's benefit" to sue in its own name without joining the person for whose

20  benefit the action is brought.

21      Here, MERS' authority to prosecute the Motion is based upon such contractual authority.  The Deed of

22  Trust (signed by the Debtor) named MERS as beneficiary (in a nominee capacity), and the Debtor expressly

23  authorized MERS to exercise the foreclosure remedies available to the Original Lender and its successor and

24

---

2    As a practical matter, MERS is not obligated to trace specifically each assignment of the Lien Rights,
    because the Lien Rights follow the Note as a matter of California law.

5

Exhibit R

assigns. In addition to this direct contractual authorization granted by the Debtor, MERS has agreements with each of its members (including Wells Fargo) that provide an additional contractual basis for MERS' standing. Furthermore, there is no risk of inconsistent judgments, multiplicity of litigation, or similar problems, because an agent and its principal are privies for purposes of res judicata. <u>Spector v. El Ranco, Inc.</u>, 263 F.2d 143, 145 (9th Cir. 1959).

By application of these principles (and under facts virtually identical to those in this case), a bankruptcy court recently held that MERS had standing to prosecute a motion for relief from automatic stay in its own name. In <u>In re Huggins</u>, 357 B.R. 180 (Bankr. D. Mass. 2006), the debtor executed a promissory note and related mortgage in favor of the lender. The mortgage identified MERS as the mortgagee (solely as nominee for the lender) and granted MERS full mortgage rights with respect to the subject property, including the right to foreclose. The debtor in the <u>Huggins</u> case contended (as the Trustee contends here) that MERS was not a "real party in interest" because MERS did not hold the interests of the lender (<u>i.e.</u>, ownership interest in the note). The <u>Huggins</u> court rejected this contention and determined that MERS possessed standing based upon its findings that (a) MERS was acting as the nominee for the lender (which owned the note), (b) MERS was the record lien holder under the mortgage and possessed full mortgage rights (including the right to foreclose), (c) the mortgage expressly authorized MERS to foreclose the subject property, and (d) denial of MERS' right to foreclose would lead to anomalous and inequitable results. <u>Id.</u> at 184. In this case, the Court can and should make identical findings, resulting in an identical conclusion—*MERS has standing to prosecute the Motion.*

The ruling in the <u>Huggins</u> case is in accord with numerous non-bankruptcy decisions that have confirmed MERS' standing to prosecute foreclosure actions in its own name. <u>See Mortgage Electronic Registration Sys., Inc. v. Coakley</u>, 41 A.D.3d 674 (N.Y. App. 2007); <u>Mortgage Electronic Registration Sys., Inc. v. Azize</u>, 965 So. 2d 151 (Fla. App. 2007); <u>Mortgage Electronic Registration Sys., Inc. v. Revoredo</u>, 955 So. 2d 33 (Fla. App. 2007); <u>In re Sina</u>, No. A06-200, 2006 WL 2729544 (Minn. App. Sept. 26, 2006) (unpublished); <u>Mortgage Electronic Registration Sys., Inc. v. Ventura</u>, No. CV054003168S, 2006 WL 1230265 (Conn. Super. April 20, 2006) (unpublished); <u>Mortgage Electronic Registration Sys., Inc. v. Leslie</u>, No. CV044001051, 2005 WL 1433922 (Conn. Super. May 25, 2005) (unpublished).

The ruling in the <u>Huggins</u> case also is consistent with decisions determining that loan servicers and trustees under deeds of trust have standing to enforce loan obligations for the benefit of the lender. <u>See Greer</u>, 305 F.3d at 1302 ("[T]he sole issue before us is whether a loan servicer is a 'real party in interest' with standing to conduct,

6

<u>Exhibit R</u>

1  through licensed counsel, the legal affairs of the investor relating to the debt that it services.  We answer this

2  question in the affirmative."); In re Woodberry, 383 B.R. 373, 379 (Bankr. D.S.C. 2008) (mortgage loan servicer

3  granted relief from stay); In re Miller, 320 B.R. 203, 206 n. 2 (Bankr. N.D. Ala. 2005) (mortgage loan servicer

   permitted to litigate motion for relief from stay); Bankers Trust (Delaware) v. 236 Beltway Investment, 865 F. Supp.

4  1186, 1191 (E. D. Va. 1994) (mortgage loan servicer had standing to enforce mortgage); In re Tainan, 48 B.R. 250,

5  252 (Bankr. E.D. Pa. 1985) (mortgage loan servicer was real party in interest because "action may not necessarily be

6  brought in the name of the person who ultimately will benefit from the recovery, but rather by the person who is

   entitled to enforce the right"); In re Golden Plan of California, Inc., 25 B.R. 183, (Bankr. E.D. Cal. 1982) (trustee

7  under deed of trust had standing to seek relief from automatic stay as a "real party in interest" under Federal Rule

8  17(a)).  See also In re B & I Realty Co., Inc., 158 B.R. 220, 223 (Bankr. W.D. Wash. 1993) (creditor status not

9  necessary for standing under Section 362(d) as long as the moving party has "an interest of its own").

10      The recent Ninth Circuit decision of Reusser v. Wachovia Bank, N.A., 525 F.3d 855 (9th Cir. 2008) lends

11 further support for maintaining the motion in the name of the beneficiary in the deed of trust.  In that case, the

12 Debtor challenged a foreclosure by Wachovia as Washington Mutual not Wachovia brought the motion for relief

   from stay and the bankruptcy court did not name Wachovia in its order granting relief from stay.  The Ninth Circuit

13 reasoned "it is immaterial that the bankruptcy court order did not specifically name Wachovia; what matters is that it

14 addressed the deed of trust held by Wachovia; the bankruptcy court order granted relief both 'as to the enforcement

15 of the deed of trust' owned by Wachovia and 'as to the [Debtor's] property.'"  Here, MERS was the beneficiary at

16 origination and remains the beneficiary and is entitled to enforce the deed of trust on behalf of Countrywide, its

17 principal, at Countrywide's direction.

18      A very recent Supreme Court decision lends further support to MERS standing to bring a motion on behalf

   of its principal.  See. Sprint Comm. Company, L.P. vs. APCC Services, Inc. ___ U.S. ___; ___S.Ct. ___; 2008 WL

19 2482712 (June 23, 2008)(assignee of legal claim for money has standing to sue in Federal Court, even where

20 assignee has promised to give all litigation proceeds back to assignor).

21                MILES, BAUER, BERGSTROM & WINTERS, LLP

22 Dated:    06-16-08              By:    /s/ Mark T. Domeyer, Esq.
                                          Mark T. Domeyer, Esq.
                                          Attorney for Movant
23

24

7

Exhibit R

## PROOF OF SERVICE

I, __Miho Ishida__, certify that I am a resident of Orange County, I am over the age of eighteen (18) and not a party to the within action, and that my business address is: 1665 Scenic Avenue, Suite 200, Costa Mesa, CA 92626.

On __06-23-08__, I served the within **SUPPLEMENTAL MEMORANDUM OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. IN SUPPORT OF MOTION FOR RELIEF FROM STAY** on all interested parties in this proceeding by placing a true and correct copy thereof enclosed in a sealed envelope with postage pre-paid in the United States Mail at Costa Mesa, California, addressed as follows:

DEBTORS:
Jeffrey Scott Beier
Toni Renita Beier
27881 La Paz Rd. Ste. G
Laguna Niguel, CA 92677

JUNIOR LIENHOLDER:
Telesis Community Credit Union
c/o Buchalter Nemer & Barry Smith
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

JUNIOR LIENHOLDER:
Consolidated Builders
Attn: Managing Agent
27446 Betanzos Street
Mission Viejo, CA 92692

JUNIOR LIENHOLDER:
CZ Master Association
Keystone Pacific Property Management
16845 Von Karman, Suite 200
Irvine, CA 92606-4920

JUNIOR LIENHOLDER:
Summit Gate Association
c/o Merit Property Management
1 Polaris Way, Suite 100
Aliso Viejo, CA 92656-5356

ATTORNEY FOR DEBTORS:
R. Gibson Pagter
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, CA 92701

CHAPTER 7 TRUSTEE:
John M. Wolfe
5450 Trabuco Road
Irvine, CA 92620-5704

U.S. TRUSTEE:
411 W. Fourth Street, Suite 9041
Santa Ana, CA 92701-4593

8

Exhibit R

1          I certify that I am employed in the Office of a Member of the Bar at whose direction the

2   Service was made.

3          I declare under penalty of perjury that the foregoing is true and correct.

4          Executed this    06-23-08               , at Costa Mesa, California.

5                                              /s/ Miho Ishida

6
08-65737/cdmisc.dot/prl
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Exhibit R

# EXHIBIT E

Exhibit R

LANDSAFE TITLE

Recording Requested By: DPS
On Behalf Of: **"LS – SV"**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

ATTN: Nallely Ochoa
TS No. 08-0008967

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

## SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST

The undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter referred to as Beneficiary) is the Beneficiary of that certain Deed of Trust dated 03/02/2005, executed by JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, Trustor, to RECONTRUST COMPANY, N.A., as Trustee, and recorded as Instrument No. 2005000170527 on 03/08/2005, of Official Records in the County Recorder's Office of ORANGE County, California. NOW THEREFORE, Beneficiary hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS:1757 TAPO CANYON ROAD, SVW-88, SIMI VALLEY, CA 93063 , as Trustee under said Deed of Trust herein referred to, in the place and stead of and with all rights, title, powers, and interest of the former trustee described above.

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, conveys and transfers to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK,N.A. AS TRUSTEE, BSALTA 2005-04 all beneficial interest under that certain Deed of Trust described above. Said described land: "As more fully described in the above referenced Deed of Trust." Together with the note or notes therein described or referred to, the money due and to become due thereon with the interest, and all rights accrued or to accrue under said Deed of Trust.

DATED: June 07, 2010

State of: **CALIFORNIA**           )
County of: **VENTURA**             )
On **JUN 07 2010** before me, **KEVIN RUDOLPH**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

BY: _____

Kevin Rudolph, Assistant Secretary

**MICHELLE I. MILLER** , notary public, personally appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Notary Public's Signature      **MICHELLE I. MILLER**

MICHELLE I. MILLER
COMM. #1836833
Notary Public · California
Los Angeles County
My Comm. Expires Feb. 15, 2013

*Form subasgnmnt (01/09)*

Document Number: _____    Page: 1 of 1


Exhibit R

# EXHIBIT F

Exhibit R

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder



9.00

RECORDING REQUESTED BY:
Stewart Title Guaranty F/K/A Landsafe Default Inc

AND WHEN RECORDED MAIL TO:
The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, California 92614
(949) 720-9200

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: **15-0233-11** , 10 TUCSON, COTO DE CAZA AREA, CA 92679

# SUBSTITUTION OF TRUSTEE

  **WHEREAS, JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS** was the original Trustor, **RECONTRUST COMPANY, N.A.** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS A NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., A CORPORATION** was the original Beneficiary under that certain Deed of Trust dated **3/2/2005** and recorded on **3/8/2005** as Instrument No. **2005000170527** of Official Records of **Orange** County, California; and

  **WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

  **WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

  **NOW, THEREFORE,** the undersigned hereby substitutes **The Wolf Firm, A Law Corporation, 2955 Main Street, 2nd Floor, Irvine, California 92614** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
Dated: February 11 2015

       THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK
       SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE
       FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH
       CERTIFICATES, SERIES 2005-4
       By Bank of America N.A. Attorney in Fact
       ————————————————————
       Jalisa Banks, Assistant Vice President

A notary public or other officer completing this certificate verifies only
the identity of the individual who signed the document, to which this
certificate is attached, and not the truthfulness, accuracy, or validity of
that document.

STATE of Texas
COUNTY of Dallas

Before me, Evelyn A. Denton , the undersigned officer, on this, the 11 day of February, 2015, personally
  (insert name of notary)
appeared Jalisa Banks , ☐ known to me or, ☒ through production of A Texas Driver's License, as identification,
  (insert name of signer)
who identified her/himself to be the Assistant Vice President of Bank of America N.A. , the person and
officer whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that (s)he had executed the
foregoing instrument as the act of such corporation for the purpose and consideration described and in the capacity stated.

(seal) Evelyn A. Denton
Evelyn A. Denton
(Type or print name below signature)

         **EVELYN A. DENTON**
         Notary Public, State of Texas
         My Commission Expires
         March 17, 2017

    Notary Public, State of Texas
    Commission No.: 00724787-4
    My Commission Expires: 3-17-17

Document Number: ▮▮▮▮▮ Page: 1 of 1

# Exhibit R

# EXHIBIT G

Exhibit R


Bank of America

PO Box 31785
Tampa, FL 33631-3785

**Notice Date:**    September 13, 2019

**Account No.:**    ▮▮▮▮▮▮▮

The Law Office of Sanford Parke
1913 East 17th Street, Suite 212
Santa Ana, CA 92705

**Property Address:**
10 Tucson
Coto De Caza Area, CA  92679

Thank you for your recent inquiry regarding the investor (owner) of the loan.

## What you need to know

**The information in this letter represents the most recent information available. If the loan has been paid off, this information was the latest available as of the last day the loan was active prior to payoff.**

There are important differences between the investor and the servicer of the loan:

- The servicer collects mortgage payments, sends billing statements, and provides the day-to-day servicing of the account on the investor's behalf.
- The investor owns the loan.

## Additional servicer information

Most inquiries and requests for the loan should be handled through the loan servicer, Bank of America, N.A., since Bank of America, N.A. is authorized to handle most requests. In cases where Bank of America, N.A.does not have authority to make decisions or otherwise act independently on the investor's behalf in response to the request, Bank of America, N.A. will gather relevant information from you, consult with the investor about your request and communicate the decision.

If you have any questions regarding the loan or the servicing of the loan, you should always contact the servicer first at the telephone number or mailing address noted below.

Servicer's Name:                Bank of America, N.A.

Servicer's Mailing Address    **(for correspondence other than payments):**

PO Box 31785
Tampa, FL 33631-3785

Servicer's Telephone Number: 1-800-669-6650

Please write your account number on all checks and correspondence.

Exhibit R

If the loan remains active, please continue to send the loan payments to Bank of America, N.A. at the address below to ensure they are applied to the account.

Payment Processing, PO Box 650070
Dallas, TX 75265-0070

## Additional investor information

The investor, or owner of the loan, is the person or entity that is entitled to repayment of the loan. We've provided the investor information below for your reference. Please note that you should not send payments to the investor and that most inquiries and requests should be handled through the loan servicer as indicated above.

Investor's Name:

The Bank of New York Mellon as Trustee on behalf of Bear Stearns ALT-A Trust 2005-4

Investor's Mailing Address:

Attn: MBS Administration
101 Barclay Street Floor 8 West
New York, NY 10286

Investor's Telephone Number:

866-516-1762

## We're here to help

We appreciate the opportunity to serve your financial needs/be of service. If you need further assistance, please call 800-669-6650.

Home Loan Team
Bank of America, N.A.

Exhibit R

# EXHIBIT H

Exhibit R



**BANK OF AMERICA** 

PO Box 31785
Tampa, FL 33631-3785

**Date:** December 09, 2022

**Account number:** ▮

THE LAW OFFICE OF SANFORD PARKE // ATTENTION: SANFORD PARKE, ESQUIRE
1913 EAST 17TH STREET, SUITE 212
SANTA ANA, CA 92705

**Property Address:**
10 TUCSON
COTO DE CAZA AREA, CA 92679

Thank you for your recent inquiry regarding the investor (owner) of
the loan.

## What you need to know

The information in this letter represents the most recent information available. If the loan has been
paid off, this information was the latest available as of the last day the loan was active prior to
payoff.

There are important differences between the investor and the servicer of the loan:

- The servicer collects mortgage payments, sends billing statements, and provides the
  day-to-day servicing of the account on the investor's behalf.
- The investor owns the loan.

## Additional servicer information

Most inquiries and requests for the loan should be handled through the loan servicer, Bank of America,
N.A., since Bank of America, N.A. is authorized to handle most requests. In cases where Bank of
America, N.A. does not have authority to make decisions or otherwise act independently on the
investor's behalf in response to the request, Bank of America, N.A. will gather relevant information
from you, consult with the investor about your request and communicate the decision.

If you have any questions regarding the loan or the servicing of the loan, you should always contact
the servicer first at the telephone number or mailing address noted below.

Servicer's Name: Bank of America, N.A.

Servicer's Mailing Address **(for correspondence other than payments)**:
            PO Box 31785
            Tampa, FL 33631-3785

Servicer's Telephone Number: 800.669.6650.

Please write your account number on all checks and correspondence.

RQ-11646358-1-1

# Exhibit R

1919 649486 23064N

If the loan remains active, please continue to send the loan payments to Bank of America, N.A. at the address below to ensure they are applied to the account.
    PO Box 660861
    Dallas, TX 75266

## Additional investor information

The investor, or owner of the loan, is the person or entity that is entitled to repayment of the loan. We've provided the investor information below for your reference. Please note that you should not send payments to the investor and that most inquiries and requests should be handled through the loan servicer as indicated above.

Investor's Name: WELLS FARGO BANK, N.A. AS TRUSTEE ON BEHALF OF BSALTA 2005-04

Investor's Mailing Address: 9062 OLD ANNAPOLIS ROAD, COLUMBIA, MD 21045

Investor's Telephone Number: 443-367-2897.

## We're here to help

We appreciate the opportunity to serve your financial needs/be of service. If you need further assistance, please call 800.669.6650.

Ashayla Scott
Home Loan Team
Bank of America, N.A.

Exhibit R

# EXHIBIT I

Exhibit R

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number<br>Mark T. Domeyer, Esq., CA Bar No. 135008<br>**MILES, BAUER, BERGSTROM & WINTERS, LLP**<br>**1665 Scenic Avenue, Suite 200**<br>**Costa Mesa, CA 92626**<br>**(714) 481-9100 / FAX (714) 481-9144**<br>**File No. 08-65737**<br>☐ *Individual appearing without counsel*<br>☒ *Attorney for:* **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**<br>**(MERS), its assignees and/or successors in interest** | FOR COURT USE ONLY |

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |
| In re:<br>**JEFFREY SCOTT BEIER AND TONI RENITA BEIER AKA TONI COOK AKA**<br>**TONI GALLUCCI, DEBTOR**<br><br>Respondents:<br>**JEFFREY SCOTT BEIER AND TONI RENITA BEIER AKA TONI COOK AKA**<br>**TONI GALLUCCI, DEBTOR;**<br>**JOHN M. WOLFE, CHAPTER 7 TRUSTEE** | CHAPTER: 7<br><br>CASE NO.: **8:08-12163-RK**<br><br>DATE:    **June 10, 2008**<br>TIME:    **03:30 PM**<br>CTRM:    **5D**<br>FLOOR:    **5th** |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT: <u>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), its</u>
### <u>assignees and/or successors in interest</u> )
### (Real Property)

1.    NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2.    Hearing Location:    ☐ 255 East Temple Street, Los Angeles        ☒ 411 West Fourth Street, Santa Ana

                                  ☐ 21041 Burbank Boulevard, Woodland Hills    ☐ 1415 State Street, Santa Barbara

                                  ☐ 3420 Twelfth Street, Riverside

3.    a.    ☒    This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

      b.    ☐    This Motion is being heard on SHORTENED NOTICE. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

                ☐ at the hearing    ☐ at least _____ court days before the hearing.

        (1)    ☐    A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

        (2)    ☐    A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

        (3)    ☐    A Motion for Order Shortening time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4.    You may contact the Bankruptcy Clerk's office to obtain a copy of an approved court form for use in preparing your response (*Optional Court Form F 4001-1M.RES*), or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1.

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*

**F 4001-1M.RP**

# Exhibit R

*Motion for Relief from Stay (Real Property) - Page 2 of ____*        **F 4001-1M.RP**

| In re    BEIER,                    (SHORT TITLE) | CHAPTER:  **7** |
|---|---|
| Debtor(s). | CASE NO.:  **8:08-12163-RK** |

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: 05/12/08

MILES, BAUER, BERGSTROM & WINTERS, LLP
*Print Law Firm Name (if applicable)*

Mark T. Domeyer, Esq.
*Print Name of Individual Movant or Attorney for Movant*

/s/    Mark T. Domeyer, Esq.
*Signature of Individual Movant or Attorney for Movant*

(08-65737)

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*        **F 4001-1M.RP**

**Exhibit R**

Motion for Relief from Stay (Real Property) - *Page 3 of* ___          **F 4001-1M.RP**

| In re | (SHORT TITLE) | | CHAPTER: **7** |
|---|---|---|---|
| | BEIER, | Debtor(s). | CASE NO.: **8:08-12163-RK** |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT: <u>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), its assignees and/or successors in interest</u>)

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

   *Street Address:*            **10 Tucson**
   *Apartment/Suite no.:*
   *City, State, Zip Code:*     **Coto De Caza Area, CA 92679**

   Legal description or document recording number (including county of recording): **Deed/Mortgage Instrument No. 2005000170527, recorded in Orange County, CA**
   ☐ See attached continuation page.

2. **Case History:**

   a. ☒ A voluntary ☐ An involuntary    petition under Chapter    ☒ 7    ☐ 11    ☐ 12    ☐ 13

      was filed on *(specify date):* **April 25, 2008**

   b. ☐ An Order of Conversion to Chapter    ☐ 7    ☐ 11    ☐ 12    ☐ 13

      was entered on *(specify date):*

   c. ☐ Plan was confirmed on *(specify date):*

   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See Attached Declaration.

3. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

          (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.

          (b) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

          (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).

          (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.

      (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

          (a) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

          (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

          (c) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.

          (d) ☐ Other (See attached continuation page).

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*          **F 4001-1M.RP**

**Exhibit R**

Motion for Relief from Stay (Real Property) - *Page 4 of ___*                    **F 4001-1M.RP**

| In re BEIER, | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 8:08-12163-RK |

(3) ☐ *(Chapter 12 or 13 cases only)*

    (a) ☐ Postconfirmation plan payments have not been made to the Standing Trustee.

    (b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.

(4) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:**    *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

a. ☒ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

b. ☐ Other Declaration(s) are also attached in support of this Motion.

c. ☒ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules.  Authenticated copies of the relevant portions of the Schedules are attached as **Exhibit 1__**.

d. ☒ Other evidence *(specify)*: Debtors are surrendering the subject real property according to their Chapter 7 Individual Debtors' Statement of Intention. Attached hereto as Exhibit **_2_**  is a copy of the Chapter 7 Individual Debtors' Statement of Intention.

6. ☐ An optional Memorandum of Points and Authorities is attached to this Motion.

---

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following** *(specify forms of relief requested)*:

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached declarations.

3. ☒ Additional provisions requested:

    a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

    b. ☒ That the 10-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

    c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(Use Optional Court Form F 4001-1M.ER).*

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 5 of ___*          **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| BEIER, | | |
| | Debtor(s). | CASE NO.: **8:08-12163-RK** |

d.  ☐  For other relief requested, see attached continuation page.

4.   If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 05/12/08                              Respectfully submitted,

                                             MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
                                             *Movant Name*

                                             MILES, BAUER, BERGSTROM & WINTERS, LLP
                                             *Firm Name of Attorney for Movant (if applicable)*

                                             By:      /s/   Mark T. Domeyer, Esq.
                                                      *Signature*

                                             Name:   Mark T. Domeyer, Esq.
                                                      *Typed Name of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                                    **F 4001-1M.RP**

                                                                     Exhibit R

Motion for Relief from Stay (Real Property) - *Page 6 of ___*     **F 4001-1M.RP**

| In re   BEIER, | (SHORT TITLE) | Debtor(s). | CHAPTER: 7 |
|---|---|---|---|
| | | | CASE NO.:  8:08-12163-RK |

## REAL PROPERTY DECLARATION
### (MOVANT: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), its assignees and/or successors in interest)

I, **SANDY SADEN**_____, declare as follows:
*(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because (*specify*):

☐  I am the Movant and owner of the Property.

☐  I manage the Property as the authorized agent for the Movant.

☐  I am employed by Movant as (*state title and capacity*):

☒  Other *(specify)*:  I am an employee of COUNTRYWIDE HOME LOANS, INC., which is a duly authorized servicing agent of the Movant.  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) is the original beneficiary under said Trust Deed.

2.  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the Court if required.

3.  a.  The address of the Property that is the subject of this Motion is:

   *Street Address:*  **10 Tucson**
   *Apartment/Suite no.:*
   *City, State, Zip Code:*  Coto De Caza Area, CA  92679

   b.  The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as **Exhibit ___3___**.

   ☐  See attached page.

4.  Type of property:  *(Check all applicable boxes)*

   a.  ☐  Debtor's(s') principal residence    b.  ☒  Other single family residence

   c.  ☐  Multi-unit residential    d.  ☐  Commercial

   e.  ☐  Industrial    f.  ☐  Vacant land

   g.  ☐  Other *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.
Revised October 2005     F 4001-1M.RP

Exhibit R

Motion for Relief from Stay (Real Property) - *Page 7 of ___*          **F 4001-1M.RP**

| In re        BEIER,          (SHORT TITLE)                   Debtor(s). | CHAPTER:  7   CASE NO.:  8:08-12163-RK |
|---|---|

5. Nature of Debtor's(s') interest in the Property:

    a. ☐ Sole owner

    b. ☒ Co-owner(s) *(specify)*:    **joint owner(s)**

    c. ☐ Lien holder *(specify)*:

    d. ☐ Other *(specify)*:

    e. ☒ Debtor(s) ☒ did    ☐ did not    list the Property in the Schedules filed in this case.

    f. ☒ Debtor(s) acquired the interest in the Property by    ☒ grant deed    ☐ quitclaim deed    ☐ trust deed

        The deed was recorded on:    **March 8, 2005**

6. Amount of Movant's claim with respect to the Property:

| | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|
| a. Principal: | $ | $ | $ 1,470,000.00 |
| b. Accrued Interest: | $ | $ | $ 71,396.99 |
| c. Late Charges: | $ | $ | $ 719.68 |
| d. Costs (Attorney's Fees, Other Costs): | $ | $ | $ 2,320.50 |
| e. Advances (Property Taxes, Insurance): | $ | $ | $ 36,971.07 |
| f. TOTAL CLAIM as of  April 29, 2008 : | $ | $ | $ 1,581,408.24 |

    g. ☐ Loan is all due and payable because it matured on *(specify date)*:

7. Movant holds a  ☒ deed of trust    ☐ judgment lien    ☐ other *(specify)*:
that encumbers the Property.

    a. A true and correct copy of the document as recorded is attached as **Exhibit    3   **.

    b. A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as **Exhibit    4   **.

    c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Status of Movant's claim relating to the Property    *(fill in all applicable information requested below)*:

    a. Current interest rate:    **5.88%**

    b. Contractual maturity date:    **April 1, 2035**

    c. Amount of current monthly payment: **$7,196.88**

    d. Number of PREPETITION payments that have come due and were not made:  8 . Total amount: $  57,575.04

    e. Number of POSTPETITION payments that have come due and were not made:  1 . Total amount: $  7,196.88

    f. Date of POSTPETITION or Post-Confirmation default:   N/A – Chapter 7/11

    g. Last payment received on the following date:    **August 15, 2007**

    h. Notice of default recorded on the following date:    **February 13, 2008**

    i. Notice of sale recorded on the following date:    **none**

    j. Foreclosure sale originally scheduled for the following date:  **none**

    k. Foreclosure sale currently scheduled for the following date:  **none**

    l. Foreclosure sale already held on the following date:    **none**

    m. Trustee's deed on sale already recorded on the following date:    **none**

    n. Future payments due by time of anticipated hearing date *(if applicable)*:
An additional payment of $ 7,196.88    will come due on  06/01/2008 , and on the  1st    day of each month thereafter.
If the payment is not received by the  15th    day of the month, a late charge of $ 0.00    will be charged to the loan.

9. Attached hereto as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                                  **F 4001-1M.RP**

Exhibit R

Motion for Relief from Stay (Real Property) - *Page 8 of ___*        **F 4001-1M.RP**

| In re | BEIER, | (SHORT TITLE) | Debtor(s). | CHAPTER: **7** |
|---|---|---|---|---|
| | | | | CASE NO.: **8:08-12163-RK** |

10. ☒ *(Chapter 7 and 11 cases only):* The fair market value of the entire Property is $ __1,800,000.00__ , established by:

   a. ☐ Appraiser's declaration with appraisal attached herewith as Exhibit _____.

   b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____.

   c. ☒ A true and correct copy of relevant portion(s) of Debtor's(s') Schedules attached as Exhibit __1__.

   d. ☐ Other *(specify):*

11. ☐ The fair market value of the Property is declining based on/due to:_____

12. ☒ **Calculation of equity in Property:**

   a. Based upon ☐ a preliminary title report ☒ Debtor's(s') admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor(s) (if any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | MERS | $2,200,000.00 | $1,581,408.24 *Movant's books & records* |
| Judgment Liens: | TELESIS COMMUNITY CREDIT UNION | $279,859.00 | $279,859.00 Debtor's Schedules |
| Judgment Liens: | CONSOLIDATED BUILDERS | $7,677.00 | $7,677.00 Debtor's Schedules |
| Judgment Liens: | CZ MASTER ASSOSIATION | $3,340.00 | $3,340.00 Debtor's Schedules |
| Judgment Liens: | SUMMIT GATE ASSOCIATION | $827.00 | 827.00 Debtor's Schedules |
| Other: | n/a | $0.00 | |

**TOTAL DEBT: $1,873,111.24**

   b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit __1__, and consists of:
     ☐ Preliminary title report
     ☒ Relevant portions of Debtor's(s') Schedules as filed in this case
     ☐ Other *(specify):*

   c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $ __-73,111.24__ (§ 362(d)(2)(A)).

   d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $ __218,591.76__ (§ 362(d)(1)).

   e. Estimated costs of sale: $ __144,000.00__ (Estimate based upon __8__ % of estimated gross sales price).

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:

   a. 341(a) Meeting currently scheduled for (or concluded on) the following date:
   Confirmation hearing currently scheduled for (or concluded on) the following date:
   Plan confirmed on the following date *(if applicable):*

   b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| | | | | |
|---|---|---|---|---|
| *(Number of)* ____ payment(s) due at $____ | each | = | $____ |
| *(Number of)* ____ payment(s) due at $____ | each | = | $____ |
| *(Number of)* ____ late charge(s) at $____ | each | = | $____ |
| *(Number of)* ____ late charge(s) at $____ | each | = | $____ |

*(Continued on next page)*

**Exhibit R**

Motion for Relief from Stay (Real Property) - *Page 9 of ___*          **F 4001-1M.RP**

| In re **BEIER,** (SHORT TITLE) | CHAPTER: **7** |
|---|---|
| Debtor(s). | CASE NO.: **8:08-12163-RK** |

c.   Postpetition/preconfirmation advances or other charges due but unpaid:          $ _____
(See attachment for details of type and amount.)

**TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:**   $_____

d.   Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation (*if applicable*):

*(Number of)* _____ payment(s) due at $_____ each   =   $ _____
*(Number of)* _____ payment(s) due at $_____ each   =   $ _____
*(Number of)* _____ late charge(s) at  $_____ each   =   $ _____
*(Number of)* _____ late charge(s) at  $_____ each   =   $ _____

e.   Postconfirmation advances or other charges due but unpaid:          $ _____
(See attachment for details of type and amount.)

**TOTAL POSTCONFIRMATION DELINQUENCY:**   $_____

f.   ☐   The claim is provided for in the Chapter 12 or 13 Plan.  Plan payment history is attached as Exhibit _____.

g.   ☐   See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan (*attach Court Form F 4001-1M.13*).

14.   ☐   Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15.   ☐   The court determined that the Property qualifies as single asset real estate on _____.  More than 90 days have passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

16.   ☐   See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

17.   ☐   The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

a.   ☐   The transfer of all or part ownership of, or other interest in, the Property without consent of Movant or court approval.  See attached continuation page for facts establishing the scheme.

b.   ☐   Multiple bankruptcy filings affecting the Property.  The multiple bankruptcy filings include the following cases:
1.   Case Name:
     Case Number:                                 Chapter:
     Date Filed:                                     Date Dismissed:                        Date Discharged:
     Relief from stay re this property        ☐ was  ☐ was not  granted.
2.   Case Name:
     Case Number:                                 Chapter:
     Date Filed:                                     Date Dismissed:                        Date Discharged:
     Relief from stay re this property        ☐ was  ☐ was not  granted.
3.   ☐   See attached continuation page for more information about other cases.

☐   See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                                         **F 4001-1M.RP**

**Exhibit R**

Motion for Relief from Stay (Real Property) - *Page 10 of ___*    **F 4001-1M.RP**

| In re  BEIER,          (SHORT TITLE)  Debtor(s). | CHAPTER: 7  CASE NO.:  8:08-12163-RK |
| --- | --- |

16. ☐ Movant seeks annulment of the automatic stay so that the filing of the new bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on ___MAY X___, ___2008___, at ___Richardson, Texas___ *(city, state).*

___SANDY SADEN___
*Print Declarant's Name*

_____
*Signature of Declarant*

08-85737

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 11 of ___*                  **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
| BEIER, | | |
| | Debtor(s). | CASE NO.: 8:08-12163-RK |

## PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF ___ORANGE_____

1.  I am over the age of 18 and not a party to the within action.  My business address is as follows:

    1665 Scenic Avenue, Suite 200, Costa Mesa, CA  92626

2.  **Regular Mail Service**: On __05-12-08____, pursuant to Local Bankruptcy Rule 9013-1, I served the documents described as: NOTICE OF MOTION and MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) on the interested parties at their last known address in this action by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at _____Costa Mesa_____, California, addressed as set forth on the attached list.

> ***NOTE**: If the Notice and Motion have been served pursuant to an Order Shortening Time ("Order"), you must file a Proof of Service that indicates that the notice and service requirements contained in the Order have been met.*

3.  See attached list for names and addresses of all parties and counsel that have been served  *(In the manner set forth in Local Bankruptcy Rule 7004-1(b), specify capacity in which service is made; e.g., Debtor(s), Debtor's(s') Attorney, Trustee, Trustee's Attorney, Creditors Committee, or 20 largest unsecured creditors, etc.)*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 05/12/08

Miho Ishida
*Typed Name*                                                    *Signature*

(08-65737)

---

*Revised October 2005*                                          **F 4001-1M.RP**

**Exhibit R**

| In re BEIER, | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 8:08-12163-RK |

## PROOF OF SERVICE ATTACHMENT

DEBTOR:
Jeffrey Scott Beier
Toni Renita Beier
27881 La Paz Rd. Ste. G
Laguna Niguel, CA 92677

JUNIOR LIENHOLDER:
Telesis Community Credit Union
c/o Buchalter Nemer & Barry Smith
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

JUNIOR LIENHOLDER:
Consolidated Builders
Attn: Managing Agent
27446 Betanzos Street
Mission Viejo, CA 92692

JUNIOR LIENHOLDER:
CZ Master Association
Keystone Pacific Property Management
16845 Von Karman, Suite 200
Irvine, CA 92606-4920

JUNIOR LIENHOLDER:
Summit Gate Association
c/o Merit Property Management
1 Polaris Way, Suite 100
Aliso Viejo, CA 92656-5356

ATTORNEY FOR DEBTOR:
R. Gibson Pagter
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, CA 92701

CHAPTER 7 TRUSTEE:
John M. Wolfe
5450 Trabuco Road
Irvine, CA 92620-5704

U.S. TRUSTEE:
411 W. Fourth Street, Suite 9041
Santa Ana, CA 92701-4593

(08-65737)

# Exhibit R

# EXHIBIT J

Exhibit R

<table>
<tr><td>

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number
Mark T. Domeyer, Esq., CA Bar No. 135008
MILES, BAUER, BERGSTROM & WINTERS, LLP
1665 Scenic Avenue, Suite 200
Costa Mesa, CA  92626
(714) 481-9100 / FAX (714) 481-9144
File No. 08-65737

☐ *Individual appearing without counsel*
☒ *Attorney for:* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(MERS), its assignees and/or successors in interest

</td><td>

FOR COURT USE ONLY

**FILED & ENTERED**

NOV 17 2008

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kent      DEPUTY CLERK

</td></tr>
</table>

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br>JEFFREY SCOTT BEIER AND<br>TONI RENITA BEIER<br>AKA TONI COOK<br>AKA TONI GALLUCCI,<br><br><div align="right">DEBTORS</div> | CHAPTER:  7<br><br>CASE NO.:  8:08-12163-RK<br><br>DATE:      July 15, 2008<br>TIME:      03:30 PM<br>CTRM:      5D<br>FLOOR:     5th |
|---|---|

### ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (Real Property)
### (MOVANT:  <u>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), its assignees and/or successors in interest  </u>)

1. The Motion was:    ☐ Contested    ☐ Uncontested    ☒ Settled by stipulation

2. The Motion affects the following real property (the "Property"):

    *Street Address:*          10 Tucson
    *Apartment/Suite No.:*
    *City, State, Zip Code:*    Coto De Caza Area, CA  92679

    Legal description or document recording number (including county of recording):    Deed/Mortgage Instrument No. 2005000170527, recorded
    in Orange County, CA

    ☐ See attached page.

3. The Motion is granted under:    ☐ 11 U.S.C. § 362(d)(1)    ☒ 11 U.S.C. § 362(d)(2)    ☐ 11 U.S.C. § 362(d)(3)
    ☐ 11 U.S.C. § 362(d)(4)

4. As to Movant, its successors, transferees and assigns ("Movant"), the stay of 11 U.S.C. § 362(a) is:

    a.    ☐ Terminated as to Debtor(s) and Debtor's(s') bankruptcy estate.

    b.    ☐ Annulled retroactively to the date of the bankruptcy petition filing.

    c.    ☒ Modified or conditioned as set forth in this Order.

5.    ☐ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable non-bankruptcy law,
    but may not pursue any deficiency claim against the Debtor(s) or property of the estate except by filing a Proof of Claim pursuant to 11 U.S.C.
    § 501.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised July 2007*                                                           **F 4001-1O.RP**

# Exhibit R

Order on Motion for Relief from Stay (Real Property) - *Page 2 of 3*

**F 4001-1O.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| BEIER, | | |
| | Debtor(s). | CASE NO.: 8:08-12163-RK |

6. ☐ Movant shall not conduct a foreclosure sale before the following date (*specify*):

7. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Attachment to this Order.

8. ☐ In chapter 13 cases, the trustee shall not make any further payments on account of Movant's secured claim after entry of this Order. The secured portion of Movant's claim is deemed withdrawn upon entry of this Order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant shall return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this Order.

9. ☐ The filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either:

   ☐ transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval.

   ☐ multiple bankruptcy filings affecting the Property.

   If recorded in compliance with applicable state laws governing notices of interest or liens in the Property, this Order is binding and effective under 11 U.S.C. § 362(d)(4)(A) and (B) in any other bankruptcy case purporting to affect the Property filed not later than two (2) years after the date of entry of this Order, except that a debtor in a subsequent bankruptcy case may move for relief from this Order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local governmental unit that accepts notices of interest or liens in real property shall accept a certified copy of this Order for indexing and recording.

10. This Court further orders as follows:

   a. ☒ This Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

   b. ☒ The 10-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

   c. ☐ The provisions set forth in the Extraordinary Relief Attachment shall also apply (*Use Optional Form F 4001-1O.ER*).

   d. ☒ See below for additional provisions:

   ORDERED, ADJUDGED AND DECREED that immediate relief is granted to allow Debtor to attempt to negotiate a workout or sale with the Movant.
   IT IS FURTHER ORDERED, ADJUDGED AND DECREED Movant shall disclose the identity of the note holder to the Debtor and provide documentation that it holds the note within thirty days of entry of the Order.
   IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the automatic stay in the above-entitled Bankruptcy case is terminated upon Discharge or by September 15, 2008 and extinguished as to automatic stay has been terminated as to Movant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), and Movant may proceed with a foreclosure of and hold a Trustee's Sale on the pursuant to applicable state law, provided it has disclosed the identity of the note holder within thirty days of entry of this order as provided in the preceding paragraph; and commence any action necessary to obtain complete possession of the subject Property generally described at **10 Tucson, Coto De Caza Area, CA 92679** ("Property" herein) and legally described as:
   DEED OF TRUST/MORTGAGE INSTRUMENT NO. 2005000170527,
   RECORDED AT ORANGE COUNTY, CALIFORNIA.

   IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the Discharge is entered before September 15, 2008, Movant may provide notice of sale but no sale may be held on or before September 16, 2008.

   ###

DATED: November 17, 2008

_____
United States Bankruptcy Judge

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised July 2007*

**F 4001-1O.RP**
Exhibit R

**F 4001-1O.RP**

| In re | (SHORT TITLE) | | CHAPTER: **7** |
|---|---|---|---|
| | **BEIER,** | Debtor(s). | CASE NO.: **8:08-12163-RK** |

## NOTE TO USERS OF THIS FORM:

1) Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
2) The title of the judgment or order and all service information shall be filled in by the party lodging the order.

### SERVICE LIST FOR ENTERED ORDER

Notice is given by the court that a judgment or order entitled (*specify*)   **ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362 (Real Property)** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **November 14, 2008**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

- Mark Domeyer    mdomeyer@mileslegal.com

- R G Pagter    gibson@pagterandmiller.com, pandm@pagterandmiller.com

- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

- John M Wolfe    john.wolfe1@earthlink.net, CA83@ecfcbis.com

☐ Service information continued on attached page

**SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

DEBTORS:
Jeffrey Scott Beier
27881 La Paz Rd. Ste. G
Laguna Niguel, CA  92677

Toni Renita Beier
1202 Avenida Buena Suerte
San Clemente, CA 92672

☐ Service information continued on attached page

**TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised July 2007*

**F 4001-1O.RP**

# Exhibit R

# EXHIBIT K

Exhibit R

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

LANDSAFE TITLE



**RECORDING REQUESTED BY:**
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

**WHEN RECORDED MAIL TO:**
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

TS No.  08-0008967
Title Order No. ▮▮▮▮▮▮

APN No. ▮▮▮▮▮▮

RECORDING REQUESTED BY:
DPS
ON BEHALF OF:  LS-SV

## NOTICE OF TRUSTEE'S SALE

# YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 03/02/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, as duly appointed trustee pursuant to the Deed of Trust executed by JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, dated 03/02/2005 and recorded 03/08/2005, as Instrument No. 2005000170527, in Book , Page  of Official Records in the office of the County Recorder of ORANGE County, State of California, will sell on 02/13/2009 at 03:00 PM, At the North front entrance to the County Courthouse, 700 Civic Center Drive West, Santa Ana

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust.  The street address and other common designation, if any, of the real property described above is purported to be: 10 TUCSON, COTO DE CAZA AREA, CA 92679.  The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $1,651,916.08.  It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

DATED: January 22, 2009
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA  93063
Phone/Sale Information: (800) 281-8219

By: _Rosie Ramos_
    Rosie Ramos,   Team Member
RECONTRUST COMPANY is a debt collector attempting to collect a debt.  Any information obtained will be used for that purpose.

**Exhibit R**    Form #__ (07/01)

# EXHIBIT L

Exhibit R

LANDSAFE TI: F



Recorded In Official Records, Orange County

Tom Daly, Clerk-Recorder

RECORDING REQUESTED BY:
RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

ATTN: Rosie Ramos
TS No. 08-0008967

TSG No. 08-8-051032

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT
TENANTS was the original Trustor, RECONTRUST COMPANY, N.A. was the original Trustee,
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original
Beneficiary under that certain Deed of Trust dated 03/02/2005 recorded on 03/08/2005 as
Instrument No. 2005000170527 in Book Page of Official Records of Orange County,
California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and
WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in
place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said
Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, WHOSE
ADDRESS IS: 1757 TAPO CANYON ROAD, SVW-88 SIMI VALLEY, CA 93063, as Trustee
under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or
neuter, and the singular number includes the plural.

DATED:January 22, 2009

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

)

State of:      CALIFORNIA

County of:     VENTURA    )

BY: _____
Miriam J. Paez, Assistant Secretary

On _/·22·09_ before me, ANGELICA DEL TORO, notary public, personally appeared Miriam J. Paez,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
         Angelica Del Toro



ANGELICA DEL TORO
Commission # 1559742
Notary Public - California
Los Angeles County
My Comm. Expires Mar 15, 2009

*Form sub (01/09)*

Exhibit.R

RECORDING REQUESTED BY:
DPS
ON BEHALF OF:  LS-SV

# EXHIBIT M

Exhibit R

LANDSAFE TITLE

**RECORDING REQUESTED BY:**
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

**WHEN RECORDED MAIL TO:**
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063
TS No. 08-0008967

Title Order No. ▮▮▮▮▮▮

APN No. ▮▮▮▮▮

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder



*(left margin, vertical text)* Recording Requested By: DPS On Behalf Of: "LS - SV"

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 03/02/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, dated 03/02/2005 and recorded 03/08/2005, as Instrument No. 2005000170527, in Book , Page of Official Records in the office of the County Recorder of ORANGE County, State of California, will sell on 07/02/2010 at 03:00 PM, AT THE NORTH FRONT ENTRANCE TO THE COUNTY COURTHOUSE, 700 CIVIC CENTER DRIVE WEST, SANTA ANA, ORANGE COUNTY, CA

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 10 TUCSON, COTO DE CAZA AREA, CA 92679. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $1,798,669.89. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: _____
Angelica Medina,  Team Member

RECONTRUST COMPANY is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

*Form nos (07/01)*

**Exhibit R**



**Countrywide®**
HOME LOANS

*FWBS-163*
*5401 North Beach Street*
*Fort Worth, Texas 76137*

**Notice Date:** January 5, 2009

**Account No.:**

Jeffrey S & Toni R Beier
27881 La Paz Rd Ste G Pmb 321
Laguna Niguel, CA 92677

**Property Address:**
10 Tucson
Coto DE Caza Area, CA 92679

## CALIFORNIA DECLARATION

I, _Melissa Head_ , of Countrywide's Home Retention Division declare on behalf of Countrywide, under penalty of perjury, and under the laws of the State of California, that Countrywide's business records maintained in the ordinary course of business reflect the following is true and correct:

1. ☐ On , contact was made with the borrower to assess their financial situation and to explore options for the borrower to avoid foreclosure.

2. ☑ The following efforts were made to contact the borrower to assess their financial situation and to explore options for the borrower to avoid foreclosure:
   - 0 *attempts to reach the homeowner by phone.*
   - *attempts to reach the homeowner by mail.*

3. ☐ Countrywide verified that the borrower has surrendered the property.

4. ☐ Countrywide has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

5. ☐ Countrywide has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

6. ☐ The provisions of California Civil Code Section 2923.5 do not apply because

_1/6/09  Fort Worth,  TX_
Date and Place

_Melissa Head_        _Loss Mit. Review Specialist_
Name of Signor                    Title and/or Position

CALDEC2H 8663 9/09/2008

Exhibit R





Jeffrey S & Toni R Beier
25226 pike rd
Laguna hills, CA  92653

**Property Address:**
10 Tucson
Coto DE Caza Area, CA 92679

## CALIFORNIA DECLARATION

I, Amy Flusche , of BAC Home Loans Servicing, LP, declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

BAC Home Loans Servicing, LP, has obtained from the Commissioner of Corporations a final order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

**AND**

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply pursuant to Section 2923.52 (b).

03/08/2010 __ Fort Worth, Tx
Date and Place

Amy Flusche
Name of Signor

Team Manager
Title and/or Position

Signature

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

CA Dec AB No 7  11214  07/29/2009

**Exhibit R**

# EXHIBIT N

Exhibit R

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

51.00

RECORDING REQUESTED BY:
**Stewart Title Guaranty F/K/A Landsafe Default Inc**

WHEN RECORDED MAIL TO:
**The Wolf Firm**
2955 Main Street, 2nd Floor
Irvine, California 92614
(949) 720-9200
(949) 608-0130 (Foreclosure Fax No.)

---

Trustee Sale No. 15-0233-11    Title Order No.███    APN:███    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**PLEASE NOTE THAT PURSUANT TO CIVIL CODE § 2923.3(c)(1) THE ABOVE STATEMENT IS
REQUIRED TO APPEAR ON THIS DOCUMENT BUT PURSUANT TO CIVIL CODE § 2923.3(a) THE
SUMMARY OF INFORMATION IS NOT REQUIRED TO BE RECORDED OR PUBLISHED AND THE
SUMMARY OF INFORMATION NEED ONLY BE MAILED TO THE MORTGAGOR OR TRUSTOR**

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days prior to
the date set for the sale of your property. No sale date may be set until approximately 90 days
from the date this notice of default may be recorded (which date of recordation appears on this
notice).

   **This amount is $840,000.88 as of 2/27/2015, and will increase until your account becomes
current.**

While your property is in foreclosure, you still must pay other obligations (such as insurance and
taxes) required by your note and deed of trust or mortgage. If you fail to make future payments
on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations
as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that
you do so in order to reinstate your account in good standing. In addition, the beneficiary or


Exhibit R

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

T.S. No.15-0233-11   Title Order No. ▮▮▮▮▮▮

mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-4**
> c/o The Wolf Firm, A Law Corporation
> 2955 Main Street, 2nd Floor
> Irvine, California 92614
> Attn: Foreclosure Department Phone: (949) 720-9200  /  Fax (949) 608-0130

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:  The Wolf Firm, A Law Corporation** is the duly appointed Trustee, Substituted Trustee, or acting as agent for the beneficiary under a Deed of Trust dated **3/2/2005**, executed by **JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor(s), to secure certain obligations in favor of



NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

T.S. No.15-0233-11   Title Order No. ▮▮▮▮▮▮

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS A NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., A CORPORATION,** as beneficiary, recorded **3/8/2005,** as Instrument No. **2005000170527** of Official Records in the Office of the Recorder of **Orange** County, California, **As more fully described on said Deed of Trust.**

Including the note(s) for the sum of **$1,470,000.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The full installment due on 9/1/2007 and all subsequent payments, together with any late charges, delinquent taxes, insurance premiums, impounds and advances; senior liens, Loan Modifications, Forbearance Agreements and encumbrances which are delinquent or become delinquent and any attorney's fees and court costs arising from the beneficiary's protection of its security must be cured as a condition of reinstatement.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for sale, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**A copy of the declaration required by California Civil Code section 2923.55(c) is attached hereto and incorporated herein by reference as Exhibit 'A'**

Dated: 2/27/2015                    **THE WOLF FIRM, A LAW CORPORATION, AS AGENT FOR THE BENEFICIARY BY**

By: _____

**Renae C. Murray, Trustee Sale Officer**

**The Wolf Firm,** IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Exhibit R**

**Bank of America**

Home Loans

Mail Stop: PTX A-65
7105 Corporate Drive
Plano, TX  75024

Notice Date:   January 6, 2015

Jeffrey S & Toni R Beier
25226 Pike Rd
Laguna Hills, CA  92653

Property Address:
10 Tucson
Coto DE Caza Area, CA  92679

## CALIFORNIA DECLARATION

I, _James A. Renfro_, Mtg Servicing Specialist Lead of Bank of America ("BANA") at BANA Home Loans, declare under the laws of the State of California, that I have reviewed Bank of America, N.A.'s business records maintained in the ordinary course of business, and having personal knowledge of the contents of those records, hereby state, that those business records reflect that:

BANK OF AMERICA,  has,

1. ☒ Contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure in accordance with California Civil Code §2923.55(b)(2).

2. ☐ Tried with due diligence to contact the borrower in order to assess their financial situation and to explore options for the borrower to avoid foreclosure in accordance with California Civil Code Section 2923.55(f), including by:

    a.    providing the borrower a toll-free telephone number providing access to a live representative during business hours;

    b.    posting a prominent link on its Internet website homepage to the information required by California Civil Code §2923.55(f)(5)(A)-(D);

    c.    sending a letter via first class mail to the borrower(s);

    d.    attempting to contact the borrower on three separate days at a different time each day;

    e.    sending a letter via certified mail, return receipt requested.

3. ☐ Determined that the provisions of California Civil Code §2923.55 do not apply because the loan was not for owner-occupied residential real property (principal residence), as defined by California Civil Code § 2924.15.

_Jan 6, 2015   Addison, TX_
Date and Place

_James A. Renfro_
Name of Signer

C3_7293 CA-DECLARATIONS 15896 02/18/2013

# Exhibit R

Summary of Notice of Default

NOTICE OF DEFAULT
SUMMARY OF KEY INFORMATION

The attached notice of default was sent to JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, in relation to 10 TUCSON, COTO DE CAZA AREA, CA 92679

This property may be sold to satisfy your obligation and any other obligation secured by the deed of trust or mortgage that is in default. JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS has, as described in the notice of default, breached the mortgage or deed of trust on the property described above.

IMPORTANT NOTICE: IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date the attached notice of default may be recorded (which date of recordation appears on the notice).

This amount is $840,000.88 as of 2/27/2015 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE
BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2005-4
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.


Exhibit R

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

If you would like additional copies of this summary, you may obtain them by calling (949) 720-9200.

Exhibit R

違約通知
關鍵信息摘要

本文中包含有關10 TUCSON, COTO DE CAZA AREA, CA 92679 的違約通知發送給JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS。

該房產可能被出售，以履行你的產權契約，抵押貸款及所應承擔的任何其它義務。

JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS
如違約通知中所描述，違反了上述房產的抵押貸款或產權契約。

**重要注意事項**：如果你的房產因為你逾期未付款而進入法庭程序，可能不經任何法庭行動而被出售。你可能有權利在法律允許的恢復賬戶時間內，支付你所有的逾期款項，加上應付的成本和費用，使你的帳戶保持良好信譽。
**時間通常是確定你財產出售日期的五個工作日之前。法拍日期要到本文中包含的違約通知被記錄在案（記錄日期出現在通知上）之後的90天，才可能確定。**

這一金額在$840,000.88 時為2/27/2015，並會增加，直到你的帳戶回歸正常。

當你的房產進入法拍程序，你仍須支付應付票據和產權契約或抵押貸款的其它付款義務（如保險費和稅金）。如果你沒有支付接下來的貸款，房地產稅，或財產保險及其它應付票據和產權契約或抵押貸款所要求的付款義務，受益人或抵押權人可以堅持要求你履行這些義務，以恢復你的帳戶信譽。此外，受益人或抵押權人可以以恢復你的帳戶為條件，要求你提供已經付清需償優先處理的放置在你產權上的債務，房地產稅及財產保險保費的可靠書面証據。

一旦你書面申請，受益人或抵押權人會提供給你分類支付的全部帳單金額。雖然要求全額付款，你可以不用支付賬戶中的全部未付款，但你必須支付所有已逾期的款項。但是，你和你的受益人或抵押權人在發布法拍書面通知前（本通知被記錄在案的3個月后），可以以書面形式相互同意，其中包括（1）提供更多的時間來轉讓房產及以其它方式糾正違約，或（2）建立付款時間表以糾正違約，或兩者兼而有之。

當本通知第一段中提到的時間段到期，如果法拍未進行，或者你和你的債權人之間有單獨的書面協議允許更長的時間，你隻有在支付你債權人所要求的全部金額后，才有權利停止債權人出售你的房產。

如果要了解必須支付的款項或安排支付以停止法拍，或者要了解你的房產進入法拍程序的其他原因，請聯系：
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO
JPMORGAN CHASE
BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES,
SERIES 2005-4
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

如果你有任何疑問，應咨詢律師及可能為你的貸款提供擔保的政府機構。

**盡管事實上你的房產已進入法拍程序，你可以上市出售你的房產。隻要出售程序在法拍程序結束之前完成即可。**

請記住，如果你不迅速採取行動，你可能失去法律權利。

如果你想獲得更多的本摘要副本，請撥打下列電話(949) 720-9200。


Exhibit R

채무 불이행 통지서
주요 정보 요약

첨부된 채무 불이행 통지서는 JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS 에게 발송되는 것이며,
이는 10 TUCSON, COTO DE CAZA AREA, CA 92679 에 관한것입니다.

이 부동산은 귀하의 채무 및 신탁 증서나 저당권에 의해 보증된 기타 채무를 이행하기

위해 매각될 수 있습니다. 채무 불이행 통지서에서 설명된 바와 같이, JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS 는(은) 상기 설명된 부동산의 저당권 또는 신탁 증서를 위반했습니다.

중요 통보: 귀하의 부동산이 체납으로 인해 차압이 진행 중인 경우, 그 부동산은 법원의 판결 없이 매각될 수 있으며, 귀하에게는 모든 미불금과 허용 가능 원가 및 법이 허용하는 시간 내에 계정 복구를 위한 비용을 지불함으로써 귀하의 계정을 완불 상태로 만들 수 있는 법적 권리가 있으며, 이 허용 시간은 보통 영업일로 부동산의 매각 예정일로부터 5일 전입니다. 부동산 매각 날짜는 채무 불이행 통지가 기록되는 날짜(통지서에 기재되어 있음)로부터 약 90일 이내로 정해질 수 없습니다.

이 금액은 $840,000.88 현재 2/27/2015 이며, 귀하의 계정이 기한 내

지불 상태가 될 때까지 증가할 것입니다.

귀하의 부동산 차압이 진행되는 동안에도 귀하는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무(보험, 세금 등)를 지불해야 합니다. 장래 대부금 지불, 부동산에 대한 세금 납부, 부동산에 대한 보험 유지, 또는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무에 대한 지불을 불이행하는 경우, 신탁수익자나 저당권자는 상기 사항이 이행되지 않으면 귀하의 계정이 완불 상태로 복구될 수 없다고 주장할 수 있습니다. 또한 신탁수익자나 저당권자는 복구의 조건으로 귀하에게 모든 선순위 담보권, 재산세 및 재해 보험료를 지불했다는 확실한 서면 증거를 제공할 것을 요구할 수 있습니다.

서면 요청시, 신탁수익자나 저당권자는 지불되어야 할 전체 금액에 대한 조목별 기재 문서를 제공할 것입니다. 완불을 요구한다 하더라도 귀하는 귀하 계정의 전체 미납 부분을 모두 지불할 필요는 없지만, 지불하는 당시 모든 채무 불이행 금액이 지불되어야 합니다. 그러나, 귀하와 귀하의 신탁수익자 또는 저당권자는 매각 통보의 게시 시점 이전에(이 채무 불이행 통지서가 기록된 후 3개월이 지나기 이전에는 가능하지 않음), (1) 부동산의 양도 또는 다른 방법으로 채무 불이행을 해결할 수 있는 추가적인 시간 제공, 또는 (2) 채무 불이행을 해결하기 위한 지급 일정의 확립, 또는 (1)과 (2)를 함께 수행하는 서면 사전 합의와 같은 해결 방법들이 있습니다.

본 통지서의 첫번째 단락에 나타난 만기일 이후, 차압이 진행되는 채무 또는 귀하와 귀하의 채권자에 의한 별도의 서면 합의에 의해 추가적인 시간이 허용되지 않는 한, 채권자가 요구하는 전체 금액을 지불하는 것이 귀하의 부동산 매각을 저지할 수 있는 유일한 법적 권리입니다.

귀하가 지불해야 할 금액을 알아보시려면, 차압을 중단하기 위한 지불 방법에 대해 합의하시려면 또는 다른 어떤 이유로 인해 귀하의 부동산에 대한 차압이 진행되는 경우, 다음으로 연락하십시오:

Exhibit R

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO
JPMORGAN CHASE
BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES,
SERIES 2005-4
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

질문이 있으신 경우, 변호사 또는 귀하의 대부금을 보증한 정부 기관에 연락하십시오.

귀하의 부동산에 대한 차압이 진행됨에도 불구하고 귀하는 부동산을 매각 처분할 수 있으며, 이때 부동산의
매각은 차압이 완료되기 전에 완료되어야 합니다.

신속히 행동하지 않으시는 경우, 법적 권리를 잃을 수 있는 사실을 명심하시기 바랍니다.

본 요약서의 추가적인 사본을 원하시는 경우, (949) 720-9200 (으)로
전화하시면 보내드립니다.

Exhibit R

AVISO DE INCUMPLIMIENTO
RESUMEN DE LA INFORMACIÓN CLAVE

El aviso de incumplimiento adjunto se envió a JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, en relación con 10 TUCSON, COTO DE CAZA AREA, CA 92679.

Es posible que esta propiedad sea subastada para cancelar su deuda y cualquier otra obligación garantizada por la escritura de fideicomiso o hipoteca en mora.  Tal como se

describe en el aviso de incumplimiento, JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS ha incumplido los términos
de la hipoteca o escritura de fideicomiso relacionadas con la propiedad antes mencionado.

    ADVERTENCIA DE IMPORTANCIA: SI LA PROPIEDAD VA A SER EJECUTADO POR UN ATRASO EN LOS PAGOS, PUEDE VENDERSE SIN NECESIDAD DE ENTABLAR NINGUNA ACCIÓN ANTE LA CORTE, pero usted tiene el derecho jurídico de regularizar su cuenta mediante el pago de todos los importes atrasados, más los costos y gastos permitidos, dentro del plazo permitido por ley para la regularización de la deuda, que es, por lo general, de cinco días hábiles antes de la fecha fijada para la subasta la propiedad.  No se puede fijar una fecha para la subasta hasta aproximadamente 90 días después de la fecha en que se registre el aviso de incumplimiento adjunto (fecha que figura en el aviso).

    El importe adeudado es de $840,000.88 al día 2/27/2015 y aumentará hasta que se ponga al corriente en los pagos.

    Mientras se mantenga vigente el procedimiento de ejecución de su propiedad, usted debe pagar otras obligaciones (tales como seguro e impuestos) exigidas en su vale y escritura de fideicomiso o hipoteca.  Si no realiza los próximos pagos del préstamo, los impuestos de la propiedad, el seguro de la propiedad u otras obligaciones requeridas por el vale y la escritura de fideicomiso o hipoteca, el beneficiario o acreedor hipotecario pueden insistir en que los pague como condición para regularizar su cuenta.  Asimismo, el beneficiario o acreedor hipotecario pueden exigirle, como condición para la regularización, que presente un comprobante confiable por escrito de que ha pagado todos los gravámenes principales, impuestos inmobiliarios y primas del seguro contra riesgos.

    Si usted lo solicita por escrito, el beneficiario o acreedor hipotecario le entregarán un resumen por escrito del importe total que debe pagar.  Es posible que usted no tenga que pagar la totalidad del monto adeudado de su cuenta, aunque la intimación haya incluido la totalidad de dicho monto, pero sí deberá pagar todos los importes vencidos a la fecha de la realización del pago. Sin embargo, antes de la fecha de publicación del aviso de venta (que no podrá ser menos de tres meses antes de la fecha de registro de este aviso de incumplimiento), usted y su beneficiario o acreedor hipotecario podrán acordar mutuamente por escrito, entre otras cosas: (1) un plazo adicional para subsanar el incumplimiento mediante una transferencia del bien o de otro modo; (2) un programa de pagos para subsanar el incumplimiento; o ambos.

    Una vez vencido el plazo mencionado en el primer párrafo del presente aviso, salvo que la obligación que se ejecuta o un acuerdo por escrito separado entre usted y su acreedor permitan un plazo mayor, usted solo tendrá el derecho jurídico de detener la subasta de la propiedad mediante el pago de todo el importe adeudado cuyo pago haya exigido el acreedor.

    Para averiguar el importe que debe pagar o coordinar un programa de pagos para suspender la ejecución, o si su propiedad va a ser ejecutada por cualquier otro motivo, comuníquese con:
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE
BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2005-4
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor



Exhibit R

Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

Si tiene alguna duda, debe consultar a un abogado o a la agencia de gobierno que asegura su préstamo.

Aun cuando ya se haya iniciado el procedimiento de ejecución, usted puede vender su propiedad, siempre que la venta se realice antes de la finalización del procedimiento de ejecución.

Recuerde que SI NO TOMA MEDIDAS DE INMEDIATO, ES POSIBLE QUE PIERDA SUS DERECHOS JURÍDICOS.

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono (949) 720-9200.



**Exhibit R**

### PABATID NG HINDI PAGKAKABAYAD
### BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of default (pabatid ng hindi pagkakabayad) ay ipinadala kay JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, sa may kaugnayan sa 10 TUCSON, COTO DE CAZA AREA, CA 92679.

Ang ari-arian na ito ay maaaring ibenta para masiyahan ang inyong obligasyon at alinmang iba pang obligasyong natibay ng deed of trust (papeles ng panagot sa utang) o isinangla na hindi nabayaran.  JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS ay, tulad nang inilarawan

sa notice of default (pabatid ng hindi pagkakabayad), hindi natupad na isinangla o deed of trust (papeles ng panagot sa utang) sa ari-arian na inilarawan sa itaas.

MAHALAGANG PAUNAWA:  KUNG  ANG INYONG ARI-ARIAN AY MAREREMATA SANHI NG INYONG PAGKUKULANG SA MGA KABAYARAN, MAAARI ITONG IBENTA NANG WALANG ANUMANG PAGKILOS MULA KORTE, at maaaring kayo ay may legal na karapatan na muling maisaayos para maturing na mainam na katayuan ang inyong account sa pamamagitan ng pagbabayad sa lahat ng inyong nakalipas na bayarin at ang mga pinahihintulutan na gastusin at singil sa loob ng panahon na pinahihintulutan ng batas para sa muling pagtatalaga ng inyong account, na karaniwang limang araw ng trabaho bago ang petsang itinakda para sa pagbebenta ng inyong ari-arian. Ang petsa ng pagbebenta ay hindi maaaring itakda hanggang makalipas ang 90 na araw mula sa petsa na ang pabatid ng hindi pagkakabayad ay maaaring maitala (aling petsa ng muling pagtatala na ipinapakita sa pabatid).

Ang halagang ito ay $840,000.88 base sa petsang 2/27/2015 at tataas hanggang ang inyong account ay masapanahon.

Habang ang inyong ari-arian ay inireremata, maaari ninyo pa rin bayaran ang iba pang mga obligasyon (tulad ng insurance at mga buwis) na hinihiling ang inyong tala at deed of trust (papeles ng panagot sa utang) o isinangla.  Kung kayo ay hindi makapagbayad sa utang, magbayad sa mga buwis sa ari-arian, kumuha ng insurance sa ari-arian, o bayaran ang iba pang mga obligasyon tulad nang hinihiling sa tala o deed of trust (papeles ng panagot sa utang) o isinangla, maaaring pilitin ng benepisyaryo o nag-sangla (nagkaloob ng isinangla) na gawin ninyo ito upang muling maitalaga ang inyong account patungo sa mainam na katayuan. Bilang karagdagan dito,  maaaring hilingin bilang kondisyon ng benepisyaryo o nag-sangla para sa muling pagtatalaga, na kayo ay magbigay ng mapagkakatiwalaang nakasulat na katibayan na inyong nabayaran ang mga lumang garantiya, buwis sa ari-arian, at mga hulog sa seguro para sa pinsala.

Sa inyong naibigay na nakasulat na kahilingan, ang benepisyaryo o nag-sangla ay magbibigay sa inyo ng nakasulat na detalyadong listahan ng kabuuang halaga na dapat ninyong bayaran.  Maaaring hindi ninyo kailangang bayaran ang kabuuan ng inyong hindi pa bayad na bahagi ng inyong account, kahit na hinihiling ang buong kabayaran, pero kailangan muna ninyong bayaran ang lahat ng mga halaga na nagkukulang ayon sa kasunduan sa panahon na naisagawa ang pagbabayad.  Gayunman, kayo at ang inyong benepisyaryo o nag-sangla ay maaaring magkasundo sa pamamagitan ng kasulatan bago ilagay ang abiso ng pagbebenta (na hindi maaaring mas maaga sa tatlong buwan makalipas na matala itong notice of default o abiso ng hindi pagkakabayad) sa, bukod sa iba pang mga bagay, (1) magbigay ng dagdag na panahon kung saan ang kalutasan sa hindi pagtutupad sa napagkasunduan sa pamamagitan ng paglilipat ng ari-arian o sa iba pang paraan; o (2) magtatag ng tipanan ng mga pagbabayad upang malutas ang inyong pagkukulang; o parehong (1) at (2).

Kasunod ng paglipas ng itinakdang panahon na tinutukoy sa unang talaga ng pabatid na ito, maliban kung ang obligasyon sa pagkakaremata o sa hiwalay na nakasulat na kasunduan sa pagitan ninyo at ng inyong creditor ay nagpapahintulot sa isang mas pinatagal na panahon, mayroon lamang kayong legal na karapatan na ihinto ang pagbebenta ng inyong legal na ari-arian sa pamamagitan ng pagbabayad ng buong halagang hinihingi ng inyong creditor.



Exhibit R

Upang malaman ang halagang kailangan ninyong bayaran, o para isaayos ang mga pagbabayad para maihinto ang pagkakaremata, o kung ang inyong ari-arian ay maremata sa iba pang kadahilanan, makipag-ugnayan sa:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE
BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2005-4
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn:  Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

Kung kayo ay mayroong kahit na anong katanungan, kailangan ninyong makipag-ugnayan sa isang abogado o ahensya ng pamahalaan na maaaring nagkaloob ng insurance sa inyong utang.

Sa kabila ng katotohanan na ang inyong ari-arian ay nireremata, maaari ninyong ihandog na ipagbenta ang inyong ari-arian, sa kundisyon na ang pagbebenta ay natapos bago ang pagtatapos ng pagkakaremata.

Tandaan, MAAARING MAWALA SA INYO ANG MGA LEGAL NA KARAPATAN KUNG HINDI KAYO KUMILOS KAAGAD.

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitan ng pagtawag sa (949) 720-9200.



Exhibit R

<div align="center">

THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
BẢN TÓM LƯỢC CÁC THÔNG TIN CHÍNH
</div>

Thông báo quá hạn trả nợ kèm theo đây được gửi cho JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, liên quan đến 10 TUCSON, COTO DE CAZA AREA, CA 92679. Căn nhà này có thể được bán để hoàn trả số tiền nợ của quý vị và bất kỳ khoản nợ nào khác theo khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà đã quá hạn trả. Như trình bày

trong thông báo quá hạn trả nợ, JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS đã vi phạm hợp đồng vay thế chấp mua nhà hoặc khế ước ủy thác đối với căn nhà mô tả ở trên.

THÔNG BÁO QUAN TRỌNG: NẾU CĂN NHÀ CỦA QUÝ VỊ BỊ TỊCH THU THẾ NỢ VÌ QUÝ VỊ KHÔNG TRẢ TIỀN ĐÚNG HẠN, CĂN NHÀ ĐÓ CÓ THỂ ĐƯỢC BÁN MÀ KHÔNG CẦN KIỆN RA TÒA, và theo luật quý vị có quyền trả nợ đầy đủ cho trương mục của mình bằng cách trả toàn bộ số tiền đã quá hạn trả cộng với các khoản chi phí và phí tổn được phép trong thời gian luật pháp cho phép để khôi phục lại tài khoản của quý vị, thường là năm ngày làm việc trước ngày dự định bán căn nhà của quý vị. Không được thu xếp ngày bán nhà cho tới khoảng 90 ngày kể từ ngày thông báo quá hạn trả nợ kèm theo có thể được lưu hồ sơ (ngày lưu hồ sơ như ghi trên thông báo).

Số tiền này là $840,000.88 tính tới ngày 2/27/2015 và sẽ tăng cho tới khi tài khoản của quý vị được thanh toán đầy đủ.

Trong thời gian căn nhà của quý vị bị tịch thu thế nợ, quý vị vẫn phải trả các khoản tiền khác (ví dụ như bảo hiểm và thuế) theo giấy vay nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà của quý vị. Nếu sau này quý vị không tiếp tục trả nợ khoản vay đó, trả thuế cho căn nhà đó, cung cấp bảo hiểm cho căn nhà, hoặc trả các khoản tiền khác theo qui định trong giấy cam kết trả nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà, người thụ hưởng hoặc người cho vay thế chấp mua nhà có thể yêu cầu quý vị làm như vậy để phục hồi tài khoản của quý vị. Ngoài ra, người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể đưa ra điều kiện tái phục hồi, đó là quý vị phải cung cấp chứng từ đáng tin cậy về việc đã trả tất cả các khoản tịch thu thế nợ trước đó, thuế bất động sản, và lệ phí bảo hiểm rủi ro nguy hiểm.

Sau khi nhận được yêu cầu bằng văn bản của quý vị, người thụ hưởng hoặc bên cho vay thế chấp mua nhà sẽ gửi cho quý vị một bản liệt kê chi tiết toàn bộ số tiền mà quý vị cần trả. Quý vị có thể không phải trả toàn bộ phần chưa trả trong trương mục của quý vị, mặc dù được yêu cầu trả toàn bộ, nhưng phải trả tất cả các khoản tiền đã quá hạn trả nợ vào thời điểm trả tiền. Tuy nhiên, quý vị và người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể thỏa thuận bằng văn bản trước thời điểm niêm yết thông báo bán (không được sớm hơn ba tháng sau khi thông báo vi phạm hợp đồng này được lưu hồ sơ) để, ngoài các việc khác, (1) gia hạn thêm thời gian khắc phục tình trạng quá hạn trả nợ bằng cách chuyển nhượng căn nhà hoặc theo cách khác; hoặc (2) sắp xếp kế hoạch trả góp để khắc phục tình trạng vi phạm hợp đồng của quý vị; hoặc cả (1) và (2).

Sau khi hết thời hạn được nhắc tới trong đoạn đầu tiên của thông báo này, trừ khi số tiền bị tịch thu thế nợ hoặc có thỏa thuận riêng bằng văn bản liệt kê chi tiết toàn bộ số tiền và chủ nợ cho phép gia hạn thêm thời gian, theo luật quý vị chỉ có quyền ngừng việc bán căn nhà của quý vị bằng cách trả toàn bộ số tiền mà chủ nợ yêu cầu.

Để biết số tiền mà quý vị phải trả, hoặc để thu xếp việc trả tiền nhằm ngăn chặn tình trạng tịch thu nhà thế nợ, hoặc nếu căn nhà của quý vị đang bị tịch thu thế nợ vì bất kỳ lý do nào khác, liên lạc:

<div align="center">

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE
BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2005-4
C/O The Wolf Firm, A Law Corporation
</div>



2955 Main Street, 2nd Floor
Irvine, California 92614
Attn:  Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

Nếu có thắc mắc, quý vị nên liên lạc với một luật sư hoặc cơ quan chính phủ có thể đã bảo hiểm khoản vay của quý vị.

Cho dù căn nhà của quý vị hiện đang bị tịch thu thế nợ của quý vị, quý vị có thể chào bán căn nhà đó, với điều kiện việc bán nhà phải kết thúc trước khi kết thúc thủ tục tịch thu nhà thế nợ.

Xin nhớ, QUÝ VỊ CÓ THỂ MẤT CÁC QUYỀN HẠN PHÁP LÝ NẾU KHÔNG HÀNH ĐỘNG NGAY.

Nếu muốn có thêm bản sao của thông báo này, quý vị có thể gọi (949) 720-9200.



# EXHIBIT O

Exhibit R

**STEWART TITLE**

RECORDING REQUESTED BY
The Wolf Firm

AND WHEN RECORDED MAIL TO:
The Wolf Firm
2955 Main Street, 2nd Floor
Irvine, California 92614
Phone: (949) 720-9200
Foreclosure Dept. Fax (949) 608-0130

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

30.00

T.S. No. 15-0233-11

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注: 本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

PLEASE NOTE THAT PURSUANT TO CIVIL CODE § 2923.3(d)(1) THE ABOVE STATEMENT IS
REQUIRED TO APPEAR ON THIS DOCUMENT BUT PURSUANT TO CIVIL CODE § 2923.3(a) THE
SUMMARY OF INFORMATION IS NOT REQUIRED TO BE RECORDED OR PUBLISHED AND THE
SUMMARY OF INFORMATION NEED ONLY BE MAILED TO THE MORTGAGOR OR TRUSTOR.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/2/2005. UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this
state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now
held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The
sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late
charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees,
charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale)
reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS**
Duly Appointed Trustee: **The Wolf Firm, A Law Corporation**
Recorded **3/8/2005** as Instrument No. **2005000170527** of Official Records in the office of the Recorder of **Orange**
County, California,
Street Address or other common designation of real property:  10 TUCSON
                                                              (UNINCORPORATED AREA)
                                                              COTO DE CAZA AREA, CA

A.P.N.: **755-241-13**

# Exhibit R

Date of Sale: 7/2/2015 at 1:30 PM
Place of Sale:    At the North front entrance to the County Courthouse at 700 Civic Center Drive West, Santa Ana, CA.

Amount of unpaid balance and other charges: $2,142,003.81, estimated

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (916) 939-0772 or visit this Internet Web site www.nationwideposting.com, using the file number assigned to this case 15-0233-11. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: 6/4/2015

The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Foreclosure Department (949) 720-9200
Sale Information Only: (916) 939-0772 www.nationwideposting.com

Phyllis Mendez, Foreclosure Officer

Exhibit R

## Summary of Notice of Sale

NOTICE OF SALE
SUMMARY OF KEY INFORMATION

The attached notice of sale was sent to JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, in relation to 10 TUCSON, (UNINCORPORATED AREA) , COTO DE CAZA AREA, CA.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST OR MORTGAGE DATED 3/2/2005.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.

IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

The total amount due in the notice of sale is $2,142,003.81.

Your property is scheduled to be sold on 7/2/2015 at 1:30 PM at At the North front entrance to the County Courthouse at 700 Civic Center Drive West, Santa Ana, CA.

However, the sale date shown on the attached notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code.  The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call  or visit this Internet Web site address , using the file number assigned to this case 15-0233-11.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

If you would like additional copies of this summary, you may obtain them by calling (949) 720-9200.



Exhibit R

出售通知
關鍵信息摘要

本文中包含的有關 10 TUCSON, (UNINCORPORATED AREA) , COTO DE CAZA AREA, CA

的出售通知發送給JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS.

你的 DEED OF TRUST OR MORTGAGE 於3/2/2005 已經逾期違約。

除非你採取行動保護你的房產，否則該房產將被公開出售。

如果你需要了解對你的訴訟程序的性質，應該聯系一名律師。

法拍書面通知的總金額是$2,142,003.81 。

你的房產預計出售的時間7/2/2015。你的房產預計出售的時間1:30 PM 出售地點 At the North front entrance to the County Courthouse at 700 Civic Center Drive West, Santa Ana, CA. 。

然而，根據加州民法第2924g，本文中包含的法拍書面通知上顯示的出售日期可能會被抵押權人，受益人，受托人，或法院一次或多次推遲。該法規定，作為對不在法拍現場人士的一種寬限，有關受托人推遲出售的信息要提供給你和公眾。如果你想了解你的房產出售日期是否已被推遲，以及（如適用）重新安排的法拍時間和日期，可致電 或訪問互聯網網址，用指定的檔案編號 15-0233-11 查找。

關於推遲法拍的信息，持續時間會很短，或僅在預定法拍時間前不久發布，可能不會立即反映在電話信息或互聯網的網址上。最好驗証推遲信息的方法是，出席預定的拍賣。

如果你想獲得更多的本摘要副本，請撥打下列電話(949) 720-9200。



Exhibit R

매각 공고
주요 정보 요약

첨부된 매각 공고는 JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS 에게 발송되는 것이며, 이는 10 TUCSON, (UNINCORPORATED AREA) , COTO DE CAZA AREA, CA 에 관한 것입니다.

귀하는3/2/2005 현재 날짜로 DEED OF TRUST OR MORTGAGE하에서 채무 불이행 상태입니다. 귀하의 부동산을 보호하기 위해 조치를 취하시지 않는 한, 귀하의 부동산은 공매로 매각 처분될 수 있습니다. 귀하에게 취해지는 이러한 법적 절차에 대한 설명이 필요하신 경우 변호사와 상담하십시오.

매각 공고에서 지불되어야 할 총액은$2,142,003.81 입니다.

귀하의 부동산은7/2/2015 1:30 PM 에 At the North front entrance to the County Courthouse at 700 Civic Center Drive West, Santa Ana, CA. 에서 매각되기로 일정이 잡혀 있습니다.

그러나 캘리포니아주 민법 2924g항에 준하여, 첨부된 매각 공고에 나타난 매각 일자는 저당권자, 신탁수익자, 수탁자, 또는 법정에 의해 한 번 이상 연기될 수 있습니다. 법에 따라, 수탁자 매각 연기에 관한 정보는 매각에 참석하지 않는 사람들에 대한 호의로서 귀하 및 일반 대중에게 제공되어야 합니다. 매각 일자가 연기되었는 지, 그리고 해당되는 경우 이 부동산의 연기된 매각 일자 및 시간에 대해 알기 원하시는 경우,  로 전화하시거나 또는 웹사이트 주소  를 방문해 본 사례 배정 파일 번 15-0233-11 를 사용하시면 됩니다.

매우 짧은 기간의 연기 또는 매각 일정과 가까운 시간에 발생하는 연기는 정보 안내 전화나 인터넷 웹사이트에 즉각적으로 나타나지 않을 수 있습니다. 연기 정보를 확인하는 최선의 방법은 매각 예정일에 참석하는 것입니다.

본 요약서의 추가적인 사본을 원하시는 경우, (949) 720-9200 (으)로 전화하시면 보내드립니다.



AVISO DE VENTA
RESUMEN DE LA INFORMACIÓN CLAVE

El aviso de venta adjunto se envió a JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, en relación con 10 TUCSON, (UNINCORPORATED AREA) , COTO DE CAZA AREA, CA

USTED HA INCUMPLIDO LOS TÉRMINOS DE UNA DEED OF TRUST OR MORTGAGE DE FECHA 3/2/2005. SI NO TOMA MEDIDAS PARA PROTEGER SU PROPIEDAD, PODRÁ SER VENDIDO EN UNA SUBASTA PÚBLICA.

SI USTED NECESITA QUE LE EXPLIQUEN LA NATURALEZA DEL PROCEDIMIENTO EN SU CONTRA, DEBE CONSULTAR A UN ABOGADO.

El importe total adeudado correspondiente al aviso de venta es $2,142,003.81.

La subasta de la propiedad se ha programado para el día 7/2/2015 1:30 PM en At the North front entrance to the County Courthouse at 700 Civic Center Drive West, Santa Ana, CA.

No obstante, conforme al Artículo 2924g del Código Civil de California, la fecha de la subasta que figura en el aviso adjunto podrá ser postergada una o más veces por el acreedor hipotecario, el beneficiario, el fideicomisario o un tribunal. La ley exige que, como cortesía para quienes no hayan asistido a la subasta, la información sobre las postergaciones solicitadas por el fideicomisario se ponga a disposición suya y del público en general. Si desea saber si la subasta de su propiedad se ha postergado, y, en tal caso, la nueva fecha propuesta para la subasta de esta propiedad, puede llamar al teléfono o visitar el sitio web , usando el número de registro asignado a este caso 15-0233-11.

Es posible que la información sobre las postergaciones por plazos muy breves o decididas muy próximo a la fecha programada para la subasta no figuren en la información que se ofrece por teléfono o en el sitio web. La mejor forma de verificar la información sobre las postergaciones es asistir a la subasta que se ha programado.

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono (949) 720-9200.



PABATID NG PAGBEBENTA
BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of sale (pabatid ng pagbebenta) ay ipinadala kay JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, bilang kaugnayan sa 10 TUCSON, (UNINCORPORATED AREA) , COTO DE CAZA AREA, CA.

IKAW AY HINDI NAKABAYAD SA ILALIM NG DEED OF TRUST OR MORTGAGE NA MAY PETSA NA  3/2/2005. MALIBAN KUNG KAYO AY KUMILOS UPANG MAPROTEKTAHAN ANG INYONG ARI-ARIAN, MAAARI ITONG IBENTA SA ISANG PAMPUBLIKONG PAGBEBENTA.

KUNG KINAKAILANGAN NINYO NG PAGPAPALIWANAG SA KALIKASAN NG PAGLILITIS LABAN SA INYO, KAILANGAN NINYONG MAKIPAG-UGNAYAN SA ISANG ABOGADO.

Ang kabuuang halaga na dapat bayaran sa notice of sale (pabatid ng pagbebenta) ay $2,142,003.81.

Ang inyong ari-arian ay nakatakdang ibenta sa 7/2/2015 1:30 PM sa At the North front entrance to the County Courthouse at 700 Civic Center Drive West, Santa Ana, CA.

Gayunman, ang petsa ng pagbebenta na ipinapakita sa nakakalip na notice of sale (pabatid ng pagbebenta) ay maaaring maantala ng isa o mas marami pang beses ng nagkaloob ng isinangla, benepisyaryo, pinagkatiwalaan, o ng korte, alinsunod sa Seksyon 2924g ng Kodigong Sibil ng California. Hinihiling ng batas na ang impormasyon tungkol sa mga pagpapaantala sa pagbebenta ng pinagkatiwalaan ay handang maibigay sa inyo at sa publiko, bilang isang kagandahang-loob doon sa mga hindi makakadalo sa bentahan. Kung nais ninyong malaman kung naantala ang inyong petsa ng pagbebenta, at kung naaangkop, ang natakda muli na oras at petsa sa bentahan ng ari-arian, maaari kayong tumawag sa  o bumisita dito sa Internet Web site address  gamit ang numero ng file na itinalaga sa kasong ito 15-0233-11.  Impormasyon tungkol sa mga pagpapaantala sa loob ng maikling panahon o maaaring maganap kalapit ng itinakdang pagbebenta ay maaaring hindi kaagad masaad sa impormasyon mula sa telepono o sa Internet Web site.  Ang pinakamainam na paraan upang mapatotohanan ang impormasyon sa pagpaantala ng petsa ay ang pagdalo sa nakatakdang petsa ng bentahan.

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitna ng pagtawag sa (949) 720-9200.



Exhibit R

THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

Thông báo rao bán kèm theo được gửi tới cho JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, liên quan đến 10 TUCSON, (UNINCORPORATED AREA) , COTO DE CAZA AREA, CA

QUÝ VỊ VI PHẠM QUY ĐỊNH GHI THEO DEED OF TRUST OR MORTGAGE NGÀY 3/2/2005.  TRỪ KHI QUÝ VỊ CÓ HÀNH ĐỘNG BẢO VỆ CĂN NHÀ CỦA QUÝ VỊ, CĂN NHÀ CÓ THỂ BỊ BÁN CÔNG KHAI.

NẾU QUÝ VỊ CẦN  LỜI GIẢI THÍCH VỀ TÍNH CHẤT CỦA THỦ TỤC CHỐNG LẠI QUÝ VỊ, QUÝ VỊ NÊN LIÊN LẠC VỚI MỘT LUẬT SƯ.

Toàn bộ số tiền phải trả trong thông báo bán là $2,142,003.81.

Căn nhà của quý vị được dự kiến sẽ bán vào 7/2/2015  1:30 PM tại At the North front entrance to the County Courthouse at 700 Civic Center Drive West, Santa Ana, CA.

Tuy nhiên, ngày bán ghi trong thông báo bán kèm theo có thể bị trì hoãn một hoặc nhiều lần bởi bên cho vay thế chấp, người thụ hưởng, người được ủy quyền, hoặc tòa án, chiếu theo Mục 2924g của Bộ Luật Dân Sự California. Luật pháp quy định thông tin về các trường hợp trì hoãn bán nhà của bên được ủy quyền phải được cung cấp cho quý vị và công chúng, để cập nhật cho những người không có mặt tại buổi rao bán. Nếu quý vị muốn biết ngày rao bán của quý vị có bị trì hoãn hay không, và, nếu thích hợp, ngày giờ mới cho việc rao bán căn nhà này, quý vị có thể gọi 916-939-0772 hoặc tới địa chỉ Internet này www.nationwideposting.com dựa trên mã số hồ sơ được ấn định cho vụ này 15-0233-11. Thông tin về các trường hợp trì hoãn rất ngắn hoặc xảy ra ngay sát ngày rao bán dự kiến có thể không được phản ánh ngay trong thông tin cung cấp qua điện thoại hoặc trên Internet. Cách tốt nhất để xác minh thông tin trì hoãn là tham dự buổi rao bán đã ấn định.

Nếu quý vị muốn có thêm bản sao của tài liệu trình bày tóm lược này, vui lòng gọi số (949) 720-9200.



# EXHIBIT P

Exhibit R

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

9.00

RECORDING REQUESTED BY:

Stewart Title Guaranty

AND WHEN RECORDED MAIL TO:

Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
866-931-0036

TS No.: **038636-CA**  Loan No.:

APN:

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Property Address: **10 TUCSON, COTO DE CAZA AREA, CALIFORNIA 92679**

## SUBSTITUTION OF TRUSTEE

**WHEREAS,** JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, RECONTRUST COMPANY, N.A. was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., SOLELY AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS was the original Beneficiary under that certain Deed of Trust dated 3/2/2005 and recorded on 3/8/2005, as Instrument No. 2005000170527, in the Official Records of **Orange** County, California, and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned substitutes a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned hereby substitutes **CLEAR RECON CORP.,** whose address is **4375 Jutland Drive Suite 200, San Diego, California 92117,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: _JUNE 13, 2016_

*BANK OF AMERICA, N.A AS ATTORNEY IN FACT FOR*

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-4**

_6/13/16_

_KEVIN C KERNS_
_ASSISTANT VICE PRESIDENT_

STATE of _ARIZONA_
COUNTY of _MARICOPA_

Before me, _Devon C Tellin_, the undersigned officer, on this, the _13TH_ day of _JUNE_, 20 _16_, personally appeared _KEVIN C KERNS_

☐ known to me or, ☒ through production of _ARIZONA DRIVER LICENSE_ as identification, who identified her/himself to be the _ASSISTANT VICE PRESIDENT_ of _BANK OF AMERICA, N.A._, the person and officer whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that (s)he had executed the foregoing instrument as the act of such corporation for the purpose and consideration described and in the capacity stated.

_Devon C Tellin 6-13-16_
Devon C Tellin
(Type or print name below signature)

(seal)



DEVON C TELLIN
NOTARY PUBLIC - ARIZONA
Pinal County
My Commission Expires
January 27, 2020

Page 1 of 1

Document Number:                Page: 1 of 1

Exhibit R

# EXHIBIT Q

Exhibit R

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder



9.00

RECORDING REQUESTED BY:
**Clear Recon Corp.**
**STEWART TITLE**
AND WHEN RECORDED MAIL TO
**Clear Recon Corp.**
4375 Jutland Drive Suite 200
San Diego, California 92117

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **038636-CA**                                          Reference No.
APN:
Property Address: 10 TUCSON, COTO DE CAZA AREA, CALIFORNIA 92679

# NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-4** , as Beneficiary under a Deed of Trust dated **3/2/2005**, executed by **JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded 3/8/2005, **as Instrument No. 2005000170527**, of Official Records in the Office of the Recorder of **Orange** County, California, describing land therein as more fully described on the above referenced deed of trust.

said obligations including one note for the sum of **$1,470,000.00**.

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on 3/3/15 document number 2015000109060 in the office of the Recorder of **Orange** County, California of Official Records.

**NOW THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated:        **JUN 3 0 2016**                    **CLEAR RECON CORP.**

                                                   By: _____
                                                        Authorized Signor    **CLARIBEN HUNTINGTON**



Exhibit R

# EXHIBIT R

Exhibit R

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

18.00

RECORDING REQUESTED BY:
**STEWART TITLE**
WHEN RECORDED MAIL TO:

**Clear Recon Corp.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**
**866-931-0036**

T.S. No.: 038636-CA
APN: ▮▮▮▮▮▮▮
SPACE ABOVE THIS LINE FOR RECORDER'S USE

Property Address: 10 TUCSON, COTO DE CAZA                    Title Order No. ▮▮▮▮▮▮
AREA, CALIFORNIA 92679

# NOTICE OF DEFAULT

**Pursuant to CA Civil Code 2923.3**
**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may
have legal right to bring your account in good standing by paying all of your past due payments plus
permitted costs and expenses within the time permitted by law for reinstatement of your account, which
is normally five business days prior to the date set for the sale of your property. No sale date may be set
until approximately 90 days from the date this notice of default may be recorded (which date of
recordation appears on this notice).

This amount is $994,151.37 as of 6/30/2016, and will increase until your account becomes current. While
your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay
taxes on the property, provide insurance on the property, or pay other obligations as required in the note
and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate
your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of
reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and
hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire
amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though

CRC NOD 09122014

Exhibit R

Trustee Sale No.: **038636-CA**  Title Order No.: ███████████

full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-4**
**C/O Clear Recon Corp.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**
**Phone: 858-750-7600**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: CLEAR RECON CORP. is either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 3/2/2005, executed by **JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded 3/8/2005, as Instrument No. 2005000170527, of Official Records in the Office of the Recorder of Orange County, California, encumbering the land as fully described on said Deed of Trust

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

 Installment of Principal and Interest plus impounds and/or advances which became due on 9/1/2007 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

CRC NOD 09122014

# Exhibit R

Trustee Sale No.: **038636-CA**  Title Order No. ▮▮▮▮▮▮▮

That by reason thereof, **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-4, the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.**

**CLEAR RECON CORP.**

**Date Executed:** **JUN 3 0 2016**     BY: _____

                                           **, Authorized Signor**

**CLARIBEN HUNTINGTON
CLEAR RECON CORP.
4375 Jutland Drive Suite 200
San Diego, California 92117**

CRC NOD 09122014

Exhibit R

**Bank of America**



**Home Loans**

*Mail Stop: PTX A-65*
*7105 Corporate Drive*
*Plano, TX 75024*

Notice Date:    January 6, 2015

Jeffrey S & Toni R Beier
25226 Pike Rd
Laguna Hills, CA 92653

Property Address:
10 Tucson
Coto DE Caza Area, CA 92679

## CALIFORNIA DECLARATION

I, James A. Renfro , 'Mtg Servicing Specialist Lead of Bank of America ("BANA") at BANA Home Loans, declare under the laws of the State of California, that I have reviewed Bank of America, N.A.'s business records maintained in the ordinary course of business, and having personal knowledge of the contents of those records, hereby state, that those business records reflect that:

BANK OF AMERICA, has,

1. ☒ Contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure in accordance with California Civil Code §2923.55(b)(2).

2. ☐·Tried with due diligence to contact the borrower in order to assess their financial situation and to explore options for the borrower to avoid foreclosure in accordance with California Civil Code Section 2923.55(f), including by:

    a.    providing the borrower a toll-free telephone number providing access to a live representative during business hours;

    b.    posting a prominent link on its internet website homepage to the information required by California Civil Code §2923.55(f)(5)(A)-(D);

    c.    sending a letter via first class mail to the borrower(s);

    d.    attempting to contact the borrower on three separate days at a different time each day;

    e.    sending a letter via certified mail, return receipt requested.

3. ☐ Determined that the provisions of California Civil Code §2923.55 do not apply because the loan was not for owner-occupied residential real property (principal residence), as defined by California Civil Code § 2924.15.

Jan 6, 2015   Addison ,TX
Date and Place

James A Renfro
Name of Signer

C3_7293 CA-DECLARATIONS 15896 02/18/2013

# Exhibit R

# EXHIBIT S

Exhibit R

**STEWART TITLE**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

12.00

RECORDING REQUESTED BY
And When Recorded Mail To:

**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**
**Phone: 866-931-0036**

T.S. No. **038636-CA**
APN

Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

### Pursuant to CA Civil Code 2923.3
### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 3/2/2005. UNLESS YOU TAKE ACTION TO
PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION
OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER

On **11/10/2016** at 9:00 AM, **CLEAR RECON CORP.**, as duly appointed trustee under and pursuant to Deed of
Trust recorded 3/8/2005, as Instrument No. 2005000170527, of Official Records in the office of the County
Recorder of **Orange** County, State of **CALIFORNIA** executed by:

**JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A
STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A
CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS
ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND
AUTHORIZED TO DO BUSINESS IN THIS STATE:

**ON THE FRONT STEPS TO THE ENTRANCE OF THE ORANGE CIVIC CENTER, 300 E. CHAPMAN,
ORANGE, CA 92866**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said
County and State described as:

**MORE FULLY DESCRIBED ON SAID DEED OF TRUST**

The street address and other common designation, if any, of the real property described above is purported to be:
**10 TUCSON**
**COTO DE CAZA AREA, CALIFORNIA 92679**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common
designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or
encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to

CRC NOS 012914

Exhibit R

T.S. No. **038636-CA**

# NOTICE OF TRUSTEE'S SALE

pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$2,229,664.76**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(844) 477-7869** or visit this Internet Web site **WWW.STOXPOSTING.COM**, using the file number assigned to this case **038636-CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR SALES INFORMATION: **(844) 477-7869**

Date Executed: _10/14/16_

**CLEAR RECON CORP.**

Monica Chavez ,Authorized Signature

**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**

CRC NOS 012914

Exhibit R

# EXHIBIT T

Exhibit R

RECORDING REQUESTED BY:
Clear Recon Corp

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder



WHEN RECORDED MAIL TO:
**Clear Recon Corp**
**4375 Jutland Drive**
**San Diego, California 92117**
**866-931-0036**

**T.S. No.: 038636-CA**
**APN:** ▮▮▮▮▮▮▮▮▮

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**Property Address: 10 TUCSON, COTO DE**
**CAZA AREA, CALIFORNIA 92679**

Title Order No.: 0

# NOTICE OF DEFAULT

### Pursuant to CA Civil Code 2923.3
**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT
ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA
NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG
TÀI LIỆU NÀY

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION, and you may have legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days
prior to the date set for the sale of your property. No sale date may be set until
approximately 90 days from the date this notice of default may be recorded (which date of
recordation appears on this notice).**

**This amount is $1,885,886.84 as of 10/12/2022, and will increase until your account becomes
current. While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage. If you fail to
make future payments on the loan, pay taxes on the property, provide insurance on the
property, or pay other obligations as required in the note and deed of trust or mortgage, the
beneficiary or mortgagee may insist that you do so in order to reinstate your account in**

CRC NOD 02282018

# Exhibit R

Trustee Sale No.: **038636-CA**  Title Order No.: **0**

good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-4

C/O Clear Recon Corp
4375 Jutland Drive
San Diego, California 92117
Phone: (858) 750-7777

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  CLEAR RECON CORP. is either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 3/2/2005, executed by JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded 3/8/2005, as Instrument No. 2005000170527, of Official Records in the Office of the Recorder of Orange County, California, encumbering the land as fully described as:

CRC NOD 09122014

Exhibit R

Trustee Sale No.: **038636-CA**  Title Order No.: **0**

MORE ACCURATELY DESCRIBED IN SAID DEED OF TRUST.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 9/1/2007 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-4, the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

CLEAR RECON CORP.

Date Executed:  10/12/2022     BY: _____

EDWARD JAMIR
FORECLOSURE MANAGER

**Authorized Signatory for Trustee**
**CLEAR RECON CORP.**
**4375 Jutland Drive**
**San Diego, California 92117**

See Attached Declaration

CRC NOD 09122014

Exhibit R

Bank of America

Home Loans

*Mail Stop: PTX A-65*
*7105 Corporate Drive*
*Plano, TX 75024*

Notice Date:    January 6, 2015

Jeffrey S & Toni R Beier
25226 Pike Rd
Laguna Hills, CA  92653

Property Address:
10 Tucson
Coto DE Caza Area, CA  92679

## CALIFORNIA DECLARATION

I, James A. Renfro , Mtg Servicing Specialist Lead of Bank of America ("BANA") at BANA Home Loans, declare under the laws of the State of California, that I have reviewed Bank of America, N.A.'s business records maintained in the ordinary course of business, and having personal knowledge of the contents of those records, hereby state, that those business records reflect that:

BANK OF AMERICA, has,

1. ☒ Contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure in accordance with California Civil Code §2923.55(b)(2).

2. ☐ Tried with due diligence to contact the borrower in order to assess their financial situation and to explore options for the borrower to avoid foreclosure in accordance with California Civil Code Section 2923.55(f), including by:

   a.    providing the borrower a toll-free telephone number providing access to a live representative during business hours;

   b.    posting a prominent link on its internet website homepage to the information required by California Civil Code §2923.55(f)(5)(A)-(D);

   c.    sending a letter via first class mail to the borrower(s);

   d.    attempting to contact the borrower on three separate days at a different time each day;

   e.    sending a letter via certified mail, return receipt requested.

3. ☐ Determined that the provisions of California Civil Code §2923.55 do not apply because the loan was not for owner-occupied residential real property (principal residence), as defined by California Civil Code § 2924.15.

Jan 6, 2015  Addison, TX
Date and Place

James A Renfro
Name of Signer

C3_7293 CA-DECLARATIONS  15896 02/18/2013

Exhibit R

# EXHIBIT U

Exhibit R

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

RECORDING REQUESTED BY:
Clear Recon Corp

AND WHEN RECORDED MAIL TO
Clear Recon Corp
4375 Jutland Drive
San Diego, California 92117

T.S. No.: 038636-CA
APN:⬛

SPACE ABOVE THIS LINE FOR RECORDER'S USE
Reference No. ⬛

Property Address: **10 TUCSON, COTO DE CAZA AREA, CALIFORNIA 92679**

# NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-4** , as the present **Beneficiary** under a Deed of Trust executed by **JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded **3/8/2005, as Instrument No. 2005000170527,** of Official Records in the Office of the Recorder of **Orange** County, California, describing land therein as more fully described on the above referenced deed of trust.

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on 7/1/2016 Instrument number 2016000302040 in the office of the Recorder of **Orange** County, California of Official Records.

**NOW THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw the acceleration of the debt and said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated: _10/14/22_

CLEAR RECON CORP., Successor Trustee

By:_____

EDWARD JAMIR
Authorized Signor FORECLOSURE MANAGER

Page 1 of 1                                CRCNORCA 05122020

Exhibit R

# EXHIBIT V

Exhibit R

RECORDING REQUESTED BY
And When Recorded Mail To:

**CLEAR RECON CORP.**
**8880 Rio San Diego Drive, Suite 725**
**San Diego, California 92108**
**Phone: 866-931-0036**

T.S. No. **038636-CA**

APN: ███████

Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

### Pursuant to CA Civil Code 2923.3
### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **3/2/2005**. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER

On **3/20/2023 at 9:00 AM, CLEAR RECON CORP.**, as duly appointed trustee under and pursuant to Deed of Trust recorded **3/8/2005 as Instrument No. 2005000170527** of Official Records in the office of the County Recorder of **Orange** County, State of **CALIFORNIA** executed by: **JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

**AUCTION.COM, DOUBLETREE BY HILTON HOTEL ANAHEIM - ORANGE COUNTY, 100 THE CITY DRIVE, ORANGE, CA 92868**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: **MORE ACCURATELY DESCRIBED IN SAID DEED OF TRUST.**

The street address and other common designation, if any, of the real property described above is purported to be:
**10 TUCSON, COTO DE CAZA AREA, CALIFORNIA 92679**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$2,757,616.74**

CRC NOS 11132020

**Exhibit R**

T.S. No. **038636-CA**

## NOTICE OF TRUSTEE'S SALE

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned or its predecessor caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(800) 280-2832** or visit this Internet Web site **WWW.AUCTION.COM**, using the file number assigned to this case **038636-CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

**NOTICE TO TENANT:** Effective January 1, 2021, you may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **(855) 313-3319**, or visit this internet website www.clearreconcorp.com, using the file number assigned to this case **038636-CA** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

FOR SALES INFORMATION: **(800) 280-2832**

Date Executed: **JAN 2 3 2023**

**CLEAR RECON CORP.**

**MONICA CHAVEZ**  ,Authorized Signature

**CLEAR RECON CORP.**
**8880 Rio San Diego Drive, Suite 725**
**San Diego, California 92108**

CRC NOS

# Exhibit R