1                    UNITED STATES BANKRUPTCY COURT

2           CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA

3                            --oOo--

4  In Re:                        )  Case No. 8:23-bk-10898-TA
                                 )
5  JEFFREY S. BEIER,             )  Chapter 7
                                 )
6  Debtor.                       )  Santa Ana, California
                                 )  Tuesday, 11:00 A.M.
7  ----------------------------X  January 9, 2024

8
                                    OBJECTION TO PROOF OF
9                                   CLAIM 2-1 FILED BY THE
                                    BANK OF NEW YORK MELLON,
10                                  FKA THE BANK OF NEW YORK
                                    SUCCESSOR TRUSTEE TO
11                                  JPMORGAN CHASE BANK, N.A.,
                                    AS TRUSTEE FOR THE BEAR
12                                  STEARNS ALT-A TRUST,
                                    MORTGAGE PASSS-THROUGH
13                                  CERTIFICATES, SERIES 2005-
                                    04
14

15                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE THEODOR ALBERT
16               UNITED STATES BANKRUPTCY JUDGE

17

18  APPEARANCES:

19  For the Debtor:          DAVID R. HABERBUSH, ESQ.
                             Haberbush, LLP
20                           444 West Ocean Boulevard
                             Suite #1400
21                           Long Beach, California  90802

22

23

24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.

```
 1   For The Bank of New York  JOSEPH C. DELMOTTE, ESQ.
     Mellon FKA The Bank of    Aldridge Pite, LLP
 2   New York, Successor       888 Rio San Diego Drive
     Trustee to JPMorgan       Suite #725
 3   Chase Bank, N.A., as      San Diego, California  92108
     Trustee for the Bears
 4   Stearns ALT-A Trust,
     Mortgage Pass-Through
 5   Certificates, Series
     2005-04
 6
     For the Chapter 7         WILLIAM G. MALCOLM, ESQ.
 7   Trustee, A. Cisneros:     Malcolm Cisneros, A Law
     Corporation
 8                             2112 Business Center Drive
                               Irvine, California  92612
 9
     Court Recorder:           Audrey McCall
10                             U.S. Bankruptcy Court
                               Central District of California
11                             Ronald Reagan Federal Building and
                               United States Courthouse
12                             411 West Fourth Street
                               Santa Ana, California  92701-4593
13                             (855) 460-9641

14   Court Transcriptionist:   Ruth Ann Hager, C.E.T.**D-641
                               Ben Hyatt Certified Deposition
15                                Reporters
                               17835 Ventura Boulevard
16                             Suite #310
                               Encino, California  91316
17

18

19

20

21

22

23

24

25
```

P 888.272.0022 F 818.343.7119    BEN HYATT    www.benhyatt.com
Certified Deposition Reporters

Page                                                                          3

1          SANTA ANA, CALIFORNIA, TUESDAY, JANUARY 9, 2024

2                              11:02 A.M.

3                              --oOo—

4          THE COURT:  #12.00 is the matter of Jeffrey

5    Beier.  This is the debtor's objection to claim number 2.10

6    filed by Bank of New York Mellon.

7          Appearances, please.

8          MR. HABERBUSH:  Your Honor, this is David

9    Haberbush on behalf of the debtor and objecting party.

10         MR. DELMOTTE:  Good morning, Your Honor.  Joe

11   Delmotte for the claimant, Bank of New York Mellon, the

12   Trustee.

13         MR. MALCOLM:  And good morning, Your Honor.

14   William Malcolm for the Trustee and happy new year.

15         THE COURT:  Yes, happy new year to all.

16         Okay.  So I gave you a fairly extensive

17   tentative, I think.  Mr. Haberbush, the conclusion is I'm

18   not impressed.  I think the lien of the bank remains

19   attached to the proceeds.  What I can't quite figure out is

20   whether all of the monies being held in that block account

21   are liened or only part of it and that's more a function of

22   arithmetic than anything else.

23         Can anybody fill me in on that part?

24         MR. HABERBUSH:  Your Honor, this is David --

25         MR. MALCOLM:  Go ahead.

P 888.272.0022 F 818.343.7119        BENHYATT        www.benhyatt.com
                                     Certified Deposition Reporters

EXHIBIT "F"                          Page 138

Page                                                                4

1          MR. HABERBUSH:  This is David Haberbush on behalf

2    of the debtor.  Your Honor, I can elucidate that.  I think

3    that's an issue between the Trustee and the secured

4    creditor.  I do have a couple of comments on the tentative

5    once we've disposed of this issue.

6          THE COURT:  Sure.  Let's get into it.  Let's talk

7    about the tentative.  How did I get it wrong?

8          MR. HABERBUSH:  Very well, Your Honor.  I think

9    there's a couple of things where there are issues.  The

10   Court did note and the declaration of Jae Min does state

11   that the endorsement on the promissory note to JPMorgan

12   Chase Bank as Trustee was voided.  It appears that the

13   Court concludes based upon the declaration of Jae Min that

14   the secured creditor here, Bank of New York Mellon, as

15   successor trustee to JPMorgan Chase, is the proper holder

16   of the note and deed of trust based upon paragraph 6, lines

17   24 through 27, of the declaration of Jae Min, which -- and

18   I will just read the pertinent part:

19          "BONY was in possession either directly or

20       through the use of an authorized agent and/or document

21       custodian of the endorsed blank note at the time Bank

22       of New York filed its proof of claim."

23          What is it, Your Honor?  Is it that the bank held

24   the note or someone else held the note?  This declaration

25   is not dispositive or definitive as to who held the note

Page                                                                    5

1   and how that note was held.  It just says it was an

2   either/or situation, not a definitive statement.

3          Secondly, the note, according to the proof of

4   claim, is held by Bank of New York as successor to JPMorgan

5   Chase Bank as trust -- as a successor trustee.  Yet, we

6   have nothing in the record showing how this creditor became

7   the successor to JPMorgan Chase Bank, the endorsee on the

8   note, which was voided.

9          So we have some missing links here, as far as I'm

10  concerned, Your Honor.

11         THE COURT:  Okay.  You may care to comment on

12  that and I have some comments I'd like to follow with, but

13  if anybody wants to intervene, I'd be glad to hear you.

14  Mr. Haberbush -- go ahead.

15         MR. DELMOTTE:  I was just going to say, Your

16  Honor.  Both our opposition and the Court's tentative

17  ruling pretty thoroughly analyzed this issue and assessing

18  (phonetic) to it and so we would be prepared to just submit

19  on the Court's tentative ruling.  We think the declaration

20  clearly establishes that BONY is the noteholder.  Whether

21  or not they're in direct possession or they're in

22  possession of the note endorsement by way of an authorized

23  agent or custodian, that suffices for purpose of standing.

24         THE COURT:  Right.  Let me just observe that

25  about 10 to 15 years ago the -- "show me the original note"

Page                                                                          6

1  was quite the rage in all kinds of litigation in Bankruptcy

2  Courts.  And everybody said, well, you know, there -- with

3  the securitization mania coming out of Wall Street resolved

4  its bundling of paper and sometimes it got a little bit

5  unclear of who was holding the bundle at any particular

6  time, and so this was seized upon as a basis for a lot of

7  things.

8          But in my experience, it all amounted, in most

9  cases, to nothing.  Yes, it was a rather poor way to run

10 business.  Hopefully, the banking system has corrected

11 itself, but I do not know that it has.

12         But I'm really asked to make a very simple

13 determination, which is who is the holder, the "holder"

14 being a term of law that is defined.  And I conclude

15 ultimately that it has to be BONY and admittedly, through

16 servicers and agents, but it has to BONY because (a) it's

17 logical and (b) -- and this is where I'm posing a question

18 to you -- there's nobody else.  Nobody else has come

19 forward and it's been a long time.  It's been now, what, 15

20 years or something like that.  And if somebody else were

21 out there who is in a deficit position of 2.7 million

22 dollars, you'd rather expect that they would be here and

23 say, wait a minute, this got mislaid and I'm the one who

24 really -- you know, we don't see that.

25         What we see is another example of a thing I saw

Page                                                                    7

1   15, 20 years ago, which is a lot of sort of rushed and

2   substandard paperwork that what somebody who was trying to

3   make into a cause of action.  I didn't find a single one of

4   those cases that ever amounted to anything.  And I think

5   the other courts in this land, for the most part, have come

6   to the same conclusion, and that's where I think this case

7   is.  I think it's pretty clear that BONY is the holder and

8   they're the holder because they have the paperwork and the

9   paperwork is consistent with their argument that they are

10  the holder.

11          Now, you do raise a suspicious anomaly.  Why does

12  somebody seek fit to strike out one of these other banks?

13  I don't know the answer to that.  Apparently, you don't

14  know it either.  But does it amount to something that I

15  find substantial enough to deny status of holder, Mr.

16  Haberbush?  The answer is no.

17          In fact, all you have is arguments.  You have

18  arguments, but no evidence whatsoever and the argument that

19  you were proposing is a very large issue, which is somebody

20  else is at the -- somebody has got to be the holder.  Okay.

21  It can't be, oh, it's a gift.  No, that conclusion does not

22  follow under any theory.  Somebody is the holder.

23          And so what I have here is evidence to a 99.9

24  percent certitude that it's BONY.  You have an argument and

25  no evidence that maybe there's some reason to worry about

P 888.272.0022  F 818.343.7119          **BENHYATT**
                                        Certified Deposition Reporters          www.benhyatt.com

Page                                                                        8

1  this, Judge.  Well, you know what?  That might have even

2  had some traction ten years ago, but not anymore.  So for

3  that reason, I'm not impressed by the argument that they're

4  not the holder.

5          Besides, you've got another problem -- or I

6  should say, Mr. Beier does, and that's the plain preclusion

7  argument.  Let's assume for purposes of this discussion

8  that there was, in fact, some real argument here, as

9  opposed to just a Hail May pass.  It must have been or

10  should have been raised not once, but twice before and

11  wasn't.  My reading of the law is that there's still a

12  doctrine in this country called claim preclusion.  What

13  that means is, if you're in a lawsuit with somebody, you

14  need to put everything in front of the court, not just a

15  few things and see how they fly and come back a year later

16  or two years later with another theory and then a third

17  time.  No, there is a consequence and it's the claim

18  preclusion document.  It's sometimes referred to as *res*

19  *judicata*, but claim preclusion and issue preclusion are all

20  sort of mixed up together and what most of us talk about is

21  collateral estoppel.

22          But we've had occasion in this case to look more

23  carefully at it and I think it's very clear to me that had

24  there been any real substance to this theory, it should

25  have been raised before, but wasn't and a summary judgment

Page                                                                    9

1 was issued earlier.  I think there was a dismissal with

2 prejudice on both occasions.  That's a determination of any

3 remaining issue.

4          So even if there were something to your -- I

5 described it as a Hail Mary pass.  I could come up with

6 other metaphors.  Even if there were something to that, it

7 still doesn't save your case because it should have been

8 raised earlier and it wasn't.

9          And I just don't know what Mr. Beier thinks here.

10 I mean, can he just take the position he doesn't have to do

11 anything to service this loan for 10, 15 years and somehow

12 expect it to come back to him?  I mean, I don't know what

13 alternative universe that's springing from, but it doesn't

14 strike me as even passing the most basic test of logic, but

15 again, it's possible that I'm missing something.

16          So Mr. Haberbush, have I responded to your

17 inquiry?

18          MR. HABERBUSH:  For the most part you have, Your

19 Honor.  There's one thing I think that is the theme that

20 runs throughout these number of years in this dispute and

21 that is, Mr. Beier has been trying through litigation of

22 other methods to figure out exactly who it is he is

23 supposed to be negotiating with and pay and he never did

24 get that answer, and that is why this proof of -- this

25 objection to the proof of claim was brought, and I want to

Page                                                                    10

1  make that clear on the record.  Otherwise, thank you for

2  your well considered decision and the time you have spent

3  on this matter.

4          THE COURT:  Well, you're certainly welcome and

5  that's the reason I sit here for those purposes.  I'm

6  sorry --

7          MR. BEIER:  Your Honor, may I speak?

8          THE COURT:  I'm sorry to hear that he's had

9  trouble finding out who to pay.  In my experience, most

10 banks if you say, I will pay you, they just simply say,

11 here's the number and I'll take the money, but for some

12 reason that hasn't happened and I don't know why.  It's

13 very unfortunate, of course, but we are way, way, way, way

14 down the road now and we're beyond that.

15         What we're talking about is, who gets the

16 remaining money in the Trustee's possession and I don't

17 think there's any question up to the amount of their claim

18 that it should be Bank of New York Mellon.

19         I did start out with another inquiry, which was,

20 is there still money left over after that.  I couldn't

21 quite tell because the arithmetic sort of escapes me.  What

22 is your answer to that --

23         MR. BEIER:  Your Honor, may I make comment to

24 your question?

25         THE COURT:  With Mr. Haberbush's consent you may,

Page                                                                            11

1  yes.

2          MR. HABERBUSH:  I have no objection, Your Honor.

3          THE COURT:  All right.  Go ahead.

4          MR. BEIER:  Okay.  Your points are extremely

5  valid and I, to this day, don't think that the Court fully

6  understands what we've been trying to accomplish.

7          In the financial crisis of 2007, 2008 Bear

8  Stearns collapsed.  This mortgage was caught in that

9  collapse.  This is clear to everyone and it was held in the

10  Besolta (phonetic) Trust.  During that time, the original

11  investor for that trust was thousands of pension funds and

12  retirement people and other investors and those are the

13  people that the money is owed to, to be frank.

14          After JPMorgan purchased Bear Stearns for about

15  five cents on the dollar, then there was a lot of confusion

16  and that's where you have all the MERS litigation because

17  there was a shell company, MERS, which was -- sounds to not

18  be a lawful way to hold the mortgage.  It ducked the titles

19  so you had a lot of title fraud.  You had a lot of other

20  issues there.

21          So what did the banks do?  So the banks then

22  started to trade the paper around and this is when I

23  coincidentally at the same time was in an unfortunate

24  divorce, which is -- the Court probably doesn't know I have

25  quadruplets and twins, so it's not an easy thing to go

Page                                                                    12

1  through a divorce with lots of children and during the

2  financial crisis.

3         So when the dust settled and I went to the bank

4  and I said, "Please, let's negotiate so that we can keep

5  the home, keep the kids in the home, we would like to put

6  together an offer," the bank could not introduce me to the

7  noteholder.  They literally said, "Please hold," and they

8  put me on hold for over a year.

9         Then when they finally came back they said, "You

10 know what, we're Bank of America.  We're now servicing.

11 We're in charge.  You don't get to speak to the

12 noteholder."  So I went through the process.  I acquiesced

13 and the bank said, "You're declined."  And I said, "Why am

14 I declined?" and I gave very good offers for modification,

15 very, very good, at one point up to $25,000 a month

16 because, again, I have a million-and-a-half dollars of

17 equity in the home of my money.  It was not like it was 100

18 percent financed home.

19        So the point I'm trying to make to the Court,

20 you're asking, why isn't there another party, and I can

21 answer that question.  If you understand banking and

22 finance and Wall Street, the other party was thousands of

23 investors and these investors were told, "There's no money

24 here."

25        And then what happened was the bank, because they

Page                                                                13

1  knew they didn't have a secured note, they knew they now

2  had an unsecured note, and because they had an unsecured

3  note they sold that note later in time for a discount, a

4  significant discount.  We're estimating about $42,000 is

5  what somebody bought this $1,470,000 note for.  And I don't

6  know when Aldridge Pite got involved.  I don't know if

7  Aldridge Pite is actually the collection firm that bought

8  the note for $42,000.  I don't know if Bank of New York is

9  really involved.

10        We really have these questions.  We don't know

11  who bought the note, if it's secured, if it's unsecured.

12  And I understand the Court's logic is, well, nobody else is

13  here today.  But my logic is the person that's here today,

14  which is Mr. Delmotte, he did buy a note.  I don't know

15  what he paid for it.  We estimate maybe $45,000, but he did

16  buy a note and he's trying to collect 2.7 million dollars

17  on -- and claiming he's secured.  And I'm here to tell you,

18  he does not have a proper security.

19        So to make an assumption that because nobody else

20  is here, he now has a proper title, chain of custody to a

21  note that was done in 2005, it's a bit -- I can't find the

22  words right now, Your Honor, so I apologize.

23        Well, the point I'm trying to make is you

24  mentioned that why didn't I try to service the loan.  I

25  don't know if it's in these court papers, but I flew to New

Page                                                                14

1  York City.  I went to Bank of New York Mellon.  There was

2  an empty office and they said it was owned by JPMorgan

3  Chase.  This was the office on the attempt to foreclose.

4  There was no one in the office.  It was vacant.  It was a

5  fake address.

6          Then I went to JPMorgan with my checkbook

7  physically.  I don't know anybody else who would fly to New

8  York City to get to the bottom of this.  So I did make

9  massive efforts to get to the bottom of it.  I met with

10  lawyers in Delaware to decide if they should sue in

11  Delaware because these are all Delaware corporations.  And

12  all I've ever wanted from the beginning of time was a

13  modification so I could stay in the home.

14          Now, the Bankruptcy Court has -- against my

15  request has sold the home and I understand that and I

16  accept it, but the argument of who is entitled to 2.7

17  million dollars in proceeds is a completely separate issue.

18  And I really ask the Court to consider the following.

19          Prior to the sale of the home, the Court was

20  looking at, okay, this guy is not servicing the debt, the

21  payments are not being made, and I have my arguments of why

22  and I've shared some of those with you, but at the same

23  time, now it's a different argument.  Now we have the money

24  in the bank and it's just a matter of who does that money

25  belong to.  And I really beg the Court to give us the

Page                                                                    15

1   opportunity to finally identify the proper chain of custody

2   and the proper noteholder.  And if there -- listen, if it

3   comes to terms that they truly own the note and if they did

4   the paperwork properly, then fine.  But I think you may

5   find it unsecured.  And I'm not an attorney, as you all

6   know, but my understanding is, if it's an unsecured 1.47

7   million-dollar loan, then they wouldn't have right to the

8   proceeds of the sale of the home.  They would fall into the

9   jurisdiction of the Bankruptcy Court, however that would

10  fall for any other unsecured loan.

11              THE COURT:  Thank you.

12              MR. BEIER:  I'm probably leaving a few points

13  out, but again, I'm a bit -- I only had a chance to read

14  the tentative about 30 minutes ago, Your Honor, so I

15  apologize.

16              THE COURT:  All right.  Understandable and you

17  and Mr. Haberbush can go through it and if I've made a

18  mistake you can appeal me and that's perfectly okay.

19              But there's a couple points, Mr. Beier, I'd like

20  you to think about.  Even under the most generous reading

21  of circumstances, as you have laid them out, it's not you

22  who gets the money.  It might be under some strained

23  theory, some yet unidentified party.  I mean, I'm granting

24  that there's a .5 percent possibility factor, but it's only

25  meant it go to the buyer.  So that's problem number one for

Page                                                                    16

1  you.  At most --

2          MR. BEIER:  And, Your Honor, I --

3          THE COURT:  Hold on.

4          MR. BEIER:  -- would -- I would disagree that --

5          THE COURT:  I sat here and listened to you.  Now

6  you can listen to me.

7          MR. BEIER:  Okay.

8          THE COURT:  So that's the problem and we don't

9  recognize your ability to speak on some unidentified

10 party's behalf.

11         So under any theory, it's not buyer's -- now,

12 you've introduced the idea, well, maybe it's an unsecured

13 loan.  That's rubbish.  The note takes with it

14 automatically by law security agreements securing it.  So

15 even if the paperwork were infirmed -- and I'm not saying

16 that it is -- it still doesn't end up in your favor because

17 it means that whoever is determined to be the holder, they

18 by law are also the secured party under the deed of trust,

19 so under that additional theory, it does not avail your

20 purposes.

21         Thirdly, as I tried to explain and in the

22 tentative, to the extent there was anything to this

23 argument, it should have been raised before.  Not once, but

24 twice before when a court was asked to look into these

25 issues.  Your lawyer bravely tries to argue, well, there

Page                                                                      17

1   was some specific finding and my response to that is, chain

2   of title was clearly an issue, even if the wrong parties

3   were named.  So you were obliged to raise at that time any

4   theory that you had.  The law does not accept piecemeal

5   litigation.  You don't get to try to set a theory, lose;

6   try another set of theories and lose; and try it a third

7   time.  If it concerns the same transaction and occurrence,

8   you must bring forward all claims at that time.  We do not

9   tolerate piecemeal litigation.

10          So for that additional reason, I don't think you

11  win.  So I understand your frustration and I do remember

12  vividly, because I was a newly appointed judge just about

13  the time that this mess first came upon, and the fact that

14  the United States financial system survived it is by the

15  grace of God because it was pretty near fatal (phonetic).

16  An awful lot of banks had a lot of explaining to do.  But

17  that's all behind us now and this last remnant of that

18  bygone era I don't think breaks your wake.  Very sorry to

19  be the bearer of bad news, but that's my good faith

20  determination how this comes out.

21          You can, of course, as every citizen has a right,

22  to appeal me and I would love to read that some judge

23  thinks somewhere that there really is something to this,

24  but I don't see it.

25          So talk to Mr. Haberbush about it and if you

BEN HYATT
Certified Deposition Reporters

www.benhyatt.com

Page                                                                    18

1   really think that you've been done wrong, you have your

2   remedies as I've described, but I'm not going to delay the

3   closing of this case any longer.  I think it's been -- I'm

4   a little confused here, Mr. Malcolm, as to whether we have

5   a closed case or unadministered assets or what exactly we

6   have here, but I am given to understand that your client,

7   the Trustee, is holding the actual funds.  Is that a fair

8   reading?

9           MR. MALCOLM:  It is an accurate reading, correct.

10          THE COURT:  Okay.

11          MR. BEIER:  Your Honor, one point on the

12  additional parties.  My mother and father, Gary and

13  Patricia, they loaned money for the home, so they are an

14  additional party with the loan, and they filed a proof of

15  claim, which should be in front of the Court.

16          So you mentioned another party who is claiming

17  and this party is claiming and it's a significant amount of

18  money that they loaned and they are due.  And I think that

19  should come in front of the Court and that you're claiming

20  that because no one else was there, even if this bank isn't

21  the right bank --

22          THE COURT:  Well, you're crossing your wires

23  here.  You're talking about two different things.  I'm

24  dealing with an objection to claim 2.1.  That's the only

25  thing that I have before me and the only thing my ruling

P 888.272.0022 F 818.343.7119         BENHYATT
                                      Certified Deposition Reporters          www.benhyatt.com

Page                                                                          19

1  pertains to.  I did not say, nor do I mean to imply, that

2  there aren't other "parties in interest."  What I am

3  talking about is there doesn't seem to be another argument

4  to secured status on this note.  That's the key issue.  And

5  I don't see how your parents can -- are -- claim to be a

6  party to this note, so that is -- sorry to hear for them,

7  but it's irrelevant to my discussion today.

8          I really invite you to talk to Mr. Haberbush on

9  some of these issues.  And after your consultation with him

10 if you think that I've made a mistake, by all means, appeal

11 me.  But I don't think this claim deserves to drag out any

12 longer, except and unless Mr. Malcolm tells me that the

13 arithmetic says there's still some money here beyond the

14 Bank of New York Mellon.

15          Is that the case?

16          MR. MALCOLM:   Your Honor, I believe it is and I

17 believe that we still have a little bit of work to do in

18 the estate to address claims administration issues.

19          THE COURT:  All right.  Well, that's fine.  And

20 in which case, Mr. Beier's point is a valid one.  If

21 there's a secured claim in favor of his parents, that needs

22 to be looked into before you simply write a check to Beier

23 on account of his claim of a homestead.

24          What I'm referring to there, Mr. Beier, is you've

25 got a homestead that's against non-voluntary liens, but if

Page                                                                    20

1   you have encumbered it in favor of your parents, then they

2   trump the homestead.  That's how it works.

3           Anything else, gentlemen?

4           MR. MALCOLM:  Not here, Your Honor.  Thank you.

5           MR. HABERBUSH:  This is David Haberbush.  Nothing

6   further, Your Honor.

7           MR. DELMOTTE:  Joe Delmotte.  Nothing further,

8   Your Honor.  Thank you.

9           THE COURT:  All right.  Would you submit a form

10  of order, please?  You may make reference to the tentative

11  and even attach it as an exhibit.  In case there is an

12  appeal, I'd like to make my colleagues' job easier.

13          MR. DELMOTTE:  Will do, Your Honor.  Thank you.

14          THE COURT:  All right.  Mr. Beier, I'm sorry this

15  didn't break your way, but maybe there's the rest of your

16  life to think about and I wish you best of luck with it.

17          MR. BEIER:  Your Honor, I appreciate hard work

18  and your detailed tentative and I understand we don't

19  agree, but that doesn't mean we can't wish each other the

20  best and God bless.

21          THE COURT:  All right.  Very good.  And I wish

22  you happy new year and prosperity to you.

23          MR. BEIER:  And to you.

24          THE COURT:  Okay.  I look forward to your --

25          MR. MALCOLM:  Thank you, Your Honor.

Page                                                                  21

1           THE COURT:  -- form of order and so I'm going to

2    ask everybody who is not a member of chambers to depart at

3    this point because we're going to have a chambers

4    conference.

5    (End at 11:29 a.m.)

6                        * * * * * * * *

7           I certify that the foregoing is a correct

8    transcript from the electronic sound recording of the

9    proceedings in the above-entitled matter.

10

11   *Ruth Ann Hager*

12   _____        Date: 2/5/2024

13   RUTH ANN HAGER, C.E.T.**D-641

14

15

16

17

18

19

20

21

22

23

24

25

P 888.272.0022  F 818.343.7119          www.benhyatt.com

**BENHYATT**
Certified Deposition Reporters