1   Joseph C. Delmotte (CA SBN 259460)
jdelmotte@aldridgepite.com
2   **ALDRIDGE PITE, LLP**
8880 Rio San Diego Drive, Suite 725
3   San Diego, CA 92108
Telephone: (858) 750-7600
4   Facsimile: (619) 590-1385

5   Attorneys for *Respondent/Secured Creditor*
THE BANK OF NEW MELLON FKA THE BANK
6   OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN
CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS
7   ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2005-04

8

9            **UNITED STATES BANKRUPTCY COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

11

| | |
|---|---|
| In re | Case No. 8:23-bk-10898-TA |
| JEFFREY S. BEIER, | Chapter 7 |
| Debtor. | **DECLARATION OF JAE MIN IN SUPPORT OF OPPOSITION TO OBJECTION TO PROOF OF CLAIM 2-1 FILED BY THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK SUCCESOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-04** |
| | DATE: January 9, 2024 TIME: 11:00 a.m. CTRM: 5b |
| | 411 West Fourth Street Santa Ana, CA 92701 |

I, _Jae Min_ , declare:

     1.    I am a _Assistant Vice President_ of Bank of America, N.A.

("<u>BANA</u>") and am authorized to sign this declaration on behalf of BANA, successor by merger

to BAC Home Loan Servicing, LP, as servicing agent for The Bank of New York Mellon FKA

**DECLARATION OF JAE MIN IN SUPPORT OF OPPOSITION TO DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 2-1**

Exhibit A

The Bank of New York, as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2005-04 ("<u>BONY</u>") with respect to a certain loan (the "<u>Loan</u>") provided to Jeffrey S. Beier ("<u>Debtor</u>") and Toni R. Beier (collectively, the "<u>Borrowers</u>") which loan is evidenced by the InterestOnly Adjustable Rate Note ("<u>Note</u>") (defined below) and secured by the Deed of Trust ("<u>Deed of Trust</u>") (defined below).

2.    As part of my job responsibilities for BANA, I have personal knowledge of and am familiar with the types of records maintained by BANA in connection with the Loan and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of BANA that pertain to the Loan including the loss mitigation history of the Loan, and extensions of credit given to Borrowers concerning the Property (defined below).

3.    The information in this declaration is taken from BANA's business records regarding the Loan. I have personal knowledge of BANA's procedures for creating these types of records. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of BANA's regularly conducted business activities; and (c) it is the regular practice of BANA to make such records.

4.    On or about March 2, 2005, the Borrowers executed the Note in the original principal amount of $1,470,000.00. A true and correct copy of the Note is attached hereto as **Exhibit A**.

5.    The endorsement stamp from Countrywide Home Loans, Inc. to JPMorgan Chase Bank, as Trustee on the Note was voided.

6.    As evidenced by the allonge attached to the Note, the Note is endorsed in blank. According to BANA's records, BONY was in possession, either directly or through the use of an authorized agent and/or document custodian, of the endorsed in blank Note at the time BONY filed its proof of claim ("<u>Proof of Claim</u>") in Debtor's case number 8:23-bk-10898-TA on July 12, 2023, and BONY remains in possession of the Note as of the date of this declaration.

**DECLARATION OF JAE MIN IN SUPPORT OF OPPOSITION TO DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 2-1**

Exhibit A

7.    Pursuant to the Deed of Trust, all obligations of the Borrowers under the Note and Deed of Trust under and with respect to the Loan are secured by certain real property (the "Property"). The Property address is 10 Tucson, Coto De Caza Area, California 92679. A copy of the Deed of Trust is attached hereto as **Exhibit B**.

8.    All rights and remedies under the Deed of Trust have been assigned to BONY pursuant to certain assignments of deed of trust. A copy of the Substitution of Trustee and Assignment of Deed of Trust and Corrective Assignment of Deed of Trust are attached collectively hereto as **Exhibit C**.

9.    After the origination of the Loan, the Loan was serviced by Countrywide Home Loans Servicing LP. Effective April 27, 2009, Countrywide Home Loans Servicing LP changed its name to BAC Home Loans Servicing, LP. Effective July 1, 2011, BAC Home Loans Servicing, LP merged with and into BANA and BANA has serviced the Loan since July 1, 2011 to this date.

10.    BANA was appointed as attorney-in-fact by The Bank of New York Mellon F/K/A The Bank of New York, successor in interest to JPMorgan Chase Bank, N.A., as Trustee in connection with certain trusts including the BONY trust. A copy of the Limited Power of Attorney is attached hereto as **Exhibit D**.

11.    On or about November 1, 2016, BANA received a Request for Mortgage Assistance from Debtor regarding the Loan but was denied a loan modification. Debtor appealed the denial of the loan modification and the appeal was denied. A copy of the Request for Mortgage Assistance sent by Debtor to BANA and BANA's letter denying the loan modification appeal are attached collectively hereto as **Exhibit E**.

/././

/././

/././

/././

/././

/././

Exhibit A

12.     On July 12, 2023, BONY filed its Proof of Claim in Debtor's case number 8:23-bk-10898-TA, which was designated as claim number 2 on the Court's claims register and which reflects a total secured claim in the amount of $2,786.180.50, and a pre-petition arrearage claim of $1,787,448.67 as of the bankruptcy petition date of April 28, 2023. A copy of the filed Proof of Claim is attached hereto as **Exhibit F**.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22 day of December 2023 at Simi Valley, California

Name: Jae Min

Title: Assistant Vice President

**DECLARATION OF JAE MIN IN SUPPORT OF OPPOSITION TO DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 2-1**

Exhibit A

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
8880 Rio San Diego Drive, Suite 725  San Diego, CA 92108

A true and correct copy of the foregoing document entitled: **Declaration Of Jae Min In Support Of Opposition To Objection To Proof Of Claim 2-1 Filed By The Bank Of New York Mellon, Fka The Bank Of New York Succesor Trustee To Jpmorgan Chase Bank, N.A., As Trustee For The Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2005-04** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____December 26, 2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**U.S. TRUSTEE:**
ustpregion16.sa.ecf@usdoj.gov

**ATTORNEY FOR DEBTOR:**
David R Haberbush dhaberbush@lbinsolvency.com

**TRUSTEE:**
Arturo   Cisneros- arturo@mclaw.org

**TRUSTEE'S ATTORNEY:**
Nathan F. Smith- nathan@mclaw.org

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) _____December 26, 2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**PRESIDING JUDGE:**
Honorable Theodor Albert
U.S. Bankruptcy Court  Central District Of California
(Santa Ana)
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593

**DEBTOR:**
Jeffrey S Beier
P O Box 7644
Laguna Niguel, CA 92677

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/26/2023 | Lauren Timby | /s/ Lauren Timby |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# Exhibit A

Prepared by: NICHOLAS P. ISAACS

LOAN

# InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE

(One-Year **LIBOR** Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| MARCH 02, 2005 | MISSION VIEJO | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

10 TUCSON, COTO DE CAZA AREA, CA 92679

Exhibit A

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,470,000.00        (this amount is called "Principal"), plus interest, to the order of Lender is
COUNTRYWIDE HOME LOANS, INC.                                                                                                    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.875  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the  first            day of every month, beginning on  MAY 01, 2005          .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
 APRIL 01, 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 7,196.88         before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

Exhibit A

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the **first** day of **APRIL, 2010**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO & ONE-QUARTER** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.875** % or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.875** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Initials



Exhibit A

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials



Exhibit A

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JEFEREY S. BEIER                          -Borrower

_____ (Seal)
TONY R. BEIER                             -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

PAY TO THE ORDER OF
JPMorgan Chase Bank, as Trustee [Original Only]

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                                          Page 4 of 4

Exhibit A

# Allonge to Deed of Trust/Mortgage Note

Loan Number: █████████

Allonge to one certain Deed of Trust/Mortgage Note Date:
 March 2, 2005

Executed By:

JEFFREY S BEIER  & TONI R BEIER

Original Amount: $1,470,000.00
Property Address:
 10 TUCSON, COTO DE CAZA AREA, CA  92679

Pay to the Order of:

Without Recourse:
**Countrywide Home Loans, Inc.**

By: _____
Name: FRANK FOLDS
Title: Vice President

Exhibit A

RECORDING REQUESTED
BY STEWART TITLE
IRVINE

Recording Requested By:
K. BUDDE

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

**87.00**

**11:06am 03/08/05**

105 31 D11 28

0.00 0.00 0.00 0.00 81.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
NICHOLAS P. ISAACS

——————— [Space Above This Line For Recording Data] ———————

[Escrow/Closing #]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MARCH 02, 2005 , together with all Riders to this document.

**(B) "Borrower"** is

JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16          Initials: _____

-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291   Form 3005 1/01
CONV/VA



Exhibit B

Branch :SL ,User :ETRA   Order:   Title:2/26/23   Comment: 02/26/23 16:20:30   Station Id :CI34

Case 8:23-bk-10898-TA   Doc 120-2   Filed 02/26/23   Entered 02/26/23 16:20:30   Desc
Exhibit A - Declaration Trust Page 22 of 123

Borrower's address is

10 TUCSON, COTO DE CAZA AREA, CA 92679

Borrower is the trustor under this Security Instrument.

**(C) "Lender" is**

COUNTRYWIDE HOME LOANS, INC.

Lender is a CORPORATION

organized and existing under the laws of NEW YORK

Lender's address is

4500 Park Granada, Calabasas, CA 91302-1613

**(D) "Trustee" is**

RECONTRUST COMPANY, N.A.

225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated   MARCH 02, 2005   . The Note states that Borrower owes Lender

ONE MILLION FOUR HUNDRED SEVENTY THOUSAND and 00/100

Dollars (U.S. $ 1,470,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   APRIL 01, 2035   .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials

[logo] -6A(CA) (0207)    CHL (09/02)    Page 2 of 16    Form 3005 1/01

Exhibit B

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                          of                          ORANGE                          :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 755-241-13                          which currently has the address of
                          10 TUCSON, COTO DE CAZA AREA                          ,
                          [Street/City]

California          92679          ("Property Address"):
          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initial

*(VMP)* **-6A(CA)** (0207)          CHL (09/02)          Page 3 of 16          Form 3005 1/01

Exhibit B

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

(VMP) -6A(CA) (0207)     CHL (09/02)          Page 4 of 16          Initials: ___     Form 3005  1/01

Exhibit A

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)        CHL (09/02)        Page 5 of 16        Initials: _____  Form 3005 1/01

Exhibit B

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

-6A(CA) (0207)      CHL (09/02)      Page 6 of 16      Initials: ___      Form 3005  1/01

Exhibit B

Branch :FSJ,User :FTRA   Order:   Title Officer:   Comment:   Station Id :CI34

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials: _____

-6A(CA) (0207)   CHL (09/02)   Page 7 of 16   Form 3005 1/01

Exhibit B

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials: _____

VMP®-6A(CA) (0207)    CHL (09/02)    Page 8 of 16    Form 3005 1/01

Exhibit B

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

(VMP) -6A(CA) (0207)          CHL (09/02)              Page 9 of 16          Initials: _____          Form 3005 1/01

Exhibit A

Branch :SJ User :TFB Order: 2/20/23 Title Officer: Comment: Station Id :CI34

Case 8:23-bk-10898-TA    Doc 120-2    Filed 02/20/23    Entered 02/20/23 16:20:30    Desc
Exhibit A - Declaration of Trust    Page 20 of 123

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: _____

-6A(CA) (0207)          CHL (09/02)          Page 10 of 16                    Form 3005 1/01

Exhibit A

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials: _____

-6A(CA) (0207)    CHL (09/02)    Page 11 of 16    Form 3005 1/01

Exhibit B

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

_VMP_ -6A(CA) (0207)        CHL (09/02)            Page 12 of 16            Initials: ___    Form 3005 1/01


Exhibit B

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Initials:

VMP®-6A(CA) (0207)          CHL (09/02)          Page 13 of 16          Form 3005 1/01

Exhibit B

Branch :SI User:2EB     Order:     Title Officer:3     Comment:     Station Id :CI34

Case 8:23-bk-10898-TA    Doc 120-2    Filed 02/20/23    Entered 02/20/23 15:20:30    Desc
Exhibit A - Declaration Trust    Page 24 of 123

DOC

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)     CHL (09/02)     Page 14 of 16     Initials     Form 3005 1/01

Exhibit A

DOC

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                             JEFFREY S. BEIER           -Borrower

_____                    _____ (Seal)
                                             TONI R. BEIER              -Borrower

                                             _____ (Seal)
                                                                        -Borrower

                                             _____ (Seal)
                                                                        -Borrower



Exhibit B

State of California
County of **Orange** } ss.

On **March 2, 2005** before me, **Erin Wilkinson** personally appeared

**Jeffrey S. Beier & Toni R. Beier**

~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed to
the within instrument and acknowledged to me that ~~he~~/~~she~~/they executed the same in ~~his~~/~~her~~/their authorized
capacity(ies), and that by ~~his~~/~~her~~/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ERIN WILKINSON
Commission # 1429331
Notary Public - California
Orange County
My Comm. Expires Jul 8, 2007

Initials: _____

-6A(CA) (0207)    CHL (09/02)    Page 16 of 16    Form 3005 1/01

**Exhibit B**

Branch :SJ ,User :TBA    Order:           Title Officer:         Comment:                       Station Id :CI34

Case 8:23-bk-10898-TA    Doc 120-2    Filed 02/20/23    Entered 02/20/23 16:20:30    Desc
Exhibit A - Declaration Trust Page 27 of 28

*Government Code Section 27361.7*

*I certify under penalty of perjury that the notary seal on the document to
which this statement is attached reads as follows:*

Name of Notary:                          ERIN WILKINSON

Date commission expires:                 JULY 8, 2007

Commission No.:                          ███████

Vendor No.:                              NNA1

Place of execution:                      ORANGE

Date:                                    MARCH  2, 2005

*Stewart Title of California*

By:    DANNY SCRUGGS

Exhibit A

Prepared by: NICHOLAS P. ISAACS

**COUNTRYWIDE HOME LOANS, INC.**

Branch ███████████
27101 PUERTA REAL, ST 100
MISSION VIEJO, CA 92691
Phone: (949)282-2200
Br Fax No.: (949)348-1073

DATE:     03/02/2005
CASE #:
DOC ID # ████████████
BORROWER: JEFFREY S. BEIER
PROPERTY ADDRESS: 10 TUCSON
                COTO DE CAZA AREA, CA 92679

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)





Exhibit B



EXHIBIT "A"

LEGAL DESCRIPTION

The land referred to herein is situated in the State of California,
County of ORANGE, described as follows:

Parcel 1:

Lot 1 (the "Lot") of Tract No. 15841, in the County of Orange,
State of California, as shown on a subdivision map ("Map")
recorded on December 23, 1999, in book 794, pages 25 to 29,
inclusive of miscellaneous maps, in the office of the Orange
County recorder.

Excepting therefrom; all oil, oil rights, natural gas rights,
mineral rights, and other hydrocarbon substances by whatever
name known, together with appurtenant rights thereto, without,
however, any right to enter upon the surface of said land nor
any portion of the subsurface lying above a depth of 500 feet,
as excepted or reserved in instruments of record.

Except all water, claims or rights to water, in or under said
land.

Parcel 2:

Non-exclusive easements for use, access, ingress, egress,
maintenance, repair, drainage, encroachment, support, and for
other purposes, all as described in the Master Declaration of
Covenants, Conditions, Restrictions and Reservation of
Easements for Coto de Caza ("Master Declaration"), recorded on
March 5, 1984 as Instrument No. 84-092424, in the Supplemental
Declaration of Covenants, Conditions, Restrictions and
Reservation of Easements for Oak Knoll in Coto De Caza
("Supplemental Declaration") recorded on September 11, 2000 as
Instrument No. 2000-0471430, in the Declaration of Covenants,
Conditions and Restrictions and Reservation of Easements for
The Summit ("Summit Declaration") recorded on September 20,
2000 as Instrument No. 2000-0492456, all in official records
and all as amended or restated, and as described in the map and
notice recorded December 20, 2000 as Instrument No.
2000-0691033.

End of Legal Description

Exhibit B

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
NICHOLAS P. ISAACS

[Escrow/Closing #]                    [DOC ID #]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this SECOND                    day of
MARCH, 2005            , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-7R (0405)        CHL (06/04)(d)        Page 1 of 4        Initials
VMP Mortgage Solutions, Inc. (800)521-7291        Form 3150 1/01



Exhibit B

DOC ID ███████████████

undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

10 TUCSON
COTO DE CAZA AREA, CA 92679
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
OAK KNOLL AT COTO DE CAZA

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Initials ⟨signature⟩

VMP® -7R (0405)    CHL (06/04)    Page 2 of 4    Form 3150 1/01

Exhibit B

Branch :SI ,User :TR  Order: Title Officer: 2/26/13  Comment:  Station Id :CI34

Case 8:23-bk-10898-TA    Doc 120-2    Filed 02/26/24    Entered 02/26/24 15:20:30    Desc
Exhibit A - Declaration Trust    Page 22 of 28

DOC <span style="background:black">████████</span>

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

VMP ®-7R (0405)      CHL (06/04)      Page 3 of 4      Form 3150 1/01

Exhibit B


DOC █████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
                                        - Borrower
JEFFREY S. BEIER

_____ (Seal)
                                        - Borrower
TONI R. BEIER

_____ (Seal)
                                        - Borrower

_____ (Seal)
                                        - Borrower

(VMP) -7R (0405)     CHL (06/04)     Page 4 of 4     Form 3150 1/01

Exhibit B

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
NICHOLAS P. ISAACS

Recording Requested By:

——————————— [Space Above This Line For Recording Data]———————————

# FIXED/ADJUSTABLE RATE RIDER
(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)



[Escrow/Closing #]          [Doc ID #]

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)(d)                    Page 1 of 5                    Initials:

Exhibit B

THIS FIXED/ADJUSTABLE RATE RIDER is made this SECOND                day of
MARCH, 2005         , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

10 TUCSON
COTO DE CAZA AREA, CA 92679
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
     The Note provides for an initial fixed interest rate of        5.875 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
     **(A) Change Dates**
     The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first         day of APRIL, 2010         , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."
     **(B) The Index**
     Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".
     If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
     **(C) Calculation of Changes**
     Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER         percentage points (    2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 2 of 5                    Initials

Exhibit B

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than      2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
- MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY                          Page 3 of 5                          Initials
1U796-XX (06/04)


Exhibit B

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 4 of 5                    Initials


Exhibit B

Branch :CSI User :TB     Order:     Title Officer: 23     Comment:     Station Id :CI34

Case 8:23-bk-10898-TA    Doc 120-2    Filed 02/20/23    Entered 02/20/23 16:20:30    Desc
Exhibit A - Declaration of Trust    Page 38 of 123

DO

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

| | |
|---|---|
| _____ JEFFREY S. BEIER | (Seal) -Borrower |
| _____ TONI R. BEIER | (Seal) -Borrower |
| _____ | (Seal) -Borrower |
| _____ | (Seal) -Borrower |

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 5 of 5

Exhibit B



RECORDING REQUESTED
BY: **DANA  BURTON**
**BANK OF AMERICA**
**MC: FL1-908-01-05**
**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

██████████

WHEN RECORDED MAIL TO:
**BANK OF AMERICA**
**MC: FL1-908-01-05**
**4909 SAVARESE CIR.**
**TAMPA, FL  33634**

Space above for recorder's use only

CORRECTIVE ASSIGNMENT  OF DEED  OF TRUST
(DEED  OF TRUST) Title of Document

This cover sheet added to provide adequate space for recording  information
($3.00  Additional Recording Fee Applies)



Exhibit A

Recording Requested By:
**DANA BURTON**
**BANK OF AMERICA**
**MC: FL1-908-01-05**
**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

When Recorded Mail Document
and Tax Statement To:
**BANK OF AMERICA**
**MC: FL1-908-01-05**
**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

**Tax/Parcel #: 755-241-13**

_____ [Space Above This Line for Recording Data] _____

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST

THIS ASSIGNMENT IS BEING RECORDED TO ADD THE NOMINEE VERBIAGE TO THE
ASSIGNMENT PREVIOUSLY RECORDED ON JUNE 9, 2010 IN INSTRUMENT NO. 2010000269465

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS BENEFICIARY, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS
SUCCESSORS AND ASSIGNS,** the undersigned holder of a Deed of Trust (herein "Assignor"), whose address
is **P.O. BOX 2026, FLINT, MI 48501-2026,** does hereby grant, assign, transfer and convey, unto **THE
BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR
IN INTEREST TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE, BSALTA 2005-04** (herein
"Assignee"), whose address is **240 GREENWICH STREET, NEW YORK, NY 10286,** under a certain
Deed of Trust made and executed by **JEFFREY S BEIER AND TONI R BEIER, HUSBAND
AND WIFE AS JOINT TENANTS** ("Borrower"), to **RECONTRUST COMPANY, N.A.** ("Trustee"),
upon the following property located at **10 TUCSON, COTO DE CAZA, CALIFORNIA 92679** and
situated in **ORANGE** County, State of **CALIFORNIA.**

Such Deed of Trust having been given to secure payment of **$1,470,000.00** which Deed of Trust is dated
**MARCH 2, 2005** and recorded on **MARCH 8, 2005** in **INSTRUMENT NO. 2005000170527
ORANGE COUNTY,** State of **CALIFORNIA,** together with all rights accrued or to accrue under such Deed of
Trust.

Page 1

**Exhibit C**

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF,  the undersigned has caused this Assignment of Deed of Trust to be executed on

**JUN 1 5 2023**
Date

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS BENEFICIARY,  AS
NOMINEE FOR COUNTRYWIDE HOME LOANS,
INC., ITS SUCCESSORS AND ASSIGNS

By: *Dana M Burton*
(Signature)
**DANA M BURTON**
**ASSISTANT VICE PRESIDENT**

_____ [Space Below This Line for Acknowledgments] _____

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this __15__ day of __June__, __2023__, by **DANA M BURTON** as **ASSISTANT VICE PRESIDENT** for **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS.**

*Alexandra Monegro*
(Signature  of Notary Public - State of Florida)

Alexandra Monegro

| NOTARY PUBLIC | ALEXANDRA MONEGRO
Notary Public, State of Florida
Commission ▮▮▮
My comm. expires May 22, 2024 |

(Print, Type, or Stamp Commissioned  Name of Notary Public)

Personally  Known OR Produced Identification
Type of Identification  Produced _____N/A_____

Page 2

# Exhibit A

# LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK successor in interest to JP Morgan Chase Bank, N,A. as Trustee,[i] having an office at 240 Greenwich Street, New York, New York 10286 (the "Bank"), hereby appoints Bank of America, N.A., having an office at 450 American Street, Simi Valley, California 93065, to be the Bank's true and lawful Attorney-in-Fact (the "Attorney"), through its duly authorized officers and designated agents, to act in the name, and on behalf of the Bank with power to do only the following (the "Actions") in connection with the trusts identified on Exhibit A, on behalf of the Bank:

1.    The modification or re-recording of a mortgage or deed of trust, where said modification or re-recording is for the purpose of correcting the mortgage or deed of trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued and said modification or re-recording, in either instance, does not adversely affect the lien of the mortgage or deed of trust as insured.

2.    The subordination of the lien of a mortgage or deed of trust (1) for the purpose of refinancing the mortgage notes or (2) to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.    The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned ("REO Property").

4.    The execution, completion, indorsement or filing of bonds, notes, security instruments and other contracts, agreements and instruments regarding the borrowers and/or the property, including but not limited to the execution of releases, satisfactions, or reconveyances (including without limitation the cancellation or assignment of the related note); assignments, loan modification agreements, loan assumption agreements, subordination agreements, and property adjustment agreements; and other instruments pertaining to security instruments, bills of sale and execution of deeds and associated instruments, if any, conveying or encumbering the property, in the interest of the Bank.

5.    The correction or remediation of any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by the Bank or a prior transferor, including, but not limited to note indorsements.

6.    With respect to a mortgage or deed of trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or recession of termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

    a.    the substitution of trustee(s) serving under a deed of trust, in accordance with state law and the deed of trust;

    b.    the preparation and issuance of statements of breach or non-performance;

    c.    the preparation and filing of notices of default and/or notices of sale;

    d.    the cancellation/rescission of notices of default and/or notices of sale;

    e.    the taking of a deed in lieu of foreclosure; and

    f.    the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the mortgage, deed of trust or state law to expeditiously complete said transactions in paragraphs 6.a. through 6.e., above.

7.    With respect to the sale of REO Property, including, without limitation, the execution and delivery of the following documentation:

    a.    listing agreements;

    b.    purchase and sale agreements;

---

[i] For the avoidance of doubt, this Limited Power of Attorney covers Actions taken in any of the following name variations, all of which are hereby declared for these purposes to reference one and the same entity: The Bank of New York Mellon f/k/a The Bank of New York as Trustee; The Bank of New York Mellon f/k/a The Bank of New York as Trustee; or The Bank of New York Mellon as Trustee.



Exhibit D

c.    grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;

d.    escrow instructions;

e.    any and all documents necessary to effect the transfer of REO Property; and

f.    any and all documents necessary to effect an eviction action.

8.    With respect to bankruptcy proceedings, including, without limitation. The filing of proofs of claim, motions for relief from the automatic stay or other writings.

9.    The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

10.    The performance of all steps necessary to realize on insurance proceeds, including but not limited to insurance proceeds relating to foreclosures, short sales, deeds in lieu of foreclosure, sale of REO Property, and the exercise of any rights of the Bank under any insurance agreement.

11.    The execution of any other documents referred to in the aforesaid documents or that are ancillary or related thereto or contemplated by the provisions thereof.

12.    The completion of all things necessary or expedient to give effect to the aforesaid documents including, but not limited to, completing any blanks therein, making any amendments, alterations and additions thereto, endorsing which may be considered necessary by the Attorney, endorsing on behalf of the Bank all checks, drafts and/or negotiable instruments made payable to the Bank in respect of the documents, and executing such other documents as may be considered by the Attorney necessary for such purposes.

This appointment shall apply with respect to each loan and related property covered by this Power of Attorney and only as mandated or permitted by federal, state or local laws or other legal requirements or restrictions—including without limitation federal and state debt collection laws—applicable to the Bank or the Attorney in connection with the mortgage loans serviced by the Attorney or on behalf of the Bank as trustee.

The relationship of the Bank and the Attorney under this Power of Attorney is intended by the parties to be that of an independent contractor and not that of a joint venturer, partner, or agent.

**This Power of Attorney is effective for two (2) years from the date hereof or the earlier** of (i) revocation by the Bank, (ii) the Attorney shall no longer be retained on behalf of the Bank or an affiliate of the Bank; or (iii) the expiration of two years from the date of execution. The Bank represents to those dealing with the Attorneys that they may rely upon this Limited Power of Attorney until they receive actual notice of termination or revocation thereof or unless an instrument of revocation has been recorded.

**The authority granted to the Attorney by the Power of Attorney is not transferable to any other party or entity.**

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without regard to its conflicts of law principles.

All actions heretofore taken by said Attorney, which the Attorney could properly have taken pursuant to this Power of Attorney, be, and hereby are, ratified and affirmed.

*[Remainder of page intentionally left blank]*



**Exhibit D**

IN WITNESS WHEREOF, The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank, N.A. as Trustee pursuant to the trusts identified on Exhibit A hereto attached and these present to be signed and acknowledged in its name and behalf by Gerard F. Facendola and Medina Dzaferovic its duly elected and authorized Director and Vice President this 15th day of December, 2022.

The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JPMorgan Chase Bank, N.A. as Trustee for the trusts identified on Exhibit A

By: _____

    Name:  Gerard F. Facendola
    Title:  Director

By: _____

    Name:  Medina Dzaferovic
    Title:  Vice President

Witness: _____

    Printed Name:  Erica Walsh

Witness: _____

    Printed Name:  Edward Cofie

## ACKNOWLEDGEMENT

STATE OF NEW YORK:

COUNTY OF NEW YORK:

On the 15th day of December in the year 2022 before me, the undersigned, a Notary Public in and for said State, personally appeared Gerard F. Facendola and Medina Dzaferovic, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed, the instrument

Subscribed and sworn before me this 15th day of December, 2022.

_____
Notary Public

My Commission expires:

ALEXANDER TITUS TONGE
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01TO6278785
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES MARCH 25, 2025

**Exhibit D**

## Exhibit A

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK
SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR
THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2003-6

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK
SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR
THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-4

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK
SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR
THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-5

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK
SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR
THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-10

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK
SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR
THE BEAR STEARNS ARM TRUST, MORTGAGE PASS-THROUGH
CERTIFICATE, SERIES 2003-7

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS
SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE FOR
BEAR STERNS ASSET-BACKED SECURITIES TRUST 2004-SD1, MORTGAGE
PASS-THROUGH CERTS SERIES 2004-SD1

**Exhibit A**



MAKING HOME AFFORDABLE.gov

If you are experiencing a financial hardship and need help, you must complete and submit this form along with other required documentation to be considered for foreclosure prevention options under the Making Home Affordable (MHA) Program. You must provide information about yourself and your intentions to either keep or transition out of your property; a description of the hardship that prevents you from paying your mortgage(s); information about all of your income, expenses and financial assets; whether you have declared bankruptcy; and information about the mortgage(s) on your principal residence and other single family real estate that you own. Finally, you will need to return to your loan servicer (1) this completed, signed and dated Request for Mortgage Assistance (RMA); and (2) completed and signed IRS Form 4506-T or 4506T-EZ; and (3) all required income documentation identified in Section 4.

When you sign and date this form, you will make important certifications, representations and agreements, including certifying that all of the information in this RMA is accurate and truthful.

## SECTION 1: BORROWER INFORMATION

| BORROWER | CO-BORROWER |
|---|---|
| BORROWER'S NAME<br>Jeffrey S. Beier | CO-BORROWER'S NAME |
| SOCIAL SECURITY NUMBER    DATE OF BIRTH (MM/DD/YYYY) | SOCIAL SECURITY NUMBER    DATE OF BIRTH (MM/DD/YYYY) |
| HOME PHONE NUMBER WITH AREA CODE | HOME PHONE NUMBER WITH AREA CODE |
| CELL OR WORK NUMBER WITH AREA CODE | CELL OR WORK NUMBER WITH AREA CODE |
| MAILING ADDRESS<br>10 Tucson Coto de Caza CA 92679 | MAILING ADDRESS (IF SAME AS BORROWER, WRITE "SAME") |
| EMAIL ADDRESS | EMAIL ADDRESS |

| | | | |
|---|---|---|---|
| Has any borrower filed for bankruptcy?  ☐ Chapter 7  ☐ Chapter 13 | | Is any borrower a servicemember? | ☐ Yes  ☒ No |
| Filing Date: _____  Bankruptcy case number: _____ | | Have you recently been deployed away from your principal residence or recently received a permanent change of station order? | ☐ Yes  ☒ No |
| Has your bankruptcy been discharged?  ☐ Yes  ☐ No | | | |

How many single family properties other than your principal residence do you and/or any co-borrower(s) own individually, jointly, or with others? ____ 0

Has the mortgage on your principal residence ever had a Home Affordable Modification Program (HAMP) trial period plan or permanent modification?  ☐ Yes  ☒ No

Has the mortgage on any other property that you or any co-borrower own had a permanent HAMP modification?  ☐ Yes  ☒ No  If "Yes", how many? _____

Are you or any co-borrower currently in or being considered for a HAMP trial period plan on a property other than your principal residence?  ☐ Yes  ☒ No

## SECTION 2: HARDSHIP AFFIDAVIT

I (We) am/are requesting review under MHA.
I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):

| | |
|---|---|
| ☒ My household income has been reduce. For example: reduced pay or hours, decline in business or self-employment earnings, death, disability, or divorce of a borrower or co-borrower. | ☐ My monthly debt payments are exclusive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt. |
| ☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities, or property taxes. | ☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time. |
| ☐ I am unemployed and (a) I am receiving/will receive unemployment benefits or (b) my unemployment benefits ended less than 6 months ago. | Other: |

Explanation (continue on a separate sheet of paper if necessary):

Please see hardship letter attached.

Exhibit A

## SECTION 3: PRINCIPAL RESIDENCE INFORMATION
(This section is required even if you are not seeking mortgage assistance on your principal residence)

I am requesting mortgage assistance with my principal residence  ☑ YES  ☐ NO

If "yes"  ☑ Keep the property  ☐ Sell the property

Property Address: 10 Tucson Coto de Caza CA 92679    Loan ID Number: ▮▮▮▮▮

Other mortgages or liens on the property?  ☐ YES  ☑ NO    Lien Holder / Servicer Name: _____    Loan ID Number: _____

Do you have condominium or homeowner association (HOA) fees?  ☐ YES  ☐ NO    If "Yes", Monthly Fee $_____    Are fees paid current  ☐ YES  ☐ NO

Name and address that fees are paid to: _____

Does your mortgage payment include taxes and insurance?  ☐ YES  ☐ NO    If "NO", are the taxes and insurance paid current?  ☐ YES  ☐ NO

Annual Homeowner's Insurance $_____

Is the property listed for sale?  ☐ YES  ☑ NO    If "YES", Listing Agent's Name: _____    Phone Number: _____

List Date? _____    Have you received a purchase offer?  ☐ YES  ☑ NO    Amount of Offer $_____    Closing Date: _____

Complete this section ONLY if you are requesting mortgage assistance with a property that is not your principal residence.

Principal residence servicer name: Bank of America    Principal residence servicer phone number: _____

Is the mortgage on your principal residence paid?  ☐ YES  ☑ NO    If "YES" number of months your payment is past due (if known): _____

## SECTION 4: COMBINED INCOME AND EXPENSE OF BORROWER AND CO-BORROWER

| Monthly Household Income | | Monthly Household Expense/Debt (*Principal Residence Expense Only) | | Household Assets | |
|---|---|---|---|---|---|
| Monthly Gross wages | $ 0.00 | First Mortgage Principal & Interest Payment* | $ 7,552.00 | Checking Account(s) | $ 4,000.00 |
| Overtime | $ 0.00 | Second Mortgage Principal & Interest Payment* | $ 0.00 | Checking Account(s) | $ 0.00 |
| Self employment Income | $ 16,011.00 | Homeowner's Insurance* | $ 0.00 | Savings / Money Market | $ 0.00 |
| Unemployment Income | $ 0.00 | Property Taxes* | $ 1,646.52 | CDs | $ 0.00 |
| Untaxed Social Security/SSD | $ 0.00 | HOA/Condo Fees* | $ 400.00 | Stocks / Bonds | $ 0.00 |
| Food Stamps/Welfare | $ 0.00 | Credit Cards/Installment debt (total min. payment) | $ 0.00 | Other Cash on Hand | $ 0.00 |
| Taxable Social Security or retirement income | $ 0.00 | Child Support / Alimony | $ 0.00 | | |
| Child Support / Alimony** | $ 0.00 | Car Payments | $ 0.00 | | |
| Tips, commissions, bonus and overtime | $ 0.00 | Mortgage Payments other properties**** | $ 0.00 | | |
| Gross Rents Received *** | $ 0.00 | Other utilities | $ 675.00 | Value of all Real Estate except principal residence | $ 0.00 |
| Other | $ 0.00 | Other expenses | $ 1,873.00 | Other | $ 0.00 |
| Total (Gross Income) | $ 16,011.00 | Total Debt/Expense | $ 12,146.52 | Total Assets | $ 4,000.00 |

** Alimony, child support or separate maintenance income need not be disclosed if you do not choose to have it considered for repaying your mortgage debt.

*** Include rental income received from all properties you own EXCEPT a property for which you are seeking mortgage assistance in Section 6.

**** Include mortgage payments on all properties you own EXCEPT your principal residence and the property for which you are seeking mortgage assistance in Section 6.

Exhibit A

**Jeffrey S. Beier**
**10 Tucson**
**Coto De Caza CA 92679**

**October 31, 2016**

Re: Jeffrey S. Beier's Letter of Explanation

Loan No.

To Whom It May Concern:

I am writing this letter to clarify that I am the sole owner on the above mentioned
property. I received it as a result of a divorce.

If you were to have any further questions, please don't hesitate to contact my attorney,
Mr. Sanford Parke's office.

Sincerely,

Jeffrey S. Beier

**Bank of America** ≡ Home Loans

Bank of America, N.A.
5401 N. Beach Street
Mail Stop: TX2-977-01-34
Fort Worth, TX 76137

**Your loan modification appeal has been denied.**

**Please call us today to discuss your next steps.**

February 21, 2017

Jeffrey S Beier
Toni R Beier
C/O Law Ofc of Sanford Parke
1745 W Orangewood Ave Ste
Orange, CA 92868-2041

**Loan Number:** ▓▓▓▓▓▓▓

Dear Jeffrey S Beier and Toni R Beier:

We have reviewed your appeal of our decision that your loan is not eligible for certain loan modification programs. While this may not be the decision you were hoping for, we regret to inform you that your appeal has been denied.

**Please note that if you recently received an offer to pursue a modification, short sale or deed in lieu of foreclosure before your appeal request, and you are currently working with us, please continue to comply with the terms of the program in which you are participating.** If you have any questions about your next steps, please call me, your customer relationship manager, at 800.669.6650, Monday through Friday, 8 a.m. to 5 p.m. local time.

**Reason your appeal is denied**

After reviewing the new documents and information you provided to support your appeal, your loan is still not eligible for the following program(s) for the reason(s) indicated below.

Since the reason(s) your loan modification was not approved has not changed, you may not request another appeal review.

- **Home Affordable Modification Program:** Your loan is not eligible for this program for the reason(s) stated below.

  - The unpaid principal balance on your loan is higher than the program limit.  ($729,750 for a one unit property, $934,200 for a two unit property, $1,129,250 for a three unit property and $1,403,400 for a four unit property). Because we determined that you don't meet the basic eligibility rules for this program, we didn't evaluate your request against other program criteria.

- **Hardest Hit Fund – Principal Reduction Program:** Your loan is not eligible for this program for the reason(s) stated below.

  - Your current gross monthly income of $24,307.33 exceeds your state's Hardest Hit Fund guidelines for average median income. Because we determined that you don't meet the basic eligibility rules for this program, we didn't evaluate your request against other program criteria.

  - Your loan's unpaid principal balance exceeds your state's established limit for Hardest Hit Fund assistance. Because we determined that you don't meet the basic eligibility rules for this program, we didn't evaluate your request against other program criteria.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

PKG 53/C3_4416-13

Exhibit A

- **Bank of America Loan Modification Program:** Your loan is not eligible for this program for the reason(s) stated below.

  - The investor or guarantor of your loan hasn't approved a modification because an affordable payment can't be created without changing the terms of your loan beyond the limits of the program. The name of the investor or guarantor is The Bank of New York Mellon as Trustee On Behalf of Bear Stearns ALT-A Trust 2005-4.

- **Bank of America Capitalization Loan Modification Program:** Your loan is not eligible for this program for the reason(s) stated below.

  - Under applicable program requirements, we seek to reduce the monthly mortgage payment to equal a target payment that is a specified percentage of your gross monthly income through a series of steps that includes evaluation of the impact of eliminating interest and amortization on a portion of the principal balance of your loan by forbearance of this portion (subject to the requirement that it does not exceed a specified percentage of the amount of your loan).  Because your gross monthly income of $24,307.33 is so low relative to the outstanding amount of your loan, the portion of the amount of your loan as to which we would need to eliminate interest and amortization would exceed the specified percentage.

- **Home Affordable Modification Tier 2 Program:** Your loan is not eligible for this program for the reason(s) stated below.

  - The unpaid principal balance on your loan is higher than the program limit.  ($729,750 for a one unit property, $934,200 for a two unit property, $1,129,250 for a three unit property and $1,403,400 for a four unit property). Because we determined that you don't meet the basic eligibility rules for this program, we didn't evaluate your request against other program criteria.

### What you need to do

As a reminder, if you recently received an offer to pursue a modification, short sale or deed in lieu of foreclosure before your appeal and you are currently working with us, please continue to comply with the terms of the program in which you are participating. If you are not currently working with us, please refer to the evaluation notice you recently received from us to understand if other options may be available to you. These options may include:

- **Short Sale** – With this option, the property is listed for sale at fair market value, even if that value is lower than  the outstanding balance on your mortgage. If a buyer is identified and the property is sold, the proceeds from the sale are applied towards the mortgage debt, even if the proceeds are less than the amount owed on the mortgage.
- **Deed in Lieu of Foreclosure** – With this option, you agree to transfer the title or ownership of your property to the owner or servicer of your loan in order to satisfy all or a portion of the mortgage debt. The amount of debt satisfied by this transfer of ownership is based on the market value of your home.

These options have different requirements and guidelines, and not all loans qualify. Also, these options may offer financial assistance for your relocation and could be less damaging to your long-term credit than a foreclosure.

### Additional assistance is available

Additional assistance is available at no cost from housing counselors approved by the U.S. Department of Housing and Urban Development (HUD) by calling the HOPE Hotline number (888.995.HOPE (4673)). The HUD-approved counselors can work with you to create a household budget and develop an action plan to help reduce your household debt. Assistance in understanding this notice is available through the HOPE Hotline by asking for MHA HELP.

### We're here to help

If you have any questions about this notice, please call me at 800.669.6650, Monday through Friday, 8 a.m. to 5 p.m. local time. Please note that if your financial situation changes and you are not participating in a loan modification or other loan assistance program, you may be eligible to reapply for assistance.



Exhibit A

You may also contact us by email at mha_decline_review@bankofamerica.com. We strongly discourage you from sending personal information via email unless it is sent through a secure, encrypted method. Unencrypted emails are at risk of being intercepted or seen by unauthorized parties. In order to learn more about how to send your information to us securely, please contact your customer relationship manager at 800.669.6650, who can assist you with this process. Please note that Bank of America will at no time solicit you to send us confidential information via email.

Araceli Rainone
Home Loan Team
Bank of America, N.A.

**Required disclosures**

*Notice:* The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC 20006.

Our credit decision was based in whole or in part on information in a report from the consumer reporting agencies listed below. While the information was provided by these agencies, these agencies played no part in our decision and are unable to supply specific reasons for our decision. You have a right under the Fair Credit Reporting Act to obtain a copy of your credit report from the agencies below. The report will be free if you request it within 60 days after you receive this notice. You also have the right to dispute with the agencies below the accuracy or completeness of any information in your report.

Equifax Credit Information Services (EFX)
PO Box 740241 (orders)
PO Box 740256 (disputes)
Atlanta, GA 30374
www.equifax.com
800.685.1111 (orders)
800.685.1111 (disputes)

Trans Union Corporation (TUC)
PO Box 1000 (orders)
PO Box 2000 (disputes)
Chester, PA 19022
www.transunion.com
800.888.4213 (orders)
800.916.8800 (disputes)

Experian (XPN)
701 Experian Parkway
PO Box 2002
Allen, TX 75013-0036
www.experian.com/reportaccess
888.397.3742 (orders)
888.397.3742 (disputes)

If you have any questions regarding this notice, call 800.669.6650 or mail a letter to:
Bank of America, N.A.
5401 N Beach Street
Mail Stop: TX2-977-01-34
Fort Worth, TX 76137

Written Notices of Error, Requests for Information, and Qualified Written Requests (as defined in RESPA) must be sent to:
Bank of America, N.A.
PO Box 942019
Simi Valley, CA 93094-2019

MILITARY PERSONNEL/SERVICEMEMBERS: If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act (SCRA) and similar state laws provide significant protections and benefits to eligible military service personnel. However, military service and/or SCRA qualification may not necessarily prevent foreclosure. If your loan is in default, a court may authorize foreclosure. If you are having difficulty making your payments, please call us as soon as you can so we can discuss various home retention options. You can reach our Enterprise Military Benefits Unit at 877.345.0693. From outside the U.S., please call us at 817.245.4094. Both numbers are available 24/7. Homeowner counseling is also available at agencies such as Military OneSource at militaryonesource.mil or 800.342.9647 and Armed Forces Legal Assistance at legalassistance.law.af.mil, and through HUD-approved housing counseling agencies, which you can find at hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Bank of America, N.A. Member FDIC. Equal Housing Lender ⌂. © 2016 Bank of America Corporation
Protect your personal information before recycling this document.



Exhibit A

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | JEFFREY S BEIER |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of CALIFORNIA |
| Case number | 8:23-bk-10898-TA |

# Official Form 410
# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

THE BANK OF NEW YORK MELLON FKA THE BANK ***
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Bank of America, N.A.
Name

P.O. Box 31785
Number     Street

Tampa                    FL              33631-3785
City                     State           ZIP Code

Contact phone  1-800-669-6607

Contact email _____

**Where should payments to the creditor be sent?** (if different)

Bank of America, N.A.
Name

P.O. Box 660933
Number     Street

Dallas                   TX              75266-0933
City                     State           ZIP Code

Contact phone  1-800-669-6607

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                            MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

**Exhibit A**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|-------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  8  3  6  4

**7. How much is the claim?**    $2,786,180.50

**Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment (Official Form 410-A)* with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:    10 TUCSON, COTO DE CAZA AREA, CA 92679

**Basis for perfection:**    Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    _____

**Amount of the claim that is secured:**    $2,786,180.50

**Amount of the claim that is unsecured:**    $0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $1,787,448.67

**Annual Interest Rate** (when case was filed)  5.625%

☐ Fixed

☑ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**Exhibit A**

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☒ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    07/12/2023
                    MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Greg P. Campbell | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Aldridge Pite, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 8880 Rio San Diego Drive, Suite 725 | | |
| | Number        Street | | |
| | San Diego | CA | 92108 |
| | City | State | ZIP Code |
| Contact phone | (858)750-7600 | Email | gcampbell@aldridgepite.com |


Exhibit A

## Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|

**Part 1: Mortgage and Case Information**

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

Debtor 2:

Last 4 digits to identify: 8 3 6 4

Creditor: THE BANK OF NEW YORK MELLON FKA THE BANK ***

Servicer: Bank of America, N. A.

Fixed accrual/daily simple interest/other: Other

**Part 2: Total Debt Calculation**

Principal balance: $1,470,000.00

Interest due: $903,656.23

Fees, costs due: $21,932.51

Escrow deficiency for funds advanced: $390,591.76

Less total funds on hand: $0.00

Total debt: $2,786,180.50

**Part 3: Arrearage as of Date of the Petition**

Principal & interest due: $1,368,589.20

Prepetition fees due: $21,932.51

Escrow deficiency for funds advanced: $390,591.76

Projected escrow shortage: $6,335.20

Less funds on hand: $0.00

Total prepetition arrearage: $1,787,448.67

**Part 4: Monthly Mortgage Payment**

Principal & Interest: $8,262.18

Monthly escrow: $2,111.41

Private mortgage insurance: $0.00

Total monthly payment: $10,373.59

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 11/01/2006 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $7,196.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,799.20 | $0.00 |
| 11/14/2006 | $0.00 | $0.00 | $4.00 | PAYMENT PROCESS FEE | | $7,196.88 | $0.00 | $0.00 | $0.00 | $4.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,803.20 | $0.00 |
| 11/15/2006 | $0.00 | $4.00 | $0.00 | PAYMENT PROCESS FEE | | $7,196.88 | $0.00 | $0.00 | $0.00 | -$4.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,799.20 | $0.00 |
| 11/17/2006 | $0.00 | $0.00 | $25.00 | RETURNED PAYMENT FEE | | $7,196.88 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 11/20/2006 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 12/01/2006 | $0.00 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 12/01/2006 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $7,196.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 12/15/2006 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 01/01/2007 | $0.00 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 01/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $7,196.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 02/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $14,393.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 02/09/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 02/01/2007 | $7,196.88 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |



Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

### Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $14,393.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 04/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $21,590.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 05/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $28,787.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 05/07/2007 | $0.00 | $0.00 | -$4,575.00 | HAZARD INSURANCE | | $28,787.52 | $0.00 | $0.00 | -$4,575.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 05/18/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 03/01/2007 | $21,590.64 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 05/18/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 04/01/2007 | $14,393.76 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 05/18/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 05/01/2007 | $7,196.88 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 05/18/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 06/01/2007 | $0.00 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 06/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $7,196.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 07/01/2007 | $8,117.98 | $0.00 | $0.00 | Monthly Assessment | | $15,314.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 08/01/2007 | $8,117.98 | $0.00 | $0.00 | Monthly Assessment | | $23,432.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 08/10/2007 | $0.00 | $0.00 | $3,063.00 | Hazard Refund | | $23,432.84 | $0.00 | $0.00 | $3,063.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$1,512.00 | $1,824.20 | $0.00 |
| 08/14/2007 | $0.00 | $359.84 | $0.00 | LATE CHARGE | | $23,432.84 | $0.00 | $0.00 | $0.00 | -$359.84 | $0.00 | $1,470,000.00 | $0.00 | -$1,512.00 | $1,464.36 | $0.00 |
| 08/15/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 07/01/2007 | $16,235.96 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$1,512.00 | $1,464.36 | $0.00 |
| 08/15/2007 | $0.00 | $8,117.98 | $0.00 | Monthly Payment | 08/01/2007 | $8,117.98 | $0.00 | $7,196.88 | $921.10 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$590.90 | $1,464.36 | $0.00 |
| 08/15/2007 | $0.00 | $8,117.98 | $0.00 | Monthly Payment | 09/01/2007 | $0.00 | $0.00 | $7,196.88 | $921.10 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $330.20 | $1,464.36 | $0.00 |
| 08/15/2007 | $0.00 | $1,439.36 | $0.00 | LATE CHARGE | | $0.00 | $0.00 | $0.00 | $0.00 | -$1,439.36 | $0.00 | $1,470,000.00 | $0.00 | $330.20 | $25.00 | $0.00 |
| 09/01/2007 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $9,326.89 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $330.20 | $25.00 | $0.00 |

**Mortgage Proof of Claim Attachment**



## Mortgage Proof of Claim Attachment: Additional Page

**(12/15)**

| | |
|---|---|
| Case number: | 8:23-bk-10898-TA |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 09/14/2007 | $0.00 | $0.00 | -$330.20 | Escrow to Mortgagor Disbursement | | $9,326.89 | $0.00 | $0.00 | -$330.20 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $25.00 | $0.00 |
| 09/17/2007 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $9,326.89 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $384.84 | $0.00 |
| 10/01/2007 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $18,653.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $384.84 | $0.00 |
| 10/16/2007 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $18,653.78 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $744.68 | $0.00 |
| 11/01/2007 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $27,980.67 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $744.68 | $0.00 |
| 11/16/2007 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $27,980.67 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,104.52 | $0.00 |
| 12/01/2007 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $37,307.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,104.52 | $0.00 |
| 12/17/2007 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $37,307.56 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,464.36 | $0.00 |
| 12/31/2007 | $0.00 | $0.00 | $0.54 | Interest on Escrow/Restricted Escrow | | $37,307.56 | $0.00 | $0.00 | $0.54 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.54 | $1,464.36 | $0.00 |
| 12/31/2007 | $0.00 | $0.00 | -$5,094.00 | HAZARD INSURANCE | | $37,307.56 | $0.00 | $0.00 | -$5,094.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $1,464.36 | $0.00 |
| 01/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $46,634.45 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $1,464.36 | $0.00 |
| 01/16/2008 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $46,634.45 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $1,824.20 | $0.00 |
| 02/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $55,961.34 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $1,824.20 | $0.00 |
| 02/19/2008 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $55,961.34 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$10,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$15,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$20,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$25,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$30,093.46 | $2,184.04 | $0.00 |


**Exhibit A**

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1 | JEFFREY S BEIER |

### Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$35,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$1,877.61 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$1,877.61 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,184.04 | $0.00 |
| 03/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $65,288.23 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,184.04 | $0.00 |
| 03/17/2008 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $65,288.23 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 04/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $74,615.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 05/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $83,942.01 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 06/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $93,268.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 07/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $102,595.79 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 08/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $111,922.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 09/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $121,249.57 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 10/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $130,576.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 11/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $139,903.35 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 11/28/2008 | $0.00 | $0.00 | -$9,884.67 | County Tax Disbursement | | $139,903.35 | $0.00 | $0.00 | -$9,884.67 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$46,855.74 | $2,543.88 | $0.00 |
| 12/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $149,230.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$46,855.74 | $2,543.88 | $0.00 |
| 12/16/2008 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $149,230.24 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$46,855.74 | $2,903.72 | $0.00 |
| 12/26/2008 | $0.00 | $0.00 | -$2,923.00 | HAZARD INSURANCE | | $149,230.24 | $0.00 | $0.00 | -$2,923.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$49,778.74 | $2,903.72 | $0.00 |
| 01/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $158,557.13 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$49,778.74 | $2,903.72 | $0.00 |
| 02/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $167,884.02 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$49,778.74 | $2,903.72 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1 | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $177,210.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$49,778.74 | $2,903.72 | $0.00 |
| 03/19/2009 | $0.00 | $0.00 | -$9,884.67 | County Tax Disbursement | | $177,210.91 | $0.00 | $0.00 | -$9,884.67 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 04/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $186,537.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 05/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $195,864.69 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 06/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $205,191.58 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 07/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $214,518.47 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 08/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $223,845.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 09/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $233,172.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 10/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $242,499.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 10/28/2009 | $0.00 | $0.00 | -$3,507.00 | HAZARD INSURANCE | | $242,499.14 | $0.00 | $0.00 | -$3,507.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$63,170.41 | $2,903.72 | $0.00 |
| 11/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $251,826.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$63,170.41 | $2,903.72 | $0.00 |
| 11/24/2009 | $0.00 | $0.00 | -$10,021.75 | County Tax Disbursement | | $251,826.03 | $0.00 | $0.00 | -$10,021.75 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $2,903.72 | $0.00 |
| 12/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $261,152.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $2,903.72 | $0.00 |
| 01/01/2010 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $270,479.81 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $2,903.72 | $0.00 |
| 01/19/2010 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $270,479.81 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,263.56 | $0.00 |
| 02/01/2010 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $279,806.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,263.56 | $0.00 |
| 02/16/2010 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $279,806.70 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,623.40 | $0.00 |
| 03/01/2010 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $289,133.59 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,623.40 | $0.00 |


Exhibit A

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

## Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/16/2010 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $289,133.59 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,983.24 | $0.00 |
| 03/25/2010 | $0.00 | $0.00 | -$10,021.75 | County Tax Disbursement | | $289,133.59 | $0.00 | $0.00 | -$10,021.75 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $3,983.24 | $0.00 |
| 04/01/2010 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $298,460.48 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $3,983.24 | $0.00 |
| 04/16/2010 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $298,460.48 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,343.08 | $0.00 |
| 05/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $307,657.34 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,343.08 | $0.00 |
| 05/17/2010 | $0.00 | $0.00 | $191.40 | LATE CHARGE | | $307,657.34 | $0.00 | $0.00 | $0.00 | $191.40 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 06/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $316,854.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 07/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $326,051.06 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 08/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $335,247.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 09/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $344,444.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 10/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $353,641.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 10/27/2010 | $0.00 | $0.00 | -$6,389.00 | HAZARD INSURANCE | | $353,641.64 | $0.00 | $0.00 | -$6,389.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$89,602.91 | $4,534.48 | $0.00 |
| 11/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $362,838.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$89,602.91 | $4,534.48 | $0.00 |
| 11/15/2010 | $0.00 | $0.00 | -$9,813.16 | County Tax Disbursement | | $362,838.50 | $0.00 | $0.00 | -$9,813.16 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |
| 12/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $372,035.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |
| 01/01/2011 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $381,232.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |
| 02/01/2011 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $390,429.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |
| 03/01/2011 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $399,625.94 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page    (12/15)

| Case number: | 8:23-bk-10898-TA |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/17/2011 | $0.00 | $0.00 | -$9,813.16 | County Tax Disbursement | | $399,625.94 | $0.00 | $0.00 | -$9,813.16 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 04/01/2011 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $408,822.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 05/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $417,927.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 06/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $427,031.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 07/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $436,135.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 08/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $445,239.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 09/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $454,343.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 10/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $463,448.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 11/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $472,552.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 11/15/2011 | $0.00 | $0.00 | -$8,958.75 | County Tax Disbursement | | $472,552.20 | $0.00 | $0.00 | -$8,958.75 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 12/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $481,656.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 01/01/2012 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $490,760.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 02/01/2012 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $499,864.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 03/01/2012 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $508,969.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 03/08/2012 | $0.00 | $0.00 | -$5,324.00 | HAZARD INSURANCE | | $508,969.00 | $0.00 | $0.00 | -$5,324.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$123,511.98 | $4,534.48 | $0.00 |
| 03/22/2012 | $0.00 | $0.00 | -$8,958.75 | County Tax Disbursement | | $508,969.00 | $0.00 | $0.00 | -$8,958.75 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 04/01/2012 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $518,073.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |

Official Form 410A    **Mortgage Proof of Claim Attachment**    page 2 of


Exhibit A

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number:  8:23-bk-10898-TA

Debtor 1:  JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 05/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $527,447.26 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 06/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $536,821.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 07/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $546,195.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 08/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $555,569.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 09/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $564,943.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 10/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $574,317.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 10/29/2012 | $0.00 | $0.00 | -$6,012.00 | HAZARD INSURANCE | | $574,317.56 | $0.00 | $0.00 | -$6,012.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$138,482.73 | $4,534.48 | $0.00 |
| 11/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $583,691.62 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$138,482.73 | $4,534.48 | $0.00 |
| 11/07/2012 | $0.00 | $0.00 | -$8,970.35 | County Tax Disbursement | | $583,691.62 | $0.00 | $0.00 | -$8,970.35 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,534.48 | $0.00 |
| 12/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $593,065.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,534.48 | $0.00 |
| 12/09/2012 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $593,065.68 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,549.48 | $0.00 |
| 12/17/2012 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $593,065.68 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,756.19 | $0.00 |
| 01/01/2013 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $602,439.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,756.19 | $0.00 |
| 01/16/2013 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $602,439.74 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,962.90 | $0.00 |
| 02/01/2013 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $611,813.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,962.90 | $0.00 |
| 02/01/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $611,813.80 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,977.90 | $0.00 |
| 02/19/2013 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $611,813.80 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $5,184.61 | $0.00 |
| 03/01/2013 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $621,187.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $5,184.61 | $0.00 |


**Exhibit A**

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/06/2013 | $0.00 | $0.00 | -$8,970.35 | County Tax Disbursement | | $621,187.86 | $0.00 | $0.00 | -$8,970.35 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,184.61 | $0.00 |
| 03/08/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $621,187.86 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,199.61 | $0.00 |
| 03/18/2013 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $621,187.86 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,406.32 | $0.00 |
| 04/01/2013 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $630,561.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,406.32 | $0.00 |
| 04/10/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $630,561.92 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,421.32 | $0.00 |
| 04/16/2013 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $630,561.92 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,628.03 | $0.00 |
| 05/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $639,676.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,628.03 | $0.00 |
| 05/13/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $639,676.10 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,643.03 | $0.00 |
| 06/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $648,790.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,643.03 | $0.00 |
| 07/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $657,904.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,643.03 | $0.00 |
| 07/08/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $657,904.46 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,658.03 | $0.00 |
| 07/16/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $657,904.46 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,841.78 | $0.00 |
| 08/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $667,018.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,841.78 | $0.00 |
| 08/05/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $667,018.64 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,856.78 | $0.00 |
| 09/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $676,132.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,856.78 | $0.00 |
| 09/03/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $676,132.82 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,871.78 | $0.00 |
| 09/16/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $676,132.82 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $6,055.53 | $0.00 |
| 10/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $685,247.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $6,055.53 | $0.00 |
| 10/03/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $685,247.00 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $6,070.53 | $0.00 |



# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/16/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $685,247.00 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $6,254.28 | $0.00 |
| 10/28/2013 | $0.00 | $0.00 | -$3,841.00 | HAZARD INSURANCE | | $685,247.00 | $0.00 | $0.00 | -$3,841.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$160,264.43 | $6,254.28 | $0.00 |
| 11/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $694,361.18 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$160,264.43 | $6,254.28 | $0.00 |
| 11/04/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $694,361.18 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$160,264.43 | $6,269.28 | $0.00 |
| 11/05/2013 | $0.00 | $0.00 | -$8,490.99 | County Tax Disbursement | | $694,361.18 | $0.00 | $0.00 | -$8,490.99 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,269.28 | $0.00 |
| 11/18/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $694,361.18 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,453.03 | $0.00 |
| 12/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $703,475.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,453.03 | $0.00 |
| 12/02/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $703,475.36 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,468.03 | $0.00 |
| 12/16/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $703,475.36 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,651.78 | $0.00 |
| 12/31/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $703,475.36 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,666.78 | $0.00 |
| 01/01/2014 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $712,589.54 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,666.78 | $0.00 |
| 01/16/2014 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $712,589.54 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,850.53 | $0.00 |
| 01/29/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $712,589.54 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,865.53 | $0.00 |
| 02/01/2014 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $721,703.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,865.53 | $0.00 |
| 02/18/2014 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $721,703.72 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $7,049.28 | $0.00 |
| 02/26/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $721,703.72 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $7,064.28 | $0.00 |
| 03/01/2014 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $730,817.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $7,064.28 | $0.00 |
| 03/04/2014 | $0.00 | $0.00 | -$8,490.99 | County Tax Disbursement | | $730,817.90 | $0.00 | $0.00 | -$8,490.99 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,064.28 | $0.00 |
| 03/17/2014 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $730,817.90 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,248.03 | $0.00 |



**Exhibit A**

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
| --- | --- |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/28/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $730,817.90 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,263.03 | $0.00 |
| 04/01/2014 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $739,932.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,263.03 | $0.00 |
| 04/16/2014 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $739,932.08 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,446.78 | $0.00 |
| 04/28/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $739,932.08 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,461.78 | $0.00 |
| 05/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $748,882.85 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,461.78 | $0.00 |
| 05/16/2014 | $0.00 | $0.00 | $168.43 | LATE CHARGE | | $748,882.85 | $0.00 | $0.00 | $0.00 | $168.43 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,630.21 | $0.00 |
| 05/30/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $748,882.85 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,645.21 | $0.00 |
| 06/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $757,833.62 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,645.21 | $0.00 |
| 06/16/2014 | $0.00 | $0.00 | $168.43 | LATE CHARGE | | $757,833.62 | $0.00 | $0.00 | $0.00 | $168.43 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,813.64 | $0.00 |
| 07/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $766,784.39 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,813.64 | $0.00 |
| 07/03/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $766,784.39 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,828.64 | $0.00 |
| 07/16/2014 | $0.00 | $0.00 | $168.43 | LATE CHARGE | | $766,784.39 | $0.00 | $0.00 | $0.00 | $168.43 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,997.07 | $0.00 |
| 07/22/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $766,784.39 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,012.07 | $0.00 |
| 08/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $775,735.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,012.07 | $0.00 |
| 08/18/2014 | $0.00 | $0.00 | $168.43 | LATE CHARGE | | $775,735.16 | $0.00 | $0.00 | $0.00 | $168.43 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,180.50 | $0.00 |
| 08/21/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $775,735.16 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,195.50 | $0.00 |
| 09/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $784,685.93 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,195.50 | $0.00 |
| 09/16/2014 | $0.00 | $0.00 | $341.03 | LATE CHARGE | | $784,685.93 | $0.00 | $0.00 | $0.00 | $341.03 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,536.53 | $0.00 |
| 09/23/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $784,685.93 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,551.53 | $0.00 |



# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $793,636.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,551.53 | $0.00 |
| 10/23/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $793,636.70 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,566.53 | $0.00 |
| 10/27/2014 | $0.00 | $0.00 | -$3,340.00 | HAZARD INSURANCE | | $793,636.70 | $0.00 | $0.00 | -$3,340.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$180,586.41 | $8,566.53 | $0.00 |
| 11/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $802,587.47 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$180,586.41 | $8,566.53 | $0.00 |
| 11/14/2014 | $0.00 | $0.00 | -$9,689.27 | County Tax Disbursement | | $802,587.47 | $0.00 | $0.00 | -$9,689.27 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,566.53 | $0.00 |
| 11/26/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $802,587.47 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,581.53 | $0.00 |
| 12/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $811,538.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,581.53 | $0.00 |
| 12/18/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $811,538.24 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,596.53 | $0.00 |
| 01/01/2015 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $820,489.01 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,596.53 | $0.00 |
| 01/20/2015 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $820,489.01 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,611.53 | $0.00 |
| 01/28/2015 | $0.00 | $0.00 | $427.50 | ATTY/TRUSTEE | | $820,489.01 | $0.00 | $0.00 | $0.00 | $427.50 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $9,039.03 | $0.00 |
| 02/01/2015 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $829,439.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $9,039.03 | $0.00 |
| 03/01/2015 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $838,390.55 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $9,039.03 | $0.00 |
| 03/10/2015 | $0.00 | $0.00 | $1,493.00 | TITLE SEARCH FEE | | $838,390.55 | $0.00 | $0.00 | $0.00 | $1,493.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $10,532.03 | $0.00 |
| 03/24/2015 | $0.00 | $0.00 | -$9,689.27 | County Tax Disbursement | | $838,390.55 | $0.00 | $0.00 | -$9,689.27 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $10,532.03 | $0.00 |
| 04/01/2015 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $847,341.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $10,532.03 | $0.00 |
| 04/01/2015 | $0.00 | $0.00 | $24.40 | MAILING FEES | | $847,341.32 | $0.00 | $0.00 | $0.00 | $24.40 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $10,556.43 | $0.00 |
| 04/01/2015 | $0.00 | $0.00 | $570.00 | ATTY/TRUSTEE | | $847,341.32 | $0.00 | $0.00 | $0.00 | $570.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,126.43 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 04/01/2015 | $0.00 | $0.00 | $60.00 | RECORDING FEES | | $847,341.32 | $0.00 | $0.00 | $0.00 | $60.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,186.43 | $0.00 |
| 05/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $856,370.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,186.43 | $0.00 |
| 06/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $865,398.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,186.43 | $0.00 |
| 07/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $874,427.45 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,186.43 | $0.00 |
| 07/03/2015 | $0.00 | $0.00 | $125.00 | POSTING FEES | | $874,427.45 | $0.00 | $0.00 | $0.00 | $125.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,311.43 | $0.00 |
| 07/03/2015 | $0.00 | $0.00 | $30.00 | RECORDING FEES | | $874,427.45 | $0.00 | $0.00 | $0.00 | $30.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,341.43 | $0.00 |
| 07/03/2015 | $0.00 | $0.00 | $365.00 | ADVRTIZE/PUBLISH | | $874,427.45 | $0.00 | $0.00 | $0.00 | $365.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,706.43 | $0.00 |
| 07/03/2015 | $0.00 | $0.00 | $395.48 | MAILING FEES | | $874,427.45 | $0.00 | $0.00 | $0.00 | $395.48 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $12,101.91 | $0.00 |
| 08/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $883,456.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $12,101.91 | $0.00 |
| 09/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $892,484.87 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $12,101.91 | $0.00 |
| 10/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $901,513.58 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $12,101.91 | $0.00 |
| 10/06/2015 | $0.00 | $0.00 | -$214.88 | County Tax Disbursement | | $901,513.58 | $0.00 | $0.00 | -$214.88 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$200,179.83 | $12,101.91 | $0.00 |
| 10/06/2015 | $0.00 | $0.00 | -$1,105.63 | County Tax Disbursement | | $901,513.58 | $0.00 | $0.00 | -$1,105.63 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$201,285.46 | $12,101.91 | $0.00 |
| 10/27/2015 | $0.00 | $0.00 | -$3,507.00 | HAZARD INSURANCE | | $901,513.58 | $0.00 | $0.00 | -$3,507.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$204,792.46 | $12,101.91 | $0.00 |
| 11/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $910,542.29 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$204,792.46 | $12,101.91 | $0.00 |
| 11/27/2015 | $0.00 | $0.00 | -$9,879.09 | County Tax Disbursement | | $910,542.29 | $0.00 | $0.00 | -$9,879.09 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,101.91 | $0.00 |
| 12/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $919,571.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,101.91 | $0.00 |
| 01/01/2016 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $928,599.71 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,101.91 | $0.00 |



Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 01/04/2016 | $0.00 | $0.00 | $100.00 | ATTY/TRUSTEE | | $928,599.71 | $0.00 | $0.00 | $0.00 | $100.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,201.91 | $0.00 |
| 02/01/2016 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $937,628.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,201.91 | $0.00 |
| 03/01/2016 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $946,657.13 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,201.91 | $0.00 |
| 03/31/2016 | $0.00 | $0.00 | -$9,879.09 | County Tax Disbursement | | $946,657.13 | $0.00 | $0.00 | -$9,879.09 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,201.91 | $0.00 |
| 04/01/2016 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $955,685.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,201.91 | $0.00 |
| 05/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $965,017.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,201.91 | $0.00 |
| 06/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $974,348.48 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,201.91 | $0.00 |
| 06/24/2016 | $0.00 | $0.00 | $9.00 | RECORDING FEES | | $974,348.48 | $0.00 | $0.00 | $0.00 | $9.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,210.91 | $0.00 |
| 07/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $983,679.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,210.91 | $0.00 |
| 07/06/2016 | $0.00 | $0.00 | $27.00 | RECORDING FEES | | $983,679.80 | $0.00 | $0.00 | $0.00 | $27.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,237.91 | $0.00 |
| 07/11/2016 | $0.00 | $0.00 | $78.98 | MAILING FEES | | $983,679.80 | $0.00 | $0.00 | $0.00 | $78.98 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,316.89 | $0.00 |
| 07/11/2016 | $0.00 | $0.00 | $570.00 | ATTY/TRUSTEE | | $983,679.80 | $0.00 | $0.00 | $0.00 | $570.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,886.89 | $0.00 |
| 07/20/2016 | $0.00 | $0.00 | $1,493.00 | TITLE FEES | | $983,679.80 | $0.00 | $0.00 | $0.00 | $1,493.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,379.89 | $0.00 |
| 08/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $993,011.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,379.89 | $0.00 |
| 09/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,002,342.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,379.89 | $0.00 |
| 10/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,011,673.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,379.89 | $0.00 |
| 10/20/2016 | $0.00 | $0.00 | $12.00 | RECORDING FEES | | $1,011,673.76 | $0.00 | $0.00 | $0.00 | $12.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,391.89 | $0.00 |
| 10/21/2016 | $0.00 | $0.00 | $70.06 | MAILING FEES | | $1,011,673.76 | $0.00 | $0.00 | $0.00 | $70.06 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,461.95 | $0.00 |
| 10/28/2016 | $0.00 | $0.00 | -$2,325.00 | HAZARD INSURANCE | | $1,011,673.76 | $0.00 | $0.00 | -$2,325.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$226,875.64 | $14,461.95 | $0.00 |


**Exhibit A**

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 11/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,021,005.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$226,875.64 | $14,461.95 | $0.00 |
| 11/09/2016 | $0.00 | $0.00 | $210.00 | ADVRTIZE/PUBLISH | | $1,021,005.08 | $0.00 | $0.00 | $0.00 | $210.00 | $0.00 | $1,470,000.00 | $0.00 | -$226,875.64 | $14,671.95 | $0.00 |
| 11/17/2016 | $0.00 | $0.00 | $25.00 | POSTING FEES | | $1,021,005.08 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$226,875.64 | $14,696.95 | $0.00 |
| 11/28/2016 | $0.00 | $0.00 | -$10,041.43 | County Tax Disbursement | | $1,021,005.08 | $0.00 | $0.00 | -$10,041.43 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,696.95 | $0.00 |
| 11/28/2016 | $0.00 | $0.00 | $31.76 | MAILING FEES | | $1,021,005.08 | $0.00 | $0.00 | $0.00 | $31.76 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,728.71 | $0.00 |
| 12/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,030,336.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,728.71 | $0.00 |
| 12/21/2016 | $0.00 | $0.00 | $100.00 | POSTING FEES | | $1,030,336.40 | $0.00 | $0.00 | $0.00 | $100.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,828.71 | $0.00 |
| 12/21/2016 | $0.00 | $0.00 | $22.56 | MAILING FEES | | $1,030,336.40 | $0.00 | $0.00 | $0.00 | $22.56 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,851.27 | $0.00 |
| 01/01/2017 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,039,667.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,851.27 | $0.00 |
| 02/01/2017 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,048,999.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,851.27 | $0.00 |
| 03/01/2017 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,058,330.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,851.27 | $0.00 |
| 03/07/2017 | $0.00 | $0.00 | $25.00 | POSTING FEES | | $1,058,330.36 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,876.27 | $0.00 |
| 03/07/2017 | $0.00 | $0.00 | $22.56 | MAILING FEES | | $1,058,330.36 | $0.00 | $0.00 | $0.00 | $22.56 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,898.83 | $0.00 |
| 03/28/2017 | $0.00 | $0.00 | -$10,041.43 | County Tax Disbursement | | $1,058,330.36 | $0.00 | $0.00 | -$10,041.43 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,898.83 | $0.00 |
| 04/01/2017 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,067,661.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,898.83 | $0.00 |
| 04/10/2017 | $0.00 | $0.00 | $22.86 | MAILING FEES | | $1,067,661.68 | $0.00 | $0.00 | $0.00 | $22.86 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,921.69 | $0.00 |
| 04/10/2017 | $0.00 | $0.00 | $25.00 | POSTING FEES | | $1,067,661.68 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,946.69 | $0.00 |
| 04/25/2017 | $0.00 | $0.00 | $22.86 | MAILING FEES | | $1,067,661.68 | $0.00 | $0.00 | $0.00 | $22.86 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,969.55 | $0.00 |
| 05/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,077,363.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,969.55 | $0.00 |
| 06/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,087,065.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,969.55 | $0.00 |


Exhibit A

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 06/02/2017 | $0.00 | $0.00 | $25.00 | POSTING FEES | | $1,087,065.60 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,994.55 | $0.00 |
| 07/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,096,767.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,994.55 | $0.00 |
| 08/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,106,469.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,994.55 | $0.00 |
| 08/14/2017 | $0.00 | $0.00 | $22.86 | MAILING FEES | | $1,106,469.52 | $0.00 | $0.00 | $0.00 | $22.86 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $15,017.41 | $0.00 |
| 08/14/2017 | $0.00 | $0.00 | $25.00 | FC POSTPNMNT FEE | | $1,106,469.52 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $15,042.41 | $0.00 |
| 09/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,116,171.48 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $15,042.41 | $0.00 |
| 10/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,125,873.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $15,042.41 | $0.00 |
| 10/27/2017 | $0.00 | $0.00 | -$2,550.00 | HAZARD INSURANCE | | $1,125,873.44 | $0.00 | $0.00 | -$2,550.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$249,508.50 | $15,042.41 | $0.00 |
| 11/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,135,575.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$249,508.50 | $15,042.41 | $0.00 |
| 11/28/2017 | $0.00 | $0.00 | -$10,118.56 | County Tax Disbursement | | $1,135,575.40 | $0.00 | $0.00 | -$10,118.56 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 12/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,145,277.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 01/01/2018 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,154,979.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 02/01/2018 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,164,681.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 03/01/2018 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,174,383.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 03/26/2018 | $0.00 | $0.00 | -$10,118.56 | County Tax Disbursement | | $1,174,383.24 | $0.00 | $0.00 | -$10,118.56 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 04/01/2018 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,184,085.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 05/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,194,149.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 06/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,204,214.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |


Exhibit A

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 07/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,214,279.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 08/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,224,344.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 09/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,234,408.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 10/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,244,473.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 10/29/2018 | $0.00 | $0.00 | -$2,652.00 | HAZARD INSURANCE | | $1,244,473.52 | $0.00 | $0.00 | -$2,652.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$272,397.62 | $15,042.41 | $0.00 |
| 11/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,254,538.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$272,397.62 | $15,042.41 | $0.00 |
| 11/26/2018 | $0.00 | $0.00 | -$10,107.44 | County Tax Disbursement | | $1,254,538.24 | $0.00 | $0.00 | -$10,107.44 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 12/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,264,602.96 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 01/01/2019 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,274,667.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 02/01/2019 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,284,732.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 03/01/2019 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,294,797.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 03/22/2019 | $0.00 | $0.00 | -$10,107.44 | County Tax Disbursement | | $1,294,797.12 | $0.00 | $0.00 | -$10,107.44 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 04/01/2019 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,304,861.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 05/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,315,208.61 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 06/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,325,555.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 07/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,335,902.15 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 08/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,346,248.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 09/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,356,595.69 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 10/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,366,942.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 10/28/2019 | $0.00 | $0.00 | -$3,163.68 | HAZARD INSURANCE | | $1,366,942.46 | $0.00 | $0.00 | -$3,163.68 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$295,776.18 | $15,042.41 | $0.00 |
| 11/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,377,289.23 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$295,776.18 | $15,042.41 | $0.00 |
| 11/26/2019 | $0.00 | $0.00 | -$10,309.50 | County Tax Disbursement | | $1,377,289.23 | $0.00 | $0.00 | -$10,309.50 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 12/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,387,636.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 01/01/2020 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,397,982.77 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 02/01/2020 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,408,329.54 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 03/01/2020 | $10,245.34 | $0.00 | $0.00 | Monthly Assessment | | $1,418,574.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 03/30/2020 | $0.00 | $0.00 | -$10,309.50 | County Tax Disbursement | | $1,418,574.88 | $0.00 | $0.00 | -$10,309.50 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 04/01/2020 | $10,245.34 | $0.00 | $0.00 | Monthly Assessment | | $1,428,820.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 05/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,438,471.63 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 06/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,448,123.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 07/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,457,774.45 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 07/20/2020 | $0.00 | $0.00 | $535.00 | ATTY/TRUSTEE | | $1,457,774.45 | $0.00 | $0.00 | $0.00 | $535.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,577.41 | $0.00 |
| 08/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,467,425.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,577.41 | $0.00 |
| 09/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,477,077.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,577.41 | $0.00 |
| 10/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,486,728.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,577.41 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10/30/2020 | $0.00 | $0.00 | -$3,290.23 | HAZARD INSURANCE | | $1,486,728.68 | $0.00 | $0.00 | -$3,290.23 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$319,685.41 | $15,577.41 | $0.00 |
| 11/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,496,380.09 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$319,685.41 | $15,577.41 | $0.00 |
| 11/30/2020 | $0.00 | $0.00 | -$10,515.49 | County Tax Disbursement | | $1,496,380.09 | $0.00 | $0.00 | -$10,515.49 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,577.41 | $0.00 |
| 12/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,506,031.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,577.41 | $0.00 |
| 01/01/2021 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,515,682.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,577.41 | $0.00 |
| 01/19/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,515,682.91 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,594.91 | $0.00 |
| 02/01/2021 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,525,334.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,594.91 | $0.00 |
| 02/12/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,525,334.32 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,612.41 | $0.00 |
| 03/01/2021 | $9,649.60 | $0.00 | $0.00 | Monthly Assessment | | $1,534,983.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,612.41 | $0.00 |
| 03/08/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,534,983.92 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,629.91 | $0.00 |
| 03/29/2021 | $0.00 | $0.00 | -$10,515.49 | County Tax Disbursement | | $1,534,983.92 | $0.00 | $0.00 | -$10,515.49 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,629.91 | $0.00 |
| 04/01/2021 | $9,649.60 | $0.00 | $0.00 | Monthly Assessment | | $1,544,633.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,629.91 | $0.00 |
| 04/01/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,544,633.52 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,647.41 | $0.00 |
| 04/27/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,544,633.52 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,664.91 | $0.00 |
| 05/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,553,575.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,664.91 | $0.00 |
| 05/20/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,553,575.40 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,682.41 | $0.00 |
| 06/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,562,517.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,682.41 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 06/14/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,562,517.28 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,699.91 | $0.00 |
| 07/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,571,459.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,699.91 | $0.00 |
| 07/09/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,571,459.16 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,717.41 | $0.00 |
| 08/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,580,401.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,717.41 | $0.00 |
| 08/20/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,580,401.04 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,734.91 | $0.00 |
| 09/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,589,342.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,734.91 | $0.00 |
| 09/21/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,589,342.92 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,752.41 | $0.00 |
| 10/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,598,284.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,752.41 | $0.00 |
| 10/18/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,598,284.80 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,769.91 | $0.00 |
| 10/26/2021 | $0.00 | $0.00 | -$3,421.84 | HAZARD INSURANCE | | $1,598,284.80 | $0.00 | $0.00 | -$3,421.84 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$344,138.23 | $15,769.91 | $0.00 |
| 11/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,607,226.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$344,138.23 | $15,769.91 | $0.00 |
| 11/29/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,607,226.68 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$344,138.23 | $15,787.41 | $0.00 |
| 12/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,616,168.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$344,138.23 | $15,787.41 | $0.00 |
| 12/01/2021 | $0.00 | $0.00 | -$10,558.30 | County Tax Disbursement | | $1,616,168.56 | $0.00 | $0.00 | -$10,558.30 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,787.41 | $0.00 |
| 01/01/2022 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,625,110.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,787.41 | $0.00 |
| 01/11/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,625,110.44 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,804.91 | $0.00 |
| 02/01/2022 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,634,052.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,804.91 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

### Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 02/04/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,634,052.32 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,822.41 | $0.00 |
| 03/01/2022 | $8,959.98 | $0.00 | $0.00 | Monthly Assessment | | $1,643,012.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,822.41 | $0.00 |
| 03/09/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,643,012.30 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,839.91 | $0.00 |
| 03/30/2022 | $0.00 | $0.00 | -$10,558.30 | County Tax Disbursement | | $1,643,012.30 | $0.00 | $0.00 | -$10,558.30 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,839.91 | $0.00 |
| 04/01/2022 | $8,959.98 | $0.00 | $0.00 | Monthly Assessment | | $1,651,972.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,839.91 | $0.00 |
| 04/08/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,651,972.28 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,857.41 | $0.00 |
| 05/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,661,423.18 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,857.41 | $0.00 |
| 05/09/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,661,423.18 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,874.91 | $0.00 |
| 06/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,670,874.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,874.91 | $0.00 |
| 06/07/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,670,874.08 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,892.41 | $0.00 |
| 07/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,680,324.98 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,892.41 | $0.00 |
| 07/11/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,680,324.98 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,909.91 | $0.00 |
| 08/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,689,775.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,909.91 | $0.00 |
| 08/09/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,689,775.88 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,927.41 | $0.00 |
| 09/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,699,226.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,927.41 | $0.00 |
| 09/13/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,699,226.78 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,944.91 | $0.00 |
| 10/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,944.91 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10/11/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,962.41 | $0.00 |
| 10/17/2022 | $0.00 | $0.00 | $91.00 | RECORDING FEES | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $91.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $16,053.41 | $0.00 |
| 10/20/2022 | $0.00 | $0.00 | $1,493.00 | TITLE FEES | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $1,493.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $17,546.41 | $0.00 |
| 10/21/2022 | $0.00 | $0.00 | $116.66 | MAILING FEES | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $116.66 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $17,663.07 | $0.00 |
| 10/21/2022 | $0.00 | $0.00 | $180.00 | ATTY/TRUSTEE | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $180.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $17,843.07 | $0.00 |
| 10/21/2022 | $0.00 | $0.00 | $10.00 | RECORDING FEES | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $10.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $17,853.07 | $0.00 |
| 10/26/2022 | $0.00 | $0.00 | -$3,640.83 | HAZARD INSURANCE | | $1,708,677.68 | $0.00 | $0.00 | -$3,640.83 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,853.07 | $0.00 |
| 11/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,853.07 | $0.00 |
| 11/14/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,870.57 | $0.00 |
| 11/28/2022 | $0.00 | $0.00 | $87.25 | RECORDING FEES | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $87.25 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,957.82 | $0.00 |
| 11/28/2022 | $0.00 | $0.00 | $0.57 | MAILING FEES | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $0.57 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,958.39 | $0.00 |
| 11/29/2022 | $0.00 | $0.00 | $35.98 | MAILING FEES | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $35.98 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,994.37 | $0.00 |
| 12/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,727,579.48 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,994.37 | $0.00 |
| 12/01/2022 | $0.00 | $0.00 | -$10,848.05 | County Tax Disbursement | | $1,727,579.48 | $0.00 | $0.00 | -$10,848.05 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $17,994.37 | $0.00 |
| 12/06/2022 | $0.00 | $0.00 | $120.00 | ATTY/TRUSTEE | | $1,727,579.48 | $0.00 | $0.00 | $0.00 | $120.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $18,114.37 | $0.00 |
| 12/07/2022 | $0.00 | $0.00 | $1,207.50 | ATTY/TRUSTEE | | $1,727,579.48 | $0.00 | $0.00 | $0.00 | $1,207.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,321.87 | $0.00 |
| 12/15/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,727,579.48 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,339.37 | $0.00 |
| 01/01/2023 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,737,030.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,339.37 | $0.00 |
| 01/10/2023 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,737,030.38 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,356.87 | $0.00 |
| 01/26/2023 | $0.00 | $0.00 | $88.00 | RECORDING FEES | | $1,737,030.38 | $0.00 | $0.00 | $0.00 | $88.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,444.87 | $0.00 |



# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 01/30/2023 | $0.00 | $0.00 | $258.58 | MAILING FEES | | $1,737,030.38 | $0.00 | $0.00 | $0.00 | $258.58 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,703.45 | $0.00 |
| 02/01/2023 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,703.45 | $0.00 |
| 02/07/2023 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,720.95 | $0.00 |
| 02/13/2023 | $0.00 | $0.00 | $125.00 | POSTING FEES | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $125.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,845.95 | $0.00 |
| 02/15/2023 | $0.00 | $0.00 | $130.00 | BPO - DRIVE BY | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $130.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,975.95 | $0.00 |
| 02/21/2023 | $0.00 | $0.00 | $475.00 | ADVRTIZE/PUBLISH | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $475.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $20,450.95 | $0.00 |
| 02/28/2023 | $0.00 | $0.00 | $1,120.00 | APPRSL DRIVE BY | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $1,120.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $21,570.95 | $0.00 |
| 03/01/2023 | $9,517.44 | $0.00 | $0.00 | Monthly Assessment | | $1,755,998.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $21,570.95 | $0.00 |
| 03/01/2023 | $0.00 | $0.00 | $221.86 | MAILING FEES | | $1,755,998.72 | $0.00 | $0.00 | $0.00 | $221.86 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $21,792.81 | $0.00 |
| 03/06/2023 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,755,998.72 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $21,810.31 | $0.00 |
| 03/30/2023 | $0.00 | $0.00 | -$10,848.05 | County Tax Disbursement | | $1,755,998.72 | $0.00 | $0.00 | -$10,848.05 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,810.31 | $0.00 |
| 04/01/2023 | $9,517.44 | $0.00 | $0.00 | Monthly Assessment | | $1,765,516.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,810.31 | $0.00 |
| 04/05/2023 | $0.00 | $0.00 | $54.70 | MAILING FEES | | $1,765,516.16 | $0.00 | $0.00 | $0.00 | $54.70 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,865.01 | $0.00 |
| 04/05/2023 | $0.00 | $0.00 | $50.00 | ATTY/TRUSTEE | | $1,765,516.16 | $0.00 | $0.00 | $0.00 | $50.00 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,915.01 | $0.00 |
| 04/28/2023 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,765,516.16 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,932.51 | $0.00 |


Exhibit A

Creditor Name:

***THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-0 4

**Exhibit A**

## PROOF OF CLAIM DISCLOSURES

IN RE: **BEIER, JEFFREY S**
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

CASE NO. 8:23-bk-10898-TA

CREDITOR: THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-04

1. The amount of the post-petition payments is subject to change per the terms of the InterestOnly Adjustable Rate Note and Deed of Trust.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.



Exhibit A



CUSTOMER SERVICE
PO BOX 31785
TAMPA, FL 33631-3785

**Escrow Account Summary**

**Account number**

**Property Address**
10 TUCSON
COTO DE CAZA AREA, CA 92679

**Date**
05/06/2023

JEFFREY S BEIER
TONI R BEIER
1913 E 17TH ST STE 212
SANTA ANA  CA 92705-8627

**OUR RECORDS INDICATE THAT THIS ACCOUNT IS SUBJECT TO A BANKRUPTCY CASE OR ONE OR MORE
BORROWERS RECEIVED A DISCHARGE OF THEIR PERSONAL OBLIGATION TO REPAY THE DEBT ASSOCIATED
WITH THIS LOAN. THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A DEMAND FOR
PAYMENT, AN ATTEMPT TO COLLECT A DEBT, A REQUEST ON AN OBLIGATION, AN ATTEMPT TO IMPOSE
PERSONAL LIABILITY UPON YOU FOR A DISCHARGED DEBT, OR AN ATTEMPT TO MODIFY ANY BANKRUPTCY
PLAN OR DISCHARGE ORDER.**

**JEFFREY S BEIER and TONI R BEIER**,

We've included the escrow analysis statement for this home loan -- here are some
highlights.

Here's a summary of what was paid from escrow, what we plan on paying over the upcoming year and how the monthly
payment is changing.

| Summary of escrow disbursements (see Escrow History) | Last year's projected disbursements | Last year's actual disbursements |
|---|---|---|
| Insurance | $3,640.83 | $0.00 |
| Taxes | $21,696.10 | $10,848.05 |
| **Total disbursements from escrow** | **$25,336.93** | **$10,848.05** |

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are
currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this
notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt
to impose personal liability for a discharged debt.

**Exhibit** 

Here's what we estimate for the next 12 months:

| Summary of projected escrow disbursements (see Escrow Projections) | Next year's projected disbursements |
|---|---|
| County taxes | $21,696.10 |
| Homeowners insurance | $3,640.83 |
| **Total disbursements from escrow** | **$25,336.93** |

Based on our projection, we expect the lowest balance in your escrow account over the next 12 months will be **$4,223.78**. Because you're required to maintain a minimum balance of **$4,222.82** we're projecting an overage of **$0.96**. We're going to keep the balance in your escrow account, since payments are behind.

**Here's how these changes will affect the monthly payment starting 05/01/2023:**

|  | Prior escrow analysis | New Payment |
|---|---|---|
| **Principal and interest** | **$7,406.03** | **$8,262.18** |
| **Monthly Escrow Payment** | ***$2,111.41** | **$2,111.41** |
| Taxes | $1,808.01 | $1,808.01 |
| Insurance | $303.40 | $303.40 |
| **Total payment amount** | **$9,517.44** | **$10,373.59** |

*Prior Analysis Escrow Payment amount is as of the last escrow analysis date and does not reflect payment adjustment made if last year's escrow shortage was paid in full.*

## We're here to help

If you have any questions, please call us at ▮▮▮▮▮▮ Monday – Friday, 8 a.m. to 9 p.m. ET.

For more details, please review the escrow analysis statement we've included. You can also review your account anytime at ▮▮▮▮▮▮▮▮▮



**Exhibit F**



CUSTOMER SERVICE
PO BOX 31785
TAMPA, FL 33631-3785

## Escrow Account Disclosure Statement

**Account number**

**Property address**
10 TUCSON
COTO DE CAZA AREA, CA 92679
**Date**
05/06/2023
**New Payment Effective Date**
05/01/2023
**New Payment Amount**
**$10,373.59**

JEFFREY S BEIER
TONI R BEIER
1913 E 17TH ST STE 212
SANTA ANA CA 92705-8627

**OUR RECORDS INDICATE THAT THIS ACCOUNT IS SUBJECT TO A BANKRUPTCY CASE OR ONE OR MORE BORROWERS RECEIVED A DISCHARGE OF THEIR PERSONAL OBLIGATION TO REPAY THE DEBT ASSOCIATED WITH THIS LOAN. THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A DEMAND FOR PAYMENT, AN ATTEMPT TO COLLECT A DEBT, A REQUEST ON AN OBLIGATION, AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR A DISCHARGED DEBT, OR AN ATTEMPT TO MODIFY ANY BANKRUPTCY PLAN OR DISCHARGE ORDER.**

JEFFREY S BEIER and TONI R BEIER

Every year, we review your escrow account to make sure there will be enough money to cover your tax and insurance payments for the next year. We've adjusted the monthly payment and it looks like there will be **$0.96** left in your account even after your taxes and/or insurance are paid. We're going to keep the balance in your escrow account since payments are behind.

| New Payment Amount | | | |
|---|---|---|---|

The Total Monthly Payment is changing starting **05/01/2023**.

| | Prior Analysis | New Payment | **New Monthly Payment** |
|---|---|---|---|
| **Principal and/or interest** | **$7,406.03** | **$8,262.18** | |
| **Monthly Escrow Payment** | **\*$2,111.41** | **$2,111.41** | **$10,373.59** |
| _Tax_ | _$1,808.01_ | _$1,808.01_ | See Projected Escrow Payments Section |
| _Insurance_ | _$303.40_ | _$303.40_ | for details |
| _Mortgage Insurance_ | _$0.00_ | _$0.00_ | |
| _Monthly Escrow- Overage / Shortage Adjustment_ | _$0.00_ | _$0.00_ | |
| **Total Payment Amount** | **$9,517.44** | **$10,373.59** | |

_\*Prior Analysis Escrow Payment amount is as of the last escrow analysis date and does not reflect payment adjustment made if last year's escrow shortage was paid in full._

**Important reminder:** You may need to update any recurring scheduled payments to match the new monthly payment amount because they won't be automatically updated. If you're enrolled in PayPlan, payments will automatically be updated.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

Bank of America and the Bank of America logo are registered trademarks of Bank of America Corporation. Bank of America, N.A. Member FDIC. Equal Housing Lender ⌂.



**Account Number** [redacted]  Statement Date 05/06/2023

## Escrow History

Here's what happened in your escrow account since our last review compared to what we projected to happen. If there were changes to your taxes and/or insurance, they're bolded and highlighted below. This should help explain why there wasn't enough money in your escrow account to cover the taxes and insurance this past year. We've marked your lowest minimum balances with an asterisk (*). Any deposits into Escrow are summed and shown as a total amount for the month.

| Month | Deposits To Escrow | | | Payments From Escrow | | | Escrow Balances | |
|---|---|---|---|---|---|---|---|---|
| | Deposits to Escrow | Expected Payment to Escrow | Description | What we Paid From Escrow | What we Expected to Pay From Escrow | Description | Actual Balance | Last Year's Estimated Balance |
| | | | | | | Beginning balance | -$379,743.71 | $12,959.46 |
| 03/2023 | | $2,111.41 | Deposit | $10,848.05 | $10,848.05 | County tax | -$390,591.76* | $4,222.82* |
| 04/2023 | | $2,111.41 | Deposit | | | | -$390,591.76* | $6,334.23 |
| 05/2023 | $396,926.96 | $2,111.41 | Expected Payment(s) not yet received | | | | $6,335.20 | $8,445.64 |
| 06/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $10,557.05 |
| 07/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $12,668.46 |
| 08/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $14,779.87 |
| 09/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $16,891.28 |
| 10/2023 | | $2,111.41 | Deposit | | $3,640.83 | Homeowners insurance | $6,335.20 | $15,361.86 |
| 11/2023 | | $2,111.41 | Deposit | | $10,848.05 | County tax | $6,335.20 | $6,625.22 |
| 12/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $8,736.63 |
| 01/2024 | | $2,111.41 | Deposit | | | | $6,335.20 | $10,848.04 |
| 02/2024 | | $2,111.41 | Deposit | | | | $6,335.20 | $12,959.45 |
| TOTAL | $396,926.96 | $25,336.92 | | $10,848.05 | $25,336.93 | Ending balance | $6,335.20 | $12,959.45 |

| Summary of Escrow Transactions | Actual | Expected |
|---|---|---|
| **Total Deposits To Escrow** | **$396,926.96** | **$25,336.92** |
| *Monthly Deposits* | $396,926.96 | $25,336.92 |
| **Total Payments From Escrow** | **$10,848.05** | **$25,336.93** |
| *Insurance* | $0.00 | $3,640.83 |
| *Taxes* | $10,848.05 | $21,696.10 |

This estimate assumes the expected payments shown above will be made.



**Exhibit A**

| **Projected Escrow Payments** |
|:---:|

Here's a summary of what we expect to happen in your escrow account over the next year.

| | |
|---|---:|
| County taxes | $21,696.10 |
| Homeowners insurance | $3,640.83 |
| **Total Expected Escrow Disbursements:** | **$25,336.93** |

To estimate your monthly escrow payment, we total the expected payments to tax and/or insurance and divide by 12 months: **$25,336.93 /12 = $2,111.41.**

### Your estimated escrow account payments over the next 12 months

Since the mortgage account is past due, the beginning balance in your escrow account may not match the ending balance from the history above. The numbers in this table assume all mortgage payments are up to date.

| Month | Your Payment to Escrow | Tax Payment(s) | Insurance Payment(s) | Mortgage Insurance (MIP/PMI) Payment(s) | Expected Escrow Balance |
|---|---|---|---|---|---|
| **Beginning balance** | | | | | **$6,335.20** |
| 05/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $8,446.61 |
| 06/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $10,558.02 |
| 07/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $12,669.43 |
| 08/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $14,780.84 |
| 09/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $16,892.25 |
| 10/2023 | $2,111.41 | $0.00 | $3,640.83 | $0.00 | $15,362.83 |
| 11/2023 | $2,111.41 | $10,848.05 | $0.00 | $0.00 | $6,626.19 |
| 12/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $8,737.60 |
| 01/2024 | $2,111.41 | $0.00 | $0.00 | $0.00 | $10,849.01 |
| 02/2024 | $2,111.41 | $0.00 | $0.00 | $0.00 | $12,960.42 |
| 03/2024 | $2,111.41 | $10,848.05 | $0.00 | $0.00 | **$4,223.78** |
| 04/2024 | $2,111.41 | $0.00 | $0.00 | $0.00 | $6,335.19 |
| **Ending balance** | | | | | **$6,335.19** |

**Based on this year's review, your escrow account has an overage of $0.96.** This was calculated based on the expected minimum balance which is bolded in the table above.

Since your expected minimum balance is higher than the required minimum balance, your account has an overage. The required minimum balance (which is also sometimes called a cushion), may include up to two months of escrow payments (not including your mortgage insurance) to help cover increases to your taxes and homeowner's insurance. **Your account's current cushion is $4,222.82.**

| | |
|---|---:|
| Expected Minimum Balance | $4,223.78 |
| ***Minus*** | |
| Required Minimum Balance | **$4,222.82** |
| **Escrow Overage Amount** | **$0.96** |

Please let us know if you have any questions. You can call us at [REDACTED] Monday – Friday, 8 a.m. to 9 p.m. ET. You can review your account anytime at [REDACTED]

# Exhibit A

## FREQUENTLY ASKED QUESTIONS

**Q.  Where can I view information about my taxes and insurance online?**
A:   You can view information and set up alerts about your taxes and insurance in online banking. To view information, go to
www.bankofamerica.com, sign in, select the mortgage account, and go to the Information & Service tab. To sign up for alerts go
to www.bankofamerica.com, select the mortgage account, and then click on Manage Alert Settings in the Communication Center.

**Q:  Why am I getting this Escrow Account Disclosure Statement?**
A:   We want to make sure you understand any payment changes. Your escrow payment amount for the upcoming year may change
due to increased or decreased taxes and/or insurance. This statement provides details about any payment changes.

**Q:  What is an Escrow Analysis?**
A:   We do an Escrow Analysis at least once a year to determine if the amount of money in your escrow account is enough for next
year's expected tax and/or insurance payments.

**Q:  What are the most common reasons for my escrow payment change?**
A:   The most common reasons for a payment change are changes to your property taxes and/or insurance premiums.

**Q:  I've paid the full escrow shortage, why is my escrow payment still increasing?**
A:   A required escrow payment is determined by the total amount of annual disbursements divided across 12 monthly payments.
Paying the escrow shortage in full ensures that your escrow account does not fall below the minimum required balance, but it will
not reduce the required escrow payment amount.

**Q:  I do not want my escrow payment to change. Can I make an additional escrow payment to keep my monthly payments
the same?**
A:   The escrow payment cannot be adjusted below the required escrow payment amount (total amount of annual disbursements
divided across 12 monthly payments). Any funds in your escrow account that are in excess of the annual disbursement amounts
plus the required reserve will be returned as an escrow overage when the escrow account is next analyzed.

**Q:  What is an Escrow Overage?**
A:   An Escrow Overage happens when our Escrow Analysis shows you've got more money in your escrow account than the required
minimum balance. All escrow overages will be refunded as long as account is current as of the date of the escrow analysis.

**Q:  What is an Escrow Shortage?**
A:   An Escrow Shortage happens when our Escrow Analysis shows there's not enough money in your account to meet the required
minimum balance. We'll adjust the monthly payment to make up the shortage.

**Q:  What is a Required Minimum Balance?**
A:   The required minimum balance is the smallest amount of money you can have in your account at any time during the year. The
required minimum balance, also called a cushion, may include up to two months of escrow payments minus mortgage insurance to
cover potential increases to your taxes and homeowner's insurance.

**Q:  Who should I contact about tax or insurance changes that increased my monthly escrow payment?**
A:   Contact your local tax authority or insurance agent with questions about any tax or insurance payment changes.

**Q:  Can the total Escrow Shortage amount be included with the monthly mortgage payment?**
A:   If your escrow shortage is less than or equal to 1 month's escrow payment you have the option to pay the balance in full or to
spread it over the next 12 months. If you choose to pay the escrow shortage in full, the escrow shortage amount must be sent
separately, along with the payment coupon Included with this statement. If your escrow shortage is greater than 1 month's
escrow payment we will spread the shortage over 12 months.

**Q:  Do I need to take any actions if recurring mortgage payments are scheduled through an online bill payment service?**
A:   Yes. The payment amount will not update automatically. If recurring payments are made from a Bank of America account, visit
Online Banking to update the amount of any scheduled payments in Transfers, BillPay or Mortgage Pay on the Web. For
payments made through another institution, please follow their process for changing the payment amount.



Exhibit A

Prepared by: NICHOLAS P. ISAACS

LOAN # ███████

## InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE

(One-Year **LIBOR** Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MARCH 02, 2005                    MISSION VIEJO                    CALIFORNIA
[Date]                                      [City]                                      [State]

10 TUCSON, COTO DE CAZA AREA, CA 92679
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 1,470,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.                                                                                         .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the  first      day of every month, beginning on  MAY 01, 2005      .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
 APRIL 01, 2035       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ 7,196.88         before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)                    Page 1 of 4                                    Initials: ___

**A**

LOAN #: ▮▮▮▮▮

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  **(A) Change Dates**
  The initial fixed interest rate I will pay will change to an adjustable interest rate on the first        day of
APRIL, 2010        , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The
date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest
rate could change, is called a "Change Date."
  **(B) The Index**
  Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall
Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current
Index."
  If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.
The Note Holder will give me notice of this choice.
  **(C) Calculation of Changes**
  Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER        percentage points (    2.250  %) to the Current Index. The Note Holder will then
round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in
Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid
principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal
payments. The result of this calculation will be the new amount of my monthly payment.
  **(D) Limits on Interest Rate Changes**
  The interest rate I am required to pay at the first Change Date will not be greater than   10.875  % or less than
   2.250  %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more
than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never
be greater than   10.875  %.
  **(E) Effective Date of Changes**
  My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
  **(F) Notice of Changes**
  Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to
me a notice of such change. The notice will include information required by law to be given to me and also the title and
telephone number of a person who will answer any question I may have regarding the notice.
  **(G) Date of First Principal and Interest Payment**
  The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest
Payment Due Date") shall be the first monthly payment date after the first Change Date.

**5. BORROWER'S RIGHT TO PREPAY**
  I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under this Note.
  I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments
unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly
payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my
payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal
and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**
  If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from
me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated
as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
  **(A) Late Charges for Overdue Payments**
  If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN        calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000  % of my
overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will
pay this late charge promptly but only once on each late payment.
  **(B) Default**
  If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                              Page 2 of 4                              Initials



**Exhibit A**

LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials



**Exhibit A**

LOAN # : ▮▮▮▮▮

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JEFEREY S. BEIER                                    -Borrower

_____ (Seal)
TONI R. BEIER                                      -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

PAY TO THE ORDER OF                    [*Original Only]
JPMorgan Chase Bank, as Trustee

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

**Exhibit A**

# **Allonge to Deed of Trust/Mortgage Note**

Loan Number: ███████

Allonge to one certain Deed of Trust/Mortgage Note Date:
March 2, 2005

Executed By:

JEFFREY S BEIER & TONI R BEIER

Original Amount: $1,470,000.00
Property Address:
 10 TUCSON, COTO DE CAZA AREA, CA 92679

Pay to the Order of:

Without Recourse:
**Countrywide Home Loans, Inc.**

By: _____
Name: FRANK FOLDA
Title: Vice President



**Exhibit A**

RECORDING REQUESTED electronically recorded by
BY STEWART TITLE                                    Stewart Title
IRVINE

Recording Requested By:                     Recorded in Official Records, Orange County
K. BUDDE                                     Tom Daly, Clerk-Recorder

                                                                        87.00
                                                      2005000170527 11:06am 03/08/05
                                             105 31 D11 28
                                             0.00 0.00 0.00 0.00 81.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
NICHOLAS P. ISAACS

——————————————— [Space Above This Line For Recording Data] ———————————————

                    [Escrow/Closing #]                        [Doc ID #]

# DEED OF TRUST
## MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated  MARCH 02, 2005          , together
with all Riders to this document.
(B) "Borrower" is
JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

VMP-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291                Initials: _____
CONV/VA                                                                                Form 3005 1/01






# Exhibit A

DOC ID #: ████████

Borrower's address is
10 TUCSON, COTO DE CAZA AREA, CA 92679
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ████████
**(F) "Note"** means the promissory note signed by Borrower and dated MARCH 02, 2005        . The Note states that Borrower owes Lender
ONE MILLION FOUR HUNDRED SEVENTY THOUSAND and 00/100

Dollars (U.S. $ 1,470,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  APRIL 01, 2035        .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

**Exhibit A**

DOC ID #: ███████████

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                of                    ORANGE                  :
[Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 755-241-13                              which currently has the address of
                            10 TUCSON, COTO DE CAZA AREA                              ,
                                            [Street/City]

California    92679      ("Property Address"):
          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

**Exhibit A**

DOC ID #: ████████

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

VMP®-6A(CA) (0207)    CHL (09/02)    Page 4 of 16    Initials: _____    Form 3005 1/01

**Exhibit F**

DOC ID #: ████████

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**Exhibit A**

DOC ID #: ▮▮▮▮▮▮

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

**Exhibit F**

DOC ID # ▮▮▮▮▮▮▮▮▮▮▮

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials: _____

Form 3005 1/01

**Exhibit A**

DOC ID # ████████

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

**Exhibit A**

DOC ID #:

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Initials:

**Exhibit F**

DOC ID #: ▮

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

**Exhibit A**

DOC ID #:

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials:

**Exhibit A**

DOC ID #:

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Initials:

Form 3005 1/01

**Exhibit A**

DOC ID #: ▮▮▮▮▮▮▮

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**Exhibit A**

DOC ID #: ███████████

    **If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

    **Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

    **23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

    **24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

    **25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



**Exhibit A**

DOC ID #: ▮▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          JEFFREY S. BEIER                -Borrower

_____          _____ (Seal)
                                          TONI R. BEIER                   -Borrower

                                          _____ (Seal)
                                                                         -Borrower

                                          _____ (Seal)
                                                                         -Borrower

**Exhibit A**

DOC ID #: ██████████

State of California
County of Orange                                    } ss.

On March 2, 2005    before me, Erin Wilkinson
                                                     personally appeared

Jeffrey S. Beier & Toni R. Beier

~~, personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ERIN WILKINSON
Commission # ██████
Notary Public - California
Orange County
My Comm. Expires Jul 8, 2007

Initials: _____
Form 3005 1/01

**Exhibit A**

Government Code Section 27361.7

I certify under penalty of perjury that the notary seal on the document to
which this statement is attached reads as follows:

Name of Notary:                          ERIN WILKINSON

Date commission expires:                 JULY 8, 2007

Commission No.:                          █████████

Vendor No.:                              NNA1

Place of execution:                      ORANGE

Date:                                    MARCH 2, 2005

Stewart Title of California

By:    DANNY SCRUGGS

_____

# Exhibit A

Prepared by: NICHOLAS P. ISAACS

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: ▮▮▮▮▮▮▮
27101 PUERTA REAL, ST 100
MISSION VIEJO, CA 92691

DATE:          03/02/2005
CASE #:
DOC ID #: ▮▮▮▮▮▮▮
BORROWER: JEFFREY S. BEIER
PROPERTY ADDRESS: 10 TUCSON
                 COTO DE CAZA AREA, CA 92679

### LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)



# Exhibit A

EXHIBIT "A"

LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of ORANGE, described as follows:

Parcel 1:

Lot 1 (the "Lot") of Tract No. 15841, in the County of Orange, State of California, as shown on a subdivision map ("Map") recorded on December 23, 1999, in book 794, pages 25 to 29, inclusive of miscellaneous maps, in the office of the Orange County recorder.

Excepting therefrom; all oil, oil rights, natural gas rights, mineral rights, and other hydrocarbon substances by whatever name known, together with appurtenant rights thereto, without, however, any right to enter upon the surface of said land nor any portion of the subsurface lying above a depth of 500 feet, as excepted or reserved in instruments of record.

Except all water, claims or rights to water, in or under said land.

Parcel 2:

Non-exclusive easements for use, access, ingress, egress, maintenance, repair, drainage, encroachment, support, and for other purposes, all as described in the Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Coto de Caza ("Master Declaration"), recorded on March 5, 1984 as Instrument No. 84-092424, in the Supplemental Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Oak Knoll in Coto De Caza ("Supplemental Declaration") recorded on September 11, 2000 as Instrument No. 2000-0471430, in the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for The Summit ("Summit Declaration") recorded on September 20, 2000 as Instrument No. 2000-0492456, all in official records and all as amended or restated, and as described in the map and notice recorded December 20, 2000 as Instrument No. 2000-0691033.

End of Legal Description

**Exhibit A**

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
NICHOLAS P. ISAACS


[Escrow/Closing #]                    [Doc ID #]

    THIS PLANNED UNIT DEVELOPMENT RIDER is made this SECOND       day of
MARCH, 2005     , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**-7R** (0405)   **CHL (06/04)(d)**    Page 1 of 4        Initials:
                  VMP Mortgage Solutions, Inc.          Form 3150 1/01





# Exhibit A

DOC ID #:

undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

10 TUCSON
COTO DE CAZA AREA, CA 92679
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
OAK KNOLL AT COTO DE CAZA

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and
(iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay,
when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods,
and against loss by fire, hazards included within the term "extended coverage," and any other
hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance,
then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the Property; and (ii) Borrower's obligation under
Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent
that the required coverage is provided by the Owners Association policy.

Initials

**VMP®-7R** (0405)      **CHL (06/04)**      Page 2 of 4      **Form 3150 1/01**

# Exhibit A

DOC ID #:

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

**VMP®-7R** (0405)      **CHL (06/04)**      Page 3 of 4      **Form 3150 1/01**

# Exhibit A

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
PUD Rider.

_____ (Seal)
JEFFREY S. BEIER                                    - Borrower

_____ (Seal)
TONI R. BEIER                                       - Borrower

_____ (Seal)
                                                    - Borrower

_____ (Seal)
                                                    - Borrower

**-7R** (0405)     **CHL (06/04)**      Page 4 of 4          **Form 3150  1/01**

# Exhibit A

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
NICHOLAS P. ISAACS

Recording Requested By:


——————————— [Space Above This Line For Recording Data]———————————
# FIXED/ADJUSTABLE RATE RIDER
(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

███████████              ███████████

[Escrow/Closing #]              [Doc ID #]

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
  ██████████(06/04)(d)              Page 1 of 5              Initials: ████

# Exhibit A

DOC ID #: ▮▮▮▮▮▮▮▮

THIS FIXED/ADJUSTABLE RATE RIDER is made this SECOND                day of
MARCH, 2005          , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

10 TUCSON

COTO DE CAZA AREA, CA 92679

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of        5.875 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first            day of APRIL, 2010          , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER          percentage points (     2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
  ▮▮▮▮ (06/04)                     Page 2 of 5                      Initials

**Exhibit A**

DOC ID #: 

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
  ▮▮▮▮(06/04)                    Page 3 of 5                    Initials

# Exhibit A

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
▮▮▮▮ (06/04)                         Page 4 of 5                         Initials: ▮▮▮

# Exhibit A

DOC ID #: ████████████████

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
JEFFREY S. BEIER                                             -Borrower

_____ (Seal)
TONI R. BEIER                                                   -Borrower

_____ (Seal)
                                                                        -Borrower

_____ (Seal)
                                                                        -Borrower

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
██████ (06/04)                              Page 5 of 5

**Exhibit A**

LANDSAFE TITLE

RECORDING REQUESTED BY:
RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT**
**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

ATTN: Nallely Ochoa
TS No.

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

18.00

**2010000269465 08:00am 06/09/10**
37 402 S15 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

*Recording Requested By: DPS*
*On Behalf Of :*

## SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST

The undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter referred to as Beneficiary) is the Beneficiary of that certain Deed of Trust dated 03/02/2005, executed by JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, Trustor, to RECONTRUST COMPANY, N.A., as Trustee, and recorded as Instrument No. 2005000170527 on 03/08/2005, of Official Records in the County Recorder's Office of ORANGE County, California. NOW THEREFORE, Beneficiary hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS:1757 TAPO CANYON ROAD, SVW-88, SIMI VALLEY, CA 93063 , as Trustee under said Deed of Trust herein referred to, in the place and stead of and with all rights, title, powers, and interest of the former trustee described above.

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, conveys and transfers to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK,N.A. AS TRUSTEE, BSALTA 2005-04 all beneficial interest under that certain Deed of Trust described above. Said described land: "As more fully described in the above referenced Deed of Trust." Together with the note or notes therein described or referred to, the money due and to become due thereon with the interest, and all rights accrued or to accrue under said Deed of Trust.

DATED: June 07, 2010

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

State of: **CALIFORNIA**            )BY:

County of: **VENTURA**            )

On **JUN 07 2010** before me, **KEVIN RUDOLPH**

Kevin Rudolph, Assistant Secretary

**MICHELLE I. MILLER** , notary public, personally appeared
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Notary Public's Signature   **MICHELLE I. MILLER**



MICHELLE I. MILLER
COMM.
Notary Public - California
Los Angeles County
My Comm. Expires Feb. 15, 2013

*Form subasgnmnt (01/09)*

# Exhibit A

RECORDING REQUESTED
BY: **DANA  BURTON**
**BANK OF AMERICA**

**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

WHEN RECORDED MAIL TO:
**BANK OF AMERICA**

**4909 SAVARESE CIR.**
**TAMPA, FL  33634**

Space above for recorder's use only

CORRECTIVE ASSIGNMENT  OF DEED  OF TRUST
(DEED  OF TRUST) Title  of Document

This cover sheet added to provide adequate space for recording  information
($3.00  Additional Recording Fee Applies)



# Exhibit A

Recording Requested By:
**DANA BURTON**
**BANK OF AMERICA**
████████

**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

When Recorded Mail Document
and Tax Statement To:
**BANK OF AMERICA**
████████

**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

**Tax/Parcel #: 755-241-13**

_____ [Space Above This Line for Recording Data] _____

# CORRECTIVE ASSIGNMENT OF DEED OF TRUST

THIS ASSIGNMENT IS BEING RECORDED TO ADD THE NOMINEE VERBIAGE TO THE
ASSIGNMENT PREVIOUSLY RECORDED ON JUNE 9, 2010 IN INSTRUMENT NO. 2010000269465

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS BENEFICIARY, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS
SUCCESSORS AND ASSIGNS,** the undersigned holder of a Deed of Trust (herein "Assignor"), whose address
is **P.O. BOX 2026, FLINT, MI 48501-2026,** does hereby grant, assign, transfer and convey, unto **THE
BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR
IN INTEREST TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE, BSALTA 2005-04** (herein
"Assignee"), whose address is **240 GREENWICH STREET, NEW YORK, NY 10286,** under a certain
Deed of Trust made and executed by **JEFFREY S BEIER AND TONI R BEIER, HUSBAND
AND WIFE AS JOINT TENANTS** ("Borrower"), to **RECONTRUST COMPANY, N.A.** ("Trustee"),
upon the following property located at **10 TUCSON, COTO DE CAZA, CALIFORNIA 92679** and
situated in **ORANGE** County, State of **CALIFORNIA.**

Such Deed of Trust having been given to secure payment of **$1,470,000.00** which Deed of Trust is dated
**MARCH 2, 2005** and recorded on **MARCH 8, 2005** in INSTRUMENT NO. 2005000170527
**ORANGE COUNTY,** State of **CALIFORNIA,** together with all rights accrued or to accrue under such Deed of
Trust.

████████                              ████████

**Exhibit A**

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

**JUN 1 5 2023**
Date

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS BENEFICIARY, AS
NOMINEE FOR COUNTRYWIDE HOME LOANS,
INC., ITS SUCCESSORS AND ASSIGNS

By: *Dana M Burton*
(Signature)
**DANA M BURTON**
**ASSISTANT VICE PRESIDENT**

_____ [Space Below This Line for Acknowledgments] _____

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this ___15___ day of ___June___, ___2023___, by **DANA M BURTON** as **ASSISTANT VICE PRESIDENT** for **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS.**

*Alexandra Monegro*
(Signature of Notary Public - State of Florida)

Alexandra Monegro

> NOTARY PUBLIC
> ALEXANDRA MONEGRO
> Notary Public, State of Florida
> Commission ▓▓▓▓
> My comm. expires May 22, 2024

_____
(Print, Type, or Stamp Commissioned Name of Notary Public)

Personally Known OR Produced Identification
Type of Identification Produced _____N/A_____

**Exhibit A**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

8880 Rio San Diego Drive, Suite 725  San Diego, CA 92108

A true and correct copy of the foregoing document entitled (*specify*): Proof of Claim will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 12, 2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR DEBTOR:**
Anerio V Altman  LakeForestBankruptcy@jubileebk.net

**TRUSTEE:**


**U.S. TRUSTEE:**
U.S. Trustee  ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) July 12, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR:**
Jeffrey S Beier
P O Box 7644
Laguna Niguel, CA 92677

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 12, 2023 | CANDACE RUSSO | /s/ CANDACE RUSSO |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1.PROOF-SERVICE

Exhibit A