1  Joseph C. Delmotte (CA SBN 259460)
   jdelmotte@aldridgepite.com
2  **ALDRIDGE PITE, LLP**
   8880 Rio San Diego Drive, Suite 725
3  San Diego, CA 92108
   Telephone: (858) 750-7600
4  Facsimile: (619) 590-1385

5  Attorneys for *Respondent/Secured Creditor*
   THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR
6  TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR
   STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
7  2005-04

8

9                    **UNITED STATES BANKRUPTCY COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

11  | | |
    |---|---|
12  | In re | Case No. 8:23-bk-10898-TA |
    | | |
13  | JEFFREY S. BEIER, | Chapter 7 |
    | | |
14  | Debtor. | **OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 U.S.C. 363(f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BROKER COMPENSATION; (4) AUTHORIZING DISTRIBUTION OF SALE PROCEEDS: (5) DETERMINING THAT THE PROPOSED BUYER AND OVERBIDDER ARE "GOOD FAITH PURCHASERS" UNDER 11 U.S.C. 363(m); AND (6) WAIVING 14 DAY STAY IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h); DECLARATIONS OF A. CISNEROS, BRIAN THOMPSON, PROPOSED BUYER, AND OVERBIDDER IN SUPPORT HEREOF** |

24  DATE:  October 31, 2023
25  TIME:   11:00 a.m.
    CTRM:  Via Zoom Teleconference
26
27  411 West Fourth Street
    Santa Ana, CA  92701
28

Exhibit D

1    The Bank of New York Mellon FKA the Bank of New York Successor Trustee to

2    JPMorgan Chase Bank, N.A., as Trustee for the Bear Stearns ALT-A Trust, Mortgage Pass-

3    Through Certificates, Series 2005-04 ("BONY"), a secured creditor of the above-referenced

4    bankruptcy estate, hereby submits this Opposition to the Chapter 7 Trustee's Motion for Order:

5    (1) Authorizing Sale of Real Property Free and Clear of Interests Pursuant to 11 U.S.C. § 363(f);

6    (2) Approving Overbid Procedures; (3) Approving Broker Compensation; (4) Authorizing

7    Distribution of Sale Proceeds; (5) Determining that the Proposed Buyer and Overbidder are

8    "Good Faith Purchasers" Under 11 U.S.C. § 363(m); and (6) Waiving 14 Day Stay Impose by

9    Federal Rule of Bankruptcy Procedure 6004(h) ("Motion to Sell") filed by the Chapter 7 Trustee

10   Arturo Cisneros ("Trustee").

11                        **I.      INTRODUCTION**

12   Pursuant to the Motion to Sell, Trustee seeks authorization from the Court to sell certain

13   real property on which BONY holds a first position lien free and clear of all liens. To clarify,

14   BONY would not oppose the sale of the property to the extent its lien would be paid in full

15   through escrow upon sale but does oppose the proposed distribution of the sale proceeds

16   pursuant to the Motion to Sell to the extent the Trustee will only pay an interim distribution to

17   BONY upon sale in an amount which is insufficient to pay off the principal, with the remaining

18   balance to potentially be paid at an undetermined time in the future upon the outcome of

19   prospective litigation by the Debtor. As an initial matter, the Motion to Sell does not include

20   sufficient evidence to support the sale free and clear of BONY's lien without BONY's consent.

21   However, to the extent the Court determines there is adequate evidence to support a sale of the

22   property free and clear of liens under 11 U.S.C. Section 363(f), BONY respectfully requests that

23   its claim be paid in full upon sale rather than the distribution strategy proposed in the Motion to

24   Sell which may not pay BONY's lien in full depending on the outcome of potential litigation by

25   the Debtor. BONY contends that the proposed distribution of sale proceeds in the Motion to Sell

26   would be inequitable, cause unreasonable uncertainty regarding the distribution of the sale

27   proceeds and effectively punish BONY for refraining from foreclosing on the property and

28   engaging in good faith negotiations with the Trustee while simultaneously promoting further

Exhibit D

meritless litigation by the Debtor. A more equitable and reasonable distribution proposal would be to pay BONY's lien in full immediately upon sale when it is certain the sale proceeds will be sufficient to pay its lien in full and Debtor will not be prejudiced as he is free to pursue any claims against BONY upon the Trustee's abandonment of those claims notwithstanding the payment of BONY's claim in full from the sale proceeds. Accordingly, for the reasons discussed more fully herein, BONY requests that any sale free and clear of its lien be made contingent upon the payment of its claim in full upon sale or, alternatively, that the Motion to Sell be denied.

# I.    STATEMENT OF FACTS[1]

## A. LOAN HISTORY

On March 2, 2005, Debtor executed a promissory note in the principal sum of $1,470,000.00 (the "Note") in favor of Countrywide Home Loans, Inc.. The Note is indorsed to Movant. The Note is secured by a deed of trust (the "Deed of Trust") executed by Debtor and on the real property located at 10 Tucson, Coto de Caza Area, California 92679 (the "Property") and the beneficial interest in the Deed of trust was subsequently assigned to BONY. The Deed of Trust reflects that it was duly recorded. Copies of the Note, recorded Deed of Trust and Assignment of Deed of Trust are attached to BONY's proof of claim filed on the Court's claims register ("CCR") in the instant bankruptcy case as claim number 2 and attached hereto as Exhibit A for reference. The Note and Deed of Trust are referred to collectively herein after as the Subject Loan.

## B. THE JUNIOR DEED OF TRUST

On or about May 17, 2005, Debtor and Toni R. Beier executed a Deed of Trust and Assignment of Rents on the Property in favor of Countrywide Home Loans, Inc. to secure a

---

[1] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, BONY requests that the Court take judicial notice of the documents and other records on file in the instant case including those documents attached in support of BONY's proof of claim filed on the Court's claims register as claim number 2 and attached hereto as Exhibit A, the recorded Junior Deed of Trust attached hereto as Exhibit B, and a copy of the Joint Stipulation and Motion for Order of Dismissal of Action filed in the Adversary Case No. 8:09-ap-1252-TA attached hereto as Exhibit C

Exhibit D

maximum principal obligation in the amount of $710,000.00 which was recorded in the Official

Records of Orange County as Document No. 2005000403976 (the "Junior Deed of Trust").

According to the Preliminary Title Report obtained by the Trustee, the Property is still

encumbered by the Junior Deed of Trust in addition to BONY's Deed of Trust. (See Motion to

Sell [Docket No. 87], p. 8, Exhibit 3).

### C.  PRIOR BANKRUPTCY CASES AND ADVERSARY PROCEEDING

On April 25, 2008, Debtor and Toni Renita Beier filed a voluntary petition under Chapter

7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California,

Santa Ana Division and were assigned case number 8:08-bk-12163-RK (the "First Bankruptcy

Case"). Debtor and Toni Renita Beier received a discharge on August 21, 2008 and the First

Bankruptcy Case was closed on January 13, 2009.

On February 11, 2009, Debtor filed a voluntary petition under Chapter 13 of the

Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California, Santa Ana

Division, and was assigned case number 8:09-bk-11124-TA (the "Second Bankruptcy Case").

The Second Bankruptcy Case was dismissed on October 1, 2009 and subsequently closed on

January 29, 2010.

On March 26, 2009, Debtor commenced an adversary proceeding which was assigned

case number 8:09-ap-1252-TA (the "Adversary Case") by filing a Complaint to Quiet Title and

Seeking Monetary Damages, Statutory Damages, Punitive Damages, Injunctive Relief and

Declaratory Relief ("Complaint") against Mortgage Electronic Registration Systems, Inc.,

Countrywide Home Loans, Inc. ("Countrywide"), predecessor-in-interest to BONY,

Countrywide Home Loans Servicing, L.P., and Wells Fargo Document Custody. In the

Complaint, Debtor challenged Countrywide's standing to enforce the Note and its ability to

foreclose on the Property pursuant to the Deed of Trust. On October 12, 2009, a Joint Stipulation

and Motion for Order of Dismissal of Action was filed in the Adversary Case providing for the

**dismissal of all claims with prejudice** and the Adversary Case was closed on September 28,

2010. A copy of the Joint Stipulation and Motion for Order of Dismissal of Action reflecting the

dismissal of all claims with prejudice is attached hereto as Exhibit C.

Exhibit D

On July 1, 2010, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California, Santa Ana Division, and was assigned case number 8:10-bk-19081-TA (the "Third Bankruptcy Case"). The Third Bankruptcy Case was dismissed on March 10, 2011 and subsequently closed on May 4, 2011.

On March 17, 2023, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California, Santa Ana Division, and was assigned case number 8:23-bk-10556-TA (the "Fourth Bankruptcy Case"). The Fourth Bankruptcy Case was dismissed on April 4, 2023 and subsequently closed on April 7, 2023.

### D.    PRIOR LAWSUITS BY DEBTOR FILED IN STATE COURT

According to the Motion to Sell, Debtor filed the following lawsuits in the Superior Court of the State of California for the County of Orange in connection with the Property, each of which was either dismissed at the state court level or removed to federal court and subsequently dismissed:

> a.    Orange County Superior Court case number 30-2011-00463450-CU-OR-CJC, styled as *Beier v. BAC Home Loans Servicing, LP, et al*;
>
> b.    Orange County Superior Court case number 30-2015-00788856-CU-OR-CJC, styled as *Beier v. The Bank of New York Mellon, et al*;
>
> c.    Orange County Superior Court case number 30-2017-01312331-CU-OR-CJC, styled as *Beier v. Bank of America, et al*; and
>
> d.    Orange County Superior Court case number 30-2023-01312331-CU-OR-CJC, styled as *Beier v. The Bank of New York Mellon, et al*.
>
> e.    U.S. District Court, Central District of California (Southern Division – Santa Ana), case number 8:23-cv-00668-FWS-JDE, styled as Jeffrey S. beier v. Bank of America N.A. et al.

### E.    THE CURRENT BANKRUPTCY CASE AND TRUSTEE'S MOTION TO SELL

On April 28, 2023, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, and was assigned case number 8:23-bk-10898-TA. An order converting the case to Chapter 7 was subsequently entered on July 7, 2023.

**OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION TO SELL**

Exhibit D

In Debtor's Schedule A/B, Debtor identified his interest in the Property, which he valued at $3,117,300. In Debtor's Schedule D, Debtor identified a $2,757,616 lien against the Property in favor of Bank of America, National Association, which he listed as "unliquidated and disputed."

Based on the dismissal of the Fourth Bankruptcy case within 365 days of the filing of the instant Bankruptcy Case, the automatic stay would have expired as to Debtor by operation of law within 30 days of the Petition Date pursuant to 11 U.S.C. § 362(c)(3)(A), and on May 2, 2023, Debtor filed a motion for an order continuing the automatic stay, which was granted for a period of 30 days from the date of the Bankruptcy Court Order Granting Motion for Order Imposing a Stay or Continuing the Automatic Stay ("Order Continuing the Automatic Stay") entered on July 17, 2023. As a result, the automatic stay terminated on August 16, 2023.

On August 5, 2013, BONY filed a proof of claim in Debtor's bankruptcy case regarding the Subject Loan reflecting a total secured claim in the amount of $2,786,180.50 and pre-petition arrears in the amount of $1,787,448.67. (See Exhibit A). Bank of America, N.A. ("Bank of America") is the servicing agent for the Subject Loan on behalf of BONY.

On October 3, 2023, the Trustee filed the Motion to Sell wherein he requests authorization from the Court to sell the Property for $3,050,000.00, subject to overbid, free and clear of BONY's lien pursuant to 11 U.S.C. Sections 363(f)(3) and (f)(4). The Motion to Sell lists the payoff on BONY's claim to be in the amount of $2,786,180.00 and proposes to make an interim distribution of $2,400,000.00 to BONY with the balance of the net proceeds to be held in trust pending settlement negotiations or the outcome of litigation between Debtor and BONY or distributed to BONY within 30 days of the closing of the sale of the Property if Debtor does not file suit against BONY on his alleged claims. (See Docket No. 87).

As of October 9, 2023, the approximate payoff on BONY's claim is in the amount of $2,835,920.53 and interest is accruing daily at a rate of $236.54. As BONY has retained counsel, it also continues to accrue attorney's fees and costs.

Exhibit D

On October 17, 2023, the undersigned counsel for BONY and the Trustee entered into a Stipulation to Extend the Deadline to file an Opposition to the Motion to Sell to October 20th, 2023 which was approved by order of the Court. (See Docket Nos. 93, 95).

## II.

## ANALYSIS

### A.  THE TRUSTEE IS NOT AUTHORIZED TO SELL THE PROPERTY FREE AND CLEAR BONY'S LIEN IN THE ABSENCE OF BONY'S CONSENT

Section 363 of the Bankruptcy Code governs the post-petition use, lease or sale of property of the estate. Pursuant to Section 363: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate..." 11 U.S.C. § 363(b)(1). Section 363 further provides that the trustee may sell such property free and clear of any interest in such property of an entity other than the estate, *only if*:

    (1)    applicable nonbankruptcy law permits [the] sale of such property free and clear of such interest;
    (2)    such entity consents;
    (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4)    such interest is in bona fide dispute; or
    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5) (emphasis added).  A trustee's power to sell property free and clear of any interest under Section 363 is not intended to allow the trustee, in the sale of property of the estate, to destroy interests of creditors secured by such property. See e.g., In re Williamson, 43 B.R. 813 (Bankr. D. Utah 1984) (emphasis added).

In this case, the Trustee seeks authorization from the Court to sell property of the estate, i.e., the Property, free and clear all liens including BONY's first position lien. Of the five (5) provisions that authorize a sale free and clear under Section 363 of the Code, three (3) do not apply in this case. First, the Trustee has failed to identify any applicable non-bankruptcy law that would permit the Trustee to sell the Property free and clear of BONY's lien pursuant to Section 363(f)(1). Indeed, California real property law does not permit a sale free and clear and would preserve BONY's lien despite the transfer. See Nguyen v. Calhoun, 105 Cal. App. 4th, 428, 438

**OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION TO SELL**

Exhibit D

(Cal.Ct.App. 2003) ("Real property is transferable even though the title is subject to a mortgage or deed of trust, but the transfer will not eliminate the existence of that encumbrance. Thus, the grantee takes title to the property subject to all deeds of trust and other encumbrances, whether or not the deed so provides."). Section 363(f)(2) is inapplicable as BONY does not consent to the sale of the Property free and clear of its interest to the extent the Motion to Sell does not provide for BONY's lien to be paid in full immediately upon sale and could potentially result in insufficient funds to pay BONY's lien in full. Finally, the Trustee fails to identify why BONY would be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest to sell the Property free and clear pursuant to 11 U.S.C. Section 363(f)(5). Accordingly, the sole remaining options which the Trustee alleges permit the sale of the Property free and clear of liens are §§363(f)(3) and (f)(4). For the reasons discussed more fully below, neither of these provisions permit the sale of the Property free and clear of BONY's lien in this case.

**1.    The Sale Price for the Property Could Potentially Fail to Exceed the Amount of BONY's Lien at the Eventual Time of Payoff Based on the Trustee's Proposed Distribution of the Sale Proceeds if Debtor Files a Lawsuit and the Trustee has Not Provided Sufficient Evidence that the Sale Price Exceeds the Aggregate Value of all Liens on the Property so as to Permit the Sale of the Property Free and Clear Pursuant to 11 U.S.C. Section 363(f)(3)**

The Trustee argues that the Property may be sold free and clear of BONY's lien on the basis that the sale price of $3,050,000.00 exceeds the amount of BONY's Deed of Trust which is listed in the amount of $2,786,180. (See Motion to Sell [Docket No. 87], p. 8). While the sale price presently exceeds the amount of BONY's lien which is currently in the amount of $2,835,920.53, the Motion to Sell only proposes to make an interim distribution of $2,400,000.00 to BONY following the sale rather than a full payoff. Under the distribution strategy proposed in the Motion to Sell, there is a possibility that BONY would not be paid in full on its lien if the remaining sale proceeds held in the trust are not disbursed until after the resolution of litigation by Debtor. In the interim, the Subject Loan is accruing interest at a daily rate of $264.54 as well as attorney's fees and costs such that the sale price may not yield sufficient proceeds to pay off BONY's lien in full at the time any prospective litigation is

**OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION TO SELL**

Exhibit D

resolved. In this scenario, the sale price would **not** exceed the eventual value of BONY's lien on the Property and therefore it would be improper to permit the Trustee to sell the Property free and clear of BONY's lien as proposed.

In addition to the fact that the sale price may not be sufficient to pay off BONY's lien at the time BONY is actually entitled to receive the balance of the sale proceeds pursuant to the distribution proposed in the Motion to Sell, Section 363(f)(3) permits the sale free and clear only when the price at which the property is to be sold is greater than the **aggregate value of all liens**…" 11 U.S.C. § 363(f)(3) (emphasis added). Here, in addition to BONY's first position Deed of Trust which is presently in the amount of $2,835,920.53, there is the Junior Deed of Trust in the amount of $710,000.00 which is acknowledged by the Trustee in the Motion to Sell and evidenced by the Preliminary Title Report attached to the Trustee Declaration as Exhibit 2. (See Exhibit B and Motion to Sell [Docket No. 87], pp. 8, 18). While the Trustee alleges that nothing is owed on the revolving line of credit which the Junior Deed of Trust secures, the Preliminary Title Report does not reflect that the Junior Deed of Trust has been reconveyed or released as would be expected if the loan secured by the Junior Deed of Trust had been paid in full. Furthermore, the Motion to Sell does not include any evidence that the price at which the Property is to be sold is greater than the aggregate value of both BONY's lien and the Junior Deed of Trust. In the absence of evidence that the amount owing on the Junior Deed of Trust for $710,000.00 together with BONY's first position deed of trust in the amount of $2,835,920.53 is less than the sale price or, at a minimum, that the sale proceeds will be sufficient to pay off BONY's lien in full at the time BONY is entitled to the balance of the sale proceeds, the Trustee is not permitted to sell the Property free and clear of BONY's lien as the sale price does not exceed the aggregate value of all liens as required by Section 363(f)(3).

> **2.    BONY's Interest in the Property is Not in Bona Fide Dispute so as to Permit the Sale of the Property Free and Clear of BONY's Lien Pursuant to 11 U.S.C. Section 363(f)(4)**

In the Motion to Sell, the Trustee argues that based on Debtor's scheduled claims in connection with the BONY Deed of Trust, it is in bona fide dispute. (See Motion to Sell [Docket

Exhibit D

1    No. 87], p. 9). "Bona fide dispute" is not defined in section 363(f)(4) or anywhere else in the

2    Bankruptcy Code. The term 'bona fide dispute' is also found in section 303 of the Code, and the

3    Ninth Circuit, in interpreting the phrase for purposes of that section, defines it as the existence of

4    'an **objective basis** for either a factual or a legal dispute as to the validity of the debt.' In re

5    Vortex Fishing Sys., Inc., 277 F.3d 1057, 1064 (9th Cir. 2002) (emphasis added). Furthermore, a

6    mere allegation of a bona fide dispute without evidence is not sufficient. In Re Octagon Roofing,

7    123 B.R. at 590. See also In re Terrace Chalet Apartments, Ltd, 159 B.R. 821 (N.D.Ill.1993) ("it

8    would be nonsensical for a court to allow the trustee to sell property pursuant to 363(f)(4) when

9    the trustee believes the secured party's interest to be valid.").

10        In this case, BONY filed a Proof of Claim which constitutes prima facie evidence of the

11    validity and amount of the claim pursuant to Federal Rule of Bankruptcy Procedure 3001(f) and

12    Section 502(a). (In Re Consolidated Pioneer Mortg., 178, B.R. 222 (9th Cir. BAP 1995). As of

13    the filing of this Opposition, neither the Debtor nor the Trustee have objected to BONY's Proof

14    of Claim or commenced an adversary proceeding in order to challenge the validity of BONY's

15    Deed of Trust or the underlying debt, and the Trustee has indicated an intention to abandon any

16    claims on behalf of the estate. (See Motion to Sell [Docket No. 87], p. 3). While the Motion to

17    Sell references a history of prior litigation by Debtor, all such litigation has notably been

18    dismissed including the Complaint filed in the Adversary Case wherein Debtor challenged the

19    validity of BONY's Deed of Trust which was notably dismissed with prejudice. (See Exhibit 3).

20    A dismissal with prejudice is considered to be a judgment on the merits preventing subsequent

21    litigation between the parties on the dismissed claim. (Federal Home Loan Bank of San

22    Francisco v. Countrywide Financial Corp. (2013) 214 Cal.App.4th 1520, 1527, 154 Cal.Rptr.3d

23    873; Torrey Pines Bank v. Superior Court (1989) 216 Cal.App.3d 813, 820, 265 Cal.Rptr. 217).

24        Given the prior dismissal of Debtor's claims challenging the validity of BONY's Deed of

25    Trust with prejudice, the subsequent history of dismissed lawsuits by Debtor evidencing the

26    meritless nature of the claims, and the Trustee's failure to object to BONY's proof of claim in

27    the current case or otherwise take any action to challenge the validity of BONY's lien, it follows

28    that there is no objective basis for either a factual or legal dispute regarding the validity of debt

Exhibit D

1    which would permit the Trustee to sell the Property free and clear of BONY's lien. Indeed, under

2    the circumstances, the information provided in the Motion to Sell regarding Debtor's

3    identification of BONY's claim as disputed in the bankruptcy schedules would be more

4    appropriately characterized as a subjective basis for a factual or legal dispute rather than the

5    objective basis for a legal dispute required in order to constitute a bona fide dispute for purposes

6    of selling the Property free and clear of liens pursuant to Section 363(f)(4). Accordingly, absent

7    further evidence which supports an objective basis for either a factual or legal dispute regarding

8    the validity of BONY's lien and the underlying debt, the Trustee should not be permitted to sell

9    the Property free and clear of BONY's lien.

10

11    **B.     TO THE EXTENT THE COURT DETERMINES THE TRUSTEE MAY SELL
       THE PROPERTY FREE AND CLEAR OF BONY'S LIEN, BONY REQUESTS THAT
12     ITS LIEN BE PAID IN FULL THROUGH ESCROW IMMEDIATELY UPON SALE**

13         As previously discussed, BONY is only opposed to the sale free and clear of its lien to

14    the extent the distribution proposed by the Trustee does not provide for the immediate payoff of

15    its lien upon sale. Accordingly, in the event the Court determines the Trustee has satisfied the

16    requirements to sell the Property free and clear of BONY's lien, BONY would merely request

17    that the Court condition the approval of the sale on the payment of BONY's secured claim in full

18    through escrow immediately upon sale at a time when the sale proceeds are sufficient to pay off

19    BONY's lien in full. Given that the interim distribution of $2,400,000.00 to BONY proposed in

20    the Motion to Sell will not even pay off the principal balance, interest will continue to accrue and

21    BONY will continue to incur additional attorney's fees and costs pending the resolution of any

22    potential litigation by Debtor. As a result, BONY's payoff could easily exceed the amount of

23    funds held in the Trust by the time the litigation is resolved, and BONY would have no recourse

24    due to the loss of its security interest if the Property is sold free and clear of liens.

25         Notably, BONY has refrained from exercising its available remedies to foreclose on the

26    Property in order to work with the Trustee and Debtor's counsel in good faith towards an

27    amicable solution which would resolve Debtor's claims and simultaneously provide a benefit to

28    the estate. However, as indicated by the Trustee in the Motion to Sell, Debtor has failed to

Exhibit D

cooperate with the Trustee and the parties have been unable to reach a resolution. (See Motion to Sell [Docket No. 87], p. 3). As a result, BONY now faces the potential loss of its security interest and the absence of any recourse in the event there are insufficient funds to pay off its claim following the resolution of any prospective litigation by the Debtor. For these reasons, BONY contends that the proposed distribution strategy in the Motion to Sell is prejudicial to BONY and promotes further meritless litigation by the Debtor to the detriment of BONY and the estate. A preferable and more equitable distribution of the sale proceeds would provide for the immediate payoff of BONY's lien in full from the sale proceeds immediately upon sale through escrow. In contrast to the uncertain and potentially inequitable distribution of sale proceeds proposed in the Motion to Sell if Debtor commences litigation, the distribution proposed by BONY would ensure BONY's claim is paid in full, provide an immediate benefit to the estate and not prejudice Debtor who would be free to pursue any potential claims and judgment against BONY and/or Bank of America upon abandonment of those claims by the Trustee. The undersigned counsel for BONY will continue to attempt negotiations with the Trustee regarding a proposed resolution of Debtor's claims and an alternative, more equitable distribution strategy regarding the sale proceeds and hopes an amicable resolution can be reached prior to the hearing on the Motion to Sell.

**WHEREFORE**, BONY respectfully requests:

1.      That any sale free and clear of BONY's lien approved by the Court be made expressly contingent upon the immediate payment of BONY's lien in full upon sale pursuant to an updated payoff demand from Bank of America and that BONY's lien shall immediately attach to the sale proceeds with the same force and effect, and in the same priority, validity and scope as its lien; and

2.      To the extent that the Trustee disputes any amounts which BONY claims are owed on the Subject Loan, the undisputed amount of BONY's claim shall be paid at the close of the sale and the disputed amount of BONY's claim shall be segregated in an interest bearing account with an additional $3,000.00 in sale proceeds pending further Order of the bankruptcy court to allow for BONY's

**OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION TO SELL**

Exhibit D

1       potential recovery of any of its reasonable attorney's fees and costs incurred to the

2       extent that BONY successfully establishes its right to the disputed amount due on

3       its claim; or

4       3.    Alternatively, that the Motion to Sell be denied; and

5       4.    For such other relief as the court deems just and proper.

6

7   Dated: October 20, 2023        ALDRIDGE PITE, LLP

8           /s/ *Joseph C. Delmotte* (SBN 259460)

9           Joseph C. Delmotte
            Attorneys for *Respondent/Secured Creditor* THE
10          BANK OF NEW YORK MELLON FKA THE
            BANK OF NEW YORK SUCCESSOR TRUSTEE
11          TO JPMORGAN CHASE BANK, N.A., AS
            TRUSTEE FOR THE BEAR STEARNS ALT-A
12          TRUST, MORTGAGE PASS-THROUGH
            CERTIFICATES, SERIES 2005-04
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit D

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
8880 Rio San Diego Drive, Suite 725  San Diego, CA 92108

A true and correct copy of the foregoing document entitled: **OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 U.S.C. 363(f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BROKER COMPENSATION; (4) AUTHORIZING DISTRIBUTION OF SALE PROCEEDS: (5) DETERMINING THAT THE PROPOSED BUYER AND OVERBIDDER ARE "GOOD FAITH PURCHASERS" UNDER 11 U.S.C. 363(m); AND (6) WAIVING 14 DAY STAY IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h); DECLARATIONS OF A. CISNEROS, BRIAN THOMPSON, PROPOSED BUYER, AND OVERBIDDER IN SUPPORT HEREOF**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____ October 20, 2023 _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**U.S. TRUSTEE:**
ustpregion16.sa.ecf@usdoj.gov

**ATTORNEY FOR DEBTOR:**
Anerio V Altman  LakeForestBankruptcy@jubileebk.net

**TRUSTEE:**
Arturo  Cisneros- arturo@mclaw.org

**TRUSTEE'S ATTORNEY:**
Nathan F. Smith- nathan@mclaw.org

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____ October 20, 2023 _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**PRESIDING JUDGE:**
Honorable Theodor Albert
U.S. Bankruptcy Court  Central District Of California
(Santa Ana)
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593

**DEBTOR:**
Jeffrey S Beier
P O Box 7644
Laguna Niguel, CA 92677

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/20/2023 | Lauren Timby | /s/ Lauren Timby |
| *Date* | *Printed name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Exhibit D

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | JEFFREY S BEIER |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of CALIFORNIA |
| Case number | 8:23-bk-10898-TA |

## Official Form 410
# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

THE BANK OF NEW YORK MELLON FKA THE BANK ***
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Bank of America, N.A.<br>Name | Bank of America, N.A.<br>Name |
| P.O. Box 31785<br>Number     Street | P.O. Box 660933<br>Number     Street |
| Tampa          FL          33631-3785<br>City          State          ZIP Code | Dallas          TX          75266-0933<br>City          State          ZIP Code |
| Contact phone  1-800-669-6607 | Contact phone  1-800-669-6607 |
| Contact email | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____
                                                                                                          MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Exhibit D**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  __8__ __3__ __6__ __4__

**7. How much is the claim?**  $2,786,180.50

**Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment (Official Form 410-A)* with this Proof of Claim.

☐ Motor vehicle

☐ Other. Describe:   10 TUCSON, COTO DE CAZA AREA, CA 92679

**Basis for perfection:**   Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   _____

**Amount of the claim that is secured:**   $2,786,180.50

**Amount of the claim that is unsecured:**   $0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $1,787,448.67

**Annual Interest Rate** (when case was filed)  5.625%

☐ Fixed

☑ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property:  _____

**Exhibit A**

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it.
FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    07/12/2023
_____
MM  / DD  / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Greg P. Campbell | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Aldridge Pite, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 8880 Rio San Diego Drive, Suite 725 | | |
| | Number        Street | | |
| | San Diego | CA | 92108 |
| | City | State | ZIP Code |
| Contact phone | (858)750-7600 | Email | gcampbell@aldridgepite.com |



# Mortgage Proof of Claim Attachment

**(12/15)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|

**Part 1: Mortgage and Case Information**

Case number: 8:23-bk-10898-TA
Debtor 1: JEFFREY S BEIER
Debtor 2:
Last 4 digits to identify: 8 3 6 4
Creditor: THE BANK OF NEW YORK MELLON FKA THE BANK **
Servicer: Bank of America, N. A.
Fixed accrual/daily simple interest/other: Other

**Part 2: Total Debt Calculation**

Principal balance: $1,470,000.00
Interest due: $903,656.23
Fees, costs due: $21,932.51
Escrow deficiency for funds advanced: $390,591.76
Less total funds on hand: $0.00
Total debt: $2,786,180.50

**Part 3: Arrearage as of Date of the Petition**

Principal & interest due: $1,368,589.20
Prepetition fees due: $21,932.51
Escrow deficiency for funds advanced: $390,591.76
Projected escrow shortage: $6,335.20
Less funds on hand: $0.00
Total prepetition arrearage: $1,787,448.67

**Part 4: Monthly Mortgage Payment**

Principal & Interest: $8,262.18
Monthly escrow: $2,111.41
Private mortgage insurance: $0.00
Total monthly payment: $10,373.59

**Part 5: Loan Payment History from First Date of Default**

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | Balance After Amount Received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 11/01/2006 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $7,196.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,799.20 | $0.00 |
| 11/14/2006 | $0.00 | $0.00 | $4.00 | PAYMENT PROCESS FEE | | $7,196.88 | $0.00 | $0.00 | $0.00 | $4.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,803.20 | $0.00 |
| 11/15/2006 | $0.00 | $4.00 | $0.00 | PAYMENT PROCESS FEE | | $7,196.88 | $0.00 | $0.00 | $0.00 | -$4.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,799.20 | $0.00 |
| 11/17/2006 | $0.00 | $0.00 | $25.00 | RETURNED PAYMENT FEE | | $7,196.88 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 11/20/2006 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 12/01/2006 | $0.00 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 12/01/2006 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $7,196.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 12/15/2006 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 01/01/2007 | $0.00 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 01/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $7,196.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 02/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $14,393.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 02/09/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 02/01/2007 | $7,196.88 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| | |
|---|---|
| Case number: | 8:23-bk-10898-TA |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $14,393.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 04/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $21,590.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 05/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $28,787.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,824.20 | $0.00 |
| 05/07/2007 | $0.00 | $0.00 | -$4,575.00 | HAZARD INSURANCE | | $28,787.52 | $0.00 | $0.00 | -$4,575.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 05/18/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 03/01/2007 | $21,590.64 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 05/18/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 04/01/2007 | $14,393.76 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 05/18/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 05/01/2007 | $7,196.88 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 05/18/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 06/01/2007 | $0.00 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 06/01/2007 | $7,196.88 | $0.00 | $0.00 | Monthly Assessment | | $7,196.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 07/01/2007 | $8,117.98 | $0.00 | $0.00 | Monthly Assessment | | $15,314.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 08/01/2007 | $8,117.98 | $0.00 | $0.00 | Monthly Assessment | | $23,432.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$4,575.00 | $1,824.20 | $0.00 |
| 08/10/2007 | $0.00 | $0.00 | $3,063.00 | Hazard Refund | | $23,432.84 | $0.00 | $0.00 | $3,063.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$1,512.00 | $1,824.20 | $0.00 |
| 08/14/2007 | $0.00 | $359.84 | $0.00 | LATE CHARGE | | $23,432.84 | $0.00 | $0.00 | $0.00 | -$359.84 | $0.00 | $1,470,000.00 | $0.00 | -$1,512.00 | $1,464.36 | $0.00 |
| 08/15/2007 | $0.00 | $7,196.88 | $0.00 | Monthly Payment | 07/01/2007 | $16,235.96 | $0.00 | $7,196.88 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$1,512.00 | $1,464.36 | $0.00 |
| 08/15/2007 | $0.00 | $8,117.98 | $0.00 | Monthly Payment | 08/01/2007 | $8,117.98 | $0.00 | $7,196.88 | $921.10 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$590.90 | $1,464.36 | $0.00 |
| 08/15/2007 | $0.00 | $8,117.98 | $0.00 | Monthly Payment | 09/01/2007 | $0.00 | $0.00 | $7,196.88 | $921.10 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $330.20 | $1,464.36 | $0.00 |
| 08/15/2007 | $0.00 | $1,439.36 | $0.00 | LATE CHARGE | | $0.00 | $0.00 | $0.00 | $0.00 | -$1,439.36 | $0.00 | $1,470,000.00 | $0.00 | $330.20 | $25.00 | $0.00 |
| 09/01/2007 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $9,326.89 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $330.20 | $25.00 | $0.00 |



Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

**(12/15)**

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 09/14/2007 | $0.00 | $0.00 | -$330.20 | Escrow to Mortgagor Disbursement | | $9,326.89 | $0.00 | $0.00 | -$330.20 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $25.00 | $0.00 |
| 09/17/2007 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $9,326.89 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $384.84 | $0.00 |
| 10/01/2007 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $18,653.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $384.84 | $0.00 |
| 10/16/2007 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $18,653.78 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $744.68 | $0.00 |
| 11/01/2007 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $27,980.67 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $744.68 | $0.00 |
| 11/16/2007 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $27,980.67 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,104.52 | $0.00 |
| 12/01/2007 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $37,307.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,104.52 | $0.00 |
| 12/17/2007 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $37,307.56 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | $0.00 | $1,464.36 | $0.00 |
| 12/31/2007 | $0.00 | $0.00 | $0.54 | Interest on Escrow/Restricted Escrow | | $37,307.56 | $0.00 | $0.00 | $0.54 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | $0.54 | $1,464.36 | $0.00 |
| 12/31/2007 | $0.00 | $0.00 | -$5,094.00 | HAZARD INSURANCE | | $37,307.56 | $0.00 | $0.00 | -$5,094.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $1,464.36 | $0.00 |
| 01/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $46,634.45 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $1,464.36 | $0.00 |
| 01/16/2008 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $46,634.45 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $1,824.20 | $0.00 |
| 02/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $55,961.34 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $1,824.20 | $0.00 |
| 02/19/2008 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $55,961.34 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$5,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$10,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$15,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$20,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$25,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$30,093.46 | $2,184.04 | $0.00 |

**Mortgage Proof of Claim Attachment**



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| | |
|---|---|
| Case number: | 8:23-bk-10898-TA |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 02/25/2008 | $0.00 | $0.00 | -$5,000.00 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$5,000.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$35,093.46 | $2,184.04 | $0.00 |
| 02/25/2008 | $0.00 | $0.00 | -$1,877.61 | County Tax Disbursement | | $55,961.34 | $0.00 | $0.00 | -$1,877.61 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,184.04 | $0.00 |
| 03/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $65,288.23 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,184.04 | $0.00 |
| 03/17/2008 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $65,288.23 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 04/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $74,615.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 05/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $83,942.01 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 06/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $93,268.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 07/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $102,595.79 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 08/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $111,922.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 09/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $121,249.57 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 10/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $130,576.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 11/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $139,903.35 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$36,971.07 | $2,543.88 | $0.00 |
| 11/28/2008 | $0.00 | $0.00 | -$9,884.67 | County Tax Disbursement | | $139,903.35 | $0.00 | $0.00 | -$9,884.67 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$46,855.74 | $2,543.88 | $0.00 |
| 12/01/2008 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $149,230.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$46,855.74 | $2,543.88 | $0.00 |
| 12/16/2008 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $149,230.24 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$46,855.74 | $2,903.72 | $0.00 |
| 12/26/2008 | $0.00 | $0.00 | -$2,923.00 | HAZARD INSURANCE | | $149,230.24 | $0.00 | $0.00 | -$2,923.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$49,778.74 | $2,903.72 | $0.00 |
| 01/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $158,557.13 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$49,778.74 | $2,903.72 | $0.00 |
| 02/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $167,884.02 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$49,778.74 | $2,903.72 | $0.00 |


Exhibit A

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $177,210.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$49,778.74 | $2,903.72 | $0.00 |
| 03/19/2009 | $0.00 | $0.00 | -$9,884.67 | County Tax Disbursement | | $177,210.91 | $0.00 | $0.00 | -$9,884.67 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 04/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $186,537.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 05/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $195,864.69 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 06/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $205,191.58 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 07/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $214,518.47 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 08/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $223,845.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 09/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $233,172.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 10/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $242,499.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$59,663.41 | $2,903.72 | $0.00 |
| 10/28/2009 | $0.00 | $0.00 | -$3,507.00 | HAZARD INSURANCE | | $242,499.14 | $0.00 | $0.00 | -$3,507.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$63,170.41 | $2,903.72 | $0.00 |
| 11/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $251,826.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$63,170.41 | $2,903.72 | $0.00 |
| 11/24/2009 | $0.00 | $0.00 | -$10,021.75 | County Tax Disbursement | | $251,826.03 | $0.00 | $0.00 | -$10,021.75 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $2,903.72 | $0.00 |
| 12/01/2009 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $261,152.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $2,903.72 | $0.00 |
| 01/01/2010 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $270,479.81 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $2,903.72 | $0.00 |
| 01/19/2010 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $270,479.81 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,263.56 | $0.00 |
| 02/01/2010 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $279,806.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,263.56 | $0.00 |
| 02/16/2010 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $279,806.70 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,623.40 | $0.00 |
| 03/01/2010 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $289,133.59 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,623.40 | $0.00 |

Official Form 410A                    Mortgage Proof of Claim Attachment



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/16/2010 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $289,133.59 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$73,192.16 | $3,983.24 | $0.00 |
| 03/25/2010 | $0.00 | $0.00 | -$10,021.75 | County Tax Disbursement | | $289,133.59 | $0.00 | $0.00 | -$10,021.75 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $3,983.24 | $0.00 |
| 04/01/2010 | $9,326.89 | $0.00 | $0.00 | Monthly Assessment | | $298,460.48 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $3,983.24 | $0.00 |
| 04/16/2010 | $0.00 | $0.00 | $359.84 | LATE CHARGE | | $298,460.48 | $0.00 | $0.00 | $0.00 | $359.84 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,343.08 | $0.00 |
| 05/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $307,657.34 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,343.08 | $0.00 |
| 05/17/2010 | $0.00 | $0.00 | $191.40 | LATE CHARGE | | $307,657.34 | $0.00 | $0.00 | $0.00 | $191.40 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 06/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $316,854.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 07/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $326,051.06 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 08/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $335,247.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 09/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $344,444.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 10/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $353,641.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$83,213.91 | $4,534.48 | $0.00 |
| 10/27/2010 | $0.00 | $0.00 | -$6,389.00 | HAZARD INSURANCE | | $353,641.64 | $0.00 | $0.00 | -$6,389.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$89,602.91 | $4,534.48 | $0.00 |
| 11/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $362,838.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$89,602.91 | $4,534.48 | $0.00 |
| 11/15/2010 | $0.00 | $0.00 | -$9,813.16 | County Tax Disbursement | | $362,838.50 | $0.00 | $0.00 | -$9,813.16 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |
| 12/01/2010 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $372,035.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |
| 01/01/2011 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $381,232.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |
| 02/01/2011 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $390,429.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |
| 03/01/2011 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $399,625.94 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$99,416.07 | $4,534.48 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/17/2011 | $0.00 | $0.00 | -$9,813.16 | County Tax Disbursement | | $399,625.94 | $0.00 | $0.00 | -$9,813.16 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 04/01/2011 | $9,196.86 | $0.00 | $0.00 | Monthly Assessment | | $408,822.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 05/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $417,927.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 06/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $427,031.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 07/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $436,135.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 08/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $445,239.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 09/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $454,343.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 10/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $463,448.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 11/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $472,552.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$109,229.23 | $4,534.48 | $0.00 |
| 11/15/2011 | $0.00 | $0.00 | -$8,958.75 | County Tax Disbursement | | $472,552.20 | $0.00 | $0.00 | -$8,958.75 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 12/01/2011 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $481,656.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 01/01/2012 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $490,760.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 02/01/2012 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $499,864.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 03/01/2012 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $508,969.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$118,187.98 | $4,534.48 | $0.00 |
| 03/08/2012 | $0.00 | $0.00 | -$5,324.00 | HAZARD INSURANCE | | $508,969.00 | $0.00 | $0.00 | -$5,324.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$123,511.98 | $4,534.48 | $0.00 |
| 03/22/2012 | $0.00 | $0.00 | -$8,958.75 | County Tax Disbursement | | $508,969.00 | $0.00 | $0.00 | -$8,958.75 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 04/01/2012 | $9,104.20 | $0.00 | $0.00 | Monthly Assessment | | $518,073.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |

Official Form 410A                                    **Mortgage Proof of Claim Attachment**



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 05/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $527,447.26 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 06/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $536,821.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 07/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $546,195.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 08/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $555,569.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 09/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $564,943.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 10/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $574,317.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$132,470.73 | $4,534.48 | $0.00 |
| 10/29/2012 | $0.00 | $0.00 | -$6,012.00 | HAZARD INSURANCE | | $574,317.56 | $0.00 | $0.00 | -$6,012.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$138,482.73 | $4,534.48 | $0.00 |
| 11/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $583,691.62 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$138,482.73 | $4,534.48 | $0.00 |
| 11/07/2012 | $0.00 | $0.00 | -$8,970.35 | County Tax Disbursement | | $583,691.62 | $0.00 | $0.00 | -$8,970.35 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,534.48 | $0.00 |
| 12/01/2012 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $593,065.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,534.48 | $0.00 |
| 12/09/2012 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $593,065.68 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,549.48 | $0.00 |
| 12/17/2012 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $593,065.68 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,756.19 | $0.00 |
| 01/01/2013 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $602,439.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,756.19 | $0.00 |
| 01/16/2013 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $602,439.74 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,962.90 | $0.00 |
| 02/01/2013 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $611,813.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,962.90 | $0.00 |
| 02/01/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $611,813.80 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $4,977.90 | $0.00 |
| 02/19/2013 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $611,813.80 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $5,184.61 | $0.00 |
| 03/01/2013 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $621,187.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$147,453.08 | $5,184.61 | $0.00 |


**Exhibit A**

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| | |
|---|---|
| Case number: | 8:23-bk-10898-TA |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/06/2013 | $0.00 | $0.00 | -$8,970.35 | County Tax Disbursement | | $621,187.86 | $0.00 | $0.00 | -$8,970.35 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,184.61 | $0.00 |
| 03/08/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $621,187.86 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,199.61 | $0.00 |
| 03/18/2013 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $621,187.86 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,406.32 | $0.00 |
| 04/01/2013 | $9,374.06 | $0.00 | $0.00 | Monthly Assessment | | $630,561.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,406.32 | $0.00 |
| 04/10/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $630,561.92 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,421.32 | $0.00 |
| 04/16/2013 | $0.00 | $0.00 | $206.71 | LATE CHARGE | | $630,561.92 | $0.00 | $0.00 | $0.00 | $206.71 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,628.03 | $0.00 |
| 05/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $639,676.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,628.03 | $0.00 |
| 05/13/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $639,676.10 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,643.03 | $0.00 |
| 06/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $648,790.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,643.03 | $0.00 |
| 07/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $657,904.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,643.03 | $0.00 |
| 07/08/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $657,904.46 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,658.03 | $0.00 |
| 07/16/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $657,904.46 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,841.78 | $0.00 |
| 08/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $667,018.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,841.78 | $0.00 |
| 08/05/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $667,018.64 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,856.78 | $0.00 |
| 09/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $676,132.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,856.78 | $0.00 |
| 09/03/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $676,132.82 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $5,871.78 | $0.00 |
| 09/16/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $676,132.82 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $6,055.53 | $0.00 |
| 10/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $685,247.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $6,055.53 | $0.00 |
| 10/03/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $685,247.00 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $6,070.53 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10/16/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $685,247.00 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$156,423.43 | $6,254.28 | $0.00 |
| 10/28/2013 | $0.00 | $0.00 | -$3,841.00 | HAZARD INSURANCE | | $685,247.00 | $0.00 | $0.00 | -$3,841.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$160,264.43 | $6,254.28 | $0.00 |
| 11/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $694,361.18 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$160,264.43 | $6,254.28 | $0.00 |
| 11/04/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $694,361.18 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$160,264.43 | $6,269.28 | $0.00 |
| 11/05/2013 | $0.00 | $0.00 | -$8,490.99 | County Tax Disbursement | | $694,361.18 | $0.00 | $0.00 | -$8,490.99 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,269.28 | $0.00 |
| 11/18/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $694,361.18 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,453.03 | $0.00 |
| 12/01/2013 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $703,475.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,453.03 | $0.00 |
| 12/02/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $703,475.36 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,468.03 | $0.00 |
| 12/16/2013 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $703,475.36 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,651.78 | $0.00 |
| 12/31/2013 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $703,475.36 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,666.78 | $0.00 |
| 01/01/2014 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $712,589.54 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,666.78 | $0.00 |
| 01/16/2014 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $712,589.54 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,850.53 | $0.00 |
| 01/29/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $712,589.54 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,865.53 | $0.00 |
| 02/01/2014 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $721,703.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $6,865.53 | $0.00 |
| 02/18/2014 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $721,703.72 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $7,049.28 | $0.00 |
| 02/26/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $721,703.72 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $7,064.28 | $0.00 |
| 03/01/2014 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $730,817.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$168,755.42 | $7,064.28 | $0.00 |
| 03/04/2014 | $0.00 | $0.00 | -$8,490.99 | County Tax Disbursement | | $730,817.90 | $0.00 | $0.00 | -$8,490.99 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,064.28 | $0.00 |
| 03/17/2014 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $730,817.90 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,248.03 | $0.00 |



# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/28/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $730,817.90 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,263.03 | $0.00 |
| 04/01/2014 | $9,114.18 | $0.00 | $0.00 | Monthly Assessment | | $739,932.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,263.03 | $0.00 |
| 04/16/2014 | $0.00 | $0.00 | $183.75 | LATE CHARGE | | $739,932.08 | $0.00 | $0.00 | $0.00 | $183.75 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,446.78 | $0.00 |
| 04/28/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $739,932.08 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,461.78 | $0.00 |
| 05/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $748,882.85 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,461.78 | $0.00 |
| 05/16/2014 | $0.00 | $0.00 | $168.43 | LATE CHARGE | | $748,882.85 | $0.00 | $0.00 | $0.00 | $168.43 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,630.21 | $0.00 |
| 05/30/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $748,882.85 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,645.21 | $0.00 |
| 06/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $757,833.62 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,645.21 | $0.00 |
| 06/16/2014 | $0.00 | $0.00 | $168.43 | LATE CHARGE | | $757,833.62 | $0.00 | $0.00 | $0.00 | $168.43 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,813.64 | $0.00 |
| 07/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $766,784.39 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,813.64 | $0.00 |
| 07/03/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $766,784.39 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,828.64 | $0.00 |
| 07/16/2014 | $0.00 | $0.00 | $168.43 | LATE CHARGE | | $766,784.39 | $0.00 | $0.00 | $0.00 | $168.43 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $7,997.07 | $0.00 |
| 07/22/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $766,784.39 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,012.07 | $0.00 |
| 08/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $775,735.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,012.07 | $0.00 |
| 08/18/2014 | $0.00 | $0.00 | $168.43 | LATE CHARGE | | $775,735.16 | $0.00 | $0.00 | $0.00 | $168.43 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,180.50 | $0.00 |
| 08/21/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $775,735.16 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,195.50 | $0.00 |
| 09/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $784,685.93 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,195.50 | $0.00 |
| 09/16/2014 | $0.00 | $0.00 | $341.03 | LATE CHARGE | | $784,685.93 | $0.00 | $0.00 | $0.00 | $341.03 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,536.53 | $0.00 |
| 09/23/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $784,685.93 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,551.53 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

### Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $793,636.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,551.53 | $0.00 |
| 10/23/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $793,636.70 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$177,246.41 | $8,566.53 | $0.00 |
| 10/27/2014 | $0.00 | $0.00 | -$3,340.00 | HAZARD INSURANCE | | $793,636.70 | $0.00 | $0.00 | -$3,340.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$180,586.41 | $8,566.53 | $0.00 |
| 11/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $802,587.47 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$180,586.41 | $8,566.53 | $0.00 |
| 11/14/2014 | $0.00 | $0.00 | -$9,689.27 | County Tax Disbursement | | $802,587.47 | $0.00 | $0.00 | -$9,689.27 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,566.53 | $0.00 |
| 11/26/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $802,587.47 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,581.53 | $0.00 |
| 12/01/2014 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $811,538.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,581.53 | $0.00 |
| 12/18/2014 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $811,538.24 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,596.53 | $0.00 |
| 01/01/2015 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $820,489.01 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,596.53 | $0.00 |
| 01/20/2015 | $0.00 | $0.00 | $15.00 | OCCUPD PROP INSP | | $820,489.01 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $8,611.53 | $0.00 |
| 01/28/2015 | $0.00 | $0.00 | $427.50 | ATTY/TRUSTEE | | $820,489.01 | $0.00 | $0.00 | $0.00 | $427.50 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $9,039.03 | $0.00 |
| 02/01/2015 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $829,439.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $9,039.03 | $0.00 |
| 03/01/2015 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $838,390.55 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $9,039.03 | $0.00 |
| 03/10/2015 | $0.00 | $0.00 | $1,493.00 | TITLE SEARCH FEE | | $838,390.55 | $0.00 | $0.00 | $0.00 | $1,493.00 | $0.00 | $1,470,000.00 | $0.00 | -$190,275.68 | $10,532.03 | $0.00 |
| 03/24/2015 | $0.00 | $0.00 | -$9,689.27 | County Tax Disbursement | | $838,390.55 | $0.00 | $0.00 | -$9,689.27 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $10,532.03 | $0.00 |
| 04/01/2015 | $8,950.77 | $0.00 | $0.00 | Monthly Assessment | | $847,341.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $10,532.03 | $0.00 |
| 04/01/2015 | $0.00 | $0.00 | $24.40 | MAILING FEES | | $847,341.32 | $0.00 | $0.00 | $0.00 | $24.40 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $10,556.43 | $0.00 |
| 04/01/2015 | $0.00 | $0.00 | $570.00 | ATTY/TRUSTEE | | $847,341.32 | $0.00 | $0.00 | $0.00 | $570.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,126.43 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 04/01/2015 | $0.00 | $0.00 | $60.00 | RECORDING FEES | | $847,341.32 | $0.00 | $0.00 | $0.00 | $60.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,186.43 | $0.00 |
| 05/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $856,370.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,186.43 | $0.00 |
| 06/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $865,398.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,186.43 | $0.00 |
| 07/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $874,427.45 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,186.43 | $0.00 |
| 07/03/2015 | $0.00 | $0.00 | $125.00 | POSTING FEES | | $874,427.45 | $0.00 | $0.00 | $0.00 | $125.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,311.43 | $0.00 |
| 07/03/2015 | $0.00 | $0.00 | $30.00 | RECORDING FEES | | $874,427.45 | $0.00 | $0.00 | $0.00 | $30.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,341.43 | $0.00 |
| 07/03/2015 | $0.00 | $0.00 | $365.00 | ADVRTIZE/PUBLISH | | $874,427.45 | $0.00 | $0.00 | $0.00 | $365.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $11,706.43 | $0.00 |
| 07/03/2015 | $0.00 | $0.00 | $395.48 | MAILING FEES | | $874,427.45 | $0.00 | $0.00 | $0.00 | $395.48 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $12,101.91 | $0.00 |
| 08/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $883,456.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $12,101.91 | $0.00 |
| 09/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $892,484.87 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $12,101.91 | $0.00 |
| 10/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $901,513.58 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$199,964.95 | $12,101.91 | $0.00 |
| 10/06/2015 | $0.00 | $0.00 | -$214.88 | County Tax Disbursement | | $901,513.58 | $0.00 | $0.00 | -$214.88 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$200,179.83 | $12,101.91 | $0.00 |
| 10/06/2015 | $0.00 | $0.00 | -$1,105.63 | County Tax Disbursement | | $901,513.58 | $0.00 | $0.00 | -$1,105.63 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$201,285.46 | $12,101.91 | $0.00 |
| 10/27/2015 | $0.00 | $0.00 | -$3,507.00 | HAZARD INSURANCE | | $901,513.58 | $0.00 | $0.00 | -$3,507.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$204,792.46 | $12,101.91 | $0.00 |
| 11/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $910,542.29 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$204,792.46 | $12,101.91 | $0.00 |
| 11/27/2015 | $0.00 | $0.00 | -$9,879.09 | County Tax Disbursement | | $910,542.29 | $0.00 | $0.00 | -$9,879.09 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,101.91 | $0.00 |
| 12/01/2015 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $919,571.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,101.91 | $0.00 |
| 01/01/2016 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $928,599.71 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,101.91 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| | |
|---|---|
| Case number: | 8:23-bk-10898-TA |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 01/04/2016 | $0.00 | $0.00 | $100.00 | ATTY/TRUSTEE | | $928,599.71 | $0.00 | $0.00 | $0.00 | $100.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,201.91 | $0.00 |
| 02/01/2016 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $937,628.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,201.91 | $0.00 |
| 03/01/2016 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $946,657.13 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$214,671.55 | $12,201.91 | $0.00 |
| 03/31/2016 | $0.00 | $0.00 | -$9,879.09 | County Tax Disbursement | | $946,657.13 | $0.00 | $0.00 | -$9,879.09 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,201.91 | $0.00 |
| 04/01/2016 | $9,028.71 | $0.00 | $0.00 | Monthly Assessment | | $955,685.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,201.91 | $0.00 |
| 05/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $965,017.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,201.91 | $0.00 |
| 06/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $974,348.48 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,201.91 | $0.00 |
| 06/24/2016 | $0.00 | $0.00 | $9.00 | RECORDING FEES | | $974,348.48 | $0.00 | $0.00 | $0.00 | $9.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,210.91 | $0.00 |
| 07/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $983,679.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,210.91 | $0.00 |
| 07/06/2016 | $0.00 | $0.00 | $27.00 | RECORDING FEES | | $983,679.80 | $0.00 | $0.00 | $0.00 | $27.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,237.91 | $0.00 |
| 07/11/2016 | $0.00 | $0.00 | $78.98 | MAILING FEES | | $983,679.80 | $0.00 | $0.00 | $0.00 | $78.98 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,316.89 | $0.00 |
| 07/11/2016 | $0.00 | $0.00 | $570.00 | ATTY/TRUSTEE | | $983,679.80 | $0.00 | $0.00 | $0.00 | $570.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $12,886.89 | $0.00 |
| 07/20/2016 | $0.00 | $0.00 | $1,493.00 | TITLE FEES | | $983,679.80 | $0.00 | $0.00 | $0.00 | $1,493.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,379.89 | $0.00 |
| 08/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $993,011.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,379.89 | $0.00 |
| 09/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,002,342.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,379.89 | $0.00 |
| 10/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,011,673.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,379.89 | $0.00 |
| 10/20/2016 | $0.00 | $0.00 | $12.00 | RECORDING FEES | | $1,011,673.76 | $0.00 | $0.00 | $0.00 | $12.00 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,391.89 | $0.00 |
| 10/21/2016 | $0.00 | $0.00 | $70.06 | MAILING FEES | | $1,011,673.76 | $0.00 | $0.00 | $0.00 | $70.06 | $0.00 | $1,470,000.00 | $0.00 | -$224,550.64 | $14,461.95 | $0.00 |
| 10/28/2016 | $0.00 | $0.00 | -$2,325.00 | HAZARD INSURANCE | | $1,011,673.76 | $0.00 | $0.00 | -$2,325.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$226,875.64 | $14,461.95 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 11/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,021,005.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$226,875.64 | $14,461.95 | $0.00 |
| 11/09/2016 | $0.00 | $0.00 | $210.00 | ADVRTIZE/PUBLISH | | $1,021,005.08 | $0.00 | $0.00 | $0.00 | $210.00 | $0.00 | $1,470,000.00 | $0.00 | -$226,875.64 | $14,671.95 | $0.00 |
| 11/17/2016 | $0.00 | $0.00 | $25.00 | POSTING FEES | | $1,021,005.08 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$226,875.64 | $14,696.95 | $0.00 |
| 11/28/2016 | $0.00 | $0.00 | -$10,041.43 | County Tax Disbursement | | $1,021,005.08 | $0.00 | $0.00 | -$10,041.43 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,696.95 | $0.00 |
| 11/28/2016 | $0.00 | $0.00 | $31.76 | MAILING FEES | | $1,021,005.08 | $0.00 | $0.00 | $0.00 | $31.76 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,728.71 | $0.00 |
| 12/01/2016 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,030,336.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,728.71 | $0.00 |
| 12/21/2016 | $0.00 | $0.00 | $100.00 | POSTING FEES | | $1,030,336.40 | $0.00 | $0.00 | $0.00 | $100.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,828.71 | $0.00 |
| 12/21/2016 | $0.00 | $0.00 | $22.56 | MAILING FEES | | $1,030,336.40 | $0.00 | $0.00 | $0.00 | $22.56 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,851.27 | $0.00 |
| 01/01/2017 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,039,667.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,851.27 | $0.00 |
| 02/01/2017 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,048,999.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,851.27 | $0.00 |
| 03/01/2017 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,058,330.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,851.27 | $0.00 |
| 03/07/2017 | $0.00 | $0.00 | $25.00 | POSTING FEES | | $1,058,330.36 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,876.27 | $0.00 |
| 03/07/2017 | $0.00 | $0.00 | $22.56 | MAILING FEES | | $1,058,330.36 | $0.00 | $0.00 | $0.00 | $22.56 | $0.00 | $1,470,000.00 | $0.00 | -$236,917.07 | $14,898.83 | $0.00 |
| 03/28/2017 | $0.00 | $0.00 | -$10,041.43 | County Tax Disbursement | | $1,058,330.36 | $0.00 | $0.00 | -$10,041.43 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,898.83 | $0.00 |
| 04/01/2017 | $9,331.32 | $0.00 | $0.00 | Monthly Assessment | | $1,067,661.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,898.83 | $0.00 |
| 04/10/2017 | $0.00 | $0.00 | $22.86 | MAILING FEES | | $1,067,661.68 | $0.00 | $0.00 | $0.00 | $22.86 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,921.69 | $0.00 |
| 04/10/2017 | $0.00 | $0.00 | $25.00 | POSTING FEES | | $1,067,661.68 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,946.69 | $0.00 |
| 04/25/2017 | $0.00 | $0.00 | $22.86 | MAILING FEES | | $1,067,661.68 | $0.00 | $0.00 | $0.00 | $22.86 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,969.55 | $0.00 |
| 05/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,077,363.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,969.55 | $0.00 |
| 06/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,087,065.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,969.55 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 06/02/2017 | $0.00 | $0.00 | $25.00 | POSTING FEES | | $1,087,065.60 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,994.55 | $0.00 |
| 07/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,096,767.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,994.55 | $0.00 |
| 08/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,106,469.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $14,994.55 | $0.00 |
| 08/14/2017 | $0.00 | $0.00 | $22.86 | MAILING FEES | | $1,106,469.52 | $0.00 | $0.00 | $0.00 | $22.86 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $15,017.41 | $0.00 |
| 08/14/2017 | $0.00 | $0.00 | $25.00 | FC POSTPNMNT FEE | | $1,106,469.52 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $15,042.41 | $0.00 |
| 09/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,116,171.48 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $15,042.41 | $0.00 |
| 10/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,125,873.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$246,958.50 | $15,042.41 | $0.00 |
| 10/27/2017 | $0.00 | $0.00 | -$2,550.00 | HAZARD INSURANCE | | $1,125,873.44 | $0.00 | $0.00 | -$2,550.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$249,508.50 | $15,042.41 | $0.00 |
| 11/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,135,575.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$249,508.50 | $15,042.41 | $0.00 |
| 11/28/2017 | $0.00 | $0.00 | -$10,118.56 | County Tax Disbursement | | $1,135,575.40 | $0.00 | $0.00 | -$10,118.56 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 12/01/2017 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,145,277.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 01/01/2018 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,154,979.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 02/01/2018 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,164,681.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 03/01/2018 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,174,383.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$259,627.06 | $15,042.41 | $0.00 |
| 03/26/2018 | $0.00 | $0.00 | -$10,118.56 | County Tax Disbursement | | $1,174,383.24 | $0.00 | $0.00 | -$10,118.56 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 04/01/2018 | $9,701.96 | $0.00 | $0.00 | Monthly Assessment | | $1,184,085.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 05/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,194,149.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 06/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,204,214.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 07/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,214,279.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 08/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,224,344.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 09/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,234,408.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 10/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,244,473.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$269,745.62 | $15,042.41 | $0.00 |
| 10/29/2018 | $0.00 | $0.00 | -$2,652.00 | HAZARD INSURANCE | | $1,244,473.52 | $0.00 | $0.00 | -$2,652.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$272,397.62 | $15,042.41 | $0.00 |
| 11/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,254,538.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$272,397.62 | $15,042.41 | $0.00 |
| 11/26/2018 | $0.00 | $0.00 | -$10,107.44 | County Tax Disbursement | | $1,254,538.24 | $0.00 | $0.00 | -$10,107.44 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 12/01/2018 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,264,602.96 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 01/01/2019 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,274,667.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 02/01/2019 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,284,732.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 03/01/2019 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,294,797.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$282,505.06 | $15,042.41 | $0.00 |
| 03/22/2019 | $0.00 | $0.00 | -$10,107.44 | County Tax Disbursement | | $1,294,797.12 | $0.00 | $0.00 | -$10,107.44 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 04/01/2019 | $10,064.72 | $0.00 | $0.00 | Monthly Assessment | | $1,304,861.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 05/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,315,208.61 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 06/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,325,555.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 07/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,335,902.15 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 08/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,346,248.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

### Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 09/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,356,595.69 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 10/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,366,942.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$292,612.50 | $15,042.41 | $0.00 |
| 10/28/2019 | $0.00 | $0.00 | -$3,163.68 | HAZARD INSURANCE | | $1,366,942.46 | $0.00 | $0.00 | -$3,163.68 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$295,776.18 | $15,042.41 | $0.00 |
| 11/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,377,289.23 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$295,776.18 | $15,042.41 | $0.00 |
| 11/26/2019 | $0.00 | $0.00 | -$10,309.50 | County Tax Disbursement | | $1,377,289.23 | $0.00 | $0.00 | -$10,309.50 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 12/01/2019 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,387,636.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 01/01/2020 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,397,982.77 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 02/01/2020 | $10,346.77 | $0.00 | $0.00 | Monthly Assessment | | $1,408,329.54 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 03/01/2020 | $10,245.34 | $0.00 | $0.00 | Monthly Assessment | | $1,418,574.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$306,085.68 | $15,042.41 | $0.00 |
| 03/30/2020 | $0.00 | $0.00 | -$10,309.50 | County Tax Disbursement | | $1,418,574.88 | $0.00 | $0.00 | -$10,309.50 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 04/01/2020 | $10,245.34 | $0.00 | $0.00 | Monthly Assessment | | $1,428,820.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 05/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,438,471.63 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 06/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,448,123.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 07/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,457,774.45 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,042.41 | $0.00 |
| 07/20/2020 | $0.00 | $0.00 | $535.00 | ATTY/TRUSTEE | | $1,457,774.45 | $0.00 | $0.00 | $0.00 | $535.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,577.41 | $0.00 |
| 08/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,467,425.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,577.41 | $0.00 |
| 09/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,477,077.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,577.41 | $0.00 |
| 10/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,486,728.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$316,395.18 | $15,577.41 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 8:23-bk-10898-TA

Debtor 1: JEFFREY S BEIER

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10/30/2020 | $0.00 | $0.00 | -$3,290.23 | HAZARD INSURANCE | | $1,486,728.68 | $0.00 | $0.00 | -$3,290.23 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$319,685.41 | $15,577.41 | $0.00 |
| 11/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,496,380.09 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$319,685.41 | $15,577.41 | $0.00 |
| 11/30/2020 | $0.00 | $0.00 | -$10,515.49 | County Tax Disbursement | | $1,496,380.09 | $0.00 | $0.00 | -$10,515.49 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,577.41 | $0.00 |
| 12/01/2020 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,506,031.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,577.41 | $0.00 |
| 01/01/2021 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,515,682.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,577.41 | $0.00 |
| 01/19/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,515,682.91 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,594.91 | $0.00 |
| 02/01/2021 | $9,651.41 | $0.00 | $0.00 | Monthly Assessment | | $1,525,334.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,594.91 | $0.00 |
| 02/12/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,525,334.32 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,612.41 | $0.00 |
| 03/01/2021 | $9,649.60 | $0.00 | $0.00 | Monthly Assessment | | $1,534,983.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,612.41 | $0.00 |
| 03/08/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,534,983.92 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$330,200.90 | $15,629.91 | $0.00 |
| 03/29/2021 | $0.00 | $0.00 | -$10,515.49 | County Tax Disbursement | | $1,534,983.92 | $0.00 | $0.00 | -$10,515.49 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,629.91 | $0.00 |
| 04/01/2021 | $9,649.60 | $0.00 | $0.00 | Monthly Assessment | | $1,544,633.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,629.91 | $0.00 |
| 04/01/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,544,633.52 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,647.41 | $0.00 |
| 04/27/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,544,633.52 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,664.91 | $0.00 |
| 05/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,553,575.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,664.91 | $0.00 |
| 05/20/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,553,575.40 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,682.41 | $0.00 |
| 06/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,562,517.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,682.41 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 06/14/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,562,517.28 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,699.91 | $0.00 |
| 07/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,571,459.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,699.91 | $0.00 |
| 07/09/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,571,459.16 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,717.41 | $0.00 |
| 08/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,580,401.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,717.41 | $0.00 |
| 08/20/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,580,401.04 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,734.91 | $0.00 |
| 09/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,589,342.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,734.91 | $0.00 |
| 09/21/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,589,342.92 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,752.41 | $0.00 |
| 10/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,598,284.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,752.41 | $0.00 |
| 10/18/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,598,284.80 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$340,716.39 | $15,769.91 | $0.00 |
| 10/26/2021 | $0.00 | $0.00 | -$3,421.84 | HAZARD INSURANCE | | $1,598,284.80 | $0.00 | $0.00 | -$3,421.84 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$344,138.23 | $15,769.91 | $0.00 |
| 11/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,607,226.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$344,138.23 | $15,769.91 | $0.00 |
| 11/29/2021 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,607,226.68 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$344,138.23 | $15,787.41 | $0.00 |
| 12/01/2021 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,616,168.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$344,138.23 | $15,787.41 | $0.00 |
| 12/01/2021 | $0.00 | $0.00 | -$10,558.30 | County Tax Disbursement | | $1,616,168.56 | $0.00 | $0.00 | -$10,558.30 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,787.41 | $0.00 |
| 01/01/2022 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,625,110.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,787.41 | $0.00 |
| 01/11/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,625,110.44 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,804.91 | $0.00 |
| 02/01/2022 | $8,941.88 | $0.00 | $0.00 | Monthly Assessment | | $1,634,052.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,804.91 | $0.00 |



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
| --- | --- |
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 02/04/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,634,052.32 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,822.41 | $0.00 |
| 03/01/2022 | $8,959.98 | $0.00 | $0.00 | Monthly Assessment | | $1,643,012.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,822.41 | $0.00 |
| 03/09/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,643,012.30 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$354,696.53 | $15,839.91 | $0.00 |
| 03/30/2022 | $0.00 | $0.00 | -$10,558.30 | County Tax Disbursement | | $1,643,012.30 | $0.00 | $0.00 | -$10,558.30 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,839.91 | $0.00 |
| 04/01/2022 | $8,959.98 | $0.00 | $0.00 | Monthly Assessment | | $1,651,972.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,839.91 | $0.00 |
| 04/08/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,651,972.28 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,857.41 | $0.00 |
| 05/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,661,423.18 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,857.41 | $0.00 |
| 05/09/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,661,423.18 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,874.91 | $0.00 |
| 06/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,670,874.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,874.91 | $0.00 |
| 06/07/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,670,874.08 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,892.41 | $0.00 |
| 07/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,680,324.98 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,892.41 | $0.00 |
| 07/11/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,680,324.98 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,909.91 | $0.00 |
| 08/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,689,775.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,909.91 | $0.00 |
| 08/09/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,689,775.88 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,927.41 | $0.00 |
| 09/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,699,226.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,927.41 | $0.00 |
| 09/13/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,699,226.78 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,944.91 | $0.00 |
| 10/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,944.91 | $0.00 |



Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G.** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10/11/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $15,962.41 | $0.00 |
| 10/17/2022 | $0.00 | $0.00 | $91.00 | RECORDING FEES | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $91.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $16,053.41 | $0.00 |
| 10/20/2022 | $0.00 | $0.00 | $1,493.00 | TITLE FEES | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $1,493.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $17,546.41 | $0.00 |
| 10/21/2022 | $0.00 | $0.00 | $116.66 | MAILING FEES | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $116.66 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $17,663.07 | $0.00 |
| 10/21/2022 | $0.00 | $0.00 | $180.00 | ATTY/TRUSTEE | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $180.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $17,843.07 | $0.00 |
| 10/21/2022 | $0.00 | $0.00 | $10.00 | RECORDING FEES | | $1,708,677.68 | $0.00 | $0.00 | $0.00 | $10.00 | $0.00 | $1,470,000.00 | $0.00 | -$365,254.83 | $17,853.07 | $0.00 |
| 10/26/2022 | $0.00 | $0.00 | -$3,640.83 | HAZARD INSURANCE | | $1,708,677.68 | $0.00 | $0.00 | -$3,640.83 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,853.07 | $0.00 |
| 11/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,853.07 | $0.00 |
| 11/14/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,870.57 | $0.00 |
| 11/28/2022 | $0.00 | $0.00 | $87.25 | RECORDING FEES | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $87.25 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,957.82 | $0.00 |
| 11/28/2022 | $0.00 | $0.00 | $0.57 | MAILING FEES | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $0.57 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,958.39 | $0.00 |
| 11/29/2022 | $0.00 | $0.00 | $35.98 | MAILING FEES | | $1,718,128.58 | $0.00 | $0.00 | $0.00 | $35.98 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,994.37 | $0.00 |
| 12/01/2022 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,727,579.48 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$368,895.66 | $17,994.37 | $0.00 |
| 12/01/2022 | $0.00 | $0.00 | -$10,848.05 | County Tax Disbursement | | $1,727,579.48 | $0.00 | $0.00 | -$10,848.05 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $17,994.37 | $0.00 |
| 12/06/2022 | $0.00 | $0.00 | $120.00 | ATTY/TRUSTEE | | $1,727,579.48 | $0.00 | $0.00 | $0.00 | $120.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $18,114.37 | $0.00 |
| 12/07/2022 | $0.00 | $0.00 | $1,207.50 | ATTY/TRUSTEE | | $1,727,579.48 | $0.00 | $0.00 | $0.00 | $1,207.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,321.87 | $0.00 |
| 12/15/2022 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,727,579.48 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,339.37 | $0.00 |
| 01/01/2023 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,737,030.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,339.37 | $0.00 |
| 01/10/2023 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,737,030.38 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,356.87 | $0.00 |
| 01/26/2023 | $0.00 | $0.00 | $88.00 | RECORDING FEES | | $1,737,030.38 | $0.00 | $0.00 | $0.00 | $88.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,444.87 | $0.00 |


Exhibit A

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:23-bk-10898-TA |
|---|---|
| Debtor 1: | JEFFREY S BEIER |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 01/30/2023 | $0.00 | $0.00 | $258.58 | MAILING FEES | | $1,737,030.38 | $0.00 | $0.00 | $0.00 | $258.58 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,703.45 | $0.00 |
| 02/01/2023 | $9,450.90 | $0.00 | $0.00 | Monthly Assessment | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,703.45 | $0.00 |
| 02/07/2023 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,720.95 | $0.00 |
| 02/13/2023 | $0.00 | $0.00 | $125.00 | POSTING FEES | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $125.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,845.95 | $0.00 |
| 02/15/2023 | $0.00 | $0.00 | $130.00 | BPO - DRIVE BY | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $130.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $19,975.95 | $0.00 |
| 02/21/2023 | $0.00 | $0.00 | $475.00 | ADVRTIZE/PUBLISH | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $475.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $20,450.95 | $0.00 |
| 02/28/2023 | $0.00 | $0.00 | $1,120.00 | APPRSL DRIVE BY | | $1,746,481.28 | $0.00 | $0.00 | $0.00 | $1,120.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $21,570.95 | $0.00 |
| 03/01/2023 | $9,517.44 | $0.00 | $0.00 | Monthly Assessment | | $1,755,998.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $21,570.95 | $0.00 |
| 03/01/2023 | $0.00 | $0.00 | $221.86 | MAILING FEES | | $1,755,998.72 | $0.00 | $0.00 | $0.00 | $221.86 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $21,792.81 | $0.00 |
| 03/06/2023 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,755,998.72 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$379,743.71 | $21,810.31 | $0.00 |
| 03/30/2023 | $0.00 | $0.00 | -$10,848.05 | County Tax Disbursement | | $1,755,998.72 | $0.00 | $0.00 | -$10,848.05 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,810.31 | $0.00 |
| 04/01/2023 | $9,517.44 | $0.00 | $0.00 | Monthly Assessment | | $1,765,516.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,810.31 | $0.00 |
| 04/05/2023 | $0.00 | $0.00 | $54.70 | MAILING FEES | | $1,765,516.16 | $0.00 | $0.00 | $0.00 | $54.70 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,865.01 | $0.00 |
| 04/05/2023 | $0.00 | $0.00 | $50.00 | ATTY/TRUSTEE | | $1,765,516.16 | $0.00 | $0.00 | $0.00 | $50.00 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,915.01 | $0.00 |
| 04/28/2023 | $0.00 | $0.00 | $17.50 | OCCUPD PROP INSP | | $1,765,516.16 | $0.00 | $0.00 | $0.00 | $17.50 | $0.00 | $1,470,000.00 | $0.00 | -$390,591.76 | $21,932.51 | $0.00 |

**Exhibit A**

Creditor Name:

***THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-0 4



Exhibit A

**PROOF OF CLAIM DISCLOSURES**

IN RE: **BEIER, JEFFREY S**
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

CASE NO. 8:23-bk-10898-TA

CREDITOR:   THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK
SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BEAR
STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-04

1.  The amount of the post-petition payments is subject to change per the terms of the InterestOnly
    Adjustable Rate Note and Deed of Trust.
2.  This Proof of Claim shall not constitute a waiver of the within party's right to receive service
    pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004
    notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within
    party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite,
    LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R.
    Bankr. P. 7004.



Exhibit A



CUSTOMER SERVICE
PO BOX 31785
TAMPA, FL 33631-3785

### Escrow Account Summary

**Account number**

JEFFREY S BEIER
TONI R BEIER
1913 E 17TH ST STE 212
SANTA ANA  CA 92705-8627

**Property Address**
10 TUCSON
COTO DE CAZA AREA, CA 92679

**Date**
05/06/2023

**OUR RECORDS INDICATE THAT THIS ACCOUNT IS SUBJECT TO A BANKRUPTCY CASE OR ONE OR MORE BORROWERS RECEIVED A DISCHARGE OF THEIR PERSONAL OBLIGATION TO REPAY THE DEBT ASSOCIATED WITH THIS LOAN. THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A DEMAND FOR PAYMENT, AN ATTEMPT TO COLLECT A DEBT, A REQUEST ON AN OBLIGATION, AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR A DISCHARGED DEBT, OR AN ATTEMPT TO MODIFY ANY BANKRUPTCY PLAN OR DISCHARGE ORDER.**

**JEFFREY S BEIER and TONI R BEIER**,

We've included the escrow analysis statement for this home loan -- here are some highlights.

Here's a summary of what was paid from escrow, what we plan on paying over the upcoming year and how the monthly payment is changing.

| Summary of escrow disbursements (see Escrow History) | Last year's projected disbursements | Last year's actual disbursements |
|---|---|---|
| Insurance | $3,640.83 | $0.00 |
| Taxes | $21,696.10 | $10,848.05 |
| **Total disbursements from escrow** | **$25,336.93** | **$10,848.05** |

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

**Exhibit D** 

Here's what we estimate for the next 12 months:

| Summary of projected escrow disbursements (see Escrow Projections) | Next year's projected disbursements |
|---|---|
| County taxes | $21,696.10 |
| Homeowners insurance | $3,640.83 |
| **Total disbursements from escrow** | **$25,336.93** |

Based on our projection, we expect the lowest balance in your escrow account over the next 12 months will be **$4,223.78**. Because you're required to maintain a minimum balance of **$4,222.82** we're projecting an overage of **$0.96**. We're going to keep the balance in your escrow account, since payments are behind.

**Here's how these changes will affect the monthly payment starting 05/01/2023:**

| | Prior escrow analysis | New Payment |
|---|---|---|
| **Principal and interest** | **$7,406.03** | **$8,262.18** |
| **Monthly Escrow Payment** | ***$2,111.41** | **$2,111.41** |
| Taxes | $1,808.01 | $1,808.01 |
| Insurance | $303.40 | $303.40 |
| **Total payment amount** | **$9,517.44** | **$10,373.59** |

*Prior Analysis Escrow Payment amount is as of the last escrow analysis date and does not reflect payment adjustment made if last year's escrow shortage was paid in full.*

## We're here to help

If you have any questions, please call us at ▮▮▮▮▮▮▮ Monday - Friday, 8 a.m. to 9 p.m. ET.

For more details, please review the escrow analysis statement we've included. You can also review your account anytime at ▮▮▮▮▮▮▮▮▮



**Exhibit A**



CUSTOMER SERVICE
PO BOX 31785
TAMPA, FL 33631-3785

## Escrow Account Disclosure Statement

**Account number**

**Property address**
10 TUCSON
COTO DE CAZA AREA, CA 92679
**Date**
05/06/2023
**New Payment Effective Date**
05/01/2023
**New Payment Amount**
**$10,373.59**

JEFFREY S BEIER
TONI R BEIER
1913 E 17TH ST STE 212
SANTA ANA  CA 92705-8627

**OUR RECORDS INDICATE THAT THIS ACCOUNT IS SUBJECT TO A BANKRUPTCY CASE OR ONE OR MORE BORROWERS RECEIVED A DISCHARGE OF THEIR PERSONAL OBLIGATION TO REPAY THE DEBT ASSOCIATED WITH THIS LOAN. THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A DEMAND FOR PAYMENT, AN ATTEMPT TO COLLECT A DEBT, A REQUEST ON AN OBLIGATION, AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR A DISCHARGED DEBT, OR AN ATTEMPT TO MODIFY ANY BANKRUPTCY PLAN OR DISCHARGE ORDER.**

JEFFREY S BEIER and TONI R BEIER

Every year, we review your escrow account to make sure there will be enough money to cover your tax and insurance payments for the next year. We've adjusted the monthly payment and it looks like there will be **$0.96** left in your account even after your taxes and/or insurance are paid.  We're going to keep the balance in your escrow account since payments are behind.

### New Payment Amount

The Total Monthly Payment is changing starting **05/01/2023**.

| | Prior Analysis | New Payment | New Monthly Payment |
|---|---|---|---|
| **Principal and/or interest** | $7,406.03 | $8,262.18 | |
| **Monthly Escrow Payment** | *$2,111.41 | $2,111.41 | **$10,373.59** |
| *Tax* | $1,808.01 | $1,808.01 | See Projected Escrow Payments Section |
| *Insurance* | $303.40 | $303.40 | for details |
| *Mortgage Insurance* | $0.00 | $0.00 | |
| *Monthly Escrow- Overage / Shortage Adjustment* | $0.00 | $0.00 | |
| **Total Payment Amount** | $9,517.44 | $10,373.59 | |

*\*Prior Analysis Escrow Payment amount is as of the last escrow analysis date and does not reflect payment adjustment made if last year's escrow shortage was paid in full.*

**Important reminder:** You may need to update any recurring scheduled payments to match the new monthly payment amount because they won't be automatically updated. If you're enrolled in PayPlan, payments will automatically be updated.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

Bank of America and the Bank of America logo are registered trademarks of Bank of America Corporation. Bank of America, N.A. Member FDIC. Equal Housing Lender ⌂.



## Escrow History

Here's what happened in your escrow account since our last review compared to what we projected to happen. If there were changes to your taxes and/or insurance, they're bolded and highlighted below. This should help explain why there wasn't enough money in your escrow account to cover the taxes and insurance this past year. We've marked your lowest minimum balances with an asterisk (*). Any deposits into Escrow are summed and shown as a total amount for the month.

| Month | Deposits To Escrow | | | Payments From Escrow | | | Escrow Balances | |
|---|---|---|---|---|---|---|---|---|
| | Deposits to Escrow | Expected Payment to Escrow | Description | What we Paid From Escrow | What we Expected to Pay From Escrow | Description | Actual Balance | Last Year's Estimated Balance |
| | | | | | | Beginning balance | -$379,743.71 | $12,959.46 |
| 03/2023 | | $2,111.41 | Deposit | $10,848.05 | $10,848.05 | County tax | -$390,591.76* | $4,222.82* |
| 04/2023 | | $2,111.41 | Deposit | | | | -$390,591.76* | $6,334.23 |
| 05/2023 | $396,926.96 | $2,111.41 | Expected Payment(s) not yet received | | | | $6,335.20 | $8,445.64 |
| 06/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $10,557.05 |
| 07/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $12,668.46 |
| 08/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $14,779.87 |
| 09/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $16,891.28 |
| 10/2023 | | $2,111.41 | Deposit | | $3,640.83 | Homeowners insurance | $6,335.20 | $15,361.86 |
| 11/2023 | | $2,111.41 | Deposit | | $10,848.05 | County tax | $6,335.20 | $6,625.22 |
| 12/2023 | | $2,111.41 | Deposit | | | | $6,335.20 | $8,736.63 |
| 01/2024 | | $2,111.41 | Deposit | | | | $6,335.20 | $10,848.04 |
| 02/2024 | | $2,111.41 | Deposit | | | | $6,335.20 | $12,959.45 |
| TOTAL | $396,926.96 | $25,336.92 | | $10,848.05 | $25,336.93 | Ending balance | $6,335.20 | $12,959.45 |

| Summary of Escrow Transactions | Actual | Expected |
|---|---|---|
| **Total Deposits To Escrow** | **$396,926.96** | **$25,336.92** |
| *Monthly Deposits* | $396,926.96 | $25,336.92 |
| **Total Payments From Escrow** | **$10,848.05** | **$25,336.93** |
| *Insurance* | $0.00 | $3,640.83 |
| *Taxes* | $10,848.05 | $21,696.10 |

This estimate assumes the expected payments shown above will be made.



**Exhibit D**

Case 23-10598-TA    Doc 65-1    Filed 10/20/23    Entered 10/20/23 15:09:39    Desc
Exhibit D - Exhibit A to Mtn for Rule 83 of 70    Page 47 of 105
Account Number █████████    Statement Date 05/06/2023

---

## Projected Escrow Payments

Here's a summary of what we expect to happen in your escrow account over the next year.

| | |
|---|---|
| County taxes | $21,696.10 |
| Homeowners insurance | $3,640.83 |
| **Total Expected Escrow Disbursements:** | **$25,336.93** |

To estimate your monthly escrow payment, we total the expected payments to tax and/or insurance and divide by 12 months:
**$25,336.93 /12 = $2,111.41.**

### Your estimated escrow account payments over the next 12 months

Since the mortgage account is past due, the beginning balance in your escrow account may not match the ending balance from the history above. The numbers in this table assume all mortgage payments are up to date.

| Month | Your Payment to Escrow | Tax Payment(s) | Insurance Payment(s) | Mortgage Insurance (MIP/PMI) Payment(s) | Expected Escrow Balance |
|---|---|---|---|---|---|
| **Beginning balance** | | | | | **$6,335.20** |
| 05/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $8,446.61 |
| 06/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $10,558.02 |
| 07/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $12,669.43 |
| 08/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $14,780.84 |
| 09/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $16,892.25 |
| 10/2023 | $2,111.41 | $0.00 | $3,640.83 | $0.00 | $15,362.83 |
| 11/2023 | $2,111.41 | $10,848.05 | $0.00 | $0.00 | $6,626.19 |
| 12/2023 | $2,111.41 | $0.00 | $0.00 | $0.00 | $8,737.60 |
| 01/2024 | $2,111.41 | $0.00 | $0.00 | $0.00 | $10,849.01 |
| 02/2024 | $2,111.41 | $0.00 | $0.00 | $0.00 | $12,960.42 |
| 03/2024 | $2,111.41 | $10,848.05 | $0.00 | $0.00 | **$4,223.78** |
| 04/2024 | $2,111.41 | $0.00 | $0.00 | $0.00 | $6,335.19 |
| **Ending balance** | | | | | **$6,335.19** |

**Based on this year's review, your escrow account has an overage of $0.96.** This was calculated based on the expected minimum balance which is bolded in the table above.

Since your expected minimum balance is higher than the required minimum balance, your account has an overage. The required minimum balance (which is also sometimes called a cushion), may include up to two months of escrow payments (not including your mortgage insurance) to help cover increases to your taxes and homeowner's insurance. **Your account's current cushion is $4,222.82.**

| | |
|---|---|
| Expected Minimum Balance | $4,223.78 |
| ***Minus*** | |
| Required Minimum Balance | **$4,222.82** |
| **Escrow Overage Amount** | **$0.96** |

Please let us know if you have any questions. You can call us at ████████ Monday – Friday, 8 a.m. to 9 p.m. ET. You can review your account anytime at ████████



**Exhibit A**

## FREQUENTLY ASKED QUESTIONS

**Q.  Where can I view information about my taxes and insurance online?**
A:   You can view information and set up alerts about your taxes and insurance in online banking. To view information, go to
www.bankofamerica.com, sign in, select the mortgage account, and go to the Information & Service tab. To sign up for alerts go
to www.bankofamerica.com, select the mortgage account, and then click on Manage Alert Settings in the Communication Center.

**Q:  Why am I getting this Escrow Account Disclosure Statement?**
A:   We want to make sure you understand any payment changes. Your escrow payment amount for the upcoming year may change
due to increased or decreased taxes and/or insurance. This statement provides details about any payment changes.

**Q:  What is an Escrow Analysis?**
A:   We do an Escrow Analysis at least once a year to determine if the amount of money in your escrow account is enough for next
year's expected tax and/or insurance payments.

**Q:  What are the most common reasons for my escrow payment change?**
A:   The most common reasons for a payment change are changes to your property taxes and/or insurance premiums.

**Q:  I've paid the full escrow shortage, why is my escrow payment still increasing?**
A:   A required escrow payment is determined by the total amount of annual disbursements divided across 12 monthly payments.
Paying the escrow shortage in full ensures that your escrow account does not fall below the minimum required balance, but it will
not reduce the required escrow payment amount.

**Q:  I do not want my escrow payment to change. Can I make an additional escrow payment to keep my monthly payments
the same?**
A:   The escrow payment cannot be adjusted below the required escrow payment amount (total amount of annual disbursements
divided across 12 monthly payments). Any funds in your escrow account that are in excess of the annual disbursement amounts
plus the required reserve will be returned as an escrow overage when the escrow account is next analyzed.

**Q:  What is an Escrow Overage?**
A:   An Escrow Overage happens when our Escrow Analysis shows you've got more money in your escrow account than the required
minimum balance. All escrow overages will be refunded as long as account is current as of the date of the escrow analysis.

**Q:  What is an Escrow Shortage?**
A:   An Escrow Shortage happens when our Escrow Analysis shows there's not enough money in your account to meet the required
minimum balance. We'll adjust the monthly payment to make up the shortage.

**Q:  What is a Required Minimum Balance?**
A:   The required minimum balance is the smallest amount of money you can have in your account at any time during the year. The
required minimum balance, also called a cushion, may include up to two months of escrow payments minus mortgage insurance to
cover potential increases to your taxes and homeowner's insurance.

**Q:  Who should I contact about tax or insurance changes that increased my monthly escrow payment?**
A:   Contact your local tax authority or insurance agent with questions about any tax or insurance payment changes.

**Q:  Can the total Escrow Shortage amount be included with the monthly mortgage payment?**
A:   If your escrow shortage is less than or equal to 1 month's escrow payment you have the option to pay the balance in full or to
spread it over the next 12 months. If you choose to pay the escrow shortage in full, the escrow shortage amount must be sent
separately, along with the payment coupon Included with this statement. If your escrow shortage is greater than 1 month's
escrow payment we will spread the shortage over 12 months.

**Q:  Do I need to take any actions if recurring mortgage payments are scheduled through an online bill payment service?**
A:   Yes. The payment amount will not update automatically. If recurring payments are made from a Bank of America account, visit
Online Banking to update the amount of any scheduled payments in Transfers, BillPay or Mortgage Pay on the Web. For
payments made through another institution, please follow their process for changing the payment amount.



Prepared by: NICHOLAS P. ISAACS

LOAN # ▮▮▮▮▮▮

## InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE

(One-Year **LIBOR** Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| MARCH 02, 2005 | MISSION VIEJO | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

10 TUCSON, COTO DE CAZA AREA, CA 92679
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,470,000.00     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.                                          .
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.875  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will make a payment on the first      day of every month, beginning on   MAY 01, 2005     .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
  APRIL 01, 2035         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 7,196.88       before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

#### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)          Page 1 of 4

Initials: _____

LOAN #: ▮▮▮▮▮

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of APRIL, 2010, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                              Page 2 of 4                              Initials



Exhibit A

LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                                Page 3 of 4

Initials:



**Exhibit A**

LOAN #: ▮▮▮▮▮▮▮

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JEFEREY S. BEIER                   -Borrower

_____ (Seal)
TONI R. BEIER                      -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

PAY TO THE ORDER OF                [Sign Original Only]
JPMorgan Chase Bank, as Trustee
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: _____
    David A. Spector
    Managing Director

**Exhibit A**

# __Allonge to Deed of Trust/Mortgage Note__

Loan Number: ████████

Allonge to one certain Deed of Trust/Mortgage Note Date:
 March 2, 2005

Executed By:

JEFFREY S BEIER  & TONI R BEIER

Original Amount: $1,470,000.00
Property Address:
 10 TUCSON, COTO DE CAZA AREA, CA  92679

Pay to the Order of:

Without Recourse:
## **Countrywide Home Loans, Inc.**

By:
Name: FRANK FOLDA
Title: Vice President



RECORDING REQUESTED
BY STEWART TITLE
IRVINE

This Document was electronically recorded by
Stewart Title

Recording Requested By:
K. BUDDE

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder



87.00
2005000170527 11:06am 03/08/05
105 31 D11 28
0.00 0.00 0.00 0.00 81.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
NICHOLAS P. ISAACS

——————————— [Space Above This Line For Recording Data] ———————————

[Escrow/Closing #]                [Doc ID #]

# DEED OF TRUST
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MARCH 02, 2005     , together with all Riders to this document.
**(B) "Borrower"** is
JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

 -6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Initials:                Form 3005 1/01



**Exhibit D**

DOC ID #: ▉▉▉▉▉▉▉▉▉▉▉▉

Borrower's address is
10 TUCSON, COTO DE CAZA AREA, CA 92679
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ▉▉▉▉▉▉▉▉
**(F) "Note"** means the promissory note signed by Borrower and dated MARCH 02, 2005          . The Note states that Borrower owes Lender
ONE MILLION FOUR HUNDRED SEVENTY THOUSAND and 00/100

Dollars (U.S. $ 1,470,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  APRIL 01, 2035          .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

VMP® -6A(CA) (0207)     CHL (09/02)          Page 2 of 16                Initials: ▉▉▉▉
                                                                        Form 3005 1/01

**Exhibit A**

DOC ID #: ██████████████

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of ORANGE :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 755-241-13                              which currently has the address of

10 TUCSON, COTO DE CAZA AREA ,
[Street/City]

California    92679     ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

VMP® -6A(CA) (0207)       CHL (09/02)        Page 3 of 16              Initials: _____  Form 3005 1/01

# Exhibit A

Exhibit A

DOC ID #:

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)    CHL (09/02)                    Page 4 of 16              Initials:              Form 3005 1/01

**Exhibit A**

DOC ID #:

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**Exhibit A**

DOC ID #: <span style="background:black">    </span>

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Initials:

Form 3005 1/01

**Exhibit D**

DOC ID #: ████████████

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials:

Form 3005 1/01

**Exhibit A**

DOC ID #: ███████████

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

**Exhibit D**

DOC ID #:

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss
reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement
between Borrower and Lender providing for such termination or until termination is required by Applicable
Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may
incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter
into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on
terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these
agreements. These agreements may require the mortgage insurer to make payments using any source of funds
that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance
premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any
other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive
from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for
sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an
affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the
insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage
Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will
owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the
Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may
include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage
Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any
Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby
assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the
Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such
repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has
had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction,
provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in
a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is
made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall
not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or
repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall
be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any,
paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds
shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if
any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value
of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than
the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction,
or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Initials:

**Exhibit A**

DOC ID #: ▮▮▮▮▮▮▮▮

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Exhibit A

DOC ID #: ██████████████

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**Exhibit A**

DOC ID #: ▓▓▓▓▓▓▓▓

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Initials:

Form 3005 1/01

**Exhibit D**

DOC ID #: [REDACTED]

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**Exhibit A**

DOC ID #: ███████████

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

 -6A(CA) (0207)     CHL (09/02)     Page 14 of 16      Form 3005 1/01

**Exhibit A**

DOC ID #: ██████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          JEFFREY S. BEIER                -Borrower

_____          _____ (Seal)
                                          TONI R. BEIER                   -Borrower

                                          _____ (Seal)
                                                                          -Borrower

                                          _____ (Seal)
                                                                          -Borrower

Exhibit A

DOC ID #:

State of California
County of **Orange**
}  ss.

On **March 2, 2005**   before me,  **Erin Wilkinson**
personally appeared

**Jeffrey S. Beier & Toni R. Beier**

~~, personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ERIN WILKINSON
Commission #
Notary Public - California
Orange County
My Comm. Expires Jul 8, 2007

Initials: _____

Form 3005 1/01

**Exhibit D**

*Government Code Section 27361.7*

*I certify under penalty of perjury that the notary seal on the document to
which this statement is attached reads as follows:*

| | |
|---|---|
| *Name of Notary:* | ERIN WILKINSON |
| *Date commission expires:* | JULY 8, 2007 |
| *Commission No.:* | ███████ |
| *Vendor No.:* | NNA1 |
| *Place of execution:* | ORANGE |
| *Date:* | MARCH 2, 2005 |

*Stewart Title of California*

*By:* DANNY SCRUGGS

Exhibit **A**

Prepared by: NICHOLAS P. ISAACS

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: ███████
27101 PUERTA REAL, ST 100
MISSION VIEJO, CA 92691

DATE:          03/02/2005
CASE #:
DOC ID #: ███████████
BORROWER: JEFFREY S. BEIER
PROPERTY ADDRESS: 10 TUCSON
　　　　　　　　 COTO DE CAZA AREA, CA 92679

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
● Legal Description Exhibit A
1C404-XX (04/03)(d)



**Exhibit A**

EXHIBIT "A"

LEGAL DESCRIPTION

The land referred to herein is situated in the State of California,
County of ORANGE, described as follows:

Parcel 1:

Lot 1 (the "Lot") of Tract No. 15841, in the County of Orange,
State of California, as shown on a subdivision map ("Map")
recorded on December 23, 1999, in book 794, pages 25 to 29,
inclusive of miscellaneous maps, in the office of the Orange
County recorder.

Excepting therefrom; all oil, oil rights, natural gas rights,
mineral rights, and other hydrocarbon substances by whatever
name known, together with appurtenant rights thereto, without,
however, any right to enter upon the surface of said land nor
any portion of the subsurface lying above a depth of 500 feet,
as excepted or reserved in instruments of record.

Except all water, claims or rights to water, in or under said
land.

Parcel 2:

Non-exclusive easements for use, access, ingress, egress,
maintenance, repair, drainage, encroachment, support, and for
other purposes, all as described in the Master Declaration of
Covenants, Conditions, Restrictions and Reservation of
Easements for Coto de Caza ("Master Declaration"), recorded on
March 5, 1984 as Instrument No. 84-092424, in the Supplemental
Declaration of Covenants, Conditions, Restrictions and
Reservation of Easements for Oak Knoll in Coto De Caza
("Supplemental Declaration") recorded on September 11, 2000 as
Instrument No. 2000-0471430, in the Declaration of Covenants,
Conditions and Restrictions and Reservation of Easements for
The Summit ("Summit Declaration") recorded on September 20,
2000 as Instrument No. 2000-0492456, all in official records
and all as amended or restated, and as described in the map and
notice recorded December 20, 2000 as Instrument No.
2000-0691033.

End of Legal Description

**Exhibit A**

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
NICHOLAS P. ISAACS


[Escrow/Closing #]          [Doc ID #]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this SECOND          day of
MARCH, 2005          , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
🆅🅼🅿 **-7R** (0405)          CHL **(06/04)(d)**          Page 1 of 4          Initials:_____
                              VMP Mortgage Solutions, Inc.                    Form 3150 1/01




# Exhibit A

DOC ID #: ████████████

undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

10 TUCSON
COTO DE CAZA AREA, CA 92679
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
OAK KNOLL AT COTO DE CAZA

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Initials _____

**VMP®** **-7R** (0405)    **CHL (06/04)**    Page 2 of 4    **Form 3150 1/01**

**Exhibit A**

DOC ID #: ███████████

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials

**VMP®-7R** (0405)   **CHL (06/04)**   Page 3 of 4   **Form 3150 1/01**

**Exhibit D**

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
PUD Rider.

_____ (Seal)
JEFFREY S. BEIER                             - Borrower

_____ (Seal)
TONI R. BEIER                                - Borrower

_____ (Seal)
                                             - Borrower

_____ (Seal)
                                             - Borrower

**-7R** (0405)     **CHL (06/04)**     Page 4 of 4          **Form 3150 1/01**

# Exhibit A

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
NICHOLAS P. ISAACS

Recording Requested By:


—————————— [Space Above This Line For Recording Data]——————————

# FIXED/ADJUSTABLE RATE RIDER
**(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)**

███████████        ███████████

[Escrow/Closing #]          [Doc ID #]

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
████████(06/04)(d)              Page 1 of 5              Initials: ▒▒▒▒▒

# Exhibit A

DOC ID #: ▉▉▉▉▉▉▉▉

THIS FIXED/ADJUSTABLE RATE RIDER is made this SECOND                 day of
MARCH, 2005       , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

10 TUCSON

COTO DE CAZA AREA, CA 92679

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of        5.875 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first        day of APRIL, 2010        , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER        percentage points (      2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
  ▉▉▉ (06/04)                    Page 2 of 5                    Initials ▉▉▉

**Exhibit A**

DOC ID #: ▉▉▉▉▉▉▉

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than     2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
 INTEREST ONLY
 ▉▉▉▉ (06/04)                    Page 3 of 5                    Initials



DOC ID #:

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
▬▬▬ (06/04)                              Page 4 of 5                          Initials:

**Exhibit A**

DOC ID #: ▮▮▮▮▮▮▮▮

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
JEFFREY S. BEIER                                 -Borrower

_____ (Seal)
TONI R. BEIER                                    -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
▮▮▮▮▮ (06/04)                     Page 5 of 5

**Exhibit A**

Case 8:23-bk-10571-SC Doc 1452-1 Filed 10/22/23 Entered 10/22/23 15:09:23 Desc
Exhibit D - Exhibit A - Note Nov 2 for Page 68 Page 82 of 105

LANDSAFE Exhibit D - Exhibit A - Note Nov 2 for Page 68 Page 82 of 105

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

18.00

**2010000269465 08:00am 06/09/10**
37 402 S15 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

ATTN: Nallely Ochoa
TS No.

## SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST

The undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter referred to as Beneficiary) is the Beneficiary of that certain Deed of Trust dated 03/02/2005, executed by JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS, Trustor, to RECONTRUST COMPANY, N.A., as Trustee, and recorded as Instrument No. 2005000170527 on 03/08/2005, of Official Records in the County Recorder's Office of ORANGE County, California. NOW THEREFORE, Beneficiary hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS:1757 TAPO CANYON ROAD, SVW-88, SIMI VALLEY, CA 93063 , as Trustee under said Deed of Trust herein referred to, in the place and stead of and with all rights, title, powers, and interest of the former trustee described above.

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, conveys and transfers to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK,N.A. AS TRUSTEE, BSALTA 2005-04 all beneficial interest under that certain Deed of Trust described above. Said described land: "As more fully described in the above referenced Deed of Trust." Together with the note or notes therein described or referred to, the money due and to become due thereon with the interest, and all rights accrued or to accrue under said Deed of Trust.

DATED: June 07, 2010

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

State of: **CALIFORNIA** )BY:

County of: **VENTURA** )

On **JUN 07 2010** before me, Kevin Rudolph, Assistant Secretary

**KEVIN RUDOLPH**     **MICHELLE I. MILLER**  , notary public, personally appeared

_____ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Notary Public's Signature **MICHELLE I. MILLER**



MICHELLE I. MILLER
COMM.
Notary Public - California
Los Angeles County
My Comm. Expires Feb. 15, 2013

*Form subasgnmnt (01/09)*

# Exhibit A

RECORDING REQUESTED
BY: **DANA BURTON**
**BANK OF AMERICA**
▮▮▮▮▮▮▮▮▮▮▮▮

**4909 SAVARESE CIR.**
**TAMPA, FL 33634**
▮▮▮▮▮

WHEN RECORDED MAIL TO:
**BANK OF AMERICA**

**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

Space above for recorder's use only

CORRECTIVE ASSIGNMENT OF DEED OF TRUST
(DEED OF TRUST) Title of Document

This cover sheet added to provide adequate space for recording information
($3.00 Additional Recording Fee Applies)



# Exhibit A

Recording Requested By:
**DANA BURTON**
**BANK OF AMERICA**
████████████

**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

When Recorded Mail Document
and Tax Statement To:
**BANK OF AMERICA**
████████████

**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

**Tax/Parcel #: 755-241-13**

_____ [Space Above This Line for Recording Data] _____

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST
THIS ASSIGNMENT IS BEING RECORDED TO ADD THE NOMINEE VERBIAGE TO THE
ASSIGNMENT PREVIOUSLY RECORDED ON JUNE 9, 2010 IN INSTRUMENT NO. 2010000269465

     For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS BENEFICIARY, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS
SUCCESSORS AND ASSIGNS**, the undersigned holder of a Deed of Trust (herein "Assignor"), whose address
is **P.O. BOX 2026, FLINT, MI 48501-2026**, does hereby grant, assign, transfer and convey, unto **THE
BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR
IN INTEREST TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE, BSALTA 2005-04** (herein
"Assignee"), whose address is **240 GREENWICH STREET, NEW YORK, NY 10286**, under a certain
Deed of Trust made and executed by **JEFFREY S BEIER AND TONI R BEIER, HUSBAND
AND WIFE AS JOINT TENANTS** ("Borrower"), to **RECONTRUST COMPANY, N.A.** ("Trustee"),
upon the following property located at **10 TUCSON, COTO DE CAZA, CALIFORNIA 92679** and
situated in **ORANGE County**, State of **CALIFORNIA**.

Such Deed of Trust having been given to secure payment of **$1,470,000.00** which Deed of Trust is dated
**MARCH 2, 2005** and recorded on **MARCH 8, 2005** in INSTRUMENT NO. 2005000170527
**ORANGE COUNTY**, State of **CALIFORNIA**, together with all rights accrued or to accrue under such Deed of
Trust.

Page 1

██████████████                    ██████████████

**Exhibit A**

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF,  the undersigned has caused this Assignment of Deed of Trust to be executed on

**JUN 1 5 2023**
Date

MORTGAGE  ELECTRONIC  REGISTRATION
SYSTEMS,  INC.,  AS  BENEFICIARY,  AS
NOMINEE FOR COUNTRYWIDE HOME LOANS,
INC., ITS SUCCESSORS AND ASSIGNS

By: *Dana M Burton*
(Signature)
**DANA M BURTON**
**ASSISTANT VICE PRESIDENT**

_____ [Space Below This Line for Acknowledgments] _____

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me by means of ☐ physical  presence  or ☐ online notarization, this ___15___ day of ___June___, ___2023___, by **DANA M BURTON** as **ASSISTANT  VICE  PRESIDENT** for **MORTGAGE ELECTRONIC  REGISTRATION  SYSTEMS,  INC.,  AS  BENEFICIARY,  AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS.**

*Alexandra Monegro*
(Signature  of Notary Public - State of Florida)

Alexandra Monegro

| ALEXANDRA MONEGRO |
| Notary Public, State of Florida |
| Commission █████ |
| My comm. expires May 22, 2024 |

_____
(Print, Type, or Stamp Commissioned  Name of Notary Public)

Personally  Known OR Produced Identification
Type of Identification  Produced _____N/A_____

**Exhibit A**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
8880 Rio San Diego Drive, Suite 725  San Diego, CA 92108

A true and correct copy of the foregoing document entitled (*specify*): <u>Proof of Claim</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>July 12, 2023</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR DEBTOR:**
Anerio V Altman  LakeForestBankruptcy@jubileebk.net

**TRUSTEE:**


**U.S. TRUSTEE:**
U.S. Trustee  ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>July 12, 2023</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR:**
Jeffrey S Beier
P O Box 7644
Laguna Niguel, CA 92677

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 12, 2023 | CANDACE RUSSO | /s/ CANDACE RUSSO |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**Exhibit D**

RECORDING REQUESTED
BY STEWART TITLE
IRVINE

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

████████████  **60.00**

████████████ **04:21pm 05/25/05**

103 91 D11 A36 17

0.00 0.00 0.00 0.00 0.00 48.00 0.00 0.00 0.00

Recording Requested By:
K. BUDDE

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MELISSA A. SIMMS

G0712555

———————— [Space Above This Line For Recording Data] ————————

2477-NB
[Escrow/Closing #]                    ████████ [Doc ID #]

## DEED OF TRUST AND ASSIGNMENT OF RENTS

MIN ████████████████

This Deed of Trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this 17th           day of MAY, 2005           , between
JEFFREY S BEIER, AND TONI R BEIER, HUSBAND AND WIFE AS JOINT TENANTS

whose address is, Coto De Caza
10 TUCSON, COTA DE CAZA, CA 92679
herein called "Trustor,"
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
herein called "Trustee," and  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS")
a Delaware corporation with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**MERS is the "Beneficiary" under this Deed of Trust** and is acting solely as a nominee for
COUNTRYWIDE HOME LOANS, INC.

("Lender" or "you") and its successors and assigns, with an address of
4500 Park Granada, Calabasas, CA 91302-1613
Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real
property in the City or Town of COTA DE CAZA                    , County of
ORANGE                    , State of California, having the street address of
10 TUCSON, COTA DE CAZA, CA 92679-5200

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)(d)                    Page 1 of 10                    Initials:



# Exhibit B

DOC ID #: █████████

and more specifically described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 755-241-13                                    together with all improvements
now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to
the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and
gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the
property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part
of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the
leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property."

        TRUSTOR UNDERSTANDS and agrees that MERS is a separate corporation acting solely as nominee
for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by Trustor
in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and
Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not
limited to, the right to foreclose and sell the Property, and to take any action required of Lender including,
but not limited to, releasing or canceling this Deed of Trust.

1.      THIS DEED OF TRUST SECURES:

        a.      All of the obligations of Trustor in favor of Lender or order under the terms of a revolving
credit agreement dated MAY 17, 2005              , herein called Agreement. The Agreement
provides, among other things, for the payment of all sums advanced by Lender from time to time
pursuant to the Agreement and for the payment of interest. The maximum principal obligation
under the Agreement to be secured by this Deed of Trust at any one time is
SEVEN HUNDRED TEN THOUSAND and 00/100
Dollars ($ 710,000.00       ) unless Lender, with Trustor's written consent, hereafter
increases this amount. Advances made by Lender to protect the security of this Deed of Trust or to
preserve the Property shall not be subject to the limitation of the preceding sentence.

        The security of this Deed of Trust shall not be affected by the extension, renewal or modification
from time to time of the obligations, instruments or agreements described above.

        b.      Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary,
direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in
interest to Trustor) whether created directly or acquired by assignment if the document evidencing
such obligation or liability or any other writing signed by Trustor (or any successor in interest to
Trustor) specifically provides that said obligation or liability is secured by this Deed of Trust.

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)                         Page 2 of 10                          Initials: _____

**Exhibit B**

DOC ID #: [redacted]

c.  Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

d.  Payment of all sums to be expended by the Lender or Trustee pursuant to the terms hereof.

2.  TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

a.  To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b.  To provide, maintain and deliver to Lender fire and other insurance on the Property satisfactory to and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon indebtedness secured hereby and in such order as Lender may determine, or at option of Lender, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c.  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Lender or Trustee may appear, and in any suit brought by Lender to foreclose this Deed of Trust. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

d.  To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this trust.

e.  That should Trustor fail to make any payment or do any act as herein provided, then Lender or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

(1)  Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Lender or Trustee being authorized to enter upon the Property for such purposes.

(2)  Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Lender or Trustee.

**Exhibit B**

DOC ID #: ▮▮▮▮▮▮▮

(3)  Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)  In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

f.  To pay immediately and without demand all sums so expended by Lender or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Lender, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.  To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Lender but not to exceed the maximum allowed by law at the time the statement is demanded.

3.  IT IS FURTHER AGREED THAT:

a.  Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender who may apply or release such monies received by it in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.  By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Lender shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Lender holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Lender may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.  Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this Deed of Trust on the remainder of the Property for the full amount of any indebtedness unpaid, Lender and Trustee are respectively empowered as follows:

(1)  Lender may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including Deeds of Trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)  Trustee may, at any time, and from time to time, upon the written request of Lender (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this Deed of Trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.


**Exhibit B**

DOC ID #: ██████████

d.    Upon (a) written request of Lender or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

e.    Trustor hereby gives to and confers upon Lender the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Lender; provided, however, that Lender hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Lender may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Lender may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Lender for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Lender's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.    Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Lender may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Lender.

**Exhibit B**

DOC ID #:

g.    Waiver of a right granted to Lender hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Lender may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default. The exercise by Lender of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Lender to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Lender or Trustee hereunder.

h.    At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United States of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Lender, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Lender; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Lender shall elect to bring suit to foreclose this Deed of Trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Lender shall be entitled to reasonable attorney's fees and litigation costs.

i.    Lender, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Lender and duly acknowledged and recorded in the office of the recorder of the county or counties where said Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Lender hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new trustee.

j.    This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Lender herein. In this Deed of Trust, whenever the context so requires, the singular number includes the plural.

**Exhibit B**

DOC ID #:

k.    Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Lender or Trustee shall be a party unless brought by Trustee.

l.    If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Lender, at its address designated on the first page of this Deed of Trust; (b) if this Deed of Trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Lender under the Agreement, whether before or after the Property is transferred, shall be secured under this Deed of Trust as if no transfer had occurred except for credit extended by Lender more than five days after it has received the written notices required by this paragraph.

m.    The pleading of any statute of limitations as a defense to any and all obligations secured by this Deed of Trust is hereby waived to the full extent permitted by law.

4.    WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:
a.    As used in this Paragraph 4:

(1)    "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.
(2)    "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(l), respectively. The term is intended by Trustor and Lender to be interpreted in its most comprehensive and cumulative sense.

Exhibit B

DOC ID #: ███████████

b.    Trustor represents and warrants that except as disclosed to and acknowledged in writing by Lender before the date of this Deed of Trust:

(1)    No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)    Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)    Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.    Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.    Trustor agrees to permit, or cause any tenant of Trustor to permit, Lender to enter and inspect the Property at any reasonable time for purposes of determining, as Lender deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Lender may obtain affirmative injunctive relief therefor.

e.    Trustor agrees to indemnify and hold Lender and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Lender and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this Deed of Trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in this Deed of Trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this Deed of Trust has been paid and discharged, whether or not this Deed of Trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Lender or of a third party after Trustor's interest in the Property has terminated.



**Exhibit B**

DOC ID #: ▉▉▉▉▉▉▉▉

f.    The provisions of this Paragraph 4 shall not be affected by the acquisition by Lender or its successors or assigns of any ownership or other interest in the Property beyond Lender's security interest in the Property created under this Deed of Trust, whether or not such acquisition is pursuant to the foreclosure of this Deed of Trust or a merger of the interest of the Lender or its successors and assigns in the Property.

5.    ADDITIONAL PROVISIONS:

a.    The execution of this Deed of Trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this Deed of Trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to the interest granted hereunder.

b.    The execution of this Deed of Trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Lender for any obligation described in Section 1., above. Any personal liability of such person to Lender shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this Deed of Trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to the interest granted hereunder.

**Exhibit B**

DOC ID #: ███████████

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth below.

By signing below, Trustor agrees to all the terms and conditions of this Deed of Trust.

Mailing Address For Notices

_____

JEFFREY S. BEIER
10 TUCSON
COTA DE CAZA, CA 92679

_____

TONI R. BEIER

_____

_____

**State of California**
County of Orange
On May 18, 2005 , before me Donna Laughray, Notary
, personally appeared

Jeffrey S. Beier and Toni R. Beier

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
    WITNESS my hand and official seal.



DONNA LAUGHRAY
Comm. # 1520459
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Oct. 18, 2008

Donna Laughray

● MERS HELOC - CA Deed of Trust
1D988-CA (02/04)                    Page 10 of 10

# Exhibit B

GOVERNMENT CODE SECTION 27361.7


I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED
READS AS FOLLOWS:

NAME OF NOTARY:               DONNA LAUGHRAY

DATE COMMISSION EXPIRES       OCTOBER 18, 2008

COUNTY WHERE BOND IS FILE:    ORANGE

COMMISSION NUMBER:            1520459

VENDOR NUMBER:                VSI1

PLACE OF EXECUTION:           IRVINE, CA

DATE:                         MAY 25, 2005

STEWART TITLE OF CALIFORNIA

BY: _____

PATRICK CAHILL

Exhibit B

Prepared by: MELISSA A. SIMMS

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 0001006
27101 PUERTA REAL, ST 100
MISSION VIEJO, CA 92691
Phone: (949)282-2200
Br Fax No.: (949)348-1073

DATE:        05/17/2005
CASE #:
DOC ID #:
BORROWER: JEFFREY S. BEIER
PROPERTY ADDRESS: 10 TUCSON
            COTA DE CAZA, CA 92679-5200

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)





# Exhibit B

EXHIBIT "A"

LEGAL DESCRIPTION

The land referred to herein is situated in the State of California,
County of ORANGE, described as follows:

Parcel 1:

Lot 1 of Tract No. 15841, in the County of Orange, State of
California, as shown on a subdivision map ("Map") recorded on
December 23, 1999, in book 794, pages 25 to 29, inclusive of
miscellaneous maps, in the office of the Orange County recorder.

Excepting therefrom; all oil, oil rights, natural gas rights,
mineral rights, and other hydrocarbon substances by whatever
name known, together with appurtenant rights thereto, without,
however, any right to enter upon the surface of said land nor
any portion of the subsurface lying above a depth of 500 feet,
as excepted or reserved in instruments of record.

Except all water, claims or rights to water, in or under said
land.

Parcel 2:

Non-exclusive easements for use, access, ingress, egress,
maintenance, repair, drainage, encroachment, support, and for
other purposes, all as described in the Master Declaration of
Covenants, Conditions, Restrictions and Reservation of
Easements for Coto de Caza ("Master Declaration"), recorded on
March 5, 1984 as Instrument No. 84-092424, in the Supplemental
Declaration of Covenants, Conditions, Restrictions and
Reservation of Easements for Oak Knoll in Coto De Caza
("Supplemental Declaration") recorded on September 11, 2000 as
Instrument No. 2000-0471430, in the Declaration of Covenants,
Conditions and Restrictions and Reservation of Easements for
The Summit ("Summit Declaration") recorded on September 20,
2000 as Instrument No. 2000-0492456, all in official records
and all as amended or restated, and as described in the map and
notice recorded December 20, 2000 as Instrument No.
2000-0691033.

End of Legal Description



Exhibit B

# PLANNED UNIT DEVELOPMENT RIDER

Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
MELISSA A. SIMMS


2477-NB
[Escrow/Closing #]          [Doc ID #]


**MULTISTATE PUD RIDER** - Single Family/Second Mortgage
Page 1 of 4

VMP®-207R (0402) CHL (06/04)(d)
VMP Mortgage Solutions, Inc. (800)521-7291

Initials:                3/99

Exhibit B

DOC ID #: ███████████

THIS PLANNED UNIT DEVELOPMENT RIDER is made SEVENTEENTH          day of
MAY, 2005          , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

10 TUCSON, COTA DE CAZA, CA 92679-5200

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
OAK KNOLL AT COTO DE CAZA

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and
(iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay,
when due, all dues and assessments imposed pursuant to the Constituent Documents.

Initials: _____

**Exhibit B**

DOC ID #: ▮▮▮▮▮▮▮▮▮

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**-207R** (0402)  **CHL (06/04)**        Page 3 of 4        Initials: ▮▮▮        **3/99**

**Exhibit B**

DOC ID #: ████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
JEFFREY S. BEIER                                    - Borrower

_____ (Seal)
TONI R. BEIER                                       - Borrower

_____ (Seal)
                                                   - Borrower

_____ (Seal)
                                                   - Borrower

Exhibit B

1  Brett A. Baer, SBN 212992
   DOAN LAW FIRM, LLP
2  2850 Pio Pico Drive, Suite D
   Carlsbad, CA 92008
3  Phone (760) 450-3333 • Fax (760) 720-6082
   baerb@doanlaw.com

4

5  Attorneys for PLAINTIFF

6

7                    UNITED STATES BANKRUPTCY COURT

8            Central District of California, Santa Ana Division,

9

10 In re:                              )    BK No. 8:09-bk-11124-TA
                                       )
11 JEFFREY SCOTT BEIER                 )    AP No. 8:09-ap-1252-TA
                                       )
12 _____ )
                                       )    Chapter 13
13 JEFFREY SCOTT BEIER,                )
                                       )    **JOINT STIPULATION AND**
14      Plaintiff,                     )    **MOTION FOR ORDER OF**
                                       )    **DISMISSAL OF ACTION**
15 vs.                                 )
                                       )
16                                     )
   MORTGAGE ELECTRONIC REGISTRATION    )
17 SYSTEMS, INC. (MERS), COUNTRYWIDE   )
   HOME LOANS, INC. COUNTRYWIDE        )
18 HOME LOANS SERVICING, L.P., and     )
   Does 1 thru 50 inclusive., AND DOES 1 )
19 THROUGH 10 INCLUSIVE,               )
                                       )
20      Defendants.                    )
                                       )
21

22

23

24

25

26

**Exhibit 6**

Case 8:09-ap-01252-TA    Doc 23-1    Filed 10/12/09    Entered 10/12/09 09:48:03    Desc
Exhibit Opposition to Motion and Order    Page 2 of 2

Case 8:09-bk-10086-TA    Doc 197-31    Filed 10/27/09    Entered 10/27/09 15:08:39    Desc
Main Document    Page 105 of 105

1    **IT IS HEREBY STIPULATED AND MOVED** by and between the

2  parties that this matter may be and hereby is dismissed with prejudice as to

3  all claims, each party to bear their own costs of suit.

4

5  Dated:        September 4, 2009

6

7  **DOAN LAW FIRM, LLP**

8  By: /s/ ecf/Brett A. Baer
        Brett A. Baer, Attorney for Plaintiff Jeffrey Scott Beier

9

10

11  Dated:        September 4, 2009

12

13  **KIRBY & MCGUINN**

14  By: /s/ ecf Jana Logan
        Jana Logan, Attorneys for Defendants

15

16

17

18              **ORDER**

          IT IS SO ORDERED.

19

20

21  DATED:  September ____, 2009        _____
                                        Hon. Theodor C. Albert

22                                      United States Bankruptcy Judge

23

24

25

26

**Exhibit 6**